PHILLIP A. TALBERT
United States Attorney
JASON HITT
ROSS PEARSON
DAVID SPENCER
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RONALD YANDELL ET AL.,<br><br>Defendants. | CASE NO. 2:19-CR-00107-KJM<br><br>UNITED STATES' OPPOSITION TO MOTION FOR JURY QUESTIONNAIRES<br><br>DATE: July 19, 2023<br>TIME: 9:00 a.m.<br>COURT: Hon. Kimberly J. Mueller |

### I.  INTRODUCTION

Defendants Ronald Yandell, Danny Troxell, William Sylvester, Brant Daniel, Pat Brady, and Jason Corbett filed a motion for the use of jury questionnaires in a non-capital case. ECF No. 1528. The United States opposes the motion in part.[1]  While the United States does not oppose a questionnaire aimed at collecting basic biographical and hardship information from jurors, the Court should deny the defense request for questions about "case-related issues," ECF No. 1528 at 3.  Such case-specific questions are generally disfavored by the Ninth Circuit Jury Trial Improvement Committee, because the risk of undue prejudice and imposition on the jurors outweighs the minimal benefit of such questionnaires.

---

[1] The United States does not oppose the use of a jury questionnaire if the trial in this case is a capital trial.

## II.     LEGAL STANDARDS

District courts have "ample discretion in determining how best to conduct the voir dire." *Rosales-Lopez v. United States*, 451 U.S. 182, 189 (1981). "No hard-and-fast formula dictates the necessary depth or breadth of voir dire." *Skilling v. United States*, 561 U.S.C 358, 386 (2010). The court has discretion "not only to see that the voir dire is effective in obtaining an impartial jury but also to see that this result is obtained with reasonable expedition." *United States v. Jones*, 722 F.2d 528, 529 (9th Cir. 1983) (internal quotation and citation removed).

Notably, the Ninth Circuit Jury Trial Improvement Committee "discourages the use of generic questionnaires for every trial because they do not offer sufficient benefits to justify the imposition on the jurors, the additional expenditure of staff time, and extra operational costs." Judicial Counsel of the Ninth Circuit Jury Trial Improvement Committee, Second Report: Recommendation and Suggested Best Practices at 8, ECF No. 1528-1. The Committee notes that such questionnaires can still be useful to "pre-screen[]" potential jurors when the case "is anticipated to be unusually long." *Id.* And it suggests that "focused questionnaires" may be useful in the limited cases "where the jurors' personal experiences might have a significant impact on their ability to be fair, such as those involving sexual assault, or child pornography." *Id.*

## III.     DISCUSSION

In this case, the use of extensive, case-specific questionnaires will not aid in this Court's duty to obtain an impartial jury with reasonable expedition. First, the United States' proposal—questions limited to biographic and hardship information—aligns with what the Ninth Circuit Trial Improvement Committee has called its "best practices." *Id.* (noting that questionnaires can still be useful to "pre-screen[]" potential jurors when the case "is anticipated to be unusually long"). But no case-specific questions are needed because this case is not the type of rare case in which a juror's personal experience would likely have a "significant impact" on his ability to be fair and impartial. Unlike cases involving sexual assault or child pornography, it is unlikely that a significant number of jurors would have personal experience with gangs or murder such that they would be unable to be fair or weigh the evidence impartially. In other words, if a juror were to hear on the first day of jury selection that this case involves RICO or murder charges, that fact alone would not likely cause the jurors to have such

strong feelings that they would need to be excluded from the jury simply due to the subject matter of the case. There is therefore no need to screen out jurors in advance of trial through a questionnaire because, in this case, the questionnaires would "not offer sufficient benefits to justify the imposition on the jurors, the additional expenditure of staff time, and extra operational costs." *Id.*

Second, because the Court must educate jurors and assess their demeanor and credibility, a jury questionnaire will not be as effective in selecting a fair and impartial jury as in-court questioning. To assess a juror's impartiality, judges are often influenced by a host of factors such as "the prospective juror's inflection, sincerity, demeanor, candor, body language, and apprehension of duty." *Skilling*, 561 U.S. at 386. These factors are "impossible to capture fully in the record." *Id.* Nor can the Court assess these factors simply by reading written responses to a questionnaire. As such, sending a written questionnaire to jurors about case-specific facts will often require the Court to ask duplicative follow-up questions to jurors to assess their credibility and sincerity about their answers. *Id.* at 395 (noting that the court followed-up with individual questions to each juror about their responses on questionnaires). Indeed, the parties would likely encourage such follow-up questions, given that jurors are often "more forthcoming" in response to questions to the court. *United States v. Ray*, No. 20-CR-110 (LJL), 2022 WL 558146, at *21 (S.D.N.Y. Feb. 24, 2022) ("[A]s Judge Weinfeld opined, 'based on more than three decades of judicial service,' that he was 'persuaded beyond peradventure of doubt' that court-led voir dire 'without exception, has resulted in the empanelling of fair and impartial juries . . . selected expeditiously and with full protection of a defendant's constitutional right to an impartial jury' even in cases involving 'the widest publicity in the news media over extended periods of time.'"). Sending a questionnaire that will require the Court to re-ask many of the same questions in court will unnecessarily delay jury selection for little or no benefit.

Finally, in addition to issues of expediency and candor, sending a case-specific questionnaire to jurors has another potential downside: a questionnaire itself would risk inadvertently exposing jurors to pretrial publicity. If jurors receive a case-specific questionnaire from the Court without first hearing the Court's admonitions about avoiding pretrial publicity and not discussing the case with others, many jurors will likely seek out information about the case. *See Skilling*, 561 U.S. at 454 (noting that many prospective jurors likely talked about case-specific issues "particularly once they learned upon receiving

the written questionnaire that they might end up on Skilling's jury") (Sotomayor, J., concurring in part). A case-specific jury questionnaire could therefore cause some jurors to be tainted by pretrial publicity.

The United States therefore asks this Court to follow the best practices outlined by the Ninth Circuit Jury Trial Improvement Committee and simply use the jury questionnaire to screen potential jurors for availability and basic biographic information. This practice is the best way for the Court to "obtain[] an impartial jury . . . with reasonable expedition." *Jones*, 722 F.2d at 529.

### IV. CONCLUSION

The United States asks this Court to deny the defendants' motion for jury questionnaires to the extent that they seek to include "case-specific questions" in the questionnaires.

Dated: June 28, 2023

PHILLIP A. TALBERT
United States Attorney

By: /s/ ROSS PEARSON
ROSS PEARSON
Assistant United States Attorney