PHILLIP A. TALBERT
United States Attorney
JASON HITT
ROSS PEARSON
DAVID SPENCER
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, California  95814
Telephone: (916) 554-2700

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:19-CR-00107 KJM |
| Plaintiff, | UNITED STATES' MOTION FOR EXTENSION OF TIME FOR THE GOVERNMENT TO GIVE NOTICE OF ITS INTENT TO SEEK, OR NOT SEEK, THE DEATH PENALTY |
| v. | |
| RONALD YANDELL, et al., | |
| Defendants. | |

The United States, by and through its counsel, Assistant U.S. Attorneys Jason Hitt, Ross Pearson, and David Spencer, respectfully moves for an extension of time to announce its decision of its intent to seek, or not seek, the death penalty, or withdraw a deadline for such an announcement.  ECF 1473.  Assuming, without conceding, that the Court has authority to set a deadline for the Attorney General, the government respectfully requests December 15, 2023, as the new deadline.[1]

---

[1] The United States anticipates that the Court would understandably want greater detail about where the government's deliberative process stands as of today.  However, the United States Attorney's Office is not permitted to disclose information concerning the deliberative process. J.M. § 9-10.050 ("The decision-making process preliminary to the Department's final decision is confidential. Information concerning the deliberative process may only be disclosed within the Department and its investigative agencies as necessary to assist the review and decisionmaking process."). The government has been working diligently in light of the Court's deadline to bring the process to a conclusion. But, the government could not complete the required steps in time for the Court's deadline.

1

## I. BACKGROUND

### A. The Department of Justice Death Penalty Protocol

The decision to pursue capital punishment in a potential federal capital case rests with the United States. Under the Federal Death Penalty Act (the "FDPA"), 18 U.S.C. §§ 3591-99, as a prerequisite to seeking the death penalty, the prosecution must file with the court a notice identifying its intention to seek the death penalty and the aggravating factors it will present at trial. 18 U.S.C. § 3593(a).

The Department of Justice has developed a set of internal procedures to guide the government's decision-making process for determining whether to seek the death penalty in a case in which a federal capital offense may be charged. This process, which is referred to as the "Death Penalty Protocol," is memorialized in the Justice Manual, a publicly available document setting forth DOJ's internal policies and procedures. J.M. § 9-10.000 (Capital Crimes). Under the Death Penalty Protocol, the decision to seek the death penalty ultimately rests with the Attorney General. J.M. 9-10.050. At the outset, in all cases in which a prosecutor could charge a capital-eligible offense, the United States Attorney (or Assistant Attorney General if the prosecution is being handled by a DOJ Headquarters section) must make a submission to DOJ Headquarters including a memorandum setting forth, among other things, the facts of the case, an analysis of factors that may bear on the decision to seek the death penalty, and the United States Attorney's recommendation regarding seeking the death penalty. *See* J.M. §§ 9-10.070, 080, 130, and 140. Those materials are then reviewed by the Attorney General's Capital Review Committee, which makes a recommendation to the Attorney General on whether to seek the death penalty. J.M. § 9-10.130

The Death Penalty Protocol provides multiple occasions for defense counsel to present mitigation information to the decision makers. First, in any case in which the United States Attorney is contemplating requesting authorization to seek the death penalty, the protocol requires the United States Attorney to give counsel for the defendant a "reasonable opportunity" to present information which may bear on the decision. J.M. § 9-10.080. Further, in any case in which the United States Attorney requests authorization to seek the death penalty, the protocol requires DOJ to set a meeting between members of the Capital Review Committee, the prosecution team, and the defense team to consider the case. J.M.

