JOHN BALAZS, Bar # 157287
Attorney at Law
916 2nd Street, Suite F
Sacramento, CA 95814
Telephone: (916) 447-9299
john@balazslaw.com

TIMOTHY E. WARRINER, Bar # 166128
Attorney at Law
455 Capitol Mall, Suite 802
Sacramento, CA 95814
Telephone: (916) 443-7141
tew@warrinerlaw.com

Attorneys for Defendant,
BRANT DANIEL

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>BRANT DANIEL,<br><br>        Defendant. | Case No. 2:19-CR-0107-KJM<br><br>**DEFENDANT BRANT DANIEL'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS**<br><br><u>Motion Hearing:</u><br>Date: September 20, 2023<br>Time: 9:00 a.m.<br>Hon. Kimberly J. Mueller |

**I.    Introduction**

    Defendant Brant Daniel replies to the government's opposition to his motion to dismiss the Superseding Indictment against him for violation of his speedy trial rights under the Sixth Amendment. ECF Nos. 1565, 1613. Because each of the

1

*Barker* factors weighs toward dismissal, the Court should dismiss the Superseding Indictment against him.

**II.     Dismissal is required to remedy the violation of defendant Brant Daniel's Sixth Amendment right to a speedy trial.**

   **A.     The government misstates the procedural background of the case.**

In its procedural background section, the government states that when the March 2023 trial date was set, "each defendant represented that they would not be prepared to try the case in March 2023 if the government brought superseding charges that carried the potential for the death penalty." ECF No. 1613, at 4.  This is incorrect.  The initial March 20, 2023, trial date for the six defendants was set at the January 5, 2022 status conference.  ECF No. 1120.  By that time, Mr. Daniel had already been invited to make a submission as to why the government should not seek the death penalty.  He and other defendants thus anticipated that the DOJ's decision would have been made well before trial.  ECF No. 1120, at 21.  Mr. Daniel and the other defendants represented only that they would not be prepared for a capital trial in March 2023 should the Attorney General authorize the prosecution to seek the death penalty.  ECF No. 1120, at 14-21.

The government is also incorrect that Mr. Daniel did not assert his Speedy trial rights until February 2023.  ECF No. 1613, at 5.  In fact, as the government notes elsewhere in its brief, ECF No. 1613, at 9, Mr. Daniel asserted his speedy trial right promptly after the Superseding Indictment was filed in a 1/17/23 status report and at the 1/25/23 status conference.  ECF No. 1392, at 2-3 (status report); ECF No. 1505 (1/25/23 RT), at 11.[1]

---

[1]     On December 21, 2022, shortly after the Superseding Indictment was filed, defense counsel also notified the government by email that Mr. Daniel would not agree to continue the trial beyond its then-existing March 2023 date.

**B.     Each of the *Barker* factors weighs towards dismissal.**

The parties agree that a defendant's motion to dismiss for violation of the speedy trial right under the Sixth Amendment is evaluated under the standard set forth in *Barker v. Wingo,* 407 U.S. 514, 530 (1972).  Under *Barker,* the Court looks at four factors:  (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of the speedy trial right; and (4) the prejudice from the delay.  *Id*.  Each of these factors weighs towards dismissal in this case.

   **1.     Length of Delay**

The government acknowledges that "the period of time between Daniel's indictment and trial exceeds one year and thus suffices to 'trigger the *Barker* inquiry.'"  ECF No. 1613, at 7.  Here, it has been more than four years since the government first indicted Mr. Daniel.

   **2.     Reasons for Delay**

The government asserts that Mr. Daniel "does not argue that the delay has been caused by bad faith or a lack of due diligence."  ECF No. 1613, at 7.  Mr. Daniel's motion to dismiss, however, argues just that.  He argued that because the Superseding Indictment added no new allegations, it could have been filed months or years earlier.  Likewise, the motion to dismiss points out that Mr. Daniel made a submission to the U.S. Attorney as to why the government should not seek the death penalty in February 2022.  Nonetheless, the U.S. Attorney's Office had still not forwarded its death penalty package and recommendation to the DOJ's Capital Case Section as of July 2023, despite the Court's August 23, 2023 deadline for the death-authorization decision.  Moreover, after Mr. Daniel's motion to dismiss was filed, the government asked for an extension of time of the court's death-authorization deadline without providing any justification at all to extend the deadline.  *See* ECF Nos. 1590, 1602, 1604.  This shows a glaring lack of diligence

with respect to Mr. Daniel, if not bad faith.[2] The reasons for the delay weigh heavily in favor of dismissal.

### 3. Mr. Daniel's Assertion of his Speedy Trial Right

Rather than attempt to justify the lengthy delays since the Superseding Indictment was filed in December 2022, the government harps on the fact that the defense had agreed to case delays *before* the Superseding Indictment was filed. Mr. Daniel has never argued otherwise. ECF No. 1565, at 6 ("the early case delay was necessary for the defense to review discovery and otherwise defend against the allegations in this capital case"). But again, as noted above, Mr. Daniel has consistently objected to continuances and further delay after the Superseding Indictment was filed in December 2022 since it disclosed no new allegations against him.

