PHILLIP A. TALBERT
United States Attorney
JASON HITT
ROSS PEARSON
DAVID SPENCER
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:19-CR-00107-KJM |
|---|---|
| Plaintiff, | OPPOSITION OF THE UNITED STATES TO THE DEFENDANTS' MOTION TO PRECLUDE THE DEATH PENALTY |
| v. | |
| RONALD YANDELL, et al., | [ECF 1603, 1604] |
| Defendants. | |

## I.  INTRODUCTION

The United States respectfully submits its opposition to defendants' motion to preclude the government from seeking the death penalty. ECF 1063, 1604. The government incorporates by reference its previous pleadings asserting that the Court's authority does not extend to setting a deadline for the government to give notice of its intent to seek, or not seek, the death penalty or preclude its ability to seek the death penalty. ECF 929, 1590.[1] Even if the Court does have authority to set a deadline for providing notice of the government's intent to seek, or not seek, the death penalty, the "reasonable time" provision of 18 U.S.C. § 3593(a) is met if the Court sets a deadline of December 15, 2023, for a February 2024 trial date. More to the point, the remedy sought by the defendants in this

---

[1] Those arguments are not repeated here, but the government does reassert them here so as to preserve them in the event of an adverse ruling on the threshold question of whether the Court has authority to set deadlines and, if so, whether the Court possesses authority to preclude the government from seeking the death penalty.

motion – court-ordered preclusion of the government's ability to pursue the death penalty – is a far too harsh remedy in response to the government's request to extend the time in which to provide notice.

## II.     PROCEDURAL BACKGROUND

In 2019, a grand jury charged sixteen defendants with several crimes arising out of their participation in the Aryan Brotherhood enterprise. ECF 25, Indictment. Initially, with the agreement of the parties, the Court placed the defendants in two separate groups for trial: defendants Ronald Yandell, Danny Troxell, William Sylvester, Brant Daniel, Pat Brady, and Jason Corbett were placed in the first trial group with a trial date of March 20, 2023. ECF 988. At the time of the trial setting, each defendant represented that they would not be prepared to try the case in March 2023 if the government brought superseding charges that carried the potential for the death penalty. The remaining defendants were placed in the second trial group, and no trial date was set.

On December 8, 2022, a grand jury returned a superseding indictment adding four death-eligible charges against five of the trial defendants. ECF 1375. On March 23, 2023, the Court ordered the United States to give notice of its intent to seek, or not seek, the death penalty by August 23, 2023, over government objection. ECF 1473. The government's objection persists. To preserve its rights, the government has moved to extend the court-ordered death-penalty notice. ECF 1590.

## III.     ANALYSIS

### A. **Providing notice of the government's intent on the death penalty by December 15, 2023, provides "reasonable time" prior to the February 2024 trial date.**

Federal law requires the government to file its notice of intent to seek the death penalty "a reasonable time before the trial." 18 U.S.C. § 3593(a). "The obvious intent of section 3593(a) is to ensure that both parties, especially the defendant, have adequate time to prepare for a capital trial." *United States v. Williams*, 318 Fed. App'x 571, 573 (9th Cir. 2009). "[T]he statute specifies that a death penalty notice must be given 'a reasonable time before the trial,' but 'affords no guidance as to how to assess reasonableness, nor does it address the remedy to be fashioned if reasonable notice is not given; moreover, there is no legislative history addressing those issues.'" *United States v. Robinson*, 473 F.3d 487, 491 (2d Cir. 2007) (quoting *United States v. McGriff*, 427 F. Supp. 2d 253, 261–62 (E.D.N.Y. 2006)).

GOVT.'S OPP. TO DEFENDANTS' MOTION TO PRECLUDE
THE DEATH PENALTY

2

In *United States v. Wilk*, the Eleventh Circuit listed six non-exhaustive factors for courts to consider in determining whether notice was filed in a reasonable time before trial:

> (1) what transpired in the case before the formal Death Notice was filed;
> (2) the period of time remaining for trial after the Death Notice was filed;
> (3) the status of discovery and motions in the proceedings; (4) the nature of the charges in the indictment; (5) the nature of the aggravating factors claimed to support the death penalty; and (6) the anticipated nature of the defense, if known.

