PHILLIP A. TALBERT
United States Attorney
JASON HITT
ROSS PEARSON
DAVID SPENCER
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone:  (916) 554-2700
Facsimile:   (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.  2:19-CR-00107-KJM |
| Plaintiff, | OPPOSITION OF THE UNITED STATES TO DEFENDANT DANIEL'S MOTION FOR ORDER REQUIRING CDCR OR USMS TO PERFORM SI JOINT SURGERY AND REMOVE A LIPOMA |
| v. | |
| BRANT DANIEL, | [ECF 1649] |
| Defendant. | |

## I.    **INTRODUCTION**

The United States, by and through Assistant United States Attorneys Jason Hitt, Ross Pearson, and David Spencer, respectfully submits its opposition to the motion seeking an order requiring the California Department of Corrections and Rehabilitations ("CDCR") or the United States Marshals Service ("USMS") to perform two medical procedures on defendant Brant Daniel ("Daniel").  ECF 1649.

This Court previously denied a nearly-identical request from Daniel, and, like that motion, his latest motion suffers from the same fatal flaw: it must be denied because his challenge to conditions of confinement and request for injunctive relief cannot be raised in a federal criminal case.  ECF 1385, at 1 ("Because the court does not have jurisdiction to grant the relief sought, Daniel's motion should be denied.").  Moreover, evaluation of Daniel's medical conditions reveals that he cannot carry his burden to demonstrate that his current condition impinges his ability to consult with counsel or even that the

desired medical procedure will alleviate his medical condition.  Instead, Daniel's history of litigation suggests granting relief would simply lead to later motions seeking additional injunctive relief to be ordered in a criminal case.

## II.   ANALYSIS

### A.   The Court previously denied Daniel's nearly-identical motion demanding injunctive relief in a criminal case.

Before turning to Daniel's latest motion, it is worth examining what the Court held in response to Daniel's previous motion seeking injunctive relief requiring CDCR and/or the USMS to perform a surgery to remove his lipoma.

> Daniel's evidence may indicate that his lipoma is a serious condition warranting medical intervention. The record in this case, limited though it is, may also raise questions about the basis of the decision to decline authorization for surgery. However, the Marshals Service, like other persons involved in Daniel's medical care, is not a party to this action. "Entertaining defendant's filing in this action fails to properly apprise those individuals who have the requisite authority and ability to address and potentially remedy defendant's grievances." [*United States v.*] *Luong*, 2009 WL 2852111, at *2 [(E.D. Cal. Sept. 2, 2009)].
>
> More fundamentally, Daniel's proffered evidence does not demonstrate that his medical condition prevents or significantly interferes with his ability to assist with his defense. *See* [*United States v.* ] *Wade*, 2009 WL 3837151, at *1 [(D. Alaska Nov. 13, 2009)]; [*United States v.*] *Folse*, 2016 WL 3996386, at *19 [(D.N.M. June 15, 2016)]. Although he reports experiencing pain and blurred vision, he does not claim that his symptoms preclude reading. ECF No. 1251 at 1 ("When I read I must push my right eye brow upwards enduring the pain and soreness just to read"). Significantly, Daniel is represented by experienced counsel, who can assist him in reviewing documents. *See Luong*, 2009 WL 2852111, at *1. Thus, Daniel has not satisfied his burden of demonstrating that his medical condition impeded him from consulting with counsel or exercising another trial right. *See* [*United States v.*] *Yandell*, 2021 WL 4777113, at *3 [(E.D. Cal. Oct. 13, 2021)].

ECF 1385, at 3.

In a curious and citation-free passage of his brief, Daniel asserts, "The court should reject any argument by the government that the lipoma issue is being improperly relitigated and should be barred in light of the court's prior decision, which was denied without prejudice."  ECF 1649, at 9.  Because there is no legal authority for this assertion, it is difficult to discern on what basis Daniel is making this argument because it is counter to reason, common sense, or applicable Ninth Circuit precedent.

