1  PHILLIP A. TALBERT
United States Attorney
2  JASON HITT
ROSS PEARSON
3  DAVID SPENCER
Assistant United States Attorneys
4  501 I Street, Suite 10-100
Sacramento, CA 95814
5  Telephone: (916) 554-2700
Facsimile: (916) 554-2900
6
Attorneys for Plaintiff
7  United States of America

8

IN THE UNITED STATES DISTRICT COURT
9
EASTERN DISTRICT OF CALIFORNIA
10

11  UNITED STATES OF AMERICA,                CASE NO.  2:19-CR-00107-KJM

12                          Plaintiff,        UNITED STATES' OPPOSITION TO
                                             DEFENDANTS' MOTION FOR
13              v.                           DISCLOSURE OF "BASES AND
                                             REASONS" FOR SPECIAL AGENT CORY
14  RONALD DEAN YANDELL, et al.,              PERRYMAN'S OPINIONS

15                          Defendants.       [ECF 1686]

16

17

18              **I.      INTRODUCTION**

19        The United States, by and through Assistant United States Attorneys Jason Hitt, Ross Pearson,

20  and David Spencer respectfully submits its opposition to the motion for "disclosure of bases and

21  reasons" for the opinions of Aryan Brotherhood gang expert Special Agent Cory Perryman filed by trial

22  defendants Ronald Yandell, Billy Sylvester, Pat Brady, Jason Corbett, Brant Daniel, and Danny Troxell

23  ("defendants").  ECF 1686.

24        Defendants' motion provides no legal basis to order further disclosures under Rule 16 of the

25  Federal Rules of Criminal Procedure.  The government's disclosures are extensive, detailed, and specific

26  to this case.  Rule 16 requires nothing more.  The defendants' vague concerns about hearsay and not

27  knowing how to cross-examine the witness are not grounds to order disclosure of anything.  For these

28  reasons, the United States respectfully requests that the Court deny the defendants' motion.

UNITED STATES' OPPOSITION TO DEFS.'S MOTION
FOR DISCLOSURE OF "BASES AND REASONS" FOR            1
EXPERT OPINION

## II.    BACKGROUND

As part of its case-in-chief, the government will call Special Agent Cory Perryman to provide expert testimony about the Aryan Brotherhood ("AB").  *See* ECF 1686, at 17–19, 25–29.  Special Agent Perryman is an AB expert and member of CDCR's Special Service Unit-Sacramento, Gang Intelligence Operations, Office of Correctional Safety, and has worked for CDCR for over 20 years.  ECF 1686, at 18–19.  The government first provided notice of his testimony in a 2019 disclosure.  More recently, the government provided two extensive, detailed disclosures describing the specific topics and scope of Perryman's testimony, his extensive background as a gang investigator focused on white prison gangs, including the AB, and how he developed this expertise to provide such testimony based upon a 22-year career focused on the investigation of AB gang activities and the enterprise's multitude of crimes committed inside and outside of prison, including by interviewing numerous AB members, associates, and victims.  *See* ECF 1686, at 15–17, 25–29.  The disclosures also included Special Agent Perryman's expert grand jury testimony in this case.  *See* Defs.' Ex. D (under seal).  The notice provided specific details about the bases for Special Agent Perryman's opinions.

> [The bases for his opinions] come from his extensive training and experience, as detailed in his recently-provided *curriculum vitae*.  In particular, Special Agent Perryman's training and experience  includes interviewing AB gang members and associates numbering in the hundreds since 2001.  He has received formal training in gang structure and organization, including specific training about the structure and organization of the AB.  His current responsibilities as a Special Agent includes oversight of the departmental gang management policy and conducting major criminal investigations with particular focus on gang activity and enterprise activities, including crimes committed by AB members and associates.  He has taught classes for law enforcement about the AB on multiple occasions, as detailed on page 2 of his curriculum vitae.  That training includes providing over 100 hours of training to law enforcement officials about gangs.  His opinions are based on his extensive personal knowledge regarding the AB and personally interviewing debriefing AB members from CDCR.  In addition, Special Agent Perryman bases his opinions about the AB based upon his observations made throughout his extensive career within the various assignments detailed in his curriculum vitae.  In sum, Special Agent Perryman's training and experience demonstrates that he has devoted years to working with AB gang members and associates, investigating AB gang members and associates, and crimes committed by or on behalf of the AB.  This experience provided him the opportunity to hear the admissions of the specific gang members and associates involved in the criminal affairs of the AB.  He has communicated and worked with hundreds of other gang members, including members and associates of the

