PHILLIP A. TALBERT
United States Attorney
JASON HITT
ROSS PEARSON
DAVID SPENCER
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> RONALD DEAN YANDELL, et al., <br><br> Defendants. | CASE NO. 2:19-CR-00107-KJM <br><br> UNITED STATES' OPPOSITION TO DEFENDANT JASON CORBETT'S MOTION TO COMPEL DISCOVERY <br><br> [ECF 1697] |

### I.    INTRODUCTION

The United States, by and through Assistant United States Attorneys Jason Hitt, Ross Pearson, and David Spencer respectfully submits its opposition to the latest motion to compel discovery filed by defendant Jason Corbett ("Corbett" or "defendant") seeking the government's assistance with discovery that he sought or that has already been explained to defense counsel. ECF 1697. Much of the discovery he received predates CDCR's assistance in the DEA investigation of these crimes, is incredibly damaging to Corbett and his co-defendants, and is therefore not material or discoverable under Rule 16. Accordingly, the United States respectfully requests that the Court deny Corbett's motion in full.

///
///
///
///

## II.     LEGAL STANDARDS

"There is no general constitutional right to discovery in a criminal case." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Rather, discovery is limited by statute, rules of criminal procedure, and case law to four categories: (1) materials discoverable under Rule 16 of the Federal Rules of Criminal Procedure; (2) material exculpatory information discoverable under *Brady*; (3) evidence relating to a witness's credibility or bias that is discoverable under *Giglio*; and (4) witness statements related to the subject matter of the witness's testimony, discoverable under the Jencks Act. *See* Fed. R. Crim. P. 16; *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972); 18 U.S.C. § 3500 (Jencks Act); Fed R. Crim. P. 26.2 (implementing Jencks Act).

## III.     ANALYSIS

### A.     Corbett seeks discovery from CDCR, receives it, and then does not understand it.

In February 2023, Corbett sought various items of discovery related to, among other things, the murder of Doug Maynard at High Desert prison in 2016. ECF 1300, 1303 (requests 11–20). The Court issued an order granting, in part, some of Corbett's discovery requests, including items related to the Maynard murder. ECF 1434, at 13. Generally speaking, the documents produced by CDCR include the Central Files[1] of CDCR inmates Tony Barron and Bobby Stockton, Corbett's murder victims Doug Maynard and Donald Pequeen, and Corbett's own C-File. Consistent with statutory requirements, the produced documents include extensive confidential information, including statements of confidential informants who provided information against the person who is subject of the C-File. *Couch*, 2011 WL 2551546, at *2. The government did not identify any information provided to CDCR as part of its response to the investigation of this case – as discussed below, this is critical in deciding the current motion. ECF 1434, at 6.

Corbett "now seeks totally unredacted copies of those documents," ECF 1697, at 3. In other words, Corbett seeks his own unredacted C-File which, by statute, includes confidential information, including statements of confidential informants who provided information against Corbett. *Couch*, 2011 WL 2551546, at *2. This is an egregious overreach in the context of this case and presents a significant

---

[1] A "Central File," or "C-File," is maintained by CDCR for every incarcerated inmate. *See Couch v. Wan*, 2011 WL 2551546, at *1-2 (E.D. Cal. June 24, 2011).

danger to the dozens of confidential informants who had no connection to this investigation and provided information to CDCR completely disconnected from CDCR's response to the investigation of this case.

### B. The government does not have constructive possession of the unredacted C-Files Corbett seeks, because CDCR produced redacted C-Files to the government, and the C-Files were not generated in relation to the federal investigation of the charged conspiracy.

The Court should deny Corbett's motion because the government does not have constructive possession of an unredacted version of Corbett's C-File. In its order partially granting Corbett's prior discovery request, the Court explained that "[t]he fact that CDCR has participated in the investigation of the RICO conspiracy charged in this case does not bring any and all CDCR records of interest to the defense within the government's constructive possession for Rule 16 purposes; discoverability is limited by the scope of CDCR's involvement in the investigation." ECF 1434, at 5–6. The Court found that the government has constructive possession of two categories of CDCR documents: (1) "documents and tangible things generated or gathered by CDCR in relation to the federal investigation of the charged conspiracy," or (2) documents "which CDCR has made or will make available to the United States without a subpoena." ECF 1434, at 14.

