PHILLIP A. TALBERT
United States Attorney
JASON HITT
ROSS PEARSON
DAVID SPENCER
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RONALD YANDELL, et al.,<br><br>Defendants. | Case No. 2:19-cr-107-KJM<br><br>PLEA AGREEMENT FOR DEFENDANT PAT BRADY<br>[NON-COOPERATION AGREEMENT] |

I.  **INTRODUCTION**

A.  **Scope of Agreement**

The defendant Pat Brady ("defendant") will plead guilty to Count Eighteen of the Superseding Indictment. Count Eighteen of the Superseding Indictment charges the defendant with a violation of 18 U.S.C. § 1959(a)(1) – Murder in Aid of Racketeering. This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

PLEA AGREEMENT            1

B. **Court Not a Party**

The Court is not a party to this plea agreement. As to Count Eighteen of the Superseding Indictment, the defendant understands the Court will sentence him to life in prison, the mandatory sentence for that count.

## II.    DEFENDANT'S OBLIGATIONS

A. **Guilty Plea**

The defendant will plead guilty to Count Eighteen of the Superseding Indictment. Count Eighteen of the Superseding Indictment charges the defendant with a violation of 18 U.S.C. § 1959(a)(l) – Murder in Aid of Racketeering. The defendant agrees that he is in fact guilty of this charge and that the facts set forth in the Factual Basis For Plea attached as Exhibit A are true and correct. Exhibit A is incorporated here by reference.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that he will not be allowed to withdraw his plea should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement. The defendant waives any rights under Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

B. **Fine**

The parties agree that the defendant does not have the ability to pay a fine and is not likely to become able to pay a fine. Therefore, imposition of a fine should be waived. U.S.S.G. § 5E1.2(a).

C. **Special Assessment**

The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. If the defendant is unable to pay the special assessment at the time of sentencing, he agrees to earn the money to pay the assessment, if necessary by participating

in the Inmate Financial Responsibility Program.

D. **Defendant's Violation of Plea Agreement or Withdrawal of Plea**

If the defendant violates this plea agreement in any way, withdraws his plea, or tries to withdraw his plea, this plea agreement is voidable at the option of the government. The government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. One way a defendant violates the plea agreement is to commit any crime or provide any statement or testimony which proves to be knowingly false, misleading, or materially incomplete. Any post-plea conduct by a defendant constituting obstruction of justice will also be a violation of the agreement. The determination whether the defendant has violated the plea agreement shall be decided under a probable cause standard.

If the defendant violates the plea agreement, withdraws his plea, or tries to withdraw his plea, the government shall have the right: (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge, including perjury, false statements, and obstruction of justice. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision to exercise the options stated in the previous paragraph. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement.

In addition, the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or

any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

### E. Dismissal

The United States will move to dismiss the RICO conspiracy charged in Count One against the defendant at the time of sentencing.

## III. THE GOVERNMENT'S OBLIGATIONS

### A. Recommendations

#### 1. Incarceration Range

The government will recommend that the defendant be sentenced to life in prison, which the defendant understands is the mandatory sentence in this case.

#### 2. Acceptance of Responsibility

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of defendant's offense level if he clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

### B. Use of Information for Sentencing

The government is free to provide full and accurate information to the Court and the United States Probation Office ("Probation"), including answering any inquiries made by the Court and/or Probation, and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

///

///

C. **No Federal Charges for Murder of E.B. at CSP–Sacramento on April 30, 2023**

As part of this Plea Agreement, the United States agrees not to pursue federal charges against the defendant based upon the murder of E.B. at CSP–Sacramento on April 30, 2023.

## IV. ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offenses to which the defendant is pleading guilty.

Count Eighteen – Murder in Aid of Racketeering – 18 U.S.C. § 1959(a)(1):

(1) On or about July 20, 2018, an enterprise affecting interstate commerce existed;

(2) Second, the charged enterprise, the Aryan Brotherhood, engaged in a pattern of racketeering activity;

(3) Third, the the defendant intentionally committed or aided and abetted in murder in violation of California law, as defined below; and

(4) Fourth, the defendant's purpose in committing the murder was to gain entrance to, or to maintain, or to increase his position in the enterprise.

To prove that the defendant committed murder, the government must prove beyond a reasonable doubt that:

(1) The defendant committed an act that caused the death of Donald Pequeen; and

(2) When the defendant acted, he had a state of mind called malice aforethought.[1]

The defendant fully understands the nature and elements of the crimes charged in Count

---

[1] The state of mind called "malice aforethought" can be either express malice and implied malice. Proof of either is sufficient to establish the state of mind required for murder.
    a. The defendant had express malice if he unlawfully intended to kill.
    b. The defendant had implied malice if:
        i. He intentionally committed the act;
        ii. The natural and probable consequences of the act were dangerous to human life;
        iii. At the time he acted, he knew his act was dangerous to human life; and
        iv. He deliberately acted with conscious disregard for human life.

Cal. Penal Code §§ 182, 187, 188, and 189.

Eighteen of the Superseding Indictment to which he is pleading guilty, together with the possible defenses to those charges, and has discussed them with his attorneys.

## V.   MAXIMUM SENTENCE

### A.   Maximum Penalty on Count Eighteen

The maximum sentence that the Court can impose is a mandatory minimum sentence of life in prison, a fine of up to $250,000, a period of supervised release of up to 5 years, and a special assessment of $100.[2]

### B.   Violations of Supervised Release

The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to 5 additional years in prison per revocation.

