PHILLIP A. TALBERT
United States Attorney
JASON HITT
ROSS PEARSON
DAVID SPENCER
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>RONALD DEAN YANDELL,<br>BILLY SYLVESTER, and<br>DANNY TROXELL,<br><br>  Defendants. | CASE NO. 2:19-CR-00107-KJM<br><br>UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE SPECIAL AGENT CORY PERRYMAN<br><br>[ECF 1800] |

## I.  INTRODUCTION

The United States, by and through Assistant United States Attorneys Jason Hitt, Ross Pearson, and David Spencer, respectfully submits its opposition to the motion for to exclude the testimony and opinions of Aryan Brotherhood gang expert Special Agent Cory Perryman filed by trial defendants Ronald Yandell and Billy Sylvester, and joined by defendant Danny Troxell ("defendants"). ECF 1800, 1810.[1]

Defendants' motion provides no legal basis to exclude Special Agent Perryman. Well-established Ninth Circuit precedent makes plain that Special Agent Perryman's testimony is relevant and admissible because it will help the jury understand the gang's structure and operations based upon his

---

[1]  Troxell filed a non-substantive joinder to the motion to exclude Special Agent Perryman. ECF 1810.

experience. For these reasons, the United States respectfully requests that the Court deny the defendants' motion.

## II.     BACKGROUND

As part of its case-in-chief, the government will call Special Agent Cory Perryman to provide expert testimony about the Aryan Brotherhood ("AB"). *See* ECF 1686, at 17–19, 25–29. Special Agent Perryman is an AB expert and member of CDCR's Special Service Unit-Sacramento, Gang Intelligence Operations, Office of Correctional Safety, and has worked for CDCR for over 20 years. ECF 1686, at 18–19. The government first provided notice of his testimony in a 2019 disclosure. Last year, the government provided two additional extensive, detailed disclosures describing the specific topics and scope of Perryman's testimony, his extensive background as a gang investigator focused on white prison gangs, including the AB, and how he developed this expertise to provide such testimony based upon a 22-year career focused on the investigation of AB gang activities and the enterprise's multitude of crimes committed inside and outside of prison, including by interviewing numerous AB members, associates, and victims. *See* ECF 1686, at 15–17, 25–29. The disclosures also included Special Agent Perryman's grand jury testimony in this case. *See* ECF 1686, Defs.' Ex. D (under seal). The notice provided specific details about the bases for Special Agent Perryman's opinions.

> [The bases for his opinions] come from his extensive training and experience, as detailed in his recently-provided *curriculum vitae*. In particular, Special Agent Perryman's training and experience includes interviewing AB gang members and associates numbering in the hundreds since 2001. He has received formal training in gang structure and organization, including specific training about the structure and organization of the AB. His current responsibilities as a Special Agent includes oversight of the departmental gang management policy and conducting major criminal investigations with particular focus on gang activity and enterprise activities, including crimes committed by AB members and associates. He has taught classes for law enforcement about the AB on multiple occasions, as detailed on page 2 of his curriculum vitae. That training includes providing over 100 hours of training to law enforcement officials about gangs. His opinions are based on his extensive personal knowledge regarding the AB and personally interviewing debriefing AB members from CDCR. In addition, Special Agent Perryman bases his opinions about the AB based upon his observations made throughout his extensive career within the various assignments detailed in his curriculum vitae. In sum, Special Agent Perryman's training and experience demonstrates that he has devoted years to working with AB gang members and associates, investigating AB gang members and associates, and crimes committed by or on behalf of the AB. This experience provided him the opportunity to hear the

> admissions of the specific gang members and associates involved in the criminal affairs of the AB. He has communicated and worked with hundreds of other gang members, including members and associates of the AB. Moreover, Special Agent Perryman will testify based upon his personal knowledge of interviewing AB members in this case: Ronald Yandell and Billy Sylvester in 2018. During those interviews, Yandell and Sylvester inferentially confirmed they were members of AB and referenced the status of multiple AB members as of 2018, including that of Brant Daniel, Jake Corbett, and Danny Troxell.

ECF 1686, at 28.

In earlier litigation, defendants moved for additional information about the "reasons and bases" for Special Agent Perryman's opinions. ECF 1686. After briefing and argument on that motion, this Court found that the government's notice complied with Rule 16 (a)(1)(G). Order, ECF 1778. The Court also denied defendants' demand to compel production of unspecified materials related to Special Agent Perryman's opinions. ECF 1778. In connection with that determination, the Court made a number of important findings.

