PHILLIP A. TALBERT
United States Attorney
JASON HITT
ROSS PEARSON
DAVID SPENCER
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:19-CR-00107-KJM |
|---|---|
| Plaintiff, | UNITED STATES' OPPOSITION TO BILLY SYLVESTER'S MOTION *IN LIMINE* RE: CELLEBRITE EVIDENCE |
| v. | |
| RONALD YANDELL, BILLY SYLVESTER, and DANNY TROXELL, | [ECF 1840] |
| | DATE: February 9, 2024 |
| Defendants. | TIME: 9:00 a.m. |
| | COURT: Hon. Kimberly J. Mueller |

Defendant Billy Sylvester ("Sylvester" or "defendant") filed a motion *in limine* to prohibit introduction of "the Cellebrite report along with data from the phone, including text messages, recipients and senders of messages, and date and time of messages." ECF 1840, at 1.  The motion should be denied because an agent generating a Cellebrite report is not subject to expert notice requirements.

I.      **ANALYSIS**

A.      **An agent's use of Cellebrite to extract information from a phone is not subject to Rule 702 and, instead, may be presented through fact testimony based on personal knowledge.**

The government's presentation of evidence in its case-in-chief will include brief testimony from one special agent who will discuss two exhibits generated from a Cellebrite extraction that he performed. The extraction is from the wiretapped phone in this case; agents seized it from Yandell's prison cell at CSP–Sacramento on October 25, 2016. Sylvester incorrectly asserts that "the proposed exhibits that are Cellebrite reports were created [by] Cellebrite data extraction and *not* by any proposed government witnesses." ECF 1840, at 4 (emphasis in original).

To the contrary, the government's witness list includes retired DEA Special Agent George Montserrat. Disclosures in the case demonstrate that Special Agent Montserrat used Cellebrite to extract information from Yandell's wiretapped phone (designated as DEA Ex. N-140), and prepared an extraction report for that phone. AB_00027501. The government will use one page of the report to establish the phone number associated with Yandell's phone at the time of the extraction. The government will also introduce a redacted two-page list of "contacts." The redacted list shows various co-conspirators from the case were saved in the seized phone discovered in Yandell's cell.

A fact witness may testify as to matters about which the witness has personal knowledge, so long as the evidence is otherwise admissible, Fed. R. Evid. 602. Nothing about Special Agent Montserrat's basic testimony requires "scientific, technical, or other specialized knowledge" to assist the jury in understanding that he followed basic instructions and extracted data using Cellebrite. Fed. R. Evid. 702. As Sylvester acknowledges, the testimony is not subject to expert notice requirements. *See* ECF 1840, at 7 ("[T]he Second and Ninth Circuits allow a lay witness to present Cellebrite evidence under more lax evidentiary standards."); *United States v. Williams*, 83 F.4th 994, 998 (5th Cir. 2023) ("Without a showing of specialized knowledge, the mere use and understanding of a Cellebrite extract at trial is insufficient to require an expert."). For this reason, there is no need for a *Daubert* hearing to assess the reliability of an agent using Cellebrite to extract basic information from a cell phone.

The agent's testimony will explain the basic foundational steps he took to use the Cellebrite by

following basic software prompts to obtain data from the phone.  *United States v. Seugasala*, 702 F. App'x 572, 575 (9th Cir. 2017) (unpublished).  He will also explain that, during the extraction process, he could not manipulate, alter, or modify phone data through Cellebrite.  Fed. R. Evid. 901(b)(1) (testimony of witness with knowledge).  Once the extraction was complete, he used Cellebrite to generate a report and, from that report, the government will introduce a few pages into evidence.  As discussed, such testimony is not based on technical or specialized knowledge and therefore not subject to Rule 702 requirements.  *United States v. McLeod*, 755 F. App'x 670, 673 (9th Cir. 2019) (unpublished) ("In short, Detective Jackson testified about his use and interaction with Cellebrite—and how he extracted data from one of the victim's phones in this case. We have previously allowed testimony similar to Detective Jackson's testimony without requiring that the testimony meet Rule 702's expert testimony requirements.") (citing *Seugasala*, 702 F. App'x at 575); *accord Williams*, 83 F.4th at 998.

