PHILLIP A. TALBERT
United States Attorney
JASON HITT
ROSS PEARSON
DAVID SPENCER
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RONALD YANDELL,<br>BILLY SYLVESTER, and<br>DANNY TROXELL,<br><br>Defendants. | CASE NO. 2:19-CR-00107-KJM<br><br>UNITED STATES' PARTIAL OPPOSITION TO MOTION *IN LIMINE* REGARDING TRIAL PROCESSES AND PROCEDURES<br><br>[ECF 1825]<br><br>DATE: February 9, 2024<br>TIME: 9:00 a.m.<br>COURT: Hon. Kimberly J. Mueller |

## I.     INTRODUCTION

Defendants Ronald Yandell and William Sylvester filed a motion *in limine*, in which they seek pretrial ruling related to seven "trial processes and procedures." ECF 1825. The United States joins the defense in its requests for the Court to preclude jurors from using notes to ask questions of witnesses (Request 1), to sequester witnesses (Request 4), to prohibit witnesses from discussing testimony from anyone other than counsel or reading trial transcripts (Request 6), and to allow the parties to submit additional jury instructions (Request 7). The United States, however, opposes the remaining three defense requests.

## II. DISCUSSION

### A. The Court should deny the request to keep United States' witnesses under defense subpoena, because the defendants must subpoena their own witnesses.

The defendants ask the Court to "designate all government witnesses as under defense subpoena until released by the defense." ECF 1825 at 4–5. The Court should deny this request.

It is not the United States' responsibility to subpoena witnesses for the defense, and the defendants cite no legal authority for this request. The defendants know who they wish to call as witnesses, and they can send subpoenas just as the United States can. To avoid any confusion, the government explicitly explained in its witness that: "Defendants should not rely upon this list for a witness's appearance at trial if any defendant believes that any listed witness is needed for his case." ECF 1753, at 1.

Not only is this request legally unsupported, but it is also inconvenient for witnesses too. The United States will undoubtedly tell several witnesses that they are no longer needed for trial, thus allowing the witnesses to make other plans. But this defense request would preclude these witnesses from continuing on with their lives, because they would remain subject to the United States' subpoena even if the United States decides to no longer call them. This would effectively hold all 133 noticed witnesses hostage for this three-month trial, whether or not the defense will actually call these witnesses at trial. In addition, a number of government witness are also traveling from different states in order to testify at trial. This means defendants' proposal is even more onerous, burdensome, and unworkable.

In support of this request, the defendants make two arguments that are misleading, at best. First, the defendants claim that they would have to "duplicate subpoenas" for all 133 noticed government witnesses. ECF 1825, at 4–5. This is not true. Unless the defendants plan to call all 133 government witnesses, the defendants would only have to subpoena the witnesses that they plan to call during their cases-in-chief. And, nearly all of the government's witnesses are law enforcement officers, most of whom can be easily subpoenaed through their agency's legal coordinator.

Second, the defendants claim that there would be an "aggravated" expense to the CJA and extensive trial delays because the U.S. Marshals would need to secure incarcerated witnesses. ECF 1825, at 5. This claim is misleading, because only five of the United States' witnesses are incarcerated.

The defense complaints about the "complex system" of moving incarcerated inmates are overwrought and have no relationship to their demand to hold all 133 United States witnesses in limbo for months, waiting to see if the defendants will call them at trial. The Court should deny this request.

   **B.** **While the United States plans to give defense counsel advance notice of the witnesses it plans to call during a given trial week, no Court order is needed or appropriate.**

   The defendants move for the Court to order the United States to "provide defense counsel advance notice of witnesses to be called during an upcoming trial week, together with notice of the incidents, overt acts, FRE 403 evidence [sic], and/or acts and counts that will be the subject of an upcoming week's testimony." ECF 1825 at 5–6. The Court should deny this motion.

   Trials are inherently fluid and unpredictable, and, while the United States will have a plan of which witnesses it intends to call during a given week, that plan often changes during the week of trial based on witness availability, shifting travel schedules, and unforeseen delays. For instance, lengthy defense cross examination can cause a witness's testimony to last longer than anticipated, thus delaying other witnesses and requiring the United States to re-arrange its schedule for the week. Likewise, the United States may make a last-minute decision not to call a witness if an earlier witness's testimony ended up covering the same subject matter. Therefore, while the United States can make efforts to provide defense a rough estimate of the witnesses it plans to call during the week, trials are too fluid and unpredictable for it to provide a set list of witnesses that it is certain to call every week.

