PHILLIP A. TALBERT
United States Attorney
JASON HITT
ROSS PEARSON
DAVID SPENCER
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RONALD YANDELL,<br>BILLY SYLVESTER, and<br>DANNY TROXELL,<br><br>Defendants. | CASE NO. 2:19-CR-00107-KJM<br><br>UNITED STATES' OPPOSITION TO MOTION *IN LIMINE* TO EXCLUDE MURDER PHOTOS IN A MURDER CASE<br><br>[ECF 1832]<br><br>DATE: February 9, 2024<br>TIME: 9:00 a.m.<br>COURT: Hon. Kimberly J. Mueller |

## I.  INTRODUCTION

Defendants Ronald Yandell and William Sylvester filed a motion *in limine*, joined by Danny Troxell, to exclude photos and videos of individuals that Aryan Brotherhood members—including Sylvester himself—murdered. ECF 1832; ECF 1845 (joinder). This Court should deny the motion.

A grand jury charged each of the defendants with participating in an enterprise that engaged in murders, and it also charged Yandell and Sylvester with murder in aid of racketeering. Photos of the victims prove that the victims were, in fact, murdered: that they were killed intentionally by being repeatedly stabbed. Even more importantly, the photos and videos also prove that these murders were Aryan Brotherhood murders because they show that the method of murdering the victims—by repeatedly stabbing them even beyond the amount of force needed to kill the victim—is consistent with

the modus operandi used by Aryan Brotherhood members to kill its enemies. Trial evidence will show that the brutality of AB murders is by design in order to instill fear and thereby enhance the power and control of the Aryan Brotherhood over the California prison system and AB subordinates. Thus, the brutality of the murders at issue in this case is critical evidence of what is likely to be the most heavily contested issue at trial—whether the murders were committed on behalf of the charged RICO enterprise, the Aryan Brotherhood.

In light of this probative value, these photos are not so unduly prejudicial that Rule 403 requires the Court to exclude them, and overwhelmingly, courts allow the prosecution to introduce photos of murder victims in murder cases. The Court should follow this overwhelming body of case law and allow the United States to introduce photos and videos of the five victims of Aryan Brotherhood murders charged in this case.

## II.   FACTS

From 2011 to 2019, Yandell, Sylvester, and Troxell were all influential members of the Aryan Brotherhood who discussed, ordered, and (for Sylvester) personally committed murders. Yandell and Sylvester are personally charged with committing and ordering murders, and all three defendants are charged with conspiring with their fellow Aryan Brotherhood members and associates to violate RICO by, among other things, committing murders.

At trial, the United States plans to present a handful of photographs and videos of five murders committed by Aryan Brotherhood members. First, in 2011, Sylvester murdered victim Ronald Richardson by stabbing him repeatedly with an inmate-made knife—and continuing to do so even after Richardson was lying, motionless, on the ground and guards were yelling at Sylvester to stop.

Next, a few years later, two Aryan Brotherhood members murdered rival gang member Hugo Pinell in a similar fashion: by stabbing him in the neck and back repeatedly with inmate-made knives, and continuing to stab him over and over even after guards yelled at them to stop. At trial, the United States will present evidence through wiretapped calls and other witnesses that Yandell personally ordered the inmates to murder Pinell and told them that they would become Aryan Brotherhood members if they succeeded.

Third, in 2016, another inmate, Doug Maynard, was murdered by Aryan Brotherhood members

in High Desert State Prison. After the murder, Yandell called fellow Aryan Brotherhood member Brant Daniel and explained that Yandell had Maynard stabbed when Maynard and Yandell were in prison together in Sacramento. Yandell then told Daniel that Maynard had just been killed by Yandell's "homeboy" and Daniel and Yandell shared a laugh about the details of the murder.

Just a few weeks later, Daniel himself committed a murder—attacking Zachary Scott, stabbing him repeatedly with an inmate-made weapon even after guards ordered him to stop. By that time, not only had Yandell and Daniel discussed other Aryan Brotherhood murders, but Yandell had also called Daniel to give him a list of rival gang members, and he directed Daniel to confront those rival gang members and attack them if they did not denounce their gangs.

