PHILLIP A. TALBERT
United States Attorney
JASON HITT
ROSS PEARSON
DAVID SPENCER
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

RONALD YANDELL,
BILLY SYLVESTER, and
DANNY TROXELL,

Defendants.

CASE NO. 2:19-CR-00107-KJM

UNITED STATES' OPPOSITION TO MOTION IN LIMINE TO EXCLUDE UN-NOTICED 404(b) EVIDENCE

[ECF 1843]

DATE: February 9, 2024
TIME: 9:00 a.m.
COURT: Hon. Kimberly J. Mueller

## I. INTRODUCTION

Defendants Ronald Yandell and William Sylvester filed a motion *in limine*, later joined by Danny Troxell, "to exclude un-noticed 404(b) evidence." ECF 1843; *see also* ECF 1849 (Troxell Joinder). Despite its title, defendants' motion is not limited to un-noticed Rule 404(b) evidence. Instead, defendants seek to preclude the government from introducing a large amount of *direct* evidence of the charged crimes.

Defendants seek an unprecedented pretrial order that would prohibit the government from introducing evidence of any "bad acts" that are not (1) specifically alleged in the superseding indictment or (2) noticed under Rule 404(b). *See* ECF 1843, at 3. But defendants' argument in support of this order rests on the incorrect assumption that any "bad act" that is not specifically alleged in the

indictment can only be admissible under Rule 404(b). That assumption is fundamentally at odds with black letter law regarding the purpose and required specificity of indictments as well as the scope of evidence that is admissible to prove the elements of the charged crimes—in particular, the RICO conspiracy charged in Count One.

An indictment is not required to list every "bad act" by the defendants that supports the crimes charged. To the contrary, an indictment need only put the defendants on notice of the charges and allege the elements of each offense. The evidence in support of those charges may consist of dozens or even hundreds of specific bad acts that are not specifically alleged anywhere in the indictment. For example, an indictment for a drug distribution conspiracy under 21 U.S.C. §§ 846 and 841 (such as Counts Seven and Twelve in this case) need only allege the elements of the offense and need not include any overt acts. The government may then prove that charge with evidence of the co-conspirators' actions in furtherance of the conspiracy—"bad acts" such as drug possession and deals, collection and laundering of drug proceeds, threats or acts of violence against potential cooperators or witnesses, flight from law enforcement, attempts to bribe officials, and so on. None of these "bad acts" needs to be alleged in the indictment to be admissible evidence of the charged crime.

The scope of evidence that is admissible to prove a RICO conspiracy (such as Count One in this case) is especially broad. For example, the government must prove the existence of the charged "enterprise." Courts have recognized that an enterprise "is often-times more readily proven by what it *does*, rather than by abstract analysis of its structure." *United States v. Fernandez*, 388 F.3d 1199, 1224 (9th Cir. 2004), *modified*, 425 F.3d 1248 (9th Cir. 2005) (citation omitted) (emphasis in original). Thus, courts routinely permit the government to introduce evidence of enterprise-related crimes, whether or not those crimes are specifically alleged in the indictment, as proof of the existence of the enterprise and shared purposes and activities of its members. The same evidence is also routinely admitted to prove the separate required element that the enterprise engaged in a pattern of racketeering activity. Under settled law, the government is not required to allege each specific racketeering act in the indictment.

## II. FACTUAL BACKGROUND

Yandell, Sylvester, and Troxell are charged in sixteen counts of an eighteen-count Superseding Indictment. ECF 1375. Count One charges a RICO conspiracy, in violation of 18 U.S.C. § 1962(d), to

participate in the affairs of the charged enterprise, the Aryan Brotherhood, through a pattern of racketeering that consisted of, among other things:

a. "multiple acts involving murder," in violation of the California Penal Code sections prohibiting murder, attempted murder, conspiracy to commit murder, aiding and abetting murder, and related crimes;

b. "multiple offenses involving drug trafficking," in violation of 21 U.S.C. §§ 841, 843, and 846; and

c. "multiple acts indictable under 18 U.S.C. § 1952," which prohibits interstate travel or the use of a facility in interstate commerce (including a cell phone), with the intent to distribute the proceeds of, commit a crime of violence to further, or otherwise promote or carry on "unlawful activity," including drug trafficking.

