PHILLIP A. TALBERT
United States Attorney
JASON HITT
ROSS PEARSON
DAVID SPENCER
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>           v.<br><br>RONALD YANDELL,<br>BILLY SYLVESTER, and<br>DANNY TROXELL,<br><br>                    Defendants. | CASE NO.  2:19-CR-00107-KJM<br><br>UNITED STATES' OPPOSITION TO MOTIONS IN LIMINE TO EXCLUDE "OTHER ACT" EVIDENCE UNDER RULES 404(b) AND 403<br><br>[ECF 1829, 1835]<br><br>DATE: February 9, 2024<br>TIME: 9:00 a.m.<br>COURT: Hon. Kimberly J. Mueller |

## I.    **INTRODUCTION**

Defendants Ronald Yandell and William Sylvester, and defendant Danny Troxell, filed separate motions *in limine* to exclude evidence of the "bad acts" disclosed in the United States's November 6, 2023, Rule 404(b) Notice Letter.  *See* ECF 1829 (Yandell and Sylvester Motion); ECF  1835 (Troxell Motion).  The motions overlap substantially and the United States hereby opposes them in this consolidated opposition.

Pursuant to the stipulated scheduling order, the United States provided very early Rule 404(b) notice to defendants on November 6, 2023—more than three and a half months before trial is scheduled to begin.  ECF 1829-1 ("Notice Letter").  At the time of this early deadline, the United States necessarily disclosed potential Rule 404(b) evidence broadly, including all possible events that it could reasonably

anticipate admitting at trial.  Since then, in preparing for trial, the United States has been working diligently to plan out and streamline its presentation of evidence to the jury.  As part of that process, it has decided not to present evidence of several of the "bad acts" that it disclosed months ago in its Notice Letter—even though such evidence would be admissible if offered.

The United States will introduce evidence of the following acts that defendants seek to exclude through their motions:

1.      Attempted Murder of Victim 1 – May 13, 2013

2.      Murder of Devlin Stringfellow – January 10, 2018

3.      Shooting of Leonard Bradrich – January 10, 2017

4.      Conspiracy to Murder Co-Defendant Brant Daniel – January 2019

5.      Assault on a Deputy at Sacramento County Jail and Retaliatory Plot – July 2020

Each of these bad acts is admissible as direct evidence of the RICO conspiracy charged in Count One of the Superseding Indictment.  Each is an enterprise-related crime that is relevant to prove the existence of the charged enterprise, the Aryan Brotherhood.  Courts have recognized that an enterprise "is often-times more readily proven by what it *does*, rather than by abstract analysis of its structure." *United States v. Fernandez*, 388 F.3d 1199, 1224 (9th Cir. 2004), *modified*, 425 F.3d 1248 (9th Cir. 2005) (citation omitted) (emphasis in original).  Each of the first four acts is also relevant to prove the "pattern of racketeering activity" element.  They all relate to murder or attempted murder, and the Bradrich shooting arose in part out of drug trafficking.  The indictment charges murder, attempted murder, and drug trafficking as part of the Aryan Brotherhood's pattern of racketeering activity.  Thus, each of these acts is admissible as direct, "intrinsic" evidence of Count One, and is not subject to Rule 404(b).[1]

In the alternative, each of these acts is admissible under Rule 404(b), for several permissible purposes, including modus operandi, common scheme and plan, knowledge of the enterprise, and to corroborate the testimony of important government witnesses.

---

[1]      As stated in its Notice Letter, it has always been the government's position that these acts are "intrinsic to the charged RICO conspiracy and therefore do[] not constitute 'other act' evidence within the meaning of Rule 404(b)."  ECF No. 1829-1, at 1.  The government included them in its Notice Letter out of an abundance of caution, since they are also admissible under the requirements of Rule 404(b).

