PHILLIP A. TALBERT
United States Attorney
JASON HITT
ROSS PEARSON
DAVID SPENCER
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RONALD DEAN YANDELL,<br>BILLY SYLVESTER, and<br>DANNY TROXELL,<br><br>Defendants. | CASE NO. 2:19-CR-00107-KJM<br><br>UNITED STATES' SUMMARY BRIEF AFTER *DAUBERT* HEARING IN SUPPORT ITS OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE SPECIAL AGENT CORY PERRYMAN |

## I.  INTRODUCTION

The United States, by and through Assistant United States Attorneys Jason Hitt, Ross Pearson, and David Spencer, respectfully submits this summary of points and authorities following the *Daubert*[1] hearing for Aryan Brotherhood gang expert Special Agent Cory Perryman in connection with the motion to exclude his testimony at trial filed by trial defendants Ronald Yandell and Billy Sylvester, and joined by defendant Danny Troxell ("defendants"). ECF 1800, 1810.[2] To provide the Court with focused briefing, the government incorporates by reference its arguments and authorities in its opposition filed at ECF 1860. In short, the Court should find that Special Agent Perryman's training, experience, and

---

[1]  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).
[2]  Troxell filed a non-substantive joinder to the motion to exclude Special Agent Perryman. ECF 1810.

specialized training provide a reliable basis to express expert opinions about the Aryan Brotherhood. For these reasons, defendants' motion to exclude Special Agent Perryman should be denied.

## II.     ANALYSIS

### A.     Special Agent Perryman's expert testimony is reliable.

#### 1.     Reliability findings under Rule 702

Rule 702 of the Federal Rules of Evidence "gives district courts 'broad latitude' to structure proceedings concerning expert testimony." *United States v. Holguin*, 51 F.4th 841, 852 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 2509 (2023), *and cert. denied sub nom. Higuera v. United States*, 143 S. Ct. 2510 (2023) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999)).  To satisfy the gatekeeping function under Rule 702, district courts "must make explicit findings that the government's expert testimony was reliable." *Holguin*, 51 F.4th at 851.  To make explicit findings of reliability, district courts enjoy "broad latitude with regard to how to determine reliability." *id.* at 851 (quotations omitted).  The focus is on whether the witness has "a reliable basis in the knowledge and experience of [the relevant] discipline." *Kumho Tire*, 526 U.S. at 149.  The standard for a reliability finding is a preponderance of the evidence. *United States v. Nelson*, No. 17-CR-00533-EMC-1, 2021 WL 75757, at *3 (N.D. Cal. Jan. 8, 2021) ("The proponent of expert testimony 'has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence.'" (quoting Fed. R. Evid. 702 advisory committee's note—2000 amendment) (citing *Bourjaily v. United States*, 483 U.S. 171 (1987)).

#### 2.     Special Agent Perryman's knowledge and experience and specialized training in the conduct of criminal enterprises are reliable grounds for expert gang testimony

Consistent with *Holguin*, the Court held *Daubert* hearings on February 9, and February 12, 2024, based upon the parties shared view that the Ninth Circuit requires the Court to make reliability findings for contested expert witnesses.[3]  Taking into consideration Special Agent Perryman's testimony, coupled

---

[3]     It is worth noting here that this same rationale and precedent applies with equal force to the proposed defense gang expert Paul Medina.  While not before the Court at this time, if the defendants intend to call Medina as a witness, the government will, consistent with *Holguin*, request a *Daubert* hearing in order to assess whether Medina's testimony meets the reliability standard of Rule 702.

UNITED STATES' SUMMARY BRIEF AFTER *DAUBERT* HEARING IN SUPPORT ITS OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE SPECIAL AGENT

2

with the undisputed training and experience in his *curriculum vitae*, ECF 1800-2, at 2–4, and two expert notices he affirmed, ECF 1800-1, at 2–4, ECF 1800-3, at 2–6, he is "qualified as an expert by knowledge, skill, experience, training, or education" to offer opinions about the Aryan Brotherhood and the Court should so find.  Fed. R. Evid. 702.