§ 9-10.130. No final decision to seek the death penalty can be made if defense counsel has not been afforded an opportunity to present evidence and argument in mitigation. *Id.*

### B. Relevant Background of the Aryan Brotherhood Prosecution

As relevant to potential death-eligible charges, on June 14, 2019, a grand jury indicted defendants Ronald Yandell, William Sylvester, Jason Corbett, Pat Brady, and Brant Daniel on one count of participating in a RICO conspiracy. 18 U.S.C. § 1962(d); ECF 25, at 7–8. That indictment did not include any charges that carry the death penalty. However, some of the predicate acts alleged crimes that could support the death penalty. ECF 25, at 9–12. On December 8, 2022, the grand jury returned a superseding indictment that included four charges carrying the potential for the death penalty against five defendants: Yandell, Sylvester, Brady, Corbett, and Daniel. ECF 1375, at 17–22 (Counts 15–18).

## II. ANALYSIS

### A. The Decision to Seek the Death Penalty is a Unique Exercise of Prosecutorial Discretion Protected by the Separation of Powers Doctrine.

The Attorney General and United States Attorneys retain broad discretion to enforce the criminal laws of the United States. *United States v. Armstrong*, 517 U.S 456, 464 (1996). In the ordinary case, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Id.* (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)). The separation-of-powers doctrine underscores the need for judicial deference to the prosecutor in the process of performing the "core executive constitutional function" of charging criminal offenses. *Id.* at 465.

The Supreme Court has explained the reason why courts are "properly hesitant to examine the decision whether to prosecute." *Id.* (citation omitted). The "[j]udicial deference to the decisions of these executive officers rests in part on an assessment of the relative competence of prosecutors and courts." *Id.* The factors that may influence charging decisions, such as "the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan[,] are not readily susceptible to the kind of analysis the courts are competent to undertake." *Id.* A second concern is equally important, especially

when viewed in the context of this Court's proposed plan: "a concern not to unnecessarily impair the performance of a core executive constitutional function." *Id.*

This broad prosecutorial discretion extends to the prosecutor's decision to seek the death penalty. *See United States v. Bass*, 536 U.S. 862, 864 (2002) (summarily rejecting challenge to prosecutor's decision to seek the death penalty); *United States v. McVeigh*, 944 F. Supp. 1478, 1483 (D. Colo. 1996) (holding "the decision to seek the death penalty under the [FDPA] is a matter of prosecutorial discretion"). Under the FDPA, the decision whether to seek the death penalty is an exclusively executive function. 18 U.S.C. § 3593(a).

Regarding the Court's deadline for announcement of the Government's capital decision-making process, this Court's supervisory powers are constrained by the separation-of-powers doctrine. Generally, this Court may not order what it proposes unless if finds a violation of some constitutional provision, statute, or rule. *United States v. Gatto*, 763 F.2d 1040, 1046 (9th Cir. 1985) (reversing district court's decision to exercise supervisory power to suppress late-disclosed evidence). The *Gatto* court stated in pertinent part:

> As a threshold matter, a court may not exercise any supervisory power absent a clear basis in fact and law for doing so. . . . Judicial integrity is rarely threatened significantly when executive action does not violate the Constitution, a federal statute, or a procedural rule. A federal court that imposes sanctions on executive conduct that is otherwise permitted by the Constitution, a federal statute or a rule will most likely be invading the executive sphere rather than protecting itself from invasion. Similarly, the separation-of-powers principle suggests that the creation of a rule by supervisory power can be justified only when a recognized right has been violated. Even then, it may be wise for the courts to await congressional action.

*Id.*

In *United States v. Slone*, 969 F. Supp. 2d 830 (E.D. Ky. 2013), the district court addressed the separation-of-powers question in the context of a death penalty case. In *Slone*, the capital defendant moved the court for an order delaying his meeting with the Attorney General's Capital Review Committee by four months. The court declined the defendant's "bid to micromanage the Death Penalty Protocol," concluding that to do so "would violate the Constitution." *Slone*, 96 F. Supp. 2d at 836. Citing several Supreme Court precedents, the court explained:

4

> Courts may not encroach on the central prerogatives of a coequal branch. Slone's motion pits this Court's implied powers against the Executive's constitutionally delegated prosecutorial discretion. When judicial process and executive prerogative conflict, courts must resolve those competing interests in a manner that preserves essential functions of each branch. The separation of powers thus constrains the Court's inherent authority
>
> . . .
>
> [H]istory counsels against issuing the scheduling order Slone seeks. Like the grand jury, prosecutors have a well-recognized tradition of autonomy from the Judicial Branch. In our adversarial system, investigatory and prosecutorial decisions are made outside the supervision of the court. Makings those decisions is a core executive constitutional function. The separation of powers thus requires respect for prosecutorial discretion.
>
> This discretion includes the decision whether to seek the death penalty. For better or worse a prosecutor has wide latitude to calibrate punishment through his charging decisions. He may charge a felony, for example, even when a misdemeanor carrying a lighter sentence is also available. The appropriate severity of punishment is thus an important aspect of a prosecutor's charging decision. Ordering the Justice Department to consider Slone's presentation of mitigating evidence on a particular timeline would obliterate that discretion by imposing judicially-mandated procedures for deciding whether to seek death.  Court intervention would interfere with prosecutors' position in our constitutional structure. The Court must therefore stay its hand.

*Id.* at 837–38 (internal citations and quotations omitted).

As discussed below, internal DOJ procedures do not confer any rights on the defendants, and there is no evidence that the Government's decision to indict this case or ongoing exercise of its charging discretion violates any specific constitutional provision, statue, or rule. Accordingly, the United States respectfully requests that the Court discharge its deadline or extend the deadline to December 15, 2023.

### B. The Court Does Not Have Authority to Set a Deadline for the Government to Announce its Intention on Pursuing the Death Penalty.

Recognizing the Justice Manual only as internal guidance for DOJ attorneys, federal courts of appeals, including the Ninth Circuit, have uniformly held that the guidelines and policies set forth in the Justice Manual do not create enforceable rights for criminal defendants. *United States v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000) ("[I]t is clear that the USAM does not create any substantive or procedural rights."); *United States v. Cooks*, 589 F.3d 173, 184 (5th Cir. 2009) (recognizing that "[t]he USAM itself makes plain that it 'provides only internal guidance'"); *United States v. Lopez-Matias*, 522

5

F.3d 150, 155–56 (1st Cir. 2008) (holding a violation of Death Penalty Protocol did not support the district court's decision to strike the notice of intent to seek the death penalty); *United States v. Jackson*, 327 F.3d 273, 295 (4th Cir. 2002) (holding that it is "well established that . . . internal prosecutorial protocols do not vest defendants with any personal rights"); *United States v. Lee*, 274 F.3d 485, 493 (8th Cir. 2001) (holding in a federal capital case that the Protocol does not create enforceable rights for the defendant); *Nichols v. Reno*, 124 F.3d 1376, 1376 (10th Cir. 1997) (finding a defendant has no "protectable interest" in enforcement of the Death Penalty Protocol); *United States v. Ingram*, No. 5:15-CR-78-KKC-REW, 2016 WL 2986261, at *1 (E.D. Ky. May 20, 2016)); *Slone*, 969 F. Supp. 2d at 834 ("[T]he CJA Guidelines create no enforceable rights because they were not adopted pursuant to an enabling statue authorizing the Judicial Conference to act with the force of law. As their name suggests, they are merely advisory. On their own, the Guidelines cannot empower this Court to issue the scheduling order Slone seeks."); *United States v. Tsarnaev*, 2013 WL 5701582, at *2 (D. Mass. Oct. 18, 2013) (noting CJA Guidelines are not binding).

Although some district courts have declared their own authority to set deadlines for the United States to announce its intention to pursue to the death penalty, those cases are in the minority because they fail to meaningfully reconcile a district court's claim of inherent authority when weighed against the constitutional separation-of-powers doctrine.

The majority view on the issue of setting deadlines within a death penalty case is best expressed in *Wilson*.