Mr. Daniel's requests for speedy trial are easily distinguishable from those in the cases relied on by the government, *United States v. Loud Hawk*, 474 U.S. 302, 314-15 (1986), and *United States v. Lam,* 251 F.3d 852, 859, *as amended*, 2001 U.S. App. Lexis 18826 (9th Cir. 1991). In *Loud Hawk*, the Court noted that defendants "repeatedly moved for dismissal on speedy trial grounds," but found such assertions insincere where defendants also filed "indisputably frivolous petitions for rehearing and for certiorari" and numerous repetitive unsuccessful motions. 474 U.S. at 314-15 (characterizing defendants' claims as "reminiscent of Penelope's tapestry" from Homer's *The Odyssey*). In *Lam,* the Court discounted the defendant's own assertions for speedy trial where his counsel requested each of the challenged continuances. 2001 U.S. App. Lexis 18826, at ** 13-14 ("each and

---

[2] In denying the motion to sever in March 2023, the Court noted that "[t]he government is not without responsibility for delay. It has produced discovery slowly. It has resisted deadlines and times limits for superseding the indictment and deciding whether to pursue the death penalty." ECF No. 1474.

every [continuance] was asked for by Lam's defense counsel so that he could do his job"). Unlike *Loud Hawk* and *Lam,* here Mr. Daniel and his counsel have consistently sought a speedy trial since January 2023, filing only significant motions for severance, to preclude the death penalty, for interference with legal mail, and this dismissal motion. Mr. Daniel's assertion of his speedy trial right thus also weighs in favor of dismissal.

### 4. Mr. Daniel's Oppressive Pretrial Incarceration

Mr. Daniel has satisfied the prejudice prong of *Barker* because he continues to have to endure "oppressive pretrial conditions" in solitary confinement because of this federal criminal case. *See Doggett v. United States*, 505 U.S. 647, 654 (1991) (listing "oppressive pretrial incarceration" as a form of prejudice under the speedy trial clause of the Sixth Amendment). In denying Mr. Daniel's motion to sever, the Court relied in part on a letter from plaintiff's counsel in the *Ashker* class action lawsuit that "suggests Daniel has avenues to relief [to be released from solitary confinement] through the settlement in *Ashker*." ECF No. 1474, at 17. Even if that were so when the Court issued its ruling, it is no longer true. On August 24, 2023, the Ninth Circuit held that because the district court had an insufficient basis to extend the 2-year monitoring period in the settlement agreement, the agreement's enforcement provisions have expired and the district court's jurisdiction over the matter has terminated. *See Ashker v. Newsom*, No. 21-15839, 2023 U.S. App. Lexis 22341, at ** 63-64 (9th Cir. Aug. 24, 2023). This forecloses any avenue for relief under the settlement agreement.

The government also notes that in its ruling on Mr. Daniel's motion to sever, the Court stated that "although the allegations against Daniel in this case may be one reason he is housed in the administrative segregation unit, it is not clear that conditions of confinement would be different if he were not currently awaiting

federal trial." ECF No. 1474, at 17. After the Court denied the motion to sever, however, CDCR provided additional documentation substantiating Mr. Daniel's claim. ECF No. 1565-2. That Classification Committee Chrono explains that Mr. Daniel cannot be transferred to CSP-Sacramento's general population because CDCR believes there would be safety issues in the general population there. *Id.* In these circumstances, Mr. Daniel is entitled to a Department Review Board hearing that would provide him with a general population facility where he may be appropriately housed. ECF No. 1565-1; *see* 15 CCR § 3378.9 ("The RCGP . . . will provide a general population alternative for inmates who . . . have a substantial threat to their personal safety should they be released to the general population and are deemed appropriately housed, based upon a preponderance of the evidence, by the Department Review Board (DRB).")

But here the Chrono states that he "cannot be transferred due to an ongoing court case in the United States District court, Eastern District of California, for Conspiracy to Participate in a Racketeering Enterprise ("RICO") in violation of 18 U.S.C. 1962(d), and related crimes." ECF No. 1565-2. As a result, it is now clear that the instant federal case prevents his transfer to a suitable general housing unit within the California prison system. This not only bars Mr. Daniel's ability to participate in programs in prison, *id.*, but long-term placement in solitary confinement also has well-documented detrimental effects on inmates' physical and mental health. *See, e.g.,* Vera Institute of Justice, "The Impacts of Solitary Confinement," April 2021 (noting the "vast body of research that shows the serious detrimental effects on mental and physical health of spending 22 to 24 hours per day alone in a cell the size of a parking space").

Because all four factors weigh in favor of dismissal, the Court should dismiss the Superseding Indictment against Mr. Daniel.

### III. Conclusion

For these reasons and those in Mr. Daniel's motion to dismiss, the Court should grant Daniel's motion to dismiss the Superseding Indictment for violation of his Sixth Amendment speedy trial right.

Respectfully submitted,

Dated: September 13, 2023

/s/ Timothy E. Warriner
TIMOTHY E. WARRINER

/s/ John Balazs
JOHN BALAZS

Attorneys for Defendant
BRANT DANIEL