452 F.3d 1208, 1221 (11th Cir. 2006) (cited with approval in *Williams*, 38 Fed. App'x at 573). Each of these six factors demonstrate that a deadline of December 15, 2023, would be "a reasonable time before trial" for purposes of § 3593(a).

For the first factor, this case has been treated as a death-eligible case from the outset, a factor that favors the government, as *Wilk* demonstrates. In *Wilk*, the Eleventh Circuit found that the first factor favored the government where "all parties knew [the case] was a likely death penalty case" "from the start," and the defendant's attorney "who had extensive capital crimes experience" also "requested ex parte funds for investigation and mitigation experts related to the death penalty and made an ex parte request for a second death-qualified counsel under 18 U.S.C. § 3005" even before a death-eligible charges were filed. *Id.* at 1222.

Here, as in *Wilk*, this Court has treated the case as a potential capital case "from the start." *Id.* All defendants charged with death-eligible offenses have had two attorneys working on their case since 2019, well before any death-eligible charges were filed. In particular, as this Court recently explained, "None of the crimes charged in the original indictment were punishable by death, but the allegations against five defendants could potentially have supported charges of crimes punishable by death, so the court appointed 'learned' counsel to represent those defendants under 18 U.S.C. § 3005 and treated the case essentially as a capital case." ECF 1474, Order, at 5 (citing ECF Nos. 108, 109, 111, 119, 120). These attorneys—each of whom has "had extensive capital crimes experience"—have already received funding for "investigation and mitigation experts related to the death penalty," and, in fact, conducted extensive investigation into mitigation—including submitting mitigation packages to the government. *Id.* Because the purpose of the "reasonable notice" requirement is to "ensure that both parties, especially the defendant, have adequate time to prepare for a capital trial," *Williams*, 318 Fed. App'x at 573, the

fact that these experienced capital attorneys have had years to prepare for this case as a death-eligible case favors the government, as *Wilk* found.

For the second factor, the government's proposed deadline of December 15, 2023—a period of 67 days before the trial date—will still give the defense "reasonable notice" to prepare for a death defense in this case. The Ninth Circuit has held that government notice of intent to seek provided 75 days prior to trial is "reasonable" within the meaning of § 3593(a). *Williams*, 318 Fed. App'x at 572. The government's requested deadline is therefore close to the time the Ninth Circuit has already found is reasonable under the statute.[2]

For the third factor, the defense has had extensive discovery in this case for years and therefore ample time to prepare for a potential death-eligible case. This fact has been undisputed for some time.

For the fourth factor – the nature of the charges in this case – they have been known to defense for years, which is another factor that favors the government, as *Wilk* demonstrates. In *Wilk*, the indictment "span[ned] a broad period of time (nearly four years), involve[d] serious and lengthy allegations, and identifie[d] evidence (particular computer evidence) requiring expert access and review." 452 F.3d at 1225. Nonetheless, the Eleventh Circuit found that this factor favored the government where the defense still had six months to prepare for trial after the government filed its notice. *Id.*

Here, the defendants have known the nature of the case and charges for years, as they themselves concede in their motion. ECF No. 1603 at 3 ("[T]he Superseding Indictment did not add any allegations of new criminal conduct but re-charged conduct that had been previously charged as Special Sentencing Factors as separate counts."). Therefore, they have had ample time already to prepare for the complex charges in this case and, as a result, providing notice 67 days before trial will still be reasonable in light of the time they have already had to prepare for trial and given that the notice itself would not present new or different facts that would change the nature of the charges.

For the fifth factor, the defendants have notice of the aggravating factors based on the

---

[2] To the extent that the Court would be inclined to set a different deadline and not preclude the government from seeking the death penalty, a date consistent with *Williams* would be December 7, 2023 – 75 days from the trial date.

GOVT.'S OPP. TO DEFENDANTS' MOTION TO PRECLUDE
THE DEATH PENALTY

4

Superseding Indictment, which lists each of these factors. *See* ECF 1375, at 17–22; *see also Wilk*, 452 F.3d at 1225 ("As to the fifth factor, the October 21, 2004, indictment listed the same statutory aggravating factors as did the Death Notice. Further, as noted by the district court, the aggravating factors merely tracked the language of the statute. While the February 18 Death Notice added some non-statutory aggravating factors, those too were straightforward.").