If the Court has previously decided a dispositive legal issue in a case, bringing a nearly-identical motion does not preclude the opposing party from pointing out that a court has already decided a legal issue. Such a bizarre rule would undermine any notion of judicial efficiency and would result in endless re-litigation of previously-decided issues.

Indeed, contrary to Daniel's unsupported assertion, Magistrate Judge Claire recently explained in this case that where an issue has been "decided either explicitly decided or by necessary implication in the prior disposition," "[t]he law of the case doctrine generally precludes a court from reconsidering an issue that has been previously decided by the same court or a higher court in the same case." Order, ECF 1519, at 6 (first quote citing to *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir.), *cert. denied* 5081 U.S. 951 (1993)) (second quote citing to *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1977)). In this case, because the Court has explicitly decided that it "does not have jurisdiction to grant the relief sought" in Daniel's present motion and that determination was affirmed by a higher court, ECF 1472, "[t]he law of the case doctrine generally precludes a court from reconsidering an issue that has been previously decided by the same court or a higher court in the same case." Order, ECF 1519, at 6 (citing *Alexander*, 106 F.3d at 876). As a result, Daniel's demand for an order requiring either CDCR or the USMS to perform any type of surgery on Daniel should be denied based upon the law of the case doctrine. If the Court is inclined to address the merits of Daniel's motion, the legal analysis of why Daniel fails to establish any basis for relief should follow the same reasoning the Court previously articulated for the reasons explained below.

### B.    Claims regarding medical care and other conditions of confinement cannot be raised in a federal criminal case.

"Generally, federal inmates and pretrial detainees may only challenge the conditions of their confinement pursuant to an action brought under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389 (1971) (a "Bivens action")." *United States v. Yandell*, 2020 WL 3858599, at *4 (E.D. Cal. July 8, 2020). "A *Bivens* action is filed as a separate civil action under 42 U.S.C. § 1983; such claims cannot be entertained in the inmate's criminal case." *Id.* (citing *Luong*, 2009 WL 2852111, at *1-2; *United States v. Hollis*, 2009 WL 902062, at *1 (E.D. Cal. April 1, 2009)).

The prohibition against challenging conditions of confinement in a criminal case serves important policy interests.  First, it ensures that the defendant has fully exhausted his administrative remedies before bringing his claims to court, as is required under the Prison Litigation Reform Act of 1995.  *See Luong*, 2009 WL 2852111, at *2.  This administrative exhaustion requirement allows jail officials "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court," potentially "reduc[ing] the number of inmate suits" and "improv[ing] the quality of suits that are filed by producing a useful administrative record."  *Id.* (quoting *Ontiveros v. Los Angeles County*, 611 F. Supp. 2d 1090, 1094 (C.D. Cal. 2009), in turn quoting *Jones v. Bock*, 549 U.S. 199, 204 (2007)).

Second, requiring a separate civil action ensures that the proper parties are before the Court.  As the *Luong* court explained:

> [T]he only parties to this criminal proceeding are the United States and the defendants.  Claims of inadequate medical treatment or other complaints regarding conditions of confinement potentially involve the Marshal, Sheriff, or other person or persons responsible for the custody and care of the defendant.  Entertaining defendant's filings in this [criminal] action fails to properly apprise those individuals who have the requisite authority and ability to address and potentially remedy defendant's grievances.

*Luong*, 2009 WL 2852111, at *2.  To the extent that Daniel attempts to raise a Sixth Amendment theory based upon a condition that interferes with his pain regulation or activities of daily living such as reading, he bears a significant burden of "showing the real possibility of interference [with his right to access counsel], not just inconvenience."  *Folse*, 2016 WL 3996386, at *23.  Daniel does not meet that burden.  *Luong*, 2009 WL 2852111, at *1 (denying defendants' requests for an orthopedic shoe and for visits to the Sacramento County Jail law library, "without prejudice to their filing as a separate civil action"); *accord United States v. Loera*, 2017 WL 3098257, at *27 (D.N.M. June 22, 2017) (collecting cases).