1    AB.  Moreover, Special Agent Perryman will testify based upon his
     personal knowledge of interviewing AB members in this case: Ronald
2    Yandell and Billy Sylvester in 2018.  During those interviews, Yandell
     and Sylvester inferentially confirmed they were members of AB and
3    referenced the status of multiple AB members as of 2018, including that of
     Brant Daniel, Jake Corbett, and Danny Troxell.
4

5  ECF 1686, at 28.

6                          III.    ANALYSIS

7     A.    The government's Perryman disclosures provide ample notice under Rule 16

8          The government's Perryman's disclosures provide ample notice under Rule 16 for the defendants

9  to understand the bases and reasons for his anticipated testimony and understand that his opinions are

10 admissible under binding Ninth Circuit precedent interpreting Federal Rules of Evidence 702 and 703.

11         Disclosure for an expert witness requires "a complete statement of all opinions that the

12 government will elicit from the witness in its case-in-chief, or during its rebuttal to counter testimony

13 that the defendant has timely disclosed" and "the bases and reasons for them."  Fed. R. Crim. P.

14 16(a)(1)(G)(iii).  Rule 16 "does not require a recitation of every piece of information in the case that the

15 expert reviewed" but only "notice, in summary fashion, of the expert's opinions, bases for the opinions,

16 and reasons for the opinions."  *United States v. Spotted Horse*, 914 F.3d 596, 601 (8th Cir. 2019).  The

17 government's "disclosure obligations with respect to expert testimony are not excessively demanding."

18 *United States v. Nelson*, 533 F. Supp. 3d 779, 789 (N.D. Cal. 2021); Fed. R. Crim. P. 16 (advisory

19 committee notes to 2022 amendments) (Rule 16 "requires a complete statement of all opinions the

20 expert will provide, but does not require a verbatim recitation of the testimony the expert will give at

21 trial.").

22         In this case, the Perryman disclosures comply with Rule 16 and provide more detail, specificity,

23 and notice than the notice examined in *United States v. Belloisi*, 2023 WL 2716551 (E.D.N.Y. Mar. 30,

24 2023).  In *Belloisi*, the government's expert notice provided "more than just general topics" about the

25 expert's testimony.  *Id.* at *1.  "The disclosure lists three specific and detailed areas about which [the

26 expert] will provide testimony, such as [the expert's] analysis of cell site and location data in this case,

27 how cellular technology works, and the process of forensic cellphone extraction, including the forensic

28 extraction of a device relevant to this case."  *Id.*  The disclosure also included the expert's anticipated

UNITED STATES' OPPOSITION TO DEFS.'S MOTION
FOR DISCLOSURE OF "BASES AND REASONS" FOR            3
EXPERT OPINION

1   testimony about "the particular areas, times, and usages of cellular devices relevant to this case," and

2   included an exhibit showing "locations where the cell devices were at particular times." *Id.*  Based upon

3   these disclosures, the *Belloisi* court found the disclosures met the new requirements of Rule 16.  *Id.*

4         Like the disclosures in *Belloisi*, the Perryman disclosures provide much more than "just general

5   topics" and, instead, describe in detail seven specific areas of his testimony.  In summary, these topics

6   include: (1) the history of the AB's formation; (2) the AB's rivals, membership process, their structure,

7   symbols, and codes of conduct in the gang; (3) how AB members learn the codes of conduct for the

8   enterprise, including the unwritten rules of conduct that govern the behavior of its members; (4) how

9   associates of the AB function; (5) how the AB enforces its rules of conduct and promotes discipline

10  among the enterprise by murdering, attempting to murder, conspiring to murder, assaulting, extorting,

11  and threatening those who either violate the rules or pose a threat to the enterprise; (6) the meaning of

12  coded language and/or slang used by AB members with a detailed list and explanation of the terms that

13  he will define for the jury; and (7) facts demonstrating the trial defendants are members of the Aryan

14  Brotherhood.  ECF 1686, at 25–28.  Like the disclosures in *Belliosi*, the Perryman disclosures provide

15  ample notice under Rule 16.