The unredacted C-Files that Corbett seeks do not fall under either category. Therefore, the government does not have constructive possession of them. First, these C-Files were not "generated or gathered by CDCR in relation to the federal investigation of the charged conspiracy." ECF 1434, at 14. By statute, the C-File includes "all information received" by CDCR about each inmate "from the courts, probation officers, sheriffs, police departments, district attorneys, State Department of Justice, Federal Bureau of Investigation, and other interested agencies and persons." Cal. Penal Code § 2081.5. The C-File also includes confidential information, such as statements of confidential informants who provided information against the person who is subject of the C-File. *Couch*, 2011 WL 2551546, at *2. These C-Files were thus generated by CDCR as part of its statutory obligations related to housing inmates. These C-Files were not generated "in relation to the federal investigation of the charged conspiracy." ECF 1434, at 14. Indeed, most of the documents in the C-Files predated the federal investigation of the charged conspiracy by years.

UNITED STATES' OPPOSITION TO JASON CORBETT
MOTION TO COMPEL DISCOVERY

3

Second, CDCR did not make unredacted versions of these C-Files available to the government "without a subpoena." To the contrary, CDCR has only provided redacted versions of the C-Files to the government—the same redacted versions that Corbett also has—and only after it was provided with the Court's order. The government does not have access to the C-Files that Corbett seeks. *See* ECF 1368-1, ¶ 3. It cannot simply email CDCR and request these files. It would need to, at minimum, provide CDCR with a subpoena – and given CDCR's statutory confidentiality obligations, there is no reason to believe CDCR would provide anything beyond the same redacted documents it provided to Corbett if the government were to seek the same records by subpoena. ECF 1368-1, ¶ 3. Therefore, the unredacted C-Files that Corbett requests are not in constructive possession of the government under this Court's prior order, because they are not documents "which CDCR has made or will make available to the United States without a subpoena." ECF 1434, at 14.

### C. Corbett does not make a *prima facie* showing that any of the documents he seeks are discoverable under any relevant discovery rule or precedent.

Critically, looking back to this Court's specific finding when it initially ordering production, the Court limited production to "documents and tangible things generated by or gathered from any source (including non-defendant inmate files and internal records that predate the investigation) by CDCR *as part of its response to the investigation of this case*." ECF 1434, at 6 (emphasis added). Having received materials not relevant to the government's case-in-chief, Corbett now seeks identities of people "discussed in the redacted discovery" who, he speculates, "will likely testify at trial or witnesses will testify about them." ECF 1697, at 4.

This is not a recognized legal basis for producing discovery under Rule 16, *Brady*, *Giglio*, or any other applicable authority. Instead, to obtain discovery under Rule 16, a defendant must make a *prima facie* showing of materiality. *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990) (citing *United States v. Little*, 753 F.2d 1420, 1445 (9th Cir. 1984); *United States v. Cadet*, 727 F.2d 1453, 1468 (9th Cir. 1984)). "Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense." *Mandel*, 914 F.2d at 1219 (citing *Little*, 753 F.2d at 1445; *Cadet*, 727 F.2d at 1466–68.

UNITED STATES' OPPOSITION TO JASON CORBETT
MOTION TO COMPEL DISCOVERY

4

Before Corbett filed the present motion, on November 7, 2023, the United States produced an extensive amount of early *Jencks*/Rule 26.2 material. As a result, Corbett no longer needs to speculate about who will "likely testify at trial" because he has witnesses' identities, statements, reports, testimony, and related materials. Going well beyond any cognizable legal basis for discovery, Corbett now seeks wholesale revelation of dozens of confidential informants who: (1) provided information that had nothing to do with CDCR's "response to the investigation in this case" because the events occurred years before this investigation began or had nothing to do with this prosecution; (2) were, by definition, never subject to Rule 16 in the first place because they were not part of the government's case-in-chief; and (3) catalog extensive misconduct by Corbett and co-defendants within CDCR – in other words, it is material consisting almost entirely of inculpatory evidence that, ironically, Corbett demanded to access.