## VI.   SENTENCING DETERMINATION

### A.   Statutory Authority

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. Although no upward or downward departure is available due to the mandatory life sentence in this case, the defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a). In this case, the defendant understands that the Court must sentence him to life in prison.

---

[2]   Death is a possible penalty on this charge but the United States has announced its intention to not seek the death penalty. ECF 1675.

B. **Sentencing Arguments**

The parties agree that the mandatory minimum sentence on Count Eighteen eliminates any basis to argue for a departure from the Sentencing Guidelines under the sentencing factors under 18 U.S.C. § 3553 to arrive at a different sentence.

## VII.   WAIVERS

A. **Waiver of Constitutional Rights**

The defendant understands that by pleading guilty he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to testify on his behalf; (e) to confront and cross-examine witnesses against his; and (f) not to be compelled to incriminate himself.

B. **Waiver of Appeal and Collateral Attack**

The defendant understands that the law gives his a right to appeal his guilty plea, conviction, and sentence. The defendant agrees as part of his pleas, however, to give up the right to appeal any aspect of the guilty pleas, conviction, or sentence imposed in this case.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence imposed in this case.

If the defendant ever attempts to vacate his plea, dismiss the underlying charges, or modify or set aside his sentence on any of the counts to which he is pleading guilty, the government shall have the rights set forth in paragraph II.D (Defendant's Violation of Plea Agreement) of this Plea Agreement.

C. **Waiver of Attorneys' Fees and Costs**

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed).

///

## VIII. ENTIRE PLEA AGREEMENT

Other than this plea agreement and any supplement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

IX.     APPROVALS AND SIGNATURES

A.     **Defense Counsel**

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: 12/21/23

JOHN R. MANNING, Esq.
MARCIA A. MORRISSEY, Esq.
Counsel for Defendant

B.     **Defendant**

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: 12-21-23

PAT BRADY
Defendant

C.     **Attorney for United States**

I accept and agree to this plea agreement on behalf of the government.

Dated: December 22, 2023

PHILLIP A. TALBERT
United States Attorney

JASON HITT
ROSS PEARSON
DAVID SPENCER
Assistant United States Attorneys

### EXHIBIT "A"
### Factual Basis for Plea

If this matter proceeded to trial, the United States would establish the following facts beyond a reasonable doubt:

**Summary of Count Eighteen – Murder of Donald Pequeen in aid of Racketeering**

As part of this plea agreement, Brady admits that, as part of the criminal agreement charged in Count One of the Superseding Indictment, prior to July 20, 2018, Brady admitted to Travis Burhop that he was to kill "Joker," Donald Pequeen's moniker. In particular, Brady explained that he would kill Pequeen because Pequeen had falsely claimed to be an AB member and had run up a significant drug debt at his previous prison – both clear violations of the AB's expected codes of conduct. Brady explained that members of the Aryan Brotherhood wanted to send a message to the rest of white prison population that a false claim to AB membership would be punished by death.

On July 20, 2018, at about 2:15 p.m., Brady and another person acted together to murder Donald Pequeen on the D facility at High Desert prison. The murder was the result of a planned, coordinated hit targeting Pequeen.

A review of video surveillance from the day revealed that Pequeen was initially talking to Brady. While Pequeen was distracted by Brady, the video shows another person come up from behind Pequeen, remove a prisoner-made weapon, and begin stabbing Pequeen repeatedly in the back. As Pequeen attempted to flee the attack, Brady then removed his own prisoner-made weapon from his waistband and chased Pequeen. They caught Pequeen with the assistance of two other inmates and Brady then violently stabbed Pequeen in the upper back. During the attack, Pequeen fell to the ground and guards issued verbal commands for all inmates to "get down." Brady and the other person continued their attack on Pequeen, stabbing him repeatedly in the head, neck, and torso. Brady and the other person held Pequeen down and continued stabbing him. Officers saw Pequeen bleeding profusely from his neck and torso.

As responding officers closed in, Brady and the other person stood up from Pequeen's body and walked away. Each discarded their prisoner-made weapons as they walked. Officials recovered Brady's weapon a short distance away from the victim's body. It was a flat metal-type weapon fashioned to a point at one end with a cloth type material at the other end as a handle.

Investigators noted that one of the murder weapons had "SS" lightning bolts etched into its side, a symbol associated with Nazis from Germany in World War II. Brady later admitted to Donald Mazza that he knew the "SS" lightning bolts etched on to the knife were a mistake because it would make it readily apparent to law enforcement that Pequeen's murder was an AB murder.

PLEA AGREEMENT                        A-1

**EXHIBIT "A"**
**Factual Basis – Continued**

As part of this Plea Agreement, the defendant admits that, as part of the RICO conspiracy charged in Count One and the murder charged in Count Eighteen, he willfully, deliberately, and with premeditation, murdered Donald Pequeen to maintain his status within the Aryan Brotherhood and enforce its code of conduct which includes punishing any person who falsely claims to be an AB member.

I have reviewed the Factual Basis in Exhibit A and, as far as my own conduct is concerned, I adopt it as a true and correct statement of my crimes.

Dated: 12-21-23

PAT BRADY
Defendant

PLEA AGREEMENT                                    A-2