> Having carefully considered the parties arguments, the court concludes the government's disclosures here satisfy its obligations under Rule 16(a)(1)(G). The government has stated the opinions it will ask Perryman to offer at trial. It lists his qualifications and testimony in other cases. And contrary to the defense arguments, the government's notice explains how Perryman came to his opinions. He developed his familiarity over more than two decades working in California prisons, where he observed gang members first hand, including the Aryan Brotherhood. He also learned about the Aryan Brotherhood's roots, membership, structure, rules, symbols, and purposes first-hand by interviewing hundreds of inmates with connections to the Aryan Brotherhood, and he has read many reports of other interviews and investigations. Beyond his interviews, he has investigated Aryan Brotherhood activity in California prisons and has searched for, confiscated and reviewed communications between gang members. Finally, he has attended and taught formal classes and training about prison gangs in California.

ECF 1778, at 5.

## III.     ANALYSIS

### A. Perryman's expert testimony is admissible under well-established Ninth Circuit precedent.

#### 1. Special Agent Perryman's expert testimony about the Aryan Brotherhood is relevant and admissible

Special Agent Perryman's testimony about the Aryan Brotherhood, detailed above, is relevant, probative, and admissible under well-established Ninth Circuit precedent because it will help the jury understand the gang's structure and operations based upon his experience.

"A law enforcement expert can reliably testify about the structure and activities of criminal organizations based solely on experience." *United States v. Holguin*, 51 F.4th 841, 856 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 2509 (2023), *and cert. denied sub nom. Higuera v. United States*, 143 S. Ct. 2510 (2023) (citing *United States v. Rodriguez*, 971 F.3d 1005, 1018 (9th Cir. 2020) (officers' training and experience reliably supported testimony about gang "structure and operation")); *United States v. Hankey*, 203 F.3d 1169 (9th Cir. 2000); ECF 1778, at 6 n.1 ("But even before [United States v.] *Cerna*[, No. 08-0730, 2010 WL 9 2347406 (N.D. Cal. June 8, 2010)] and [United States v.] *Cervantes*[, No. 12-00792, 2015 U.S. Dist. LEXIS 98516 (N.D. 23 Cal. July 28, 2015)], the circuit had permitted law enforcement experts to testify about gang structure and operations based on their experience.") (citing *Holguin*, 51 F.4th at 856)); *see United States v. Valencia-Amezcua*, 278 F.3d 901, 908 (9th Cir. 2002) ("[I]t is commonplace that expert testimony regarding the structure of criminal enterprises is admissible to help the jury assess a defendant's involvement in that enterprise.").

Rule 702 "works well" for gang experts who rely on "data gathered from years of experience and special knowledge." *Hankey*, 203 F.3d at 1169. Such information is "routinely and reasonably" relied upon by gang investigators "in the course of their duties." *United States v. Locascio*, 6 F.3d 924, 938 (2d Cir. 1993); *see United States v. Mulder*, 273 F.3d 91, 102 (2d Cir. 2001) ("[The expert] relied largely on the statements of detectives he supervised, victim contractors, and informants to form his opinions. Each of these sources normally would be relied on by expert police officers.").

In *Hankey*, the Ninth Circuit found that a gang expert's testimony was relevant, reliable, and helpful to the jury because it was based upon an expert who "had devoted years working with gangs, knew their 'colors,' signs, and activities," "heard the admissions of the specific gang members

involved," and "communicated and worked undercover with thousands of other gang members." *Id.* at 1169. The Ninth Circuit concluded that the gang expert's reliance on "'street intelligence' for his opinions about gang membership and tenets" was appropriate under Rule 702 because gangs "do not have by-laws, organizational minutes, or any other normal means of identification" and "the information upon which [the expert] relied is of the type normally obtained in his day-to-day police activity." *Id.* at 1170.