Moreover, Special Agent Montserrat will not opine about the reliability or any other aspect of the Cellebrite technology.  In other words, his testimony is not based on technical or specialized knowledge.  *Williams*, 83 F.4th at 998; *United States v. Ovies*, 783 F. App'x 704, 707 (9th Cir. 2019) (unpublished); *United States v. Marsh*, 568 F. App'x 15, 17 (2d Cir. 2014) (unpublished) (explaining that agent's Cellebrite testimony "did not purport to render an opinion based on the application of specialized knowledge to a particular set of facts; nor did his testimony turn on or require a technical understanding of the programming or internal mechanics of the technology.").  To the extent the defendant seeks to cross-examine the witness about the reliability of Cellebrite, such questions would go to the weight of the agent's testimony and the report generated from the process, not the admissibility of three pages from a Cellebrite report.[1]

---

[1] In fairness to Sylvester, it is possible that with the clarification provided in this brief about the narrow scope of anticipated Cellebrite evidence, he is better able to assess the minimal evidence (along with no cell site locational data) that the government intends from the Cellebrite process during its case-in-chief.  *See* ECF 1840, at 9 ("In this case, without the exact parameters of what the proposed electronic evidence and opinions based on that evidence might be, the defense cannot meaningfully anticipate all the government's arguments regarding admissibility.").

B.  **Sylvester's reliance on *Ganier* and *Yu* is misplaced.**

Sylvester's reliance on *United States v. Ganier*, 468 F.3d 920 (6th Cir. 2006), is misplaced. That case did not address or discuss Cellebrite. *See Williams*, 83 F.4th at 997 ("First, *Ganier* does not mention, much less consider, Cellebrite. Second, even if it had, the computer reports at issue in *Ganier* are entirely dissimilar to a Cellebrite report."). Instead, the testimony in *Ganier* focused on an IRS "forensic computer specialist" who used "forensic software to determine what searches were run on the three computers" associated with the defendant. *Ganier*, 468 F.3d at 924. The unnamed "forensic software" used on the three computers generated "reports of a series of search terms, including examples of particular names and terms relevant to the case." *Id.* "The reports generated by the forensic software display a heading, a string of words and symbols, date and time, and a list of words" that require the agent "to apply knowledge and familiarity with computers and the particular forensic software well beyond that of the average layperson." *Id.* at 926. As the Fifth Circuit recently recognized, this description is not similar to Cellebrite and the substance of the reports in *Ganier* do not sound remotely similar to a Cellebrite extraction. For these reasons, *Ganier* is readily distinguishable from the use of Cellebrite in this case.

Similarly, *United States v. Yu*, 411 F. App'x 559 (4th Cir. 2010) (unpublished), is not case about Cellebrite. And, like *Ganier*, it is inapposite. In *Yu*, "the government relied heavily on expert testimony to link [the defendant] to images of child pornography." *Id.* at 561. In particular, the government noticed an expert witness who was "a forensic computer expert" and testified about "a variety of data extracted from the computers seized from Yu's home." *Id.* His testimony covered where within the computers he discovered the charged images, he described attribution evidence from other items discovered on the same computers, dates on which documents were accessed within the computer, and the Internet browsing history of the defendant's computers. *Id.* This type of specialized computer forensic testimony bears no similarity to Special Agent Montserrat describing the routine process of using Cellebrite to extract a phone's contents. As a result, *Yu* does not stand for the proposition that agent testimony about using Cellebrite requires expert notice or a *Daubert* inquiry into reliability. In fact, it has nothing to say about Cellebrite or testimony about Cellebrite.

**C.**   **The government does not intend to introduce "cell site-location data" in it case-in-chief.**

The second part of Sylvester's motion to exclude "cell site-location data" is moot because the government does not intend to introduce any such evidence during its case-in-chief.  *See* ECF 1840, at 6.

## II.   CONCLUSION

The Court should deny Sylvester's motion to exclude Cellebrite evidence.

Dated: February 5, 2024

PHILLIP A. TALBERT
United States Attorney

By: /s/ *Jason Hitt*
JASON HITT
ROSS PEARSON
DAVID SPENCER
Assistant United States Attorneys