   Perhaps most troubling, the defense wants the Court to order the United States to provide a roadmap of every topic it plans to elicit from every witness in a given week. This is not how trials work, and the defendants cite no legal basis for this request. The defendants have already received extensive discovery, a detailed criminal complaint, and Jencks Act statements for the government's witnesses describing what the witness will testify about. The defendants have all the information they need to prepare to cross-examine the government's witnesses. No Court order is needed or legally justified.

   Finally, if recent history in this case is any indication, any Court order would be asymmetrical because the defendants would not comply with the Court's order to disclose their witnesses in advance of a trial week. While the defendants note that they would—"of course"—also "abide by the same disclosure order," ECF 1825, at 6, they have failed entirely to abide by other Court-ordered disclosure

UNITED STATES' PARTIAL OPPOSITION TO MOTION *IN LIMINE* REGARDING TRIAL PROCESSES AND PROCEDURES

3

deadlines, especially the one-sided Scheduling Order that worked a great prejudice to the government's ability to prepare for trial in an orderly fashion. The defendants ignored the Court's order to timely disclose their expert witnesses.[1] They ignored the Court's order to provide a witness list.[2] They ignored the Court's order to provide an exhibit list. And they ignored the Court's order to provide the United States with defense exhibits. Indeed, to date, the defendants have not provided the United States with any exhibits or witnesses they plan to call in the defense case—witnesses they undoubtedly have identified given that they anticipate that their case will last four trial weeks. Given this recent history of the defendants ignoring court-ordered disclosure deadlines, the burden of any order requiring the "parties" to provide early notice of their planned witnesses for the week would likely fall only on the United States.

### C. The United States has no objection to sequestering witnesses, but the Court should not order the United States' designated case agent to "testify first."

Finally, the defendants move for the Court to order the United States' case agent—who is exempt from the rule of sequestration of witnesses—to testify first at trial. ECF 1825 at 9–10. The Court should deny this request.

The defendants provide no reason to micromanage the government's witness order and force the case agent to testify first. While the Court has the authority to "exercise reasonable control" over the mode and order of examining witnesses, Fed. R. Evid. 611(a), "this discretion should be used sparingly and good reason should exist before the court intervenes in what is essentially a matter of trial strategy." *United States v. Machor*, 879 F.2d 945, 953–54 (1st Cir. 1989).

Here, there is no good reason for the Court to interfere in the United States' trial strategy as to when to call its case agent. The United States plans to designate DEA Special Agent Brian Nehring as its case agent, and call him twice—once to lay foundation for the wiretaps conducted in this case and a second time to explain his role in purchasing drugs from Aryan Brotherhood associates. *See United*

---

[1] Defense expert disclosures were due October 27, 2023. ECF No. 1722, at 2, ¶ 7. Yandell disclosed the name of his expert, Paul Medina, on November 13, 2023, but not any of Medina's opinions. *See* Order, ECF No. 1796 (ordering Yandell to disclose Medina's opinions and the bases and reasons for them). Defendants have not disclosed any other expert witnesses.

[2] Defense witness and exhibit lists were due January 16, 2024. ECF No. 1722, at 2, ¶ 11.

UNITED STATES' PARTIAL OPPOSITION TO MOTION *IN LIMINE* REGARDING TRIAL PROCESSES AND PROCEDURES

4

*States v. Dimora*, 843 F. Supp. 2d 799, 822 (N.D. Ohio 2012) ("[C]ourts have approved of the practice of recalling witnesses to testify to discrete incidents in cases involving complex conspiracies or activities occurring over a long period."). There is no reason for the Court to order Special Agent Nehring to testify before the rest of the United States' witnesses. To the contrary, requiring Special Agent Nehring to testify before other witnesses would likely lead to significant confusion from the jury, which would have no understanding of the Aryan Brotherhood or the defendants in this case if Special Agent Nehring were to testify before other foundational witnesses. *See United States v. Bell*, No. CR 17-20183, 2022 WL 1014497, at *5 (E.D. Mich. Apr. 5, 2022) (rejecting defense request to require victims to testify before an expert where requiring victims to testify first would "leave the jury without adequate information to properly contextualize the victims' testimony"). This is not the type of rare case in which the Court should "intervene[]" in the United States' "matter of trial strategy" and require Special Agent Nehring to testify before all other witnesses. *Machor*, 879 F.2d at 954.

### III.  CONCLUSION

The United States asks the Court to deny the contested portions of defendants' motion *in limine* regarding trial processes and procedures as set forth in this brief.

Dated:  February 5, 2024

PHILLIP A. TALBERT
United States Attorney

By: /s/ *Ross Pearson*
JASON HITT
ROSS PEARSON
DAVID SPENCER
Assistant United States Attorneys