Finally, in 2018, Aryan Brotherhood members Jake Corbett and Pat Brady murdered Aryan Brotherhood associate Donald Pequeen, once again by stabbing him with inmate-made weapons and continuing to attack and stab him repeatedly, even after guards ordered them to stop. Once again, Yandell was caught on wiretapped calls a few years earlier discussing Pequeen (who goes by the nickname "Joker") and explaining that "Joker" had been a disappointment to the Aryan Brotherhood because of his drug use.

All five murders are charged in the Superseding Indictment as special sentencing factors in support of the RICO conspiracy count, and Yandell and Sylvester are each charged with murder in aid of racketeering.

### III.   DISCUSSION

The defendants are charged with committing murders and conspiring to conduct the affairs of an enterprise that, among other things, commits murders. For each of these murders, the United States must prove that the victims were killed with "malice aforethought." Cal. Penal Code § 187. Malice aforethought may be either express or implied. *People v. Elmore*, 59 Cal. 4th 121, 132 (2014) (citing Cal. Pen. Code § 188). Express malice is defined as "a deliberate intention unlawfully to take away the life of a fellow creature." Cal. Pen. Code § 189(a)(1). "Malice is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." Cal. Pen. Code § 189(a)(2); *see also Elmore*, 59 Cal. 4th at 133 ("Malice is implied when an unlawful killing results from a willful act, the natural and probable consequences of

which are dangerous to human life, performed with conscious disregard for that danger."). Under either express or implied malice aforethought, the United States must prove that the murders were intentional. *See Elmore*, 59 Cal. 4th at 133 ("[M]alice requires an intent to kill . . . .")

Autopsy and crime scene photographs are commonly admitted as evidence in murder trials. *See, e.g., United States v. Brady*, 579 F.2d 1121 (9th Cir. 1978) (rejecting defendant's argument that crime scene photographs depicting the victim laying on the floor when the police arrived were highly inflammatory and should have been excluded). Such photos are relevant because they have a tendency to prove an element of the crime. *See* Fed. R. Crim. Proc. 401. They should only be excluded when their probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Crim. Proc. 403. "Rule 403, however, is 'an extraordinary remedy to be used sparingly because it permits the trial court to exclude otherwise relevant evidence.'" *United States v. Mende*, 43 F.3d 1298, 1302 (9th Cir. 1995) (quoting *United States v. Patterson*, 819 F.2d 1495, 1505 (9th Cir. 1987)). "Under the terms of the rule, the danger of prejudice must not merely outweigh the probative value of the evidence, but *substantially* outweigh it." *Id.* (emphasis in original); *see also United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) ("Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403. Unless trials are to be conducted as scenarios, or unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing."). "Unfair prejudice" means "any tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *See* Fed. R. Evid. 403 Advisory Committee Notes; *see also Old Chief v. United States*, 519 U.S. 172, 180 (1997) (noting that "unfair prejudice" refers to "the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged"). And the "unfair prejudice" must "not merely outweigh the probative value of the evidence, but *substantially* outweigh it." *Mende*, 43 F.3d at 1302 (emphasis in original).

Here, the murder photos and videos prove that the Aryan Brotherhood members killed their victims with malice aforethought, because they prove that the killing was intentional, not accidental. The photos and videos show that the murders were premeditated, planned out, orchestrated, and the several stab wounds show that the murders took place over the course of several seconds, an indication that the

Aryan Brotherhood members killed their victims intentionally, leaving no doubt that the victims were dead. The murder photos and videos paint the clearest picture of the extent of this planned, intentional killing.