*Id.* at 7–8.[1] Counts Two through Six allege conspiracies to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5). *Id.* at 11–14. Counts Seven and Twelve charge drug trafficking conspiracies, in violation of 21 U.S.C. § 846 and 841(a)(1). *Id.* at 14, 16. Counts Eight through Eleven, Thirteen, and Fourteen charge specific drug distributions, in violation of 21 U.S.C. § 841(a)(1). *Id.* at 14–17. And Counts Fifteen and Sixteen charge murder in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(1) and 2. *Id.* at 17–19.

## III. APPLICABLE LAW

### A. RICO Conspiracy

As noted, Count One charges Yandell, Sylvester, and Troxell, and their co-defendants with conspiring to violate 18 U.S.C. § 1962(c)—that is, conspiring "to conduct and participate, directly and indirectly, in the conduct of the affairs of the Aryan Brotherhood through a pattern of racketeering

[1] In the Notice of Special Sentencing Factors, the Superseding Indictment lists eleven specific racketeering acts for which the maximum penalty includes life imprisonment. *Id.* at 8–11. A conviction on Count One that is based on at least one of these racketeering acts is punishable by up to life imprisonment, whereas a conviction on Count One that is not "based on a racketeering activity for which the maximum penalty includes life imprisonment" would be punishable by only up to 20 years in prison. 18 U.S.C. § 1963(a). Proof of one or more of these eleven acts is not required to obtain a conviction on Count One. Rather, these acts are specifically alleged in light of *Apprendi v. New Jersey*, which requires facts that increase the statutory maximum for a crime to be alleged in an indictment, submitted to a jury, and proved beyond a reasonable doubt. 530 U.S. 466 (2000).

activity," in violation of § 1962(d). ECF No. 1375, Superseding Indictment ¶ 25. To prove a violation of § 1962(c), in turn, the government must prove four elements:

> 1. There was an on-going enterprise with some sort of formal or informal framework for carrying out its objectives consisting of a group of persons associated together for a common purpose of engaging in a course of conduct;
>
> 2. The defendant was employed by or associated with the enterprise;
>
> 3. The defendant conducted or participated, directly or indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity. To conduct or participate means that the defendant had to be involved in the operation or management of the enterprise; and
>
> 4. The enterprise engaged in or its activities in some way affected commerce between one state and another state.

Ninth Cir. Model Crim. Jury Instr. No. 18.18 (2023).

For the first element—the existence of an enterprise—the government must prove that the Aryan Brotherhood was "a group of people who have associated together for a common purpose of engaging in a course of conduct over a period of time." Ninth Cir. Model Crim. Jury Instr. No. 18.9. For the third element—a pattern of racketeering activity—the government must prove that the enterprise engaged in a pattern of crimes that "embraced the same or similar purposes, results, participants, victims, or methods of commission, or were otherwise interrelated by distinguishing characteristics." Ninth Cir. Model Crim. Jury Instr. No. 18.14.

Stated another way, the government must prove that the Aryan Brotherhood was a gang and that the defendants in this case were members who joined or associated with the gang, intended to participate in the gang, and were aware that their fellow gang members would commit a series of crimes. *United States v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2015) (quoting *Fernandez*, 388 F.3d at 1230). The government does not need to prove that any defendant personally committed, or agreed to personally commit, two or more racketeering acts. *United States v. Tille*, 729 F.2d 615, 619 (9th Cir. 1984). Rather, the crime is the defendant's involvement in the criminal enterprise. *United States v. Marino*, 277 F.3d 11, 33 (1st Cir. 2002) ("The RICO net is woven tightly to trap even the smallest fish, those peripherally involved with the enterprise.").

## IV. ARGUMENT

### A. The government is not required to provide a laundry list of every non-404(b) "bad act" it will introduce at trial in the indictment.