## II.   FACTUAL BACKGROUND

### A.   Count One of the Superseding Indictment

Count One charges a RICO conspiracy against Yandell, Sylvester, and Troxell, and their co-defendants, in violation of 18 U.S.C. § 1962(d), to participate in the affairs of the charged enterprise, the Aryan Brotherhood, through a pattern of racketeering that consisted of, among other things:

    a.   "multiple acts involving murder," in violation of the California Penal Code sections prohibiting murder, attempted murder, conspiracy to commit murder, aiding and abetting murder, and related crimes;

    b.   "multiple offenses involving drug trafficking," in violation of 21 U.S.C. §§ 841, 843, and 846; and

    c.   "multiple acts indictable under 18 U.S.C. § 1952," which prohibits interstate travel or the use of a facility in interstate commerce (including a cell phone), with the intent to distribute the proceeds of, commit a crime of violence to further, or otherwise promote or carry on "unlawful activity," including drug trafficking.

ECF No. 1375, Superseding Indictment, ¶ 25.[2]

### B.   November 6, 2023 Rule 404(b) Notice

On November 6, 2023, the United States submitted a Rule 404(b) notice that detailed evidence it will present at trial of, among others, the following five events.

#### 1.   Attempted Murder of Victim 1 – May 13, 2013

In 2013, co-conspirator Jason Corbett ordered a white inmate at High Desert to kill Victim 1 because Victim 1 refused to cover up a shamrock tattoo he had on his hand as part of his FAIM gang membership.  In the lead up to the stabbing, Corbett instructed Victim 1 to cover up his FAIM tattoo but

---

[2] In the Notice of Special Sentencing Factors, the Superseding Indictment lists eleven specific racketeering acts for which the maximum penalty includes life imprisonment. *Id.* at 8–11.  A conviction on Count One that is based on at least one of these racketeering acts is punishable by up to life imprisonment, whereas a conviction on Count One that is not "based on a racketeering activity for which the maximum penalty includes life imprisonment" would be punishable by only up to 20 years in prison.  18 U.S.C. § 1963(a).  Proof of one or more of these eleven acts is not required to obtain a conviction on Count One.  Rather, these acts are specifically alleged in light of *Apprendi v. New Jersey*, which requires facts that increase the statutory maximum for a crime to be alleged in an indictment, submitted to a jury, and proved beyond a reasonable doubt.  530 U.S. 466 (2000).

Victim 1 refused.  Symbols are powerful in prison and the AB jealously protects the shamrock as its most distinctive and recognizable enterprise symbol.  Any non-AB inmate who displays a shamrock must cover it up or be targeted for murder.  Enforcing this rule helps the AB maintain its control over white inmates in the California prison system.  Yandell later confirmed to a cooperating witness that Corbett ordered the hit because Victim 1 would not cover up his shamrock tattoo.

2.   Murder of Devlin Stringfellow – January 10, 2018

On January 10, 2018, at the direction of defendant Sylvester, two white inmates executed a coordinated attack on long-time PENI gang member Devlin Stringfellow at CSP–Sacramento.  One inmate used a concrete rock to knock Stringfellow unconscious on the yard and then produced an inmate-manufactured weapon and stabbed Stringfellow in the chest and neck area.  A second inmate used a second inmate-manufactured weapon to stab Stringfellow.  He was pronounced dead on the yard from the substantial wounds inflicted during the attack, including being stabbed through the eye socket.

Cooperating Witness 1 ("CW-1") will testify that, after Stringfellow's murder, Sylvester boasted to CW-1 that he (Sylvester) had orchestrated Stringfellow's murder, including lulling Stringfellow into a belief that he no longer had problems with the AB and then instructing one assailant to hit Stringfellow's head with an item to render him unconscious while a second attacker used a weapon to kill Stringfellow.  According to CW-1, Sylvester instructed the second attacker to stab Stringfellow through the eye socket in order to penetrate his brain.  These facts are consistent with how Stringfellow was murdered.  CW-1 said the order to kill Stringfellow stemmed from Stringfellow's collection and theft of AB money while housed at a different CDCR facility.

3.   Shooting of Leonard Bradrich – January 10, 2017

In 2016, CW-2 began working for Sylvester and Yandell to smuggle drugs, contraband cell phones, and other items into CSP–Sacramento in an effort to assist her incarcerated husband from being killed by the AB.  From that experience, CW-2 built a rapport with Sylvester.