To make a reliability finding by a preponderance, the standard is not demanding.[4]  An expert is "reliable if the knowledge underlying it 'has a reliable basis in the knowledge and experience of [the relevant] discipline.'"  *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006) (quoting *Kumho*, 526 U.S. at 152).  Here, Special Agent Perryman's substantial "knowledge and experience" and "specialized training in the conduct of criminal enterprises" are reliable grounds for him to express opinions under Rule 702 because he is a gang expert who can draw upon "data gathered from years of experience and special knowledge."  *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000); *United States v. Alatorre*, 222 F.3d 1098, 1104 (9th Cir. 2004).

In the context of gang experts, "reliability" "depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it."  *Holguin*, 51 F.4th at 858  (quoting *Hankey*, 203 F.3d at 1169).  "Ninth Circuit law thus provides that testimony by law-enforcement experts is generally reliable under *Daubert* where the witness demonstrates that his opinion is based on substantial 'knowledge and experience,' *Hankey*, 203 F.3d at 1169, and/or 'specialized training' in the conduct of criminal enterprises, *Alatorre*, 222 F.3d [1098] at 1104 [(9th Cir. 2004)]."  *Nelson*, 2021 WL 75757, at *6.

Consistent with *Holguin*, *Hankey*, and this Court's previous findings, Special Agent Perryman's testimony confirmed that he "developed his familiarity over more than two decades working in California prisons, where he observed gang members first hand, including the Aryan Brotherhood."  ECF 1778, at 5.  Similarly, he confirmed that his on-the-job training included learning "about the Aryan Brotherhood's roots, membership, structure, rules, symbols, and purposes first-hand by interviewing

---

[4]  As an example of the relatively-straightforward reliability findings required by *Holguin*, the government submits Exhibit A.  That exhibit provides the transcript from a recent *Daubert* hearing in *United States v. Benson*, Case No. 2:19-cr-00035 DAD (E.D. Cal.).  In that proceeding, the district court made the reliability findings required by *Holguin* in just a few sentences.  *See* Govt. Ex. A, at 39–43.

hundreds of inmates with connections to the Aryan Brotherhood, and he has read many reports of other interviews and investigations." *Id.* Moreover, his testimony confirmed that "he has investigated Aryan Brotherhood activity in California prisons and has searched for, confiscated and reviewed communications between gang members." And, finally, his testimony, *curriculum vitae* and the government's earlier submissions confirm "he has attended and taught formal classes and training about prison gangs in California." *Id.*

During his eight years at San Quentin State Prison, for example, Perryman described searching cells and inmate bodies for contraband, including gang-related items. In that capacity, he described seizing gang-specific evidence, include writings containing messages about gang activities, pictures and symbols of active prison gang members, and photos of validated gang members. He also described scanning and reading inmate mail to look for gang-related codes, or coded messages that conveyed gang business from one source to another. His San Quentin experience also featured scrutinizing recorded prison calls to listen for gang-related conversations or coded gang language being used over the prison line.

Beginning in 2010, Perryman assumed the title of Assistant Institutional Gang Investigator at San Quentin with a particular emphasis on white prison gangs. In this capacity, based upon the institution's needs at the time, he was assigned to specifically focus on white prison gangs who were active at San Quentin, including the Family Affiliated Irish Mafia ("FAIM"), the CoCo Boys (a Contra Costa County-based white gang), Butte County Gangsters, and other similar groups. In this role, he identified, documented, and validated white prison gang members under the CDCR's point-based validation system. This assignment required him to determine an inmate's gang status based upon three source items and, generally speaking, direct connections to other known validated gang members. This assignment provided him a wealth of first-hand experience of observing, interviewing, and investigating AB members, associates, and dropouts. *See United States v. Vera*, 770 F.3d 1232, 1239 (9th Cir. 2014) (gang expert "distilled and synthesized what he had learned through his experience.").