> [T]he Court also does not believe it is an appropriate exercise of judicial authority to become involved in the scheduling of a meeting that will impact a charging decision by the government. This conclusion is consistent with the vast majority of courts that have addressed the issue.

*United States v. Wilson*, 518 F. Supp. 3d 678, 682 (W.D.N.Y. 2021) (citing *United States v. Crusius*, 2020 WL 4340550, at *4 (W.D. Tex. July 28, 2020) (while recognizing the challenges in preparing mitigation evidence in the face of COVID-19 pandemic, nonetheless concluding that the court lacked "the authority to grant Defendant the relief he seeks because the pre-authorization mitigation presentation is not a judicial proceeding presided over by a judge, but part of an 'administrative, discretionary decision-making process of whether to seek the death penalty'"); *Slone*, 969 F. Supp. 2d at

6

833 (denying motion to set schedule for presentation of mitigating evidence to federal prosecutors because "[t]he Court does not have the authority to manage the DOJ's internal processes"); *Tsarnaev*, 2013 WL 5701582, at *1 ("The opportunity extended by the protocol to the defendant to submit information and materials for consideration in the Department's internal deliberations does not create a legal right that can be overseen and enforced by the Court."); *United States v. Hardrick*, 2011 WL 2516340, at *2 (E.D. La. June 22, 2011) (concluding that court lacked authority to order DOJ to extend deadline set for defense presentation of evidence to the Capital Case Review Committee); *United States v. Cisneros*, 2002 WL 35649521, *1 (D.N.M. Dec. 10, 2002) (declining to intervene in deadlines set by government with respect to death penalty review because "the death-eligible Defendants lack any judicially enforceable substantive or procedural rights with respect [to] the Government's exercise of prosecutorial discretion under the Justice Department's internal death-penalty protocol")).

In *Slone*, the court recognized that its inherent powers "defy neat classification," but the court held it "plainly [did] not" have the power to enter a scheduling order for the defendant's mitigation presentation to the DOJ. *Slone*, 69 F. Supp. 2d at 835. The court reasoned that only two sources of authority could even potentially support such an order: 1) the court's administrative power to manage its docket; or 2) the court's limited supervisory power over criminal procedure. *Id.* at 835. Absent a violation of law, however, those powers are restricted to internal housekeeping. *Id.* Because presentation of mitigating evidence to DOJ does not implicate the judicial process, the court concluded it could not grant Slone's scheduling request. *See id.* (explaining further that inherent powers are "limited to managing judicial business.").

Several other courts have reached the same general conclusion that it is beyond the scope of this Court's inherent powers to set a schedule for the Government to follow its internal Death Penalty Protocol. *Tsarnaev,* 2013 WL 5701582, at *1 ("In any event, what the defendant asks is that the Court set dates for events occurring not in the course of the judicial proceeding but rather in the course of the Department's internal deliberations. That would be well beyond the scope of any inherent authority to manage judicial business."); *Hardrick*, 2011 WL 2516340, *2 ("[T]he Court finds its authority to ensure the speedy and orderly administration of justice and to manage its docket does not extend to controlling internal deadlines within the Justice Department."); *United States v. Jackson*, 2006 WL 59559, *2

(S.D.N.Y. Jan. 9, 2006) ("The Attorney General's capital case review procedure to determine whether in the exercise of discretion, to seek the death penalty is not part of the judicial function."); *Cisneros*, 2002 WL 35649521, *5 (concluding the court "lacks the inherent authority to intervene in the United States Attorney's internal death-penalty protocol").

For these reasons, the United States respectfully requests that the Court extend the deadline for the government to announce its intent to seek, or not seek, the death penalty to December 15, 2023, or not impose a new deadline.

### III.  CONCLUSION

The United States respectfully requests that the Court extend the deadline for the government to announce its intent to seek, or not seek, the death penalty to December 15, 2023, or not impose a deadline.

Dated: August 23, 2023

PHILLIP A. TALBERT
United States Attorney

By: */s/ Jason Hitt*
JASON HITT
Assistant United States Attorney