Finally, the nature of the defense, at this point, is unknown to the prosecution and therefore this factor cannot fairly be analyzed. *See Wilk*, 452 F.3d at 1225 ("Given the ex parte nature of the motions, we are also reluctant to describe the nature of the potential defenses revealed therein. We do conclude, however, that six months is clearly more than sufficient time no matter what approach the defense decides to take.").

While the defendants cite *Wilk*, they do not engage with any of the *Wilk* factors—all of which favor the government. Instead, they cite the amount of time that the government has deliberated in reaching its decision in this case. *See* ECF 1603, at 5–7. But, § 3593(a) is "designed to protect the defendant from having to stand trial for his life without reasonable notice and time to prepare adequately" and the "amount of time the government took to make a decision" is not relevant to this analysis. *Wilk*, 452 F.3d at 1223 n.26. "The proper approach is to focus on whether the Death Notice reasonably gave the defendant adequate time before trial to prepare a defense, not whether the government reasonably should have made a decision earlier than it did." *Id.*[3]

On balance, the *Wilk* factors favor the government and demonstrate that a deadline of December 15 will still give defense reasonable notice of the death penalty for trial. Accordingly, the government respectfully requests that the Court deny the defendants' motion to preclude seeking the death penalty.

---

[3] Even assuming that the government did not follow the letter or spirit of its own death-penalty protocol, those internal Executive Branch procedures are not justiciable, and any attempt by the Judiciary to police them would impermissibly intrude on the Executive's exercise of its prosecutorial discretion. The guidelines and policies set forth in the Justice Manual do not create enforceable rights for criminal defendants. *United States v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000) ("[I]t is clear that the USAM does not create any substantive or procedural rights."); *United States v. Lee*, 274 F.3d 485, 493 (8th Cir. 2001).

B. **<u>Precluding the government's ability to pursue capital punishment is extreme and disproportionate to the government's request for more time in light of the substantial period of time remaining before the February 2024 trial date.</u>**

The remedy sought by the defendants – preclusion – is far too harsh for the event triggering their motion: a government motion to extend the "reasonable time" notice required by 18 U.S.C. § 3593(a). Thus, even if the Court finds that the defendants' right to "reasonable time" notice under § 3593(a) required compliance with an August 2023 deadline – approximately 6 months before trial – the defendants' proposed remedy of permanently barring the government from seeking the death penalty is grossly disproportionate to other available remedies, including a continuance of the trial date. *See McGriff*, 427 F. Supp. 2d at 272 (finding government's notice of intent to seek the death penalty filed 12 days before the trial date was not "an objectively reasonable amount of time to prepare for a capital case" but concluding a trial continuance was "the proper remedy for the untimely notice"); *Williams*, 318 Fed. App'x at 573 ("Continuing the trial after the Death Notice is filed does not undermine but rather preserves the defendant's statutory right not to stand trial for his life without reasonable notice of the government's intent to seek the death penalty.") (quoting *Wilk*, 452 F.3d at 1223).

As the Supreme Court said in *United States v. Morrison*, 449 U.S. 361, 364 (1981), "[c]ases involving Sixth Amendment deprivations [of counsel] are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on [society's] competing interests [in the administration of criminal justice]." Thus, even in instances where a defendant "was totally denied the assistance of counsel at his criminal trial," the Court stated that "[n]one of the[] deprivations . . . resulted in the dismissal of the indictment[;] [rather], in each case . . . the government was free to proceed with a new trial." *Morrison*, 449 U.S. at 364. This same principle is dispositive on the remedy sought in the present motion. Precluding the government from pursuing the death penalty would not be tailored to the perceived "reasonable time" violation, which does not give rise to a constitutional violation, nor would it take account of society's compelling interest in ensuring that persons charged with murder are prosecuted and punished to the fullest extent allowed by law. This is particularly true where the defendants' showing of prejudice is minimal, if any. Precluding the government from pursuing the death penalty because it requests a deadline that is 2 months before trial instead of 6 months before trial is not proportional to the statute's "reasonable time"

1 | requirement.  In short, the defendants' requested remedy is too extreme and should be rejected.