The only possible exception to this general rule is where a "defendant's conditions of confinement affect his ability to consult with counsel or exercise other trial rights."  *Luong*, 2009 WL 2852111, at *1.  Here, as in *Luong*, there is no plausible basis that Daniel's demand for joint surgery or lipoma removal affects "any of his substantive or procedural rights in this criminal proceeding."  *Id.*

1    Moreover, the only exception to the general lack of jurisdiction in a criminal case over conditions of

2    pretrial confinement is where those conditions "affect [a defendant's] ability to consult with counsel or

3    exercise other trial rights."  *Id.* at *1.  Federal courts have consistently so held.  *See Loera*, 2017 WL

4    3098257, at *27 (surveying case law).

5         Daniel asserts that the condition causes him to "struggle to understand serious documents" in the

6    case to assist in his defense.  ECF 1649-1, at 2.  But, he does not specify what documents or what part of

7    his defense he needs assistance understanding.  Nor does Daniel articulate how the medical condition

8    presents any hinderance to his experienced counsel's ability to defend the case.  Indeed, Daniel pled

9    guilty to the underlying murder in state court which forms the basis of the most-serious charge against

10   him in this case.  And, much of the most powerful incriminating evidence against Daniel comes from

11   wiretapped calls with Daniel speaking in plain terms about plans to murder various people and Aryan

12   Brotherhood criminal affairs.  These intercepted calls do not require reading anything and they are not

13   difficult to comprehend.  More to the point, as this Court previously held, the Court's authority does not

14   extend to ordering third parties to perform surgery and Daniel presents no authority demonstrating as

15   much.

16        As with Daniel's previous motion, his present motion underscores the critical importance of

17   exhausting administrative remedies and, should litigation eventually prove necessary, bringing the

18   proper officials before the Court through a civil lawsuit.  For example, Daniel's Exhibit B demonstrates

19   that determinations about his complicated medical history are best left to professionals and not to out-of-

20   place litigation conducted in a criminal case.  In particular, Daniel has had two prior surgeries to fuse

21   discs in his back.  ECF 1649-2, at 8.  But, as the medical records note, conducting any additional

22   invasive surgeries run the risk of increasing cardiac distress due to Daniel having a history of at least one

23   episode of atrial fibrillation.  ECF 1649-2, at 8 (referring to "complexity" of Daniel's medical case

24   involving both heart conditions and back pain).  Daniel, his lawyers, the government, and this Court are

25   not in a position to order medical procedures to be conducted from the vantage point of a pending

26   criminal case.  Moreover, a careful examination of Daniel's motion reveals that the pain management he

27   undergoes eliminates the back pain but "substantially interferes with his mental status and ability to

28   assist counsel and prepare his defense."  ECF 1649, at 6.  This assertion, however, is not backed up by

any objective medical evidence and, more importantly, Daniel's own history reveals that even if the Court ordered an "SI joint infusion" to be conducted, he is likely to remain on opioid pain medications because two previous spinal fusions have not eliminated his back pain.  Thus, it is speculative to seek relief on the claim that this procedure will somehow be different than previous medical interventions.  In fact, Daniel once moved for an order requiring epidural injections that he now says are not effective. *See* ECF 300.  The defendant's own litigation underscores the problem of seeking medical treatment by way of emergency motions in a criminal case – the medical propriety or necessity of any medical procedure is best left to medical professionals – not pre-trial motion practice by defense lawyers and prosecutors in a criminal case.  Further, the CDCR must determine how best to accommodate inmates' medical needs without compromising vital security interests – matters that are "peculiarly within the province and professional expertise of corrections officials."  *Bell v. Wolfish*, 441 U.S. 520, 548 (1979) (quoting *Pell v. Procunier*, 417 U.S. 817, 824 (1974)) (explaining that courts should generally accord "wide-ranging deference" to the "expert judgment" of corrections officials)).