16        A close reading of defendants' motion reveals that they understand the contours of what

17  Perryman will testify about.  ECF 1686, at 8.  Indeed, defendant Yandell has noticed a defense expert to

18  that he claims will "rebut" Special Agent Perryman.  ECF 1684.  But, in an effort to sow confusion

19  about straight-forward testimony (and engage in a legally-baseless fishing expedition into confidential

20  CDCR materials), the defendants pose a number of questions that are best characterized as ineffective

21  cross-examination questions to be posed at trial.  *See* ECF 1686, at 8.  Indeed, none of the "questions"

22  raised by the defendants on page 8 of their brief are supported by a citation to authority demonstrating

23  the questions constitute proper grounds for ordering disclosure of anything, much less a legal basis to

24  require additional expert notice disclosures beyond those already provided, including Special Agent

25  Perryman's grand jury testimony in this case.[1]  *See United States v. Locascio*, 6 F.3d 924, 938 (2d Cir.

26        [1]  Although Yandell apparently joined the present motion seeking more notice from the
government under Rule 16, the defendants' explanation of the law in this motion is entirely inconsistent
27  with the woefully-inadequate "expert notice" provided by Yandell.  ECF 1684.  While Yandell's
noticing of an expert demonstrates that he has secured opposing expert testimony, there is no meaningful
28  or coherent way to reconcile the defendants' claims of what notice means under Rule 16 in this motion

1   1993) ("The fact that [the expert] relied upon inadmissible evidence is therefore less an issue of

2   admissibility for the court than an issue of credibility for the jury."). In short, defendants' confusion

3   about how they will cross-examine Perryman at trial is not a basis to require more notice under Rule 16.

4          The Perryman disclosures are also consistent with the expert notice approved in *United States v.*

5   *Menees*, 2023 WL 127032 (E.D. Okla. Jan. 6, 2023). In *Menees*, the government provided notice of its

6   intent to call an expert who would "express opinions surrounding her diagnosis" of a victim of child

7   abuse and neglect. *Menees*, 2023 WL 127032, at *2. The notice explained that the expert's "knowledge

8   and experience in the areas of child abuse and neglect, as well as her review of her records related to

9   K.M.'s medical care, her knowledge regarding K.M.'s injuries, and her knowledge of K.M.'s pediatric

10  history and developmental milestones constitute the bases and reasons underlying her testimony." *Id.*

11  The court found that the government's notice satisfied Rule 16 because the expert's "opinions—and the

12  bases and reasons for them—are adequately described." *Id.* It concluded, "The notice appropriately

13  informs Defendants what subject areas will be covered by Dr. Conway's testimony and articulates with

14  specificity Dr. Conway's opinions." *Id.*

15         Here, as in *Menees*, the Perryman disclosures inform the defendants "what subject areas will be

16  covered by" Special Agent Perryman's "testimony and articulates with specificity" his opinions. *Id.*

17  Nothing more is required. Indeed, the Perryman disclosures far exceed those approved in *Menees*

18  because they provide a much-more detailed explanation of his opinions, ECF 1686, at 25–28, as well as

19  the bases and reasons for his opinions. ECF 1686, at 28.

20         These bases and reasons include: (1) his extensive training and experience, as detailed in his

21  *curriculum vitae*; (2) interviews of AB gang members and associates numbering in the hundreds since

22  2001; (3) formal training in gang structure and organization, including specific training about the

23  structure and organization of the AB; (4) his current responsibilities include oversight of the

24  departmental gang management policy and conducting major criminal investigations with particular

25  focus on gang activity and enterprise activities, including crimes committed by AB members and

26  associates; (5) his teaching of classes for law enforcement about the AB on multiple occasions, as

27

28  with the Yandell's own expert "notice."