"[D]iscoverability is limited by the scope of CDCR's involvement in the investigation" as "part of its response to the investigation of this case." ECF 1434, at 6. Corbett's present motion fails entirely to engage with this applicable materiality standard to present facts demonstrating the requested information is helpful to the defense. *Mandel*, 914 F.2d at 1219. Instead, the motion is based on counsel's desire to have more and speculation about what might be revealed in unredacted documents. Neither desire nor speculation provide a basis to enter an order compelling discovery in a criminal case. Indeed, as discussed below, the government's review of the material produced to Corbett reveals three important characteristics that wholly undermine Corbett's demands.

First, almost all of the information is incredibly damaging to Corbett and some of his trial-bound co-defendants. For example, the documents reveal that, in 2015, Corbett wanted an inmate at High Desert "butchered" for selling a tool to an inmate of another race in exchange for drugs. Similarly, other documents show that, between 2015–17, Corbett smuggled methamphetamine and phones into High Desert through a person he had known since childhood. In other documents, it is revealed that co-defendant Pat Brady admitted that he killed Donald Pequeen for falsely claiming AB membership and for supporting Brant Daniel in Daniel's efforts to remain in good standing with the criminal enterprise. The documents also show that Corbett earned his AB membership for murdering Pequeen. Other reports reveal that Yandell and Sylvester ordered the stabbing of Maynard at CSP–Sacramento in 2015. In short, the documents are filled with overlapping layers of devastating inculpatory evidence.

For a document or other item to be "material to preparing the defense" it must "'significantly alter the quantum of proof in his favor.'" *United States v. Dossman*, 2006 WL 2927484, at *2 (E.D. Cal. Oct. 12, 2006) (quoting *United States v. Ross*, 511 F.2d 757, 762–63 (5th Cir. 1975). Corbett fails to explain how his demands meet this standard and none of requested material alters the quantum of proof in his favor; it does the opposite. "It is not enough to show that the discovery has 'some abstract logical relationship to the issues in the case.'" *Dossman*, 2006 WL 2927484, at *2 (quoting *Ross*, 511 F.2d at 762). Corbett fails entirely to demonstrate materiality.

Second, because the United States never possessed the material in the first place, it was never part of the government's case-in-chief. Placed within this context, Corbett cannot meet his burden to establish the materiality for "totally unredacted copies of those documents," ECF 1697, at 3, because this material's "discoverability is *limited by the scope of CDCR's involvement in the investigation*" and none of these materials ever had anything to do with CDCR's "response to the investigation in this case." ECF 1434, at 6 (emphasis added).

Third, there are multiple legal problems with Corbett's desire to engage in a wholesale fishing expedition to expose as many confidential informants as possible within sensitive CDCR documents. From the outset of Corbett's discovery campaign, he sought disclosures based upon his own investigation. His discovery requests were never grounded in evidence produced by the United States. In other words, the only logical basis for production of this material was Corbett's expansive legal theory of materiality which included the need to "access to certain information in order to prepare a defense both in a guilt phase as well as a potential penalty phase trial." ECF 1396, at 7. But, on October 30, 2023, the United States announced its intention to not seek the death penalty. ECF 1675. Accordingly, materiality in this case must necessarily be narrower now because Corbett no longer needs to prepare a defense to the penalty phase.

Even before the death penalty ceased to be an issue in this case, this Court's order recognized an important limiting principle that is entirely lost in Corbett's current demand for breathtaking access to highly-sensitive CDCR documents: "[D]iscoverability is limited by the scope of CDCR's involvement in the investigation" as "part of its response to the investigation of this case." ECF 1434, at 6. Corbett does not argue or demonstrate that any of the unredacted materials he now seeks are limited, in any way,

to the scope of CDCR's involvement in this investigation. As such, they should be denied as failing to demonstrate materiality under Rule 16.