Consistent with *Hankey*, Special Agent Perryman developed his opinions based upon 22 years of personally observing, interviewing, and investigating AB gang members and associates within CDCR. To form his opinions in this case, Special Agent Perryman will apply his extensive experience and a reliable methodology – synthesizing overlapping layers of corroborating "source materials" gleaned from two decades of observing, interviewing, and investigating AB members, associates, and dropouts – to form his opinions. *United States v. Vera*, 770 F.3d 1232, 1239 (9th Cir. 2014) (gang expert "distilled and synthesized what he had learned through his experience."). Like the expert in *Hankey*, Special Agent Perryman's expertise is: relevant to the RICO conspiracy charging the AB as a criminal enterprise; reliable because it is based upon 22 years of information that is "routinely and reasonably" relied upon by gang investigators "in the course of their duties,"; and it will be helpful to the jury because an average juror cannot possibly know or understand the hidden and intricate sets of understandings, communications, and expectations that govern the world of a prison gang like the Aryan Brotherhood. *Locascio*, 6 F.3d at 938.

The reliability and admissibility of Special Agent Perryman's testimony and methodology under *Daubert* finds further support in *Vera*. *Vera*, 770 F.3d at 1237–40. In *Vera*, the Ninth Circuit upheld the district court's decision to admit expert testimony by the case agent in a gang case. *Id.* In that case, the expert testified about a gang's territory, the meaning of a specific intercepted call, that the gang required non-member drug dealers to pay a tax, and that one of the defendants was likely the leader of the gang. *Id.* at 1238–39. The court held that this testimony was reliable (and did not violate *Crawford*) because the expert synthesized various sources of information—including his interactions with gang members— but did not merely repeat what others told him during the investigation. *Id.* at 1239.

Consistent with these principles, Special Agent Perryman will testify about his interpretation of

UNITED STATES' OPPOSITION TO DEFS.'S MOT. TO EXCLUDE SPECIAL AGENT CORY PERRYMAN

5

"jargon or coded messages" used by the AB, he will describe "membership rules," explain "organizational hierarchy," explain how a method of killing enemies would indicate that a specific murder was an AB murder, describe the AB code of conduct, and the related topics detailed in the Perryman disclosures. *Hankey*, 203 F.3d at 1169; *Vera*, 770 F.3d at 1239.

Finally, Special Agent Perryman's reliability is established by comparison of his qualifications with the detective approved in *Holguin*. In *Holguin*, the Ninth Circuit found that a gang expert was reliable who had "nearly ten years with the Whittier Police Department," "investigated hundreds of gang crimes, many involving [the defendant's gang]," and "received information about the gang from contacts with members and associates, confidential informants, crime victims, and other investigators." *Id.* at 856. Based upon this background, the officer "could reliably use his own experience as an investigator, including what he learned from these sources, to form conclusions about how [the defendant's gang] operates and "testify reliably about gang terminology familiar from investigations." *Id.*

Like the officer in *Holguin*, Special Agent Perryman has extensive experience investigating the Aryan Brotherhood. This experience includes: (1) interviews of AB gang members and associates numbering in the hundreds since 2001; (2) formal training in gang structure and organization, including specific training about the structure and organization of the AB; (3) his current responsibilities include oversight of the departmental gang management policy and conducting major criminal investigations with particular focus on gang activity and enterprise activities, including crimes committed by AB members and associates; (4) he has reviewed hundreds of police reports and rules violation reports documenting crimes and other activities committed by AB members, which corroborate the statements of debriefing AB members; (5) gang investigators – both inside CDCR and outside – regularly consult him about their AB-related cases and explain the facts of their cases to him; (6) his teaching of classes for law enforcement about the AB on multiple occasions, as detailed on page 2 of his *curriculum vitae*, including providing over 100 hours of training to law enforcement officials about gangs; (7) his extensive personal knowledge of the AB from personally interviewing debriefing AB members within the CDCR; (8) his observations made throughout his extensive career within the various assignments detailed in his *curriculum vitae*; (9) his years working with AB gang members and associates,

investigating AB gang members and associates, and crimes committed by or on behalf of the AB; (8) his experience hearing the admissions of the specific gang members and associates involved in the criminal affairs of the AB; and (10) his communication and work with hundreds of other gang members, including members and associates of the AB.  ECF 1686, at 28.  Because Special Agent Perryman's experience and expertise is even more robust than the officers approved in *Hankey* and *Holguin*, it follows that Special Agent Perryman can reliably testify under Rule 702 and assist the jury in understanding the gang's structure and operations.  Accordingly, defendants' motion to exclude his testimony should be denied.