The murder photos and videos are also critical evidence that the murders were indeed racketeering acts committed on behalf of the Aryan Brotherhood enterprise. For the Count One RICO conspiracy, the United States must prove a pattern of racketeering activity—that is, that the Aryan Brotherhood engaged in a pattern of crimes that "embraced the same or similar purposes, results, participants, victims, or methods of commission, or were otherwise interrelated by distinguishing characteristics." Ninth Cir. Model Crim. Jury Instr. No. 18.14. The brutality and gruesomeness of Aryan Brotherhood murders are a key part of their purpose, and also showing similar "methods of commission" and "distinguishing characteristics" between the different racketeering acts in this case. As the Superseding Indictment alleges, and as trial evidence will show:

> The Aryan Brotherhood enforces its rules of conduct and promotes discipline among the enterprise by murdering, attempting to murder, conspiring to murder, assaulting, extorting, and threatening those who either violate the rules or pose a threat to the enterprise. The Aryan Brotherhood also uses murder, the threat of murder, and assault to preserve, protect, and expand its position of power within the California prison system. Prison stabbings committed by Aryan Brotherhood members are generally executed in a brutal manner with the purpose of leaving a lasting impression on other inmates. White inmates are a minority in every California prison. Therefore, Aryan Brotherhood-ordered prison attacks are often particularly gruesome. These kinds of attacks are also committed in order to deter rivals from confronting the Aryan Brotherhood's members and associates, often serving to warn other would-be attackers that they risk severe retaliation.

ECF 1375, Superseding Indictment, ¶ 10.

Although well over 1,000 photos of these murder victims were taken, the United States has selected only a small percentage of photos that it plans to present to prove that these murders occurred and how they occurred. While the defendants do not want the jury to see what they and their fellow Aryan Brotherhood members did to the victims, the law gets in the way. It is well-established that the prosecution has a right to prove its case by the evidence of its own choice, as the Supreme Court explained in *Old Chief*:

UNITED STATES' OPPOSITION TO MOTION *IN LIMINE* TO EXCLUDE MURDER PHOTOS IN A MURDER CASE

5

> The "fair and legitimate weight" of conventional evidence showing individual thoughts and acts amounting to a crime reflects the fact that making a case with testimony and tangible things not only satisfies the formal definition of an offense, but tells a colorful story with descriptive richness. Unlike an abstract premise, whose force depends on going precisely to a particular step in a course of reasoning, a piece of evidence may address any number of separate elements, striking hard just because it shows so much at once; the account of a shooting that establishes capacity and causation may tell just as much about the triggerman's motive and intent. Evidence thus has force beyond any linear scheme of reasoning, and as its pieces come together a narrative gains momentum, with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict. This persuasive power of the concrete and particular is often essential to the capacity of jurors to satisfy the obligations that the law places on them. Jury duty is usually unsought and sometimes resisted, and it may be as difficult for one juror suddenly to face the findings that can send another human being to prison, as it is for another to hold out conscientiously for acquittal. When a juror's duty does seem hard, the evidentiary account of what a defendant has thought and done can accomplish what no set of abstract statements ever could, not just to prove a fact but to establish its human significance, and so to implicate the law's moral underpinnings and a juror's obligation to sit in judgment. Thus, the prosecution may fairly seek to place its evidence before the jurors, as much to tell a story of guiltiness as to support an inference of guilt, to convince the jurors that a guilty verdict would be morally reasonable as much as to point to the discrete elements of a defendant's legal fault. Cf. *United States v. Gilliam,* 994 F.2d 97, 100–102 (CA2), cert. denied, 510 U.S. 927, 114 S.Ct. 335, 126 L.Ed.2d 280 (1993).

*Old Chief*, 519 U.S. at 187–88.

In the context of murder cases specifically, this means that the United States has the right to prove its case by introducing photos to prove that a murder occurred. Courts overwhelmingly allow the prosecution to introduce photos or videos of the victim in a murder case.[1] This makes sense, because the