Defendants claim that, other than noticed 404(b) evidence, the only "bad acts" the government may present at trial are those specifically alleged in the Superseding Indictment. ECF 1843, at 3–4. Defendants cite no legal support for this claim, and none exists. If defendants were correct, it would mean that indictments would have to detail every incriminating fact the government will prove at trial. Indictments in a case like this one, with a RICO conspiracy spanning years, would be laundry lists of factual allegations running hundreds, or more likely thousands, of pages.

As the Supreme Court has held, however, an indictment is "generally sufficient" if it "set[s] forth the offense in the words of the statute itself," so long as the statute includes all elements of the crime. *Hamling v. United States*, 418 U.S. 87, 117 (1974); *see also Fernandez*, 388 F.3d at 1219 (in a RICO case "an indictment setting forth the elements of the offense is generally sufficient"). An indictment "'need not specify the theories or evidence upon which the government will rely'" to prove the charged offense. *United States v. Mancuso*, 718 F.3d 780, 790 (9th Cir. 2013) (quoting *United States v. Cochrane*, 985 F.2d 1027, 1031 (9th Cir. 1993)).

In conspiracy cases, "[i]t is well established that when seeking to prove a conspiracy, the government is permitted to present evidence of acts committed in furtherance of the conspiracy even though they are not all specifically described in the indictment." *United States v. Palacios*, 677 F.3d 234, 245 (4th Cir. 2012) (internal quotation marks omitted). Such evidence is direct proof of the charged conspiracy and is not governed by Rule 404(b). *See id.*; *see also United States v. Miller*, 116 F.3d 641, 682 (2d Cir. 1997) ("[w]here … the indictment contains a conspiracy charge, 'uncharged acts may be admissible as direct evidence of the conspiracy itself.' 'An act that is alleged to have been done in furtherance of the alleged conspiracy ... is not an "other" act within the meaning of Rule 404(b); rather, it is part of the very act charged.'") (quoting *United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994)).

In *Palacios*, the jury convicted the defendant of, among other crimes, conspiracy to participate in a racketeering enterprise, MS-13, in violation of 18 U.S.C. § 1962(d)—the same charge as Count One in

this case. *Id.* at 238. The defendant argued that it was improper for government witnesses to testify about bad acts that were not alleged in the indictment or disclosed under Rule 404(b)—including a robbery, a shooting at a rival gang, meetings where defendant and other MS-13 members discussed murders, and defendant's statement that he would "kill all the snitches." *Id.* at 245. The Fourth Circuit held that this testimony was "express proof of the conduct for which [defendant] was indicted," related to defendant's "participation in MS-13," the charged enterprise, and could "properly be characterized as acts committed in furtherance of the conspiracy." *Id.* (internal quotation marks omitted). Because the testimony was admissible as direct proof of the charged crimes, Rule 404(b) was inapplicable and "the government was under no Rule 404(b) disclosure obligations." *Id.*

### B. **<u>In RICO cases, courts routinely admit evidence of crimes not specifically alleged in the indictment because they are evidence of the RICO count.</u>**

Evidence of crimes not specifically alleged in the indictment is admissible as direct evidence of multiple elements of a RICO conspiracy. First, in every RICO case, the government must prove the existence of the charged enterprise. "It is well settled that in prosecutions for racketeering offenses, the government may introduce evidence of uncharged offenses to establish the existence of the criminal enterprise." *United States v. Baez*, 349 F.3d 90, 93 (2d Cir. 2003) (affirming admission of 16 uncharged robberies). Numerous courts have followed this rule and admitted evidence of uncharged crimes as evidence of the charged enterprise and its purpose and continuity. *See, e.g., United States v. Henley*, 766 F.3d 893, 914–15 (8th Cir. 2014) (affirming admission of evidence of defendant's murder of an off-duty corrections officer, which was not charged or listed in the indictment, as "proof of an enterprise, of the continuity of racketeering activity, and of the defendant's knowledge of, agreement to, and participation in the conspiracy") (citation omitted); *United States v. Matera*, 489 F.3d 115, 120 (2d Cir. 2007) (affirming admission of three uncharged murders because they helped "prove an essential element of the RICO crimes charged—the existence of a criminal enterprise in which the defendants participated," the Gambino Organized Crime Family); *Miller*, 116 F.3d at 682 (affirming admission of "numerous" uncharged murders as "proof of the existence of the RICO enterprise alleged in the indictment"); *United States v. Eufrasio*, 935 F.2d 553, 573 (3d Cir. 1991) (affirming admission of evidence of "uncharged

Mafia crimes" because it "went to prove important elements of the RICO counts," including "the existence and nature of the … enterprise and conspiracy" and "acts undertaken in furtherance of it").