In January 2017, CW-2's male roommate severely beat her during a disagreement.  CW-2 told Sylvester about the beating.  Sylvester agreed to "take care" of CW-2's roommate.

On January 10, 2017, Leonard Bradrich, an AB associate recently paroled from CSP–Sacramento and operating under Sylvester's authority, contacted CW-2 and met with him/her.  Bradrich

explained he was there to kill CW-2's roommate for assaulting CW-2.  Bradrich said he was there on the orders of Sylvester and to coordinate the theft of CW-2's roommate's extensive marijuana operation. Ultimately, Bradrich and another man broke into CW-2's house to kill the roommate.  The roommate was not an easy target and ended up shooting Bradrich in the lower back.  Bradrich became a paraplegic as a result of the shooting.  In turn, CW-2 became his caretaker for over a year.  Despite CW-2's pleas, Sylvester and the AB provided nothing to support his recovery.  On the night of the shooting, Sylvester and Yandell also arranged for CW-2 and others to steal a large amount of marijuana from CW-2's roommate at an off-site location that CW-2 had disclosed to Sylvester.  That burglary ended up netting around 30 pounds of marijuana, a fact corroborated by CW-3, who helped sell the stolen marijuana on behalf of Sylvester and Yandell.  CW-3 took direction from Yandell and Sylvester about the distribution of the marijuana stolen from the intended murder victim.

4.   <u>Conspiracy to Murder Co-Defendant Brant Daniel – January 2019</u>

In January 2019, CDCR gang investigators at Pelican Bay prison discovered a kite written (and signed by) Yandell.  The kite was addressed to another AB member at Pelican Bay, Dale Britches.  In the kite, Yandell wrote, "Scoops is to be hit on sight. Danny T., Dave C., and I greenlighted his stupid ass."  In this passage, Yandell was confirming that an AB hit was ordered on co-conspirator Brant Daniel ("Scoops") and that the three-man AB commission had agreed to this hit.  The commission at the time was "Danny T." = Danny Troxell, "David C." = David Chance, and Yandell identified himself as the third commissioner sanctioning the murder of another AB member (Daniel).  The kite was signed "Ronnie."

Multiple cooperating witnesses will testify that Yandell and the commission wanted Daniel killed in 2019 based upon Daniel's failures to follow the enterprise's codes of conduct.

5.   <u>Assault on a Deputy at Sacramento County Jail and Retaliatory Plot – July 2020</u>

On July 11, 2020, while in pretrial detention on this case, deputies noticed that Sylvester appeared intoxicated from inmate-manufactured alcohol and was being belligerent.  They removed him from the yard and confiscated the contraband "wine" from his cell.  When Sylvester realized what had happened, he began cursing at the deputies and saying that they would be "sorry" for what they did.

Deputies then overheard Sylvester say the following to Yandell: "When I come out, I'm fucking these bitches up.  Watch what happens.  When I come out, I'll bust his jaw. I'm fucking these cops up."

About an hour later, deputies opened Yandell's cell to allow him out for recreation.  Yandell quickly attacked three of the deputies, grabbing an electric razor and swinging it at their heads.  When deputies moved in toward Yandell, he repeatedly punched one deputy in the head 2-3 times before being subdued.

After the incident, Sylvester told CW-1 that CW-1 would have to stab a deputy at the Jail in retaliation for perceived disrespect of AB members by deputies "putting hands" on Yandell.[3]

### III.   APPLICABLE LAW

#### A.   RICO Conspiracy

As noted, Count One charges Yandell, Sylvester, and Troxell, and their co-defendants with conspiring to violate 18 U.S.C. § 1962(c)—that is, conspiring "to conduct and participate, directly and indirectly, in the conduct of the affairs of the Aryan Brotherhood through a pattern of racketeering activity," in violation of § 1962(d).  ECF No. 1375, Superseding Indictment ¶ 25.  To prove a violation of § 1962(c), in turn, the government must prove four elements:

> 1.   There was an on-going enterprise with some sort of formal or informal framework for carrying out its objectives consisting of a group of persons associated together for a common purpose of engaging in a course of conduct;
>
> 2.   The defendant was employed by or associated with the enterprise;
>
> 3.   The defendant conducted or participated, directly or indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity.  To conduct or participate means that the defendant had to be involved in the operation or management of the enterprise; and
>
> 4.   The enterprise engaged in or its activities in some way affected commerce between one state and another state.