Building on the San Quentin experiences, in 2015, Special Agent Perryman moved to the Northern Debrief Task Force as part of the CDCR's Office of Correctional Safety, Gang Intelligence Unit – a group focused on lessening the backlog of pending debriefing inmates. With the Northern

UNITED STATES' SUMMARY BRIEF AFTER *DAUBERT*
HEARING IN SUPPORT ITS OPPOSITION TO
DEFENDANTS' MOTION TO EXCLUDE SPECIAL AGENT

4

Debrief Task Force, Special Agent Perryman conducted debriefs of validated gang members, including Aryan Brotherhood members leaving the gang. As part of the Northern Debrief Task Force, Special Agent Perryman developed a specialty/focus on the Aryan Brotherhood. To further his knowledge base and a better understand the Aryan Brotherhood, he described reading more than 50 debrief reports specific to the Aryan Brotherhood. While at the Office of Correctional Safety, he promoted to Sergeant (2017) and then Lieutenant (2019) and reviewed debriefing reports authored by officers under his authority. As his expertise in the Aryan Brotherhood increased, he taught classes to other law enforcement officers about the Aryan Brotherhood.

In sum, the Court should find by a preponderance of the evidence that Special Agent Perryman's extensive training and experience and his specialized training about the Aryan Brotherhood demonstrate a reliable basis to offer expert opinions about the enterprise. *Holguin*, 51 F.4th at 858; *Hankey*, 203 F.3d at 1169; *Alatorre*, 222 F.3d 1098 at 1104; *Nelson*, 2021 WL 75757, at *6. His background compares favorably to experts approved by the Ninth Circuit in *Holguin*, *Hankey*, *Vera*, and *Alatorre*. For these reasons, the Court should deny defendants' motion to exclude his testimony.

**B.     Defendants' anticipated attacks should be rejected.**

The government anticipates the defendants will argue that Special Agent Perryman's reliance on debriefing reports is unreliable because he and other CDCR interviewers do not generally put contradictory information into the reports. There are at least two problems with this argument.

First, Special Agent Perryman's knowledge, training, experience, and specialized knowledge are not solely based on conducting and reviewing debriefing reports. His testimony demonstrates that his expertise also draws on more than 20 years of extensive on-the-job training which allows him to draw on a multitude of experiences; these include: (1) years of personally interacting with gang members in prison and speaking with them about gang activity, (2) reading gang-related materials (kites, photos, letters) seized by investigators that were not intended to be viewed by law enforcement, (3) listening to recorded conversations among inmates about gang business in either recorded prison calls or over wiretapped conversations; and (4) consulting with other gang investigators working on Aryan Brotherhood cases to answer their questions and learn about developments in their investigations. The totality of the evidence demonstrates that Special Agent Perryman considers each source of information

UNITED STATES' SUMMARY BRIEF AFTER *DAUBERT* HEARING IN SUPPORT ITS OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE SPECIAL AGENT

5

he receives about the Aryan Brotherhood and assesses its validity by setting it against the totality of his accumulated knowledge about this group. The record thus establishes "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.

Second, the multi-step debriefing process described by Special Agent Perryman includes significant safeguards to enhance reliability. For example, in the "interview phase" of the debriefing process, after the autobiography is prepared, CDCR gang investigators must verify its completeness and accuracy by corroborating the information through independent sources. Cal. Code Regs. tit. 15, § 3378.5(b). More broadly speaking, the debriefing process is an administrative function designed to evaluate the sincerity of a gang member seeking to disassociate from the gang. Investigators must determine if they can "reasonably conclude" that "the subject has dropped out" of the gang and can be safely reclassified within CDCR as not active in gang activity "based upon the offender's needs in conjunction with the security of the institution, as well as, the safety and security of staff and other offenders." Cal. Code Regs. tit. 15, § 3378.5(b). Throughout the process, the inmate's autobiography, as well as the eventual debrief report, are kept confidential and are heavily protected from disclosure in order to protect the debriefing inmate from retaliatory violence.