2 | Where a district court precludes the government's ability to pursue the death penalty, courts of appeal have jurisdiction under 18 U.S.C. § 3731 because dismissal of a death penalty notice is equivalent to the partial dismissal of an indictment.  *United States v. Cheely*, 36 F.3d 1439, 1441 (9th Cir. 1994); *see United States v. Quinones*, 313 F.3d 49, 57 (2d Cir. 2002); *United States v. Lopez-Matias*, 522 F.3d 150, 153 (1st Cir. 2008); *United States v. Acosta-Martinez*, 252 F.3d 13, 17 (1st Cir. 2001) ("By striking a statutorily authorized penalty, the district court effectively dismissed a significant portion of the counts against the defendants."); *United States v. Bass*, 266 F.3d 532, 535–536 (6th Cir. 2001), *rev'd on other grounds*, 536 U.S. 862 (2002).  In the alternative, the court of appeals can treat the appeal as a mandamus petition.  *Cheely*, 36 F.3d at 1441 n.1; *Acosta-Martinez*, 252 F.3d at 17.

In *Acosta-Martinez*, the First Circuit explained the substantial impact of a district court order precluding the government from pursuing the death penalty.

> By striking a statutorily authorized penalty, the district court effectively dismissed a significant portion of the counts against the defendants—the type of order appealable under *Levasseur*. The order appealed from has significant consequences for the trial of the case, consequences every bit as important as the consequences from striking a count in an indictment. The order affects not merely the sentence. By prohibiting a capital prosecution and thus rendering inapplicable the FDPA, the district court's order materially altered the conduct of trial. As *Cheely* noted, a defendant in a capital case is entitled to extra peremptory challenges, Fed. R. Crim. P. 24(b), and to have two attorneys represent him, 18 U.S.C. § 3005 (1988). *See* 36 F.3d at 1441. The government, in turn, may seek a "death qualified" jury. *Id.* Sentencing in a capital case is presumptively decided by the jury, 18 U.S.C. § 3593(b), in a bifurcated proceeding. The district court's order here upset those procedures. We think the effect of the order here is sufficiently like the effects from the categories of orders as to which § 3731 permits an appeal that this appeal falls well within the scope of Congress' intent in § 3731. *Cf. United States v. Flemmi*, 245 F.3d 24, 25 (1st Cir. 2001).

*Acosta-Martinez*, 252 F.3d at 17.

Here, the defendants do not provide a cognizable basis to find that they have been or will be prejudiced by notice being provided at a date later than August 23, 2023.  The main purpose of the reasonable time requirement of § 3593(a) is to provide notice to defendants and the court that the defendants have been charged with death-eligible crimes and, therefore, may be entitled to certain rights, such as the right to learned counsel, pursuant to federal law.  But that concern is not present here.  As

discussed, the now-capital eligible defendants have been represented by learned counsel from the case's inception and have been on notice that the death penalty was a possibility because the Court "treated the case essentially as a capital case." ECF 1474, Order, at 5. Moreover, since the return of the Superseding Indictment in December 2022, learned counsel have been on notice that their clients are charged with death-eligible crimes. ECF 1474, Order, at 7. It is difficult to discern any prejudice to the defendants at this point because nothing in the statutory language requiring "reasonable time" requires more than what the Court has already provided in order to protect the rights of the capital-eligible defendants.[4] As a consequence, defendants' claims of prejudice require close scrutiny because the statute and caselaw do not delineate a fixed timeline for "reasonable time" under § 3593(a) or what constitutes prejudice in this context.