In this case, Daniel and his co-defendants present extraordinary security concerns while in pre-trial custody.  *See* United States' Motion to Require Certain High-Risk Defendants to Appear by Videoconference at All "Non-Critical Stage Proceedings," ECF 144, at 2–16 (describing the extraordinary security concerns arising from defendants' membership in the Aryan Brotherhood, criminal histories, and records of serious prison disciplinary violations).  The prison officials are necessary parties to address these and other concerns that they may have based on their unique expertise and according to established procedures available to inmates such as Daniel.

It is also worth noting that co-defendant Jason Corbett filed a motion similar to that now pursued by Daniel.  *See* ECF 169 (motion demanding that Sacramento County Jail officials give Corbett his special shoes).  In connection with that motion, Magistrate Judge Claire squarely rejected Corbett's theory of receiving civil injunctive relief within a criminal case.  Specifically, following *Luong* and related authorities discussed here, on September 9, 2019, Magistrate Judge Claire held that the Court lacked jurisdiction to order the Jail to provide Corbett with his special shoes:

> [T]he only authority I have over anything that could be construed as a
> condition, including medical, if you're not seeking a release for some kind
> of medical care, right, that's one thing. That has to do with the fact of his

custody. Otherwise, as you know, I can tell from your reply it's limited to what affects access to counsel.

ECF 233, at 2:10–15.  The Court further explained its denial of Corbett's motion as follows:

> Be that as it may, the government is correct however, and even the cases that you cite me state the same law which is that when the complaint is medical that counts as a conditions of confinement type claim and the court who is responsible for the pretrial detention doesn't have jurisdiction to entertain that claim. It has to be brought under whatever independent civil remedy is available starting with the administrative procedures in the institution.

ECF 233, at 5:10–17.  Corbett did not pursue a review of Magistrate Judge Claire's ruling before the district court.  As a result, Magistrate Judge Claire's September 9 ruling provides another persuasive precedent to reject Daniel's effort to obtain civil injunctive relief within a criminal case.  Consistent with *Luong*, Magistrate Judge Claire's ruling on Corbett's motion, and authorities discussed above, this Court should deny Daniel's motion.

### C.    Daniel's authority is inapposite and does not support his requested relief.

In support of this motion, Daniel cites (again) to *Estelle v. Gamble*, 429 U.S. 97 (1976), but that case does not support granting his requested relief.  ECF 1649, at 4.[1]  In *Estelle*, a prisoner filed a complaint for damages under 42 U.S.C. § 1983 after "a bale of cotton fell on him while he was unloading a truck."  *Id.* at 99.  The central theory of the complaint in *Estelle* was that poor medical care at his prison "subjected him to cruel and unusual punishment in violation of the Eighth Amendment." *Id.* at 101.

The holding in *Estelle* demonstrates why Daniel's motion is not the proper vehicle for his current motion for an order commanding CDCR to perform surgery on him.  As a threshold matter, the Court concluded that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."  *Id.* at 105.  However, the Court cautioned, "This conclusion does not mean [] that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."  *Id.*  Ultimately, the Court remanded to the Court of Appeals whether "a cause of action

---

[1]      Daniel's brief again cites to *Estelle v. Gamble* as "420 U.S. 97."  ECF 1649, at 4.  The correct citation is "429 U.S. 97" and it is the same incorrect citation provided in Daniel's last motion demanding medical relief.  ECF 1170, at 4.

has been stated" against certain prison officials. *Id.* at 108. Thus, *Estelle* does not stand for the proposition that this Court may issue civil injunctive relief for medical care or related complaints in a federal criminal matter or that Daniel is entitled to the relief he seeks. *See Luong*, 2009 WL 2852111, at *2. Moreover, to the extent Daniel generally cites to the Eighth Amendment, it is inapplicable because the "cruel and unusual punishment" clause applies to "the imposition of cruel and unusual punishment on convicted prisoners" – it has no application to pretrial detainees. *Demery v. Arpaio*, 378 F.3d 1020, 1029 (9th Cir. 2004) (citing *Bell*, 441 U.S. at 535 n.16).