UNITED STATES' OPPOSITION TO DEFS.'S MOTION
FOR DISCLOSURE OF "BASES AND REASONS" FOR          5
EXPERT OPINION

1    detailed on page 2 of his *curriculum vitae*, including providing over 100 hours of training to law

2    enforcement officials about gangs; (6) his extensive personal knowledge of the AB from personally

3    interviewing debriefing AB members within the CDCR; (7) his observations made throughout his

4    extensive career within the various assignments detailed in his *curriculum vitae*; (8) his years working

5    with AB gang members and associates, investigating AB gang members and associates, and crimes

6    committed by or on behalf of the AB; (9) his experience hearing the admissions of the specific gang

7    members and associates involved in the criminal affairs of the AB; (10) his communication and work

8    with hundreds of other gang members, including members and associates of the AB; and (11) his

9    personal knowledge of interviewing AB members Ronald Yandell and Billy Sylvester in this case.  ECF

10   1686, at 28.

11        In sum, Rule 16's notice requirement is met because the defendants are aware well in advance of

12   trial that Special Agent Perryman will testify and the nature and purpose of his expected testimony.  *See*

13   Fed. R. Crim. P. 16 (advisory committee notes to 2022 amendments) (Rule 16 "is intended to facilitate

14   trial preparation, allowing the parties a fair opportunity to prepare to cross-examine expert witnesses and

15   secure opposing expert testimony if needed.").  Defendants' motion should therefore be denied.

16        **B.   Experts can rely on hearsay to form opinions, especially gang investigators like
          Special Agent Perryman**

17

18        As an expert, Special Agent Perryman is permitted to rely on hearsay to form opinions and

19   present those opinions to the jury.  "An expert may base an opinion on facts or data in the case that the

20   expert has been made aware of or personally observed."  Fed. R. Evid. 703.  "If experts in the particular

21   field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they

22   need not be admissible for the opinion to be admitted."  *Id.*  Law enforcement officers, especially gang

23   experts, "routinely and reasonably rely upon such hearsay in the course of their duties."  *United States v.*

24   *Locascio*, 6 F.3d 924, 938 (2d Cir. 1993).

25        Defendants present a vague concern about Special Agent Perryman's testimony being used to

26   convey hearsay to the jury.  ECF 1686, at 9.  Building on this vague concern, defendants speculate that

27   they need "additional information concerning the bases for Perryman's opinions," otherwise, they

28   "cannot determine" whether his testimony is hearsay rather than providing his own opinions.  ECF 1686,

UNITED STATES' OPPOSITION TO DEFS.'S MOTION
FOR DISCLOSURE OF "BASES AND REASONS" FOR
EXPERT OPINION

6

1   at 9.  The argument fundamentally misapprehends how expert testimony works and provides no legal

2   basis to order additional disclosure.

3          The bases of Special Agent Perryman's opinions comports with Rule 703 because it is "based on

4   facts or data in the case" that he has "been made aware of or personally observed," Fed. R. Evid. 703,

5   and such information is "routinely and reasonably" relied upon by gang investigators "in the course of

6   their duties."  *Locascio*, 6 F.3d at 938.  In particular, the "facts and data" that he has "been made aware

7   of or personally observed" include: (1) extensive training and experience over the course of 22 years at

8   CDCR as a gang investigator; (2) interviews he "personally observed" or conducted with AB gang

9   members and associates numbering in the hundreds since 2001; (3) formal training he received in gang

10  structure and organization; (4) oversight of the departmental gang management policy and conducting

11  major criminal investigations with particular focus on AB enterprise criminal activity; (5) teaching

12  classes for law enforcement about the AB on multiple occasions; (6) personal knowledge gleaned from

13  interviewing debriefing AB members; (7) his personal observations throughout his career of how AB

14  members behave and interact with one another over the course of various gang-focused work

15  assignments; (8) his years of investigating AB gang members and associates, and crimes committed by

16  or on behalf of the AB; (9) his experience hearing the admissions of AB members and associates

17  involved in the criminal affairs of the AB; (10) his communication and work with hundreds of other

18  gang members, including members and associates of the AB; and (11) his personal knowledge of

19  interviewing AB members Ronald Yandell and Billy Sylvester in this case.[2]  ECF 1686, at 28.