The same vague and ambiguous theory of materiality in seeking access to prison inmate files under Rule 16 was examined in *Santiago* and found to fail Rule 16's materiality requirements. *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995). In *Santiago*, the prosecution in a gang case planned to call certain inmates as witnesses, and the defendant moved under Rule 16 for the inmates' files, which he argued might be useful for impeachment because they might show that the inmate-witnesses were linked to rival gangs. *Santiago*, 46 F.3d at 894–95. The Ninth Circuit rejected this request, finding that the defendant's assertions "although not implausible" did not "satisfy the requirement of specific facts, beyond allegations, relating to materiality." *Id.* The court noted that the defendant "did not cite any fact, such as a statement by the defendant or one of the interviewed witnesses, that might link one of the witnesses to a rival gang." *Id.* at 895.

As with the defendant's request for inmate files in *Santiago*, Corbett's request for "totally unredacted copies of those documents" in order to seek the identities of people "discussed in the redacted discovery" who, he speculates, "will likely testify at trial or witnesses will testify about them," completely fails the materiality test. ECF 1697, at 4. These undisciplined and broadly-worded demands "might be consistent with expansive civil discovery" but they are "not permitted under the more restrictive criminal discovery standards." *Dossman*, 2006 WL 2927484, at *2.[2]

D. **The government explained that no video of the Maynard murder exists nearly two years ago.**

Corbett also revisits his demand for a video of the Maynard murder that he ordered during his time at High Desert. Reverting to civil-style interrogatories, Corbett uses his motion to "seek[] clarification" of a straightforward statement: there is no video of the Maynard murder. Nevertheless,

---

[2] Corbett's explanation about the back-and-forth between the parties, ECF 1697, at 3–4, demonstrates the government tried to accommodate the defense request with respect to the redacted production but, ultimately, found itself in the same position as the defense. With trial preparation underway, the government could not devote time to assist Corbett in understanding evidence that he demanded to have produced. Nothing about those representations has changed. But, the government does take note that future efforts to assist any defendant in this case will be informed by the apparent purpose of this request: to set up future motion practice. This type of conduct can only have a chilling effect on cooperative efforts among the parties.

UNITED STATES' OPPOSITION TO JASON CORBETT
MOTION TO COMPEL DISCOVERY

7

1  Corbett persists, "Was there a video which no longer exists? Or was there never a video at all?" ECF
2  1697, at 3.
3        This fixation is strange because the government explicitly answered this precise question in
4  March 2022: "The government does not possess the video referenced. The description in the [Criminal
5  Complaint] affidavit mistakenly describes a review of video rather than a review of written reports.
6  Those reports were produced at Bates: AB_00031848 – AB_00032860." ECF 1138-1 at 13 (response to
7  Yandell discovery motion for video of the Maynard murder).  There is no video and there never was a
8  video.  It was a mistake in the affidavit.  That mistake was explained almost two years ago.

9      **E.**    **Corbett again fails to demonstrate materiality for Request 30 by submitting a secret exhibit and providing no legal analysis or authority**
10

11        Corbett renews his previous failed demand for, "All writings from High Desert State Prison
12  detailing which D yard buildings had yard together between October 1, 2015 and October 15, 2016."
13  ECF 1697, at 4.  The court previously denied this request finding that the request "seeks evidence only
14  tangentially related to the defense theory as to the Maynard murder" and, as result, "materiality has not
15  been adequately established." ECF 1434, at 12.  Corbett presents nothing to disturb this finding.
16        Corbett's sole basis for demanding this discovery is that he "has since acquired new information
17  and seeks the opportunity to make an additional showing of relevance *in camera*." ECF 1697, at 4.  The
18  government cannot meaningfully respond to this part of Corbett's motion without access to his secret
19  "new information" because there are no facts discussed in his brief.  And, his legal argument is limited
20  to boilerplate citations.  Without authority or facts to demonstrate the materiality of the requested items,
21  there is nothing in the record for the Court to order production of this material.  As such, this renewed
22  request should be denied.
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

### IV. CONCLUSION

For the foregoing reasons, Corbett's motion to compel should be denied in its entirety.

Dated: December 6, 2023

PHILLIP A. TALBERT
United States Attorney

By: /s/ *Jason Hitt*
JASON HITT
Assistant United States Attorney