   2. Procedure for approving gang expert testimony under Rule 702

Rule 702 of the Federal Rules of Evidence "gives district courts 'broad latitude' to structure proceedings concerning expert testimony."  *Holguin*, 51 F.4th at 852 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999)).  To satisfy the gatekeeping function under Rule 702, district courts "must make explicit findings that the government's expert testimony was reliable."  *Holguin*, 51 F.4th at 851.  The rationale for requiring explicit reliability findings is to "ensure[] that district courts engage in the reliability inquiry and create a record of that inquiry to facilitate appellate review."  *Id.* at 853.

As discussed above, in the context of law enforcement experts, an expert's extensive experience in the subject matter establishes that his opinion is reliable.  *Id.* at 858 (noting that "reliability" "depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it") (quoting *Hankey*, 203 F.3d at 1169).  In *United States v. Alatorre*, for instance, the Ninth Circuit found a drug expert's testimony reliable when "he had twelve years of experience as a special agent, specialized training in the methods by which narcotics are used and sold, and extensive knowledge of marijuana smuggling as a result of his work as a case agent and in other capacities."  222 F.3d 1098, 1104 (9th Cir. 2000).  Likewise, in *United States v. Padilla*, the Ninth Circuit found a gang expert's testimony reliable based on his "extensive experience with Los Angeles street gangs."  387 F.3d 1087, 1094 (9th Cir. 2004).

In other words, a law enforcement expert does not need to "articulate a systematic methodology" in order for his expert testimony to be reliable.  *Holguin*, 51 F.4th at 858.  Rather, under well-established

Ninth Circuit law, a law enforcement expert's testimony is reliable when "the witness demonstrates that his opinion is based on substantial 'knowledge and experience,' and/or 'specialized training' in the conduct of criminal enterprises." *United States v. Nelson*, No. 17-CR-00533-EMC-1, 2021 WL 75757, at *6 (N.D. Cal. Jan. 8, 2021) (quoting *Hankey*, 203 F.3d at 1169; *Alatorre*, 222 F.3d at 1104).

To make explicit findings of reliability, district courts enjoy "broad latitude with regard to how to determine reliability," *id.* at 851 (quotations omitted), because "gatekeeping can be performed through numerous procedures – such as motion *in limine* briefing and oral argument, voir dire, and cross-examination at trial." *Id.* at 852 (citations omitted). In *Holguin*, the Ninth Circuit explained that a district court need only "conduct some proceeding, focused on the reliability of expert testimony, such as a *Daubert* hearing or voir dire of proffered expert testimony." *Id.* at 853. The voir dire should focus on whether the witness has "a reliable basis in the knowledge and experience of [the relevant] discipline." *Kumho Tire*, 526 U.S. at 149.

In this case, the Court can satisfy the Rule 702 gatekeeping function by holding a brief, focused hearing to permit limited voir dire into Special Agent Perryman's qualifications in order to find the requisite reliability and comply with *Holguin*. *United States v. Valencia-Lopez*, 971 F.3d 891, 899 n.5 (9th Cir. 2020) ("[V]oir dire is a recommended method for the district court to conduct a reliability determination and discharge its gatekeeping obligations.") (cited approvingly in *Holguin*, 51 F.4th at 853). This procedure will permit the Court to make the explicit finding that Special Agent Perryman expertise is reliable for purposes of Rule 702 and such a hearing should not be difficult to complete in a short period of time.

**B.    Defendants' theories for exclusion of Special Agent Perryman's testimony are meritless**

Defendants first claim that Special Agent Perryman's testimony is "inherently unreliable" because it "is unclear how Perryman reached these opinions, as the government has not identified with whom Perryman spoke or what reports he relied upon (other than the non-*Mirandized* interview of inebriated inmates Sylvester and Yandell)." ECF 1800, at 9. Defendants' suggestion that reliability is tied to their desire to know more about the bases for Special Agent Perryman's opinions was already rejected by this Court. ECF 1800, at 5 ("And contrary to the defense arguments, the government's

1 notice explains how Perryman came to his opinions."). Reiteration of a failed discovery motion
2 argument fares no better in their *Daubert* motion.