---

[1] *See, e.g., United States v. Mitchell*, 502 F.3d 931, 968 (9th Cir. 2007), *cert. denied*, 553 U.S. 1094 (in capital murder proceedings, probative value of photographs depicting post-mortem decapitation and dismemberment was not outweighed by the potential for undue prejudice; the evidence was relevant to show motive, premeditation, and consciousness of guilt, as it tended to show that defendant needed to, and tried to, obscure the identity of his victims in order to have an untraceable vehicle for use in a subsequent robbery that he and his cohorts planned to commit, and, beheading and dismembering victims to conceal who the victims were also shed light on the veracity of defendant's theory of defense, that he was present but did not participate in the killings, because a glove linked to defendant through DNA evidence was found in the hole where severed parts were buried, tending to show participation in the mutilation, and thus participation in the killings); *Rivers v. United States*, 270 F.2d 435 (9th Cir. 1959) (admitting photos of dismembered portions of victim's body over defense objection); *United States v. Brown*, 441 F.3d 1330, 1361–63 (11th Cir. 2006), *rehearing en banc denied*, 180 Fed. Appx. 147, *cert. denied*, 549 U.S. 1182 (in prosecution for murder of federal employee, district court did not abuse its discretion by admitting during guilt phase color photographs of victim's body, which had been stabbed multiple times, since probative value was not outweighed by prejudicial value; photos were

prosecution has an interest to use "the power of conventional evidence" "in all its particularity to satisfy the jurors' expectations about what proper proof should be." *Old Chief*, 519 U.S. at 188. And in a murder case, the jury expects proof that the murder occurred—they expect a body. *Cf. id.* ("Some such

---

probative of fact of death, number and nature of stab wounds, and presence of aggravating factor of heinous/cruel manner of offense, and were not cumulative of coroner's testimony as to cause of death); *United States v. Sarracino*, 340 F.3d 1148, 1168–69 (10th Cir. 2003), *cert. denied*, 540 U.S. 1131 (district court did not abuse its discretion in admitting photograph which depicted victim's body before it was removed from car and showed the condition of the body when it was found, in murder prosecution, although prosecution argued that the photograph was evidence of the appearance of the victim when the defendants left him; photograph gave an indication, although an imperfect one, of how the victim appeared to defendants at the end of their fight, and without the photo, the prosecution would have been handicapped in its ability to convey the nature and extent of the beating to the jurors); *United States v. Treas-Wilson*, 3 F.3d 1406, 1410 (10th Cir. 1993), *cert. denied*, 510 U.S. 1064 (district court did not abuse its discretion in admitting autopsy and crime scene photographs in first-degree murder prosecution; photographs which graphically depicted nature of fatal wound were probative of defendant's state of mind, and court cautioned jury about their graphic content and admonished them to view photographs dispassionately); *United States v. Standish*, 3 F.3d 1207, 1209 (8th Cir. 1993) (autopsy photographs of victim's wounds were admissible to link defendant to murder, despite graphic nature of exhibits); *United States v. Boise*, 916 F.2d 497, 504 (9th Cir. 1990), *cert. denied*, 500 U.S. 934 (admission of autopsy photograph in prosecution of defendant for killing his six-week-old son did not constitute an abuse of discretion); *United States v. Soundingsides*, 820 F.2d 1232, 1242–43 (10th Cir. 1987), *rehearing denied*, 825 F.2d 1468 (admission of autopsy photographs and slides in murder prosecution was not abuse of discretion, even though photographs and slides were gruesome, where photographs and slides were substantial aid in illustrating testimony of pathologist, they had considerable probative value in proving nature of victim's injuries and cause of her death and on issue of malice aforethought, and they were not cumulative); *United States v. Brady*, 595 F.2d 359, 361–62 (6th Cir. 1979), *cert. denied*, 444 U.S. 862 (while photographs of dead victim introduced at trial for armed bank robbery wherein death occurred were not absolutely necessary to prove that killings were in course of a robbery, they were highly probative on the matter, despite stipulation that four victims "died by gunshot wounds to the head, or the deaths were caused by a gunshot wound to the head," and district court did not abuse its discretion in determining that this probative value outweighed their potential inflammatory nature); *United States v. Fleming*, 594 F.2d 598, 607–08 (7th Cir. 1979), *cert. denied*, 442 U.S. 931 (admission of numerous photographs which had probative value in that they established corpus delicti, approximate location of gunshot wounds, and fact that victim's hands were bound with rope was not an abuse of discretion); *United States v. Cline*, 570 F.2d 731, 734 (8th Cir. 1978) (though color slides of decedent's body at time it was found and after it was cleaned up were unpleasant to view, there was no abuse of discretion in admitting the same in homicide prosecution where they were a substantial aid in illustrating the testimony of pathologist concerning trajectory of bullets, which was relevant to claim of self-defense, and for impeaching defendant's statement that he went back to the body three times because he did not know if decedent was dead); *United States v. Kilbourne*, 559 F.2d 1263, 1264–65 (4th Cir. 1977), *cert. denied*, 434 U.S. 873 (photographs of homicide victim's body were properly admitted in evidence during first-degree murder trial, despite contention that the probative value was outweighed by danger of prejudice, where such photographs showed proximity of body to certain items linked to murder suspect and showed wounds which indicated that killer had acted deliberately and with premeditation); *United States v. Miguel*, 87 Fed. Appx. 67, 69 (9th 2004) (unpub.) (probative value of photographs of the victim's corpse was not substantially outweighed by danger of unfair prejudice; the photographs were relevant to the cause and manner of death, to the time of death, and to the question of whether the crime was conducted in a depraved and heinous manner indicative of a hate crime); *United States v. Aponte-Sobrado*, 793 F.Supp.2d 528, 529–30 (D. Puerto Rico 2011) (gory and gruesome photographs should not necessarily be excluded as evidence where they are significantly probative of a material issue).