Similarly, evidence of uncharged crimes is admissible to prove the "pattern of racketeering activity" element in RICO cases. "The government is not limited in its proof of a conspiracy or racketeering enterprise to the overt or racketeering acts alleged in the indictment." *United States v. Krout*, 66 F.3d 1420, 1425 (5th Cir. 1995) (affirming admission of three uncharged murders and an uncharged attempted murder where the indictment alleged that the use of violence, including murder, furthered the objectives of the enterprise, the Texas Mexican Mafia, to obtain money and protect the organization from law enforcement investigation).

So long as the indictment alleges the type of offense as part of the enterprise's "pattern of racketeering activity," evidence of any specific instance of that type of offense is admissible as direct evidence of this element. *See, e.g., United States v. Hawkins*, 681 F.2d 1343, 1346 (11th Cir. 1982) (affirming admission of evidence of an uncharged murder "because the indictment includes murder as one of the offenses in the pattern of defendants' racketeering activity"); *Thai*, 29 F.3d at 812 ("It is clear the Government may offer proof of acts not included within the indictment, as long as they are within the scope of the conspiracy.").

Moreover, proof of the "pattern of racketeering activity" element—like proof of the enterprise element—is not limited to crimes in which the defendant participated. In *United States v. Finestone*, for example, the Eleventh Circuit upheld the admission of evidence of coconspirators' commission of a murder, kidnapping and narcotics trafficking that the RICO defendant did not commit because such evidence was admissible to prove the coconspirators' pattern of racketeering activity and showed their participation in the RICO conspiracy and overt acts in furtherance of it. 816 F.2d 583, 585-87 (11th Cir. 1987); *see also United States v. Brady*, 26 F.3d 282, 286–88 (2d Cir. 1994) (affirming admission of uncharged murders committed by non-defendant members of the Colombo LCN family to prove the Colombo family enterprise and the charged conspiracy); *United States v. DiNome*, 954 F.2d 839, 843 (2d Cir. 1992) (holding that evidence of numerous crimes in which defendants did not directly participate, "including the routine resort to vicious and deadly force to eliminate human obstacles, was

relevant to the charges against each defendant because it tended to prove the existence and nature of the RICO enterprise" and "was also relevant to prove a pattern of racketeering activity").

Thus, against the backdrop of this case law, defendants are incorrect to suggest that evidence of uncharged murders is inadmissible. *See* ECF 1843, at 3 (seeking to exclude "evidence on homicides that have neither been charged in the indictment nor identified in the government's 404(b) notice"). Such evidence is directly relevant to prove the existence and nature of the enterprise, the continuity and membership of the RICO conspiracy, and the "pattern of racketeering activity," which the Superseding Indictment specifically alleges includes "multiple acts involving murder," including attempted murder and conspiracy to commit murder. ECF 1375, at 7–8.

**C. Rule 404(b) does not apply to direct evidence of charged crimes.**

Rule 404(b) only applies to evidence of "other" bad acts of a defendant—that is, acts that are extrinsic to the proof of the charged crimes. Fed. R. Evid. 404(b)(1). Evidence that is "inextricably intertwined" with the charged offense, however, is not subject to the notice requirements of Rule 404. *United States v. DeGeorge*, 380 F.3d 1203, 1220 (9th Cir. 2004). The Ninth Circuit has held that evidence is "inextricably intertwined"—and thus outside the scope of Rule 404—in two circumstances: "First, evidence of prior acts may be admitted if the evidence 'constitutes a part of the transaction that serves as the basis for the criminal charge.' Second, prior act evidence may be admitted 'when it was necessary to do so in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.'" *Id.* (citations omitted).