Ninth Cir. Model Crim. Jury Instr. No. 18.18 (2023).

For the first element—the existence of an enterprise—the government must prove that the Aryan Brotherhood was "a group of people who have associated together for a common purpose of engaging in

---

[3]      The Notice Letter mistakenly identifies this witness as CW-3.

a course of conduct over a period of time." Ninth Cir. Model Crim. Jury Instr. No. 18.9. For the third element—a pattern of racketeering activity—the government must prove that the enterprise engaged in a pattern of crimes that "embraced the same or similar purposes, results, participants, victims, or methods of commission, or were otherwise interrelated by distinguishing characteristics." Ninth Cir. Model Crim. Jury Instr. No. 18.14.

Stated another way, the government must prove that the Aryan Brotherhood was a gang and that the defendants in this case were members who joined or associated with the gang, intended to participate in the gang, and were aware that their fellow gang members would commit a series of crimes. *United States v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2015) (quoting *Fernandez*, 388 F.3d at 1230). The government does not need to prove that any defendant personally committed, or agreed to personally commit, two or more racketeering acts. *United States v. Tille*, 729 F.2d 615, 619 (9th Cir. 1984). Rather, the crime is the defendant's involvement in the criminal enterprise. *United States v. Marino*, 277 F.3d 11, 33 (1st Cir. 2002) ("The RICO net is woven tightly to trap even the smallest fish, those peripherally involved with the enterprise.").

### B. Intrinsic evidence is not subject to Rule 404(b)

Rule 404(b) only applies to evidence of "other" bad acts of a defendant—that is, acts that are extrinsic to the proof of the charged crimes. Fed. R. Evid. 404(b)(1). Evidence that is "inextricably intertwined" with the charged offense, however, is not subject to the notice requirements of Rule 404. *United States v. DeGeorge*, 380 F.3d 1203, 1220 (9th Cir. 2004). The Ninth Circuit has held that evidence is "inextricably intertwined"—and thus outside the scope of Rule 404—in two circumstances: "First, evidence of prior acts may be admitted if the evidence 'constitutes a part of the transaction that serves as the basis for the criminal charge.' Second, prior act evidence may be admitted 'when it was necessary to do so in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.'" *Id.* (citations omitted).

### C. Rule 404(b)

Evidence of extrinsic, "other" acts committed by a defendant are not admissible to prove a defendant's character, but they may be admissible for another purpose, such as "motive, opportunity,

intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid.
404(b)(2).

## IV.    **ARGUMENT**

### A.    **Each of the five challenged violent acts is admissible as direct evidence of the Count One RICO conspiracy.**

Each of the five challenged acts helps prove the existence of the Aryan Brotherhood enterprise,
which is an essential element of Count One.  For example, the attempted murder of Victim 1 shows the
enterprise in action, enforcing its rules and protecting its most revered symbol.  A non-AB member
(Victim 1) refused to cover up his shamrock.  There was nothing theoretical about the affront or the
affronted enterprise.  The Aryan Brotherhood took the affront so seriously that it attempted to murder
the offender.[4]  Similarly, the murder of Stringfellow shows the enterprise in action.  Stringfellow stole
from the AB.  The AB could not let this go unpunished and had him killed.  The brutality of the killing
sent a powerful message to others not to step out of line as had Stringfellow.  The conspiracy to murder
Daniel shows the enterprise in the same way.  Daniel failed to follow the AB's codes of conduct.  As a
result, the AB decided Daniel had to go.  Yandell's kite conveying the order to kill Daniel is also
powerful enterprise evidence.  As alleged in the Superseding Indictment, the AB is governed by a three-
man commission and only the commission can authorize the murder of an AB member.  ECF No. 1375,
¶ 6.  Consistent with this command structure, Yandell's kite stated that the three AB commission
members at the time—himself, Troxell, and David Chance—had all signed off on Daniel's murder.