The debriefing process is not, as defendants suggested in their line of questioning, the same as presenting a sworn affidavit to a magistrate judge to establish probable cause in support of criminal charges. In other words, the debriefing process and the report that is produced as result of the process is intended to be a criminal charging instrument. There is no practical reason to require investigators to include each and every possible fact or contradiction from every previous debriefing gang member included in the narrative, nor do the California administrative regulations contemplate such a requirement. Instead, as discussed, the debrief report is the culmination of a methodical process for a gang member to leave their gang while CDCR investigators assess their sincerity. The evaluation of sincerity, in turn, is accomplished through uniform application of a rigorous vetting process that tests and verifies the inmate's statements through corroboration. Cal. Code Regs. tit. 15, § 3321(c). Each of these factors described by Perryman in his testimony (and mandated by § 3321(c)) focus the investigator on verification of information provided through independent, overlapping sources. This process of corroboration greatly increases the reliability of the debriefing process and, in turn, creates a reliable

UNITED STATES' SUMMARY BRIEF AFTER *DAUBERT* HEARING IN SUPPORT ITS OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE SPECIAL AGENT

6

foundation for the formation of an expert opinion.  By comparing a debriefing inmate's account to independent reliable sources of information, CDCR gang investigators follow a reliable methodology to acquire gang-specific expertise.

The government also anticipates that the defendants will argue that they doubt Special Agent Perryman's credibility based upon an extensive line of cross-examination about defense Exhibits E, F, and G.  This questioning seemed to suggest that Special Agent Perryman was responsible for redacting confidential debrief reports produced in discovery in this case or that he was hiding things from them in those reports.

As a threshold matter, for the Court's gatekeeping function under *Daubert*, any credibility challenges asserted by the defendants "go to the weight of the evidence" and "are within the province of a fact finder, not a trial court judge." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014).  In other words, "A district court should not make credibility determinations that are reserved for the jury." *Id.*

On the substance of defendants' questions about redactions in their exhibits, they are mistaken in their reasoning process.  In particular, the debriefs authored by Special Agent Perryman and contained in defendants Exhibits E, F, and G, were produced by CDCR as a result of discovery litigation by co-defendant Jason Corbett before Magistrate Judge Claire.  *See generally* ECF 1300, 1303, 1434, 1368, 1697, 1723, 1771.  The discovery demands in those motions focused of items from Corbett's c-file, Donald Pequeen's c-file, and other people related to activities at High Desert.  As explained in the various briefs and declarations, CDCR only provided redacted versions of the c-files (including the debriefs contained in defendants Exhibits E, F, and G) to the government for production to all defense counsel subject to the protective order and only after CDCR was provided with Magistrate Judge Claire's Order and had a chance to request clarification or redactions.

Special Agent Perryman had nothing to do with the redactions or production of the court-ordered materials because that production was handled by lawyers from the California Attorney General's Office representing CDCR throughout this litigation.  Counsel for CDCR filed her motions and requests to determine various aspects of the production and limitations to what would be produced.  Most recently, Corbett asked for what defendants seem to desire: unredacted versions of the sensitive documents

UNITED STATES' SUMMARY BRIEF AFTER *DAUBERT* HEARING IN SUPPORT ITS OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE SPECIAL AGENT

7

produced as part of the discovery litigation. ECF 1697. The government opposed. ECF 1723. Magistrate Judge Claire asked for authority to support the request but, ultimately, Corbett withdrew the motion. ECF 1771. In the end, defendants attacks on Special Agent Perryman do nothing to disturb the Court's relatively straightforward finding by a preponderance that his training, experience, and specialized knowledge provide a reliable basis for his opinions about the Aryan Brotherhood in this case.

### III. CONCLUSION

The government respectfully requests that the Court find Special Agent Perryman's training and experience and specialized knowledge about the Aryan Brotherhood are a reliable basis to provide expert testimony in this case and defendants' motion to exclude be denied.

Dated: February 15, 2024

PHILLIP A. TALBERT
United States Attorney

By: /s/ *Jason Hitt*
JASON HITT
Assistant United States Attorney

UNITED STATES' SUMMARY BRIEF AFTER *DAUBERT* HEARING IN SUPPORT ITS OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE SPECIAL AGENT

8