### C. The cases cited in support of precluding the death penalty are not binding or persuasive.

Defendants cite to two cases from the District of Puerto Rico in support of the proposition that a district court has authority to preclude the government from seeking the death penalty under "their authority in maintaining control in its own docket and calendar." ECF 1603, at 10. Both of the cited Puerto Rico cases originate from a specific district court that consistently ruled against the government on issues involving the death penalty by relying on an unusual Local Rule unique to the District of Puerto Rico and, thus, are best viewed in light of what happened later when the Court of Appeals examined what the district court was doing. *United States v. Rosado-Rosario*, 1998 WL 28273 at *2 (D.P.R. 1998) (barring government from seeking death penalty because of tardily filed death penalty notice and violations of court's discovery order); *United States v. Colon-Miranda*, 985 F. Supp. 31 (D.P.R. 1997) (striking death penalty as a possible punishment because of unreasonable delay in certifying the case as potentially capital under a local rule); *United States v. Colon-Miranda*, 985 F. Supp 36 (D.P.R. 1997) (refusing to certify case as potentially capital under a local rule or to sever

---

[4] The defendants' prejudice analysis is complicated by the fact that learned counsel for capital-eligible defendant Billy Sylvester has now moved to withdraw. ECF 1614. If the Court grants counsel's requested relief, new learned counsel for Sylvester would need to be appointed and, presumably, seek additional time to prepare regardless of whether the government provided notice of its intent to seek on August 23, 2023, or some other date.

1  prospective capital defendants for a later trial).

2  In a later case, the same district court again issued an order precluding the government from
3  pursuing the death penalty relying again on Local Rule 144.2(b) and inadequate notice to the defense.
4  *United States v. Lopez-Matias*, 522 F.3d 150, 154 (1st Cir. 2008). In other words, years later, the district
5  court relied on legal grounds that matched the orders issued in *Rosada-Rosario* and *Colon-Miranda* but
6  this time the order was reviewed by the Court of Appeals. *Id.* at 153. On appeal, the First Circuit
7  vacated the district court's order, reinstated the government's ability to seek the death penalty, and
8  found that the lower court abused its discretion in precluding the government from seeking the death
9  penalty. *Id.* at 156, 159. The court's analysis in *Lopez-Matias* is instructive in evaluating the
10 defendants' present motion seeking to preclude the government from seeking the death penalty.

11 In *Lopez-Matias*, the "district court struck the Notice primarily based on the violation of Local
12 Rule 144.2(b), a matter it raised *sua sponte*." *Id.* at 153. The Local Rule required the government to file
13 a "Certificate of Death Penalty Case" at the time of the filing of a Criminal Complaint or Indictment in
14 which the maximum possible penalty is death. *Id.* When the government did not file the required
15 Certificate, the district court struck the government's notice of intent to seek the death penalty "citing
16 two grounds." *Id.* at 152. "[F]irst, because the defendants had no meaningful chance to present
17 mitigating evidence before the government made its decision; and second, because the government
18 failed to follow the Local Rule and file the Certificate." *Id.*

19 In unwinding the district court's order, the Court of Appeals balanced the government's non-
20 compliance with the Local Rule against Rule 52(a) of Federal Rules of Criminal Procedure which
21 requires that any "error, defect, irregularity or variance that does not affect substantial rights must be
22 disregarded." *Id.* The First Circuit reasoned that because "a district court could not dismiss an
23 indictment for errors that involved no prejudice," the same is true of precluding the government's ability
24 to pursue the death penalty. *Id.* On the issue of prejudice to the defendant, the First Circuit held that the
25 district court's order "suggested no actual, let alone structural, prejudice caused by lack of the
26 Certificate" required by the Local Rule. *Id.* at 154. In examining the district court's order, the Court of
27 Appeals held, "[T]he district court did not make a finding of prejudice, and that legal error is a *per se*
28 abuse of discretion." *Id.*

The court next examined whether the "Death Penalty Protocol," memorialized in the Justice Manual, could justify the sanction imposed by the district court. The First Circuit held that it did not.

> We conclude that a violation of the Manual, by itself, would not give rise to the sanction imposed here. We are reluctant to interfere with internal prosecutorial measures by elevating internal guidelines to the level of a guarantee to defendants. Our reluctance stems from a respect for the separation of powers, and also from practical concerns. If the government were to be punished for violations of its own internal guidelines, it would be more likely to write less exacting guidelines, or none at all.

*Id.* at 156.