The Supreme Court made this clear in *Bell*.

> The Court of Appeals properly relied on the Due Process Clause rather than the Eighth Amendment in considering the claims of pretrial detainees. Due process requires that a pretrial detainee not be punished. A sentenced inmate, on the other hand, may be punished, although that punishment may not be "cruel and unusual" under the Eighth Amendment.

*Bell*, 441 U.S. at 537. The reason for this distinction is that the "State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." *Id.* Accordingly, Daniel fails to demonstrate he is entitled to the injunctive relief he seeks and his motion should therefore be denied.

Finally, Daniel's citation to cases relying on the Bail Reform Act do not support his requested relief. Specifically, in *Falcon v. U.S. Bureau of Prisons*, 52 F.3d 137 (7th Cir. 1995), the Seventh Circuit did not hold that district courts in criminal cases have authority to order injunctive relief to compel medical procedures to be performed. Instead, in dicta, the *Falco* court noted the unremarkable proposition that 18 U.S.C. § 3142(i)(3) permits a district court to direct that a pre-trial detainee be provided "reasonable opportunity for private consultation with counsel" and to protect a detainee's "access to counsel." *Falcon*, 52 F.3d at 139. In Daniel's motion, he does not argue or make any showing that CDCR is not providing him a reasonable opportunity for consultation with his counsel. Instead, Daniel makes an entirely distinct claim: he cannot comprehend aspects of discovery based upon his medical condition. That has nothing to do with the "access to counsel" dicta from *Falcon*. Accordingly, *Falcon* is inapposite and does not provide authority for Daniel's requested relief.

Similarly, Daniel's reliance on *United States v. Martinez-Hernandez*, 2015 WL 6133050 (D.P.R. Oct. 15, 2015), is misplaced. As in *Falcon*, the focus in *Martinez-Hernandez* was on *access to counsel*

1  and not a court's *authority to order injunctive relief* in a criminal case.  In particular, the district court in

2  *Martinez-Hernandez* entered limited orders under § 3142(i) to provide "access to private consultations

3  with their defense team" while "not attempting to interfere with the prison administrators' ability to

4  maintain institutional security and preserve internal order and discipline." *Id.* at *11.  Thus, the issue

5  addressed in *Martinez-Hernandez* – access to counsel – has nothing to do with the issue raised by

6  Daniel's motion.  Interestingly, the *Martinez-Hernandez* decision supports the government's view that

7  this Court is without authority to enter the orders sought by Daniel.

> Each of the moving Defendants is confined outside the District of Puerto
> Rico, and each of their motions contains concerns regarding the conditions
> of confinement at their present detention facilities. The proper course of
> action to challenge these conditions of confinement would be to file a civil
> law suit in the judicial district where the prison is located.

11  *Id.* at *7.  Thus, *Martinez-Hernandez* does not support Daniel's request for relief and his motion should

12  be denied because the court lacks jurisdiction to order it.

### III.  <u>CONCLUSION</u>

14  The United States respectfully requests that the Court deny defendant Brant Daniel's request for

15  an Order requiring CDCR or the USMS to provide him with specific medical procedures.

Dated:  October 19, 2023

PHILLIP A. TALBERT
United States Attorney

By:  */s/ Jason Hitt*
JASON HITT
Assistant United States Attorney

OPP. TO DEF.  DANIEL'S MOT. FOR ORDER REQUIRING CDCR OR
USMS TO PERFORM SI JOINT SURGERY AND REMOVE LIPOMA