20         Defendants present no authority to demonstrate that Special Agent Perryman's knowledge of

21  extensive AB-specific "facts or data" that he "has been made aware of or personally observed" is

22  inadequate under Rule 703 or requires any additional disclosures under Rule 16.  Fed. R. Evid. 703.  For

23  these reasons, additional disclosure is not required by Rule 16 or authorized by Rule 703.

24         **C.      Perryman's expert testimony does not implicate *Crawford* under Ninth Circuit**
            **precedent**

25

26         Defendants claim that Special Agent Perryman's testimony will violate *Crawford v. Washington*,

27  _____
            [2]      Yandell and Sylvester's statements to Perryman are admissible as admissions of a party

28  opponent.  Fed. R. Evid. 801(d)(2)(A).

1   541 U.S. 36 (2004), is without merit.  ECF 1686, at 9.  Special Agent Perryman's opinions were

2   developed based upon 22 years of personally observing, interviewing, and investigating AB gang

3   members and associates within CDCR.  To form his opinions in this case, Special Agent Perryman will

4   apply his extensive experience and a reliable methodology – synthesizing overlapping layers of

5   corroborating "source materials" gleaned from two decades of observing, interviewing, and

6   investigating AB members, associates, and dropouts – to form his opinions.  *United States v. Vera*, 770

7   F.3d 1232, 1239 (9th Cir. 2014) (gang expert "distilled and synthesized what he had learned through his

8   experience.").  Under Rules 702 and 703, "there is generally no *Crawford* problem when an expert

9   'appli[es] his training and experience to the sources before him and reach[es] an independent

10  judgment.'"  *Vera*, 770 F.3d at 1237 (quoting *United States v. Gomez*, 725 F.3d 1121, 1129 (9th Cir.

11  2013)).  The underlying rationale for this rule is that *Crawford* is not implicated because the expert is

12  applying "his training and experience to the sources before him and reaching an independent judgment,"

13  and, therefore, the "expert's opinion will be an original product that can be tested through cross-

14  examination."  *United States v. Johnson*, 587 F.3d 625, 635 (4th Cir. 2009).

15      Here, Special Agent Perryman's testimony, detailed in the Perryman disclosures, will draw on

16  his training and experience to reach an independent judgment and his opinions will be an original

17  product that does not violate *Crawford*.  *Johnson*, 587 F.3d at 635; *Vera*, 770 F.3d at 1237; *Gomez*, 725

18  F.3d at 1129.  Thus, defendants' *Crawford* concerns are misplaced and provide no basis to order further

19  notice or disclosure.

20      Defendants next cite to Special Agent Perryman's description in grand jury of a debriefing

21  inmate explaining to him that the AB uses murder as a potent way to send a message as an example of

22  transmitting hearsay.  ECF 1686, at 9.  Defendants' hearsay concern is misplaced.  As explained above,

23  an expert may rely on hearsay in providing an opinion.  Fed. R. Evid. 703.  More importantly, in this

24  particular example, there is a significant difference between the testimony provided by an expert to an

25  investigative grand jury and the testimony the government intends to elicit from its expert during its

26  case-in-chief.  Here, Special Agent Perryman's testimony to the grand jury was disclosed in discovery.

27  But, it does not follow that, at trial, the government will elicit the same testimony as that covered in the

28  grand jury.  In fact, that is why the Perryman disclosures are what guides the parties in understanding the

UNITED STATES' OPPOSITION TO DEFS.'S MOTION
FOR DISCLOSURE OF "BASES AND REASONS" FOR        8
EXPERT OPINION

1    nature and scope of Special Agent Perryman's anticipated trial testimony.  The government is well

2    aware that expert testimony at trial is governed by evidentiary rules and its scope will follow the

3    government's disclosures.  In other words, it is speculative to use investigative grand jury testimony to

4    claim that Special Agent Perryman's opinions will impermissibly funnel inadmissible hearsay to the trial

5    jury.  There is no basis in the Perryman disclosures to draw such a conclusion nor should there be any

6    expectation that the government would seek to elicit inadmissible hearsay from its expert at trial.

7    **D.    <u>Perryman's expert testimony is admissible under well-established Ninth Circuit</u>
8    <u>caselaw</u>**

9    Finally, defendants cite to *United States v. Mejia*, 545 F.3d 179 (2d Cir. 2008), to claim that

10   further disclosures are required for Special Agent Perryman's testimony.  ECF 1686, at 11–12.  But,

11   Special Agent Perryman's testimony will not implicate the concerns raised in *Meija* and, instead, will be

12   consistent with the gang expert testimony approved in *United States v. Hankey*, 203 F.3d 1160 (9th Cir.