3       Next, defendants attempt to generate a basis to exclude Special Agent Perryman by relying
4 heavily on the 2018 interviews of Yandell and Sylvester. ECF 1800, at 13 ("More dramatically, the
5 Court has before it dramatic evidence of precisely how unreliable Perryman's methodology is, in the
6 form of non-*Mirandized*, secretly-recorded interviews of inebriated inmates in an inherently coercive
7 environment."); *Id.* ("Perryman's deliberate exploitation of a coercive prison environment to interview
8 incapacitated inmates – without the protections of *Miranda* – and his explicit reliance on that interview
9 in the FRE 702 showing, reveal a subjective methodology that is inherently unreliable and does not meet
10 *Daubert*'s gatekeeping demands."). In these sections of their brief, defendants make plain that they used
11 their suppression motion as a vehicle to try and undermine Special Agent Perryman's reliability. That
12 effort failed. The Court ruled the incriminating admissions made by Yandell and Sylvester are
13 admissible. ECF 1853 (minutes) (denying motion to suppress). Defendants' heavy reliance on their
14 suppression gambit undermines their theories for exclusion under *Daubert*. By incorporating their failed
15 theory of suppression, they do nothing to demonstrate that Special Agent Perryman's experience,
16 expertise, and methodology is unreliable.

17       Defendants also claim that Special Agent Perryman's "outsized reliance on debriefing reports is
18 particularly unreliable because of the unique institutional structure of the CDCR, and the rules that it has
19 adopted." ECF 1800 at 9. This claim is puzzling because, as discussed above, the Ninth Circuit has
20 approved gang expert testimony based upon experience less robust than that of Special Agent Perryman
21 in circumstances where the expertise was grounded in "street intelligence." Those cases approved
22 processes that were much less rigorous than that applied by Special Agent Perryman as a CDCR gang
23 investigator.

24       For example, in *Hankey*, the Court approved reliability where the gang expert "devoted years
25 working with gangs," "heard the admissions of the specific gang members involved," and
26 "communicated and worked undercover with thousands of other gang members." *Hankey*, 203 F.3d at
27 1169. Similarly, in *Holguin*, the Court found reliability based upon a gang expert who had served
28 "nearly ten years" as a police officer, "investigated hundreds of gang crimes," and "received information

UNITED STATES' OPPOSITION TO DEFS.'S MOT. TO
EXCLUDE SPECIAL AGENT CORY PERRYMAN      9

about the gang from contacts with members and associates, confidential informants, crime victims, and other investigators." *Holguin*, 51 F.4th at 856.  As defendants' own exhibits establish, Special Agent Perryman's methodology adheres to a mandated protocol that is required by CDCR (based upon California regulations) for debriefing gang members.  The protocol, detailed below, establishes reliability under Rule 702.

"Debriefing" within CDCR occurs when a validated inmate gang member formally disassociates with his gang by meeting with prison officials, renouncing his membership in the gang, and identifying other gang members and associates.  Cal. Code Regs. tit. 15, § 3378.5; ECF 1800-5, at 2.  "The purpose of the debrief interview is to provide staff with information about" the gang's "structure, activities, and affiliates."  Cal. Code Regs. tit. 15, § 3378.5(b).

The first step in the debriefing process is the "interview phase" in which the inmate "provides staff an autobiography" detailing his involvement in gang activity within the CDCR.  *Id.*  After the autobiography is prepared, CDCR gang investigators must then verify its "completeness and accuracy" by corroborating the information through independent sources.  *Id.*[2]  An inmate who initiates the debriefing process "is free to terminate the debrief process at any time" and is not required to waive the right against self-incrimination.  Cal. Code Regs. tit. 15, § 3378.5(c).  If the inmate invokes his or her Fifth Amendment right during the debriefing process, that decision "shall not affect the determination of whether the subject successfully participated in the debrief process."  Cal. Code Regs. tit. 15, § 3378.5(e).

In order for a debriefing inmate to be considered reliable, CDCR gang investigators evaluate a number of factors found in the California regulations.

> A confidential source's reliability may be established by one or more of the following criteria:
>
> (1) The confidential source has previously provided information which proved to be true.

---

[2]   In this part of the process, investigators seek to "reasonably conclude" whether "the subject has dropped out" of the gang and can be safely reclassified within CDCR as not active in gang activity "based upon the offender's needs in conjunction with the security of the institution, as well as, the safety and security of staff and other offenders."  Cal. Code Regs. tit. 15, § 3378.5(b).

(2) Other confidential source have independently provided the same information.

(3) The information provided by the confidential source is self-incriminating.

(4) Part of the information provided is corroborated through investigation or by information provided by non-confidential sources.

(5) The confidential source is the victim.

(6) This source successfully completed a polygraph examination.

Cal. Code Regs. tit. 15, § 3321(c).