UNITED STATES' OPPOSITION TO MOTION *IN LIMINE* TO EXCLUDE MURDER PHOTOS IN A MURDER CASE

7

demands they bring with them to the courthouse, assuming, for example, that a charge of using a firearm to commit an offense will be proven by introducing a gun in evidence. A prosecutor who fails to produce one, or some good reason for his failure, has something to be concerned about.").

These photos and videos also prove other relevant issues. They prove that the murders were an Aryan Brotherhood murders, because the method of murder—stabbing the victim repeatedly beyond the point where the victim is dead—is a calling card of Aryan Brotherhood murders. These photos also do "as much to tell a story of guiltiness as to support an inference of guilt, to convince the jurors that a guilty verdict would be morally reasonable as much as to point to the discrete elements of a defendant's legal fault." *Id.* at 187–88.

The defendants cite only two, out-of-district, state murder cases in which a court excluded photos or videos of the murder victim. *See* ECF 1832 at 7 n.6 (citing *Harris v. State*, 432 P.3d 207, 211–12 (Nev. 2018); *Gomez v. Ahitow*, 29 F.3d 1128, 1139–40 (7th Cir. 1994)). The other cases they cite have no bearing on the issues before this Court, because they are not murder cases where the prosecution had to prove that a murder occurred. *See* ECF 1837 at 7 n.6 (citing *United States v. Eyster*, 948 F.2d 1196, 1212 (11th Cir. 1991) (drug case); *Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1004–05 (5th Cir. 1998) (civil suit); *Escobar v. Airbus Helicopters SAS*, No. 13-00598 HG-RLP, 2016 WL 6080612, at *1 (D. Haw. Oct. 5, 2016) (civil suit); *Bridges v. Enter. Prods. Co., Inc.*, No. 3:05cv786-WHBLRA, 2007 WL 571074, at *2 (S.D. Miss. Feb. 20, 2007) (civil suit); *see also* ECF 1832 at 8 (citing *United States v. Smith*, 534 F.3d 1211, 1219 (10th Cir. 2008) (drug case)).

These two cases show, at most, that two courts have excluded murder photos in a murder case. They also further highlight that, overwhelmingly, courts allow the government to introduce photos and videos of murder victims in a prosecution for murder. The Court should disregard these two cases and instead follow the overwhelming body of cases that find that photos of a murder victim are admissible in a prosecution for murder.

### IV. CONCLUSION

The United States asks this Court to deny the defendants' motion *in limine* to exclude murder photos and videos in this murder case.

Dated: February 5, 2024

PHILLIP A. TALBERT
United States Attorney

By: /s/ *Ross Pearson*
JASON HITT
ROSS PEARSON
DAVID SPENCER
Assistant United States Attorneys