This first category—direct evidence of the crimes charged—has already been discussed at length, and is necessarily very broad in a RICO case where the government must prove the existence and nature of an ongoing criminal enterprise and its pattern of racketeering activity over a substantial period of time. *See, e.g., United States v. Morales*, 185 F.3d 74, 79-81 (2d Cir. 1999) (holding that association-in-fact enterprise that engaged in armed robbery and murder did not function as a continuing unit from 1987 to 1996 as alleged when there was a seven-year hiatus in unlawful activity during several defendants' incarceration from 1988 to 1995).

The second category—evidence that is necessary to provide "a coherent and comprehensible story" to the jury regarding the charged offenses—further expands the scope of admissible evidence that

is not covered by Rule 404(b). This category includes evidence that provides the full context for, and specific memorable details of, bad acts that help prove the RICO conspiracy. It also includes evidence that explains a witness's relationships with the defendants and other members and associates of the enterprise, the Aryan Brotherhood, motivations for associating with the Aryan Brotherhood, and basis of knowledge of the purpose, nature, and defining characteristics of enterprise-related activity.

The broad scope of this second category of non-404(b) evidence is consistent with the government's general right "to prove its case by evidence of its own choice," with "testimony and tangible things not only satisfies the formal definition of an offense, but tells a colorful story with descriptive richness." *Old Chief v. United States*, 519 U.S. 172, 186–87 (1997). Because of the heavy burden the government faces in a criminal case—not only to offer sufficient proof to support a conviction beyond a reasonable doubt, but also to "convince the jurors that a guilty verdict would be morally reasonable"—the government is entitled to "place its evidence before the jurors, as much to tell a story of guiltiness as to support an inference of guilt." *Id.* at 187–88. This rule is based on the recognition that:

> Unlike an abstract premise, whose force depends on going precisely to a particular step in a course of reasoning, a piece of evidence may address any number of separate elements, striking hard just because it shows so much at once; the account of a shooting that establishes capacity and causation may tell just as much about the triggerman's motive and intent. Evidence thus has force beyond any linear scheme of reasoning, and as its pieces come together a narrative gains momentum, with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict. This persuasive power of the concrete and particular is often essential to the capacity of jurors to satisfy the obligations that the law places on them.

*Id.* at 187. Because of this reality, "a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it." *Id.* at 186–87.

In sum, the scope of non-404(b) evidence, where that evidence has any tendency to prove any element of the charged offenses, or to provide vivid or compelling details of the stories of the relevant events, is quite broad.

**D. While un-noticed Rule 404(b) evidence is generally inadmissible, the Rule and this Court's scheduling order contain limited exceptions.**

To the extent evidence relates to a bad act that is truly extrinsic to the charged crimes, and therefore could only be admissible under Rule 404(b), prior notice is of course required under the Rule. But defendants overreach in seeking a pretrial exclusion order for all 404(b) evidence that was not disclosed in the government's November 6, 2023, Rule 404(b) notice letter. First, the stipulated scheduling order allows the government to "supplement" its Rule 404(b) notice after the November 6, 2023 deadline "with any newly developed information, as it is received by the government." ECF 1722, at 1–2 (¶ 4). Second, Rule 404(b) allows notice "in any form during trial if the court, for good cause, excuses lack of pretrial notice." Fed. R. Evid. 404(b)(1)(C).

While these exceptions are limited, they leave open the possibility that Rule 404(b) evidence that has not yet been noticed could be admitted at trial. Accordingly, the order defendants seek to preemptively exclude all 404(b) evidence that has not yet been noticed would be inappropriate.

## V. CONCLUSION

For the foregoing reasons, the Court should deny defendant's motion in limine to exclude evidence of any "bad act" that is not specifically alleged in the indictment or in the government's Rule 404(b) notice.

Dated: February 5, 2024

PHILLIP A. TALBERT
United States Attorney

By: /s/ *David Spencer*
JASON HITT
ROSS PEARSON
DAVID SPENCER
Assistant United States Attorney