The Bradrich shooting shows the AB enterprise in multiple ways.  Sylvester ordered the murder
both to protect a valuable asset of the AB (an AB associate outside of prison, CW-2, who had been
helping to smuggle drugs and contraband cell phones into CSP-Sacramento for Sylvester and Yandell)
and to obtain a large stash of marijuana from CW-2's abusive roommate that the AB could then sell for
profit.  In fact, the AB did obtain about 30 pounds of marijuana from the robbery, which it in fact sold
for the profit of Yandell and Sylvester.  Bradrich's willingness to commit this crime for Sylvester is also

---

[4] This incident is also the reason that CW-3 started working for the Aryan Brotherhood, and
therefore the incident is needed to provide full context to the jury about how CW-3 first became
affiliated with the AB enterprise.

evidence of the AB enterprise.  But for Sylvester's status as an AB member, Bradrich had little reason to do it for him.  But because of Sylvester's status as an AB member, Bradrich could not say no.

The assault and retaliatory plot against the Sacramento County Jail deputy also demonstrates the AB enterprise in multiple ways.  It shows that the AB will not tolerate perceived disrespect by law enforcement.  The AB's response makes clear that this was not merely a personal slight.  Yandell assaulted a deputy based on perceived slight to Sylvester.  Sylvester then told CW-1 that, as soon as he got the opportunity, CW-1 had to stab a deputy at the jail in retaliation for the perceived disrespect of AB members by deputies "putting hands" on Yandell.  AB member Jake Corbett would provide the knife.  CW-1 had no choice.  Because the AB ordered it, he was expected to carry out the stabbing or be stabbed himself.

Courts routinely admit evidence of such enterprise-related crimes as proof of the enterprise itself. *See, e.g., United States v. Henley*, 766 F.3d 893, 914–15 (8th Cir. 2014) (murder); *United States v. Palacios*, 677 F.3d 234, 245 (4th Cir. 2012) (a robbery, shooting, and murder plots); *United States v. Matera*, 489 F.3d 115, 120 (2d Cir. 2007) (three murders); *United States v. Baez*, 349 F.3d 90, 93 (2d Cir. 2003) (16 robberies); *United States v. Miller*, 116 F.3d 641, 682 (2d Cir. 1997) ("numerous" murders).  That is because an enterprise "is often-times more readily proven by what it *does*, rather than by abstract analysis of its structure."  *Fernandez*, 388 F.3d at 1224.

Similarly, four of the five challenged acts are admissible as direct proof of the "pattern of racketeering" element of Count One.  The Victim 1 attempted murder, Stringfellow murder, Daniel murder plot, and attempted murder of CW-2's roommate by Bradrich are all direct evidence of the charged racketeering activity of "multiple acts involving murder."  ECF No. 1375, Superseding Indictment, ¶ 25(a).  The Bradrich episode also involved marijuana trafficking, which is direct evidence of the charged racketeering activity of "multiple offenses involving drug trafficking."  *Id.*, ¶ 25(c).  It makes no difference to the admissibility of these acts that they were not specifically alleged in the indictment or that one or more of the defendants may claim he did not directly participate in each act. *See, e.g., United States v. Finestone*, 816 F.2d 583, 585-87 (11th Cir. 1987) (affirming admission of uncharged acts of murder, kidnapping, and drug smuggling that defendant did not commit but his co-conspirators did to prove the pattern of racketeering activity).  Such evidence is direct proof of an

USA OPP'N TO MOTIONS *IN LIMINE* TO EXCLUDE
"OTHER ACT" EVIDENCE UNDER FRE 404(B) AND 403

element of the crime, not Rule 404(b) evidence.  *See Miller*, 116 F.3d at 682 ("[w]here … the indictment contains a conspiracy charge, 'uncharged acts may be admissible as direct evidence of the conspiracy itself.'  'An act that is alleged to have been done in furtherance of the alleged conspiracy ... is not an "other" act within the meaning of Rule 404(b); rather, it is part of the very act charged.'") (quoting *United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994)).