In the context of the government's violation in *Lopez-Matias*, the court found that "in order to show prejudice, the defendants would have to identify some substantive mitigating evidence that might have altered the government's decision to seek the death penalty." *Id.* at 158. Thus, in defining the type of prejudice required to justify such an extreme remedy, the First Circuit focused on any prejudice to learned counsel within the death penalty protocol that could not be remedied by providing more time to submit mitigating evidence. *Id.* at 158–59 ("But there must be *some* prejudice: the threat of an execution does not transform criminal procedure into a tightrope, on which any misstep forfeits the government's right to seek the statutorily authorized punishment of its choosing.") (emphasis in original).

In their joint motion, defendants contend that, although they "have long been at work preparing for the possibility of a capital case, . . . the work that remains to effectively represent Defendants in a capital case remains extensive." ECF 1603, at 8. On its face, this contention is too vague to demonstrate any concrete prejudice caused by moving the government deadline back from 6 months to 2 months before trial. For example, defendants present nothing demonstrating that a later deadline for the government's notice would eliminate "some substantive mitigating evidence that might have altered the government's decision to seek the death penalty." *Lopez-Matias*, 522 F.3d3d at 158.

For his part, Daniel writes separately to argue that the prejudice to him from a later deadline for the government's notice is that he has "repeatedly asserted his right to a speedy trial since January 2023, has objected to moving the trial from March 2023 to February 2024, and has moved to sever after codefendants' request to continue was granted." ECF 1604, at 3. The problem with Daniel's argument is that, in the Sixth Amendment context, his own "successive requests for continuances considerably

diminish the weight of [Daniel's] assertions of his speedy trial right." *United States v. Lam*, 251 F.3d 852, 859 (9th Cir. 2001). As detailed more fully in the government's pleading, ECF 1613, almost the entirety of the delay in this case—from June 26, 2019 to March 22, 2023—was the result of continuances agreed to by Daniel's counsel because they stipulated to exclude speedy trial calculation time in order to give counsel sufficient time to review the discovery in this complex case, and to prepare and file various pretrial motions. Daniel himself has filed multiple motions that automatically exclude time from the Speedy Trial Act, *see* 18 U.S.C. § 3161(h)(1)(D), and, right now, he has three pending motions. ECF 1604 (joining motion filed at ECF 1603); ECF 1565 (motion to dismiss); ECF 1579 (motion about legal mail). Given that Daniel has repeatedly and continuously "sought the aid of the judicial process," his attempt to demonstrate prejudice in the context of the "reasonable time" notice requirement under § 3593(a) is unavailing because he is not "now able to criticize the very process which [he] so frequently called upon." *United States v. Loud Hawk*, 474 U.S. 302, 314–15 (1986) (quoting *United States v. Auerbach*, 420 F.2d 921, 924 (5th Cir. 1969)).

Defendants also argue that "[t]here are numerous counts, spanning a broad period of time, which will rely on the testimony of informants and co-conspirators, much of which has yet to be provided and which, if pursued as a capital case, may require the assistance and testimony of various experts." ECF 1603, at 8. This argument makes no sense and does not support precluding the government from seeking the death penalty. As a threshold matter, whether a case is capital or not, the number of counts and period of time in the RICO conspiracy is the same. In addition, the testimony of informants and co-conspirators never requires the "assistance and testimony of various experts" and defendants present no authority for this proposition; indeed, most experienced trial lawyers would not make such an admission. Moreover, whether this case is capital or not, the same preparation for cross-examination of informants and co-conspirators would be necessary before February 2024. Thus, there is no merit or substance to this argument and it should be rejected.

Defendants also submit a memorandum and order opinion from an Idaho district court that precludes the government from seeking the death penalty. ECF 1603, Ex. A. The opinion is not binding, nor is it persuasive. A review of the docket in the case reveals that the briefing leading up to the district court's order focused on a new trial date and did not address the authority of the court to

GOVT.'S OPP. TO DEFENDANTS' MOTION TO PRECLUDE
THE DEATH PENALTY

11

preclude the government from seeking the death penalty.  *See United States v. Mendoza-Rico*, Case No. 1:04-cr-0257-EJL, ECF 400 (defendant's motion to continue trial), 403 (joinder to motion to continue trial), 406 (notice of non-objection to motion to continue trial), 407 (government response to motion to continue trial stating it desired a joint trial of all defendants but it was ready to try the case on November 1, 2005).  None of the briefing by the parties addressed the issue of whether a district court possesses authority to preclude the government from seeking the death penalty.  Because the issue was not briefed, the district court's order is bereft of authority or analysis for the drastic relief it ordered.