13   2000).

14   In *Hankey*, the Ninth Circuit found that a gang expert's testimony was relevant, reliable, and

15   helpful to the jury because it was based upon an expert who "had devoted years working with gangs,

16   knew their 'colors,' signs, and activities," "heard the admissions of the specific gang members

17   involved," and "communicated and worked undercover with thousands of other gang members." *Id.* at

18   1169.  The Ninth Circuit concluded that the gang expert's reliance on "'street intelligence' for his

19   opinions about gang membership and tenets" was appropriate under Rule 702 because gangs "do not

20   have by-laws, organizational minutes, or any other normal means of identification" and "the information

21   upon which [the expert] relied is of the type normally obtained in his day-to-day police activity." *Id.* at

22   1170.  According to the Ninth Circuit, Rule 702 "works well" for gang experts who rely on "data

23   gathered from years of experience and special knowledge." *Id.* at 1169.  In other words, such

24   information is "routinely and reasonably" relied upon by gang investigators "in the course of their

25   duties." *Locascio*, 6 F.3d at 938; *see United States v. Mulder*, 273 F.3d 91, 102 (2d Cir. 2001) ("[The

26   expert] relied largely on the statements of detectives he supervised, victim contractors, and informants to

27   form his opinions. Each of these sources normally would be relied on by expert police officers.").

28   ///

1    Like the expert in *Hankey*, Special Agent Perryman's expertise is: relevant to the RICO

2  conspiracy charging the AB as a criminal enterprise; reliable because it is based upon 22 years of

3  information that is "routinely and reasonably" relied upon by gang investigators "in the course of their

4  duties,"; and it will be helpful to the jury because an average juror cannot possibly know or understand

5  the hidden and intricate sets of understandings, communications, and expectations that govern the world

6  of a prison gang like the Aryan Brotherhood. *Locascio*, 6 F.3d at 938.

7    While it is true that *Mejia* provides an example of impermissible gang expert testimony, the

8  concerns in that case are not present with Special Agent Perryman's testimony.  In *Mejia*, the Second

9  Circuit reversed a conviction based on impermissible testimony from the government's gang expert who

10  had also worked as a case agent in the same investigation. *Mejia*, 545 F.3d at 186–99.  The Second

11  Circuit identified three problems with the gang expert's testimony.  First, the gang expert's testimony

12  went beyond the scope of his expertise and included testimony about matters the average juror could

13  understand on his own. *Id.* at 194.  The Second Circuit specifically found it impermissible that this gang

14  expert/case agent's testimony "essentially summarized the results of the Task Force investigation":  the

15  FBI had seized between 15 and 25 firearms from MS-13 members; MS-13 members on Long Island had

16  been arrested for dealing narcotics; and MS-13 members had committed between 18 and 23 murders on

17  Long Island. *Id.* at 194–95.

18    The Second Circuit contrasted this impermissible factual testimony with types of permissible

19  gang expert testimony, such as "interpreting jargon or coded messages, describing membership rules, or

20  explaining organizational hierarchy," or explaining how graffiti near a body or a method of killing

21  enemies would indicate that a specific murder was an MS-13 murder. *Id.* at 195 (citing *United States v.*

22  *Ardito*, 782 F.2d 358, 363 (2d Cir. 1986); *United States v. Levasseur*, 816 F.2d 37, 45 (2d Cir. 1987);

23  *United States v. Daly*, 842 F.2d 1380, 1388 (2d Cir. 1988); *Locascio*, 6 F.3d at 936).