Each of these factors enhance reliability because they require verification and corroboration from independent sources. In particular, the cited factors require an investigator in Special Agent Perryman's position to seek information from independent investigative reports, confidential sources, material from other investigative agencies, and non-confidential sources to verify what the debriefing gang member is admitting. This process creates a reliable methodology for assessing gang-related information because it requires comparing a debriefing inmate's account to independent, verifiable sources of information.

The defendants' motion provides a fictional portrayal of the debriefing process. Defendants' brief does not cite to any facts or evidence to support the process as they describe it. For example, they describe the debriefing process as a "horrible Gordian knot for those who wish to distance themselves from alleged prison gangs" and, without evidence, they assert that "the detailed debrief must disclose what Perryman and his prison cohorts want to hear" or face being "summarily ejected from the process." ECF 1800, at 9. This overheated rhetoric has nothing to support it. As such it, should be disregarded. It also runs counter to the California regulations cited above and attached as exhibits to the defendants' motion.

In another strange passage, defendants argue, "Perryman's reliance on non-*Mirandized* debriefing reports in the *Yandell* trial is directly against the regulatory intent of the CDCR, which mandates that the reports are not to be used in criminal proceedings." ECF 1800, at 10. Defendants misread the regulation. The full text of the applicable regulation reads:

> A waiver of the right against self-incrimination is not a precondition of an offender (subject) undergoing the debrief process since the information is provided for administrative purposes. A subject shall not be required to

>complete the debrief process and the subject is free to terminate the debrief process at any time. If, during the debrief interviews, a subject makes a statement that tends to incriminate the subject in a crime, the STG coordinator/investigator may stop any discussion about the matter and continue on with another topic. Prior to questioning the subject about the incriminating matter, the subject must waive the right against self-incrimination (Miranda). The decision by the subject to exercise the right against self-incrimination shall not affect the determination of whether the subject successfully participated in the debrief process.

Cal. Code Regs. tit. 15, § 3378.5(c).  Thus, while it is true that the purpose of the debriefing process is to determine administratively whether the inmate is sincere about separating from his gang (and not to gather incriminating evidence against him), it does not follow that the information provided to Special Agent Perryman during this process cannot be used to develop expertise about gangs for use in a criminal proceeding.  His testimony in this case does not run counter to any CDCR regulations because none of the trial defendants provided information to him during the debriefing process.  Thus, defendants' argument is based upon a misapprehension of the regulation.[3]

Defendants next attack the CDCR debriefing process by claiming that un-*Mirandized* information is somehow less reliable than *Mirandized* information within the context of gang expert reliability.  ECF 1800, at 10.  They argue, "A review of the government's proffers reveals that Perryman's purported methodology is completely unreliable" because "the vast majority of the information upon which Perryman relies appears to be debriefing reports of cooperating inmates" which are "inherently unreliable."  ECF 1800, at 12–13.

At the outset, defendants do not cite to a single authority or piece of evidence to support these arguments.  Next, the absence of a *Miranda* warning before an investigator receives information from a cooperative criminal source is unremarkable as an investigative technique – indeed, it is how most state and federal investigators build cases when following leads provided by confidential sources.  Indeed, most trained investigators take information from confidential sources and then seek to corroborate that information through independent evidence.

---

[3]  And, as explained in the government's opposition to the motion to suppress, ECF 1808, at 1–2, the government does not intend to elicit testimony from Special Agent Perryman about the admissions made to him by Yandell and Sylvester during its direct examination of him.

More to the point, the reliability factors built into the CDCR debriefing process result in a rigorous vetting process designed to test and verify the debriefing inmate's reliability through investigative corroboration. Cal. Code Regs. tit. 15, § 3321(c). As discussed, each of these factors focus the investigator on verification of information provided through independent, overlapping sources. This mandated process of corroboration greatly increases the reliability of the debriefing process and, in turn, creates a reliable foundation for the formation of an expert opinion. By comparing a debriefing inmate's account to independent reliable sources of information, CDCR gang investigators follow a reliable methodology to acquire gang-specific expertise. For these reasons, defendants' motion to exclude Special Agent Perryman should be denied.

## IV.     CONCLUSION

The government respectfully requests that the Court deny defendants' motion to exclude Special Agent Perryman's testimony.

Dated:  February 5, 2024

PHILLIP A. TALBERT
United States Attorney

By:  /s/ *Jason Hitt*
JASON HITT
Assistant United States Attorney