## B.  In the alternative, each of the five challenged acts is admissible for a listed purpose under Rule 404(b).

Even if the challenged acts were extrinsic to the RICO conspiracy charged in Count One, they still would be admissible under Rule 404(b).  Each is relevant for at least three permissible purposes under Rule 404(b).

First, each act is admissible to show the modus operandi of the enterprise, including by punishing violations of the AB's codes of conduct with violence and by requiring subordinates to carry out the directives of AB members to commit crimes on behalf of the enterprise.  *See United States v. Winters*, 729 F.2d 602, 604 (9th Cir. 1984) (evidence is admissible under Rule 404(b) to show modus operandi).

Second, each act is admissible to show the AB's common scheme or plan to enforce its codes of conduct and exercise control over subordinate inmates.  Three of the acts, moreover, show the AB's common scheme or plan to use violence to instill fear in other inmates in California prisons (the Victim 1 attempted murder, the Stringfellow murder, and the Daniel murder plot).

Third, each act is admissible to show the knowledge of the enterprise of those involved in or aware of the event, since each act is an example of the Aryan Brotherhood in action, with its members and associates committing crimes on behalf of the enterprise.

Rule 404(b) "other act" evidence is admissible where (1) it proves a material point; (2) is not too remote in time; (3) is supported by sufficient evidence; and (4) where knowledge or intent is at issue, the act is similar to the offense charged.  *United States v. Vo*, 413 F.3d 1010, 1018 (9th Cir. 2005).  Each requirement is met here.  Each of these acts proves a material point because they go to the core issues of proving the existence and racketeering activity of the Aryan Brotherhood.  None is too remote in time because each occurred within the time period of the conspiracy charged in the indictment.  Each is

USA Opp'n to Motions *in Limine* to Exclude
"Other Act" Evidence under FRE 404(b) and 403

supported by sufficient evidence because one or more witnesses with personal knowledge of relevant events and/or admissions by the defendants will testify about them and additional independent evidence of many of them will be presented as well.  With regard to their admissibility to show knowledge of the enterprise and its activities, the acts are similar to the offenses charged.  They are precisely the types of racketeering activity alleged in the indictment.

**C.**  **Several acts are also admissible for an "other purpose" under Rule 404(b)—namely to corroborate key government witnesses and explain their motive for cooperating.**

In addition, several of these acts are admissible for two "[]other purpose[s]" under Rule 404(b).  First, the murder of Devlin Stringfellow and the shooting of Leonard Bradrich both corroborate the testimony of two cooperating witnesses (CW-1 and CW-2), because physical evidence discovered by investigators matches the testimony of these two witnesses.  The government may introduce evidence under Rule 404(b) to corroborate the testimony of prosecution witnesses where "the matter corroborated [is] significant and the corroboration [is] direct."  *United States v. Pitts*, 6 F.3d 1366, 1371 (9th Cir. 1993).

For the Stringfellow murder, CW-1 will testify that Sylvester confessed to him specific details about the murder—including the number of participants (two), how the murder occurred (by hitting Stringfellow with a rock then stabbing him), and that the participants stabbed Stringfellow in the eye.  These details matched how the murder actually occurred, thus corroborating CW-1's testimony that Sylvester orchestrated the murder.  This corroboration is particularly important in this case, because CW-1 is a significant government witness.  Sylvester and other AB members made other admissions to CW-1 about murders they committed, and therefore his credibility will undoubtedly be under "heavy attack" from the defense.  *United States v. Everett*, 825 F.2d 658, 660 (2d Cir. 1987) (allowing government to introduce Rule 404(b) evidence to corroborate key government witness) (cited with approval in *Pitts*, 6 F.3d at 1370–71).

Likewise, for the Bradrich shooting, CW-2 will testify about the circumstances surrounding the shooting and that the victim was shot and paralyzed as a result of the botched robbery.  As with the Stringfellow murder, the details of which CW-2 is aware also match how the robbery actually occurred, again corroborating CW-2's testimony.