In particular, the district court in *Mendoza-Rico* did not provide any legally-cognizable basis for its exercise of power, especially any basis that is consistent with the authorities outlined above.  For example, the *Mendoza-Rico* court did not identify any concrete prejudice to the defendants (who were moving for a continuance of the trial date on their own accord).  Nor did the *Mendoza-Rico* court balance its desire to hold the trial on November 1, 2005, against the disproportionate sanction being imposed against the government.  Nor does *Mendoza-Rico* court explain how that sanction was tailored to the perceived "reasonable time" violation.  Indeed, the *Mendoza-Rico* court did not articulate what would be "reasonable time" notice required by 18 U.S.C. § 3593(a), nor did it explain on what basis it was implicitly finding that 41 days was inadequate notice under the applicable statute and whether it was consistent with existing precedent.  *See* ECF 1603, Ex. A at 5 (issuing order on September 21, 2005, for trial set on November 1, 2005).  Finally, the *Mendoza-Rico* court did not acknowledge Rule 52(a) of the Federal Rules of Criminal Procedure or take into account society's compelling interest in ensuring that persons charged with murder are prosecuted and punished to the fullest extent allowed by law.

Instead, the *Mendoza-Rico* court devoted the bulk of its justifications to two things.  First, it noted its appreciation for the "demands on the Department of Justice" but found that a notice of intent to seek "would be wholly unreasonable at this point in light of the November 1, 2005 trial date."  ECF 1603, Ex. A at 4.  The court did not cite a case or statute to support this finding.  Second, the *Mendoza-Rico* court unsuccessfully attempted to cite to the Speedy Trial Act and find "the Defendants all have a right to have this matter heard in an expeditious manner."  ECF 1603, Ex. A at 4 (citing "28 U.S.C. §

3161 *et seq.*").[5] Next, the court found that it had: (1) provided the parties with "ample notice, time, and resources to prepare for trial," (2) "gone to great pains to schedule this case in its calendar," and (3) "attempted to secure a third district court judge in this district without success." ECF 1603, Ex. A at 4. No precedent supports these conclusory findings as a basis to preclude the government from seeking the death penalty. Finally, the court concluded that, "Calendaring and scheduling large trials, such as this one, cause an enormous strain on this District and this Court such that last minute activity which forces a change in the trial date are a huge waste of resources and unacceptable." ECF 1603, Ex. A, at 4. While these conclusions may be accurate, they do not supply authority to serve as the basis to preclude the government from seeking the death penalty under the law. Given the complete absence of legal precedent discussed in the *Mendoza-Rico* opinion and its failure to engage with the applicable standards for imposing such a drastic sanction against the government, this Court should not place much weight, if any, on *Mendoza-Rico*.

Whatever the merits of the order attached as Exhibit A to the defendants' motion, the opinion cannot be reconciled with the Ninth Circuit's decision in *Williams* finding that government notice of intent to seek provided 75 days prior to trial is "reasonable" within the meaning of § 3593(a). *Williams*, 318 Fed. App'x at 572. Nor is *Mendoza-Rico* consistent with the analysis set forth in *Robinson*, *McGriff*, *Lopez-Matias*, and *Acosta-Martinez*, each discussed above. For these reasons, it is not persuasive authority and does not support the defendants' requested relief. As a result, defendants' motion should be denied.

## IV.   CONCLUSION

The United States respectfully requests that the Court deny the defendants' motion to preclude the death penalty.

---

[5] The *Mendoza-Rico* court provided an incorrect citation to the Speedy Trial Act. The correct citation is 18 U.S.C. § 3161, not to Title 28 of the United States Code.

|  |  |
|---|---|
| | PHILLIP A. TALBERT<br>United States Attorney |
| Dated:  September 13, 2023 | By:  /s/ *Jason Hitt*<br>JASON HITT<br>Assistant United States Attorney |