24    Second, the Second Circuit noted that at times the gang expert/case agent impermissibly repeated

25  hearsay to the jury rather than relying on hearsay to form his own expert opinion. *Id.* at 197.  The

26  Second Circuit noted that Rule 703 allows an expert witness to rely on hearsay evidence if "experts in

27  the field reasonably rely on such evidence in forming their opinions," and added that a gang expert's

28  reliance on hearsay evidence—such as statements of gang members, statements of law enforcement

UNITED STATES' OPPOSITION TO DEFS.'S MOTION
FOR DISCLOSURE OF "BASES AND REASONS" FOR
EXPERT OPINION

10

1   officers, intercepted conversations, and printed and online materials—was "consistent with the ordinary

2   practices of law enforcement officers, who 'routinely and reasonably rely upon hearsay in reaching their

3   conclusions.'" *Id.* (quoting *United States v. Dukagjini*, 326 F.3d 45, 57 (2d Cir. 2003)).  The court

4   faulted the gang expert, however, for simply repeating hearsay evidence as his own testimony rather

5   than forming his own opinions based on the hearsay.  *Id.*  Particularly problematic was that the gang

6   expert testified about particular facts based on several hearsay statements from the very case he was

7   testifying about.  *See id.* (noting that testimony on taxation of drug sales was "based on a gang member

8   having told him so during a custodial interrogation in this case," or that testimony about guns seized or

9   MS-13 murders on Long Island was from hearsay in the same case).  To the extent the gang expert was

10  "merely repeating information" he had leaned rather than synthesizing various source materials, his

11  testimony ran afoul of Rule 703.  *Id.* at 197–98.

12          Third, the Second Circuit held that some of the gang expert's testimony violated *Crawford*

13  because the expert "communicated out-of-court testimonial statements of cooperating witnesses and

14  confidential informants directly to the jury in the guise of an expert opinion."  *Id.* at 198 (quoting

15  *Lombardozzi*, 491 F.3d at 72).  The court again noted that—as with Rule 703—an expert may rely on

16  testimonial statements in forming his opinion without running afoul of *Crawford* as long as the expert is

17  applying his expertise to the testimonial statements and not directly conveying the substance of the

18  statements to the jury.  *Id.*  The Second Circuit held that the gang expert violated *Crawford* when he

19  merely conveyed testimonial statements to the jury, including one statement made by an MS-13 member

20  in custody "during the course of this very investigation."  *Id.* at 199.  ("This impugns the legitimacy of

21  all of his testimony and strongly suggests to us that Alicea was simply summarizing an investigation by

22  others that was not part of the record and presenting it in the guise of an expert opinion.") (quotations

23  omitted).

24          In contrast, in *Vera*, the Ninth Circuit upheld the district court's decision to admit expert

25  testimony by the case agent in a gang case.  *Vera*, 770 F.3d at 1237–40.  The expert testified about the

26  gang's territory, the meaning of a specific intercepted call, that the gang required non-member drug

27  dealers to pay a tax, and that one of the defendants was likely the leader of the gang.  *Id.* at 1238–39.

28  The court held that this testimony did not violate *Crawford* because, unlike in *Mejia*, the expert

1  synthesized various sources of information—including his interactions with gang members—but did not

2  merely repeat what others told him during the investigation.  *Id.* at 1239.

3        In this case, Special Agent Perryman will testify consistent with admissible areas of gang

4  expertise as defined in *Mejia* and *Vera*, including "interpreting jargon or coded messages," "describing

5  membership rules," "explaining organizational hierarchy," explaining how a method of killing enemies

6  would indicate that a specific murder was an AB murder, describing the AB code of conduct, and the

7  related topics detailed in the Perryman disclosures.  *Hankey*, 203 F.3d at 1169; *Mejia*, 545 F.3d at 195;

8  *Vera*, 770 F.3d at 1239.  In addition, because Special Agent Perryman did not directly participate in the

9  investigation in this case, there is no risk that he will simply convey testimonial hearsay from

10  defendants, informants, or other participants in this investigation.  For these reasons, defendants'

11  reliance on *Mejia* is misplaced and in no way supports ordering further disclosure of anything.

12                                        **IV.**     **CONCLUSION**

13        For the foregoing reasons, the government respectfully requests that the Court deny defendants'

14  motion for additional disclosure for Special Agent Perryman's testimony.

15

16    Dated:  December 1, 2023                          PHILLIP A. TALBERT
                                            United States Attorney

17

18                              By:  /s/ *Jason Hitt*
                                  JASON HITT

19                                    Assistant United States Attorney

20

21

22

23

24

25

26

27

28