11

Second, the assault on a deputy in Sacramento County Jail is admissible to explain why CW-1 started cooperating with law enforcement.  Undoubtedly the defendants will attack the credibility of CW-1 because CW-1 is an important government witness who has personal knowledge of several crimes committed by these defendants.  The defendants will likely claim that CW-1 is testifying only to lower his sentence and that the jury should therefore doubt CW-1's credibility.  But this claim would be incomplete and misleading.  In fact, CW-1 started cooperating with law enforcement only after Sylvester and Yandell ordered him to stab a guard in Sacramento County Jail in retaliation for the disrespect the guards showed Sylvester and Yandell when they took Sylvester's alcohol and when they tackled Yandell after he assaulted them.  Presenting evidence of this incident is therefore crucial for the government to explain the full story to the jury and to avoid false and misleading defense claims that CW-1 only started cooperating with law enforcement to avoid prison time or get a lower sentence.

### D.    <u>Rule 403 does not warrant exclusion.</u>

Finally, defendants argue that the evidence of the five acts at issue should be excluded under Rule 403.  *See* Yandell and Sylvester Motion, ECF 1829, at 14–15.  But Rule 403 does not warrant their exclusion.

Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice."  Fed. R. Evid. 403.  "Rule 403, however, is 'an extraordinary remedy to be used sparingly because it permits the trial court to exclude otherwise relevant evidence.'"  *United States v. Mende*, 43 F.3d 1298, 1302 (9th Cir. 1995) (quoting *United States v. Patterson*, 819 F.2d 1495, 1505 (9th Cir. 1987)).  "Under the terms of the rule, the danger of prejudice must not merely outweigh the probative value of the evidence, but *substantially* outweigh it."  *Id.* (emphasis in original).  As the Ninth Circuit has explained:

> Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403. Unless trials are to be conducted as scenarios, or unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.

*United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) (quoting *United States v. Mills*, 704 F.2d 1553, 1560 (11th Cir. 1983)).  *Mills*, which the Ninth Circuit commended for "aptly" stating the law in the passage quoted above, made this statement in the course of "admitting evidence of Aryan Brotherhood gang activities" as background to the charged crime of murder and conspiracy to commit murder in a federal prison.  *Hankey*, 203 F.3d at 1172; *see also Mills*, 704 F.2d at 1558–60.

Where, as here, evidence of violent conduct is directly relevant to prove multiple elements of a RICO charge, including the existence of the charged enterprise and the charged pattern of racketeering activity, courts routinely overrule Rule 403 objections.  *See, e.g., Matera*, 489 F.3d at 120 (evidence of "acts of extreme violence" not unfairly prejudicial where probative of the charged enterprise); *Miller*, 116 F.3d at 682 (murders); *Thai*, 29 F.3d at 813 (evidence of bloodstained walls from brutal beatings that resulted in the "copious" flow of blood); *United States v. Brady*, 26 F.3d 282, 287–88 (2d Cir. 1994) (murders by non-defendants); *Finestone*, 816 F.2d 583 (murder, kidnapping, and drug smuggling by non-defendants).

Indeed, defendants cite no case in which a court has excluded such evidence under Rule 403 in a RICO case.  Further, defendants' claim that evidence of violence is inflammatory and unfairly prejudicial makes no sense in case in which violence is at the core of the charged conduct: the existence of an enterprise that deliberately uses extreme acts of violence as a means of control and that is charged with engaging in a pattern of racketeering activities, including by committing "multiple acts involving murder."  ECF 1375, Superseding Indictment, ¶ 25.  As courts have recognized, where the evidence the defendant seeks to exclude is no more inflammatory than the charged conduct, Rule 403 objections make little sense.  *See, e.g., Baez*, 349 F.3d at 94.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

## V.     <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny defendants' motions *in limine* to exclude "other act" evidence under Rules 404(b) and 403.

Dated:  February 5, 2024

PHILLIP A. TALBERT
United States Attorney

By:  /s/ *David Spencer*
JASON HITT
ROSS PEARSON
DAVID SPENCER
Assistant United States Attorney