Rene L. Valladares
Federal Public Defender
Brian D. Pugh
Assistant Federal Public Defender
Florida State Bar No. 0907294
Email: brian_pugh@fd.org
411 E. Bonneville Ave., Ste. 250
Las Vegas, NV 89101
(702) 388-6577
(702) 388-6261 (Fax)

Steven G. Kalar
Kalar Law Office
California State Bar No. 189550
Email: Steven@KalarLaw.com
1569 Solano Ave. #312
Berkeley CA 94707
(415) 295-4675
(415) 338-9950

Attorneys for Ronald Yandell

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>RONALD YANDELL, AND WILLIAM SYLVESTER,<br><br>　　　　Defendants. | Case No. 2:19-CR-00107-KJM<br><br>**Post Evidentiary Hearing Brief on** *Daubert* |

TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................... 1

II.   ARGUMENT ........................................................................................................... 1

      1.   Legal Standard ............................................................................................ 1

      B.   Agent Perryman's Testimony Raised Unresolved Reliability Concerns ........... 3

           1.   Inconsistencies and contradictions in Perryman's testimony were
                not resolved. ....................................................................................... 3

           2.   The Court Cannot Assess Perryman's Reliability When His
                Opinions are Drawn from Completely Redacted Debriefing
                Reports. .............................................................................................. 4

      C.   Perryman's methodology is not reliable. ........................................................... 5

           1.   Perryman relies on debriefing reports that only include
                *corroborating* evidence, but that exclude contradictory evidence. ......... 5

           2.   Agents edit and change language used by debriefers, to conform
                the evidence to the agents' theories. ...................................................... 6

      D.   The government is using Perryman to smuggle in statements otherwise
           inadmissible under *Crawford*. ............................................................................. 7

III.  CONCLUSION ........................................................................................................ 8

**Table of Authorities**

**Federal Cases**                                                                                          **Page(s)**

*City of Pomona v. SQM N. Am. Corp.*,
    750 F.3d 1036 (9th Cir. 2014) ........................................................................................ 2

*Crawford v. Washington*,
    541 U.S. 36 (2004) ............................................................................................... *passim*

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997) ........................................................................................................ 1

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579, 597 (1993) ............................................................................................... 2

*Higuera v. United States*,
    143 S. Ct. 2510 (2023) ................................................................................................... 2

*Kentucky v. Stincer*,
    482 U.S. 730 (1987) ....................................................................................................... 4

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999) .................................................................................................. 1, 5

*United States v. Gomez*,
    725 F.3d 1121 (9th Cir. 2013) ....................................................................................... 7

*United States v. Holguin*,
    51 F.4th 841 (9th Cir. 2022) .......................................................................................... 2

**Federal Rules**

Federal Rule of Evidence 702 ........................................................................................ *passim*

On the first day of *Daubert* evidentiary hearings, in response to an early government question, Special Agent Perryman candidly confessed that he is "not an expert."

Perryman's self-assessment is correct. This Court should bar Perryman from testifying as an expert under FRE 702.

## I. Introduction

On October 27, 2023, the government disclosed its notice for Special Agent Cory Perryman as an expert in the Aryan Brotherhood (AB). Since then, Perryman has been the subject of extensive litigation, including a Motion for Disclosure of "Bases and Reasons" for his opinions[1] (which was later denied[2]) and a Motion to Exclude him as an expert.[3] Based on the Motion to Exclude, this Court set a *Daubert* evidentiary hearing.[4]

This *Daubert* evidentiary hearings took place over two days.[5] Perryman's testimony revealed that the information upon which he relies to form his opinions is unreliable, that his methodology is unsound, and that his resulting opinions do not meet the rigorous requirements of *Daubert*.

This Court should exercise its gatekeeping function under FRE 702 and exclude Perryman as an expert witness.

## II. Argument

### 1. Legal Standard

This Court has discretion to admit expert testimony under Federal Rule of Evidence 702. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997). The Court plays an important "gatekeeping" role to ensure all expert testimony, scientific or otherwise, is relevant and

---

[1] ECF No. 1686.
[2] ECF No. 1778.
[3] ECF No. 1800.
[4] ECF No. 1875.
[5] ECF Nos. 1880,

1

reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–49 (1999). The cornerstone of the *Daubert* analysis is the reliability of the purported expert's methodology. *See* FRE 702 ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that . . . (c) the testimony is the product of reliable principles and methods.") And the government, as the proponent, bears the burden of establishing admissibility of Perryman's testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993).

The government spent a great deal of time in the evidentiary hearing discussing Perryman's *qualifications*, but failed to make the necessary reliability showing. As the Ninth Circuit has emphasized, ". . . reliability is an entirely separate question [from qualifications]. A district court must distinguish an expert's qualifications from the reliability of the expert's principles and methods." *United States v. Holguin*, 51 F.4th 841, 854 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 2509, 216 L. Ed. 2d 463 (2023), and *cert. denied sub nom. Higuera v. United States*, 143 S. Ct. 2510, 216 L. Ed. 2d 463 (2023). Proffered expert testimony can only be "reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) (citation omitted). "The test of reliability is flexible" and the court "has discretion to decide how to test an expert's reliability . . . based on the particular circumstances of the particular case." *City of Pomona*, 750 F.3d at 1044 (citation omitted).

Some factors to determine reliability are "testability, publication in peer-reviewed literature, known or potential error rate, and general acceptance." *City of Pomona*, 750 F.3d at 1044. Importantly, because Mr. Yandell and Mr. Sylvester challenges Perryman's reliability, the district court "must make more than a conclusory statement" if it permits the testimony. *Holguin*, 51 F.4th at 854–55 (internal quotations and citations omitted).

**B.     Agent Perryman's Testimony Raised Unresolved Reliability Concerns**

**1.     Inconsistencies and contradictions in Perryman's testimony were not resolved.**

At the outset, internal inconsistencies in Special Agent Perryman's testimony raises deep reliability concerns about his proffered "expertise." For example, Perryman testified that he debriefed about five AB members and over five AB associates. This paltry number stands in stark contrast to his (signed) supplemental Expert Witness Notice, where the government boasted Perryman "interview[ed] AB gang members and associates numbering in the hundreds . . ." *See* Hrg. Exhibit A at 4. This unresolved inconsistency makes it impossible to know whether Perryman actually has the experience proffered by the government in its notice and supplemental notice.

To try to reconcile these differences, during his testimony Perryman tried to explain that the supplemental notice referenced any time Perryman talked to a gang member -- even brief interactions in the yard. That is a radical departure from the impression given in the supplemental notice, which was that this expert had meaningful and substantive interactions with AB members and associates (the only reasonable interpretation of the word, "interview" that was used in the supplemental notice) The Court cannot sanction the "expert" testimony of an agent who has actually interviewed fewer than a dozen AB members and associates over a long career. Moreover, these radical discrepancies between the supplemental notice and actual testimony under oath bespeak a witness who is neither precise nor reliable.

Perryman also testified *every* white gang is subservient to the AB. That is a bold statement. It is also patently untrue. During cross-examination, Perryman conceded there was a group of white gang members known as "Fuck the Brand" ("FTB") who hold themselves out as explicitly anti-AB. That gang, Perryman conceded, were not subservient. And the AB and USAS, which is another white affiliated gang, are consistently listed as enemies of each other.

These inconsistencies show Perryman's claims (often presented as universal truths about all AB members) cannot be relied on.

Fundamentally, Perryman's entire field of "expertise" relies entirely on debriefing gang members. Indeed, at the outset of the government's direct Perryman remarkably conceded that he is not an expert, and that the debriefing gang members were the experts. Yet during cross Perryman conceded that gang members – the wellspring of his opinions -- are "very deceitful."

Perryman has never testified as an expert in federal court. The internal inconsistencies in his testimony confirm that the *Yandell* case should not be his first opportunity.

### 2. The Court Cannot Assess Perryman's Reliability When His Opinions are Drawn from Completely Redacted Debriefing Reports.

A dramatic revelation of the evidentiary hearing is the extraordinary redaction of the debriefing reports produced by the government in discovery. As Mr. Yandell's counsel, Mr. Pugh, demonstrated, those reports features dozens and dozens of consecutive pages that are entirely blacked-out, or that show only a single paragraph or page number. Mr. Pugh was forced to attempt to navigate around this completely-redacted material when conducting the cross examination on Perryman. As a result of these pervasive redactions, the bases for Perryman's opinions on AB membership and structure are essentially inaccessible.

The analogy would be for a DNA expert to be proffered in Court, but for the government to refuse to provide over 90% of the lab tests or methodology – offering only the results in support of the expert's opinion. No Court would allow a non-agent expert to testify based on the redacted showing that the government relies upon in *Perryman*'s case.

The over-redaction of debriefing reports raises serious *Crawford* and Confrontation Clause issues, because the defense cannot meaningfully conduct cross-examination of this expert. Moreover, the ability of Perryman to hide the origins of his opinions behind pervasive redaction fatally undermines the reliability of his conclusions. Courts view cross as the "primary means for ensuring the reliability of testimony from adverse witnesses . . ." *Kentucky v. Stincer*,

482 U.S. 730, 749 (1987) (J, Marshall, dissenting); *see also Crawford v. Washington*, 541 U.S. 36, 61 (2004) (the Confrontation Clause demands "reliability be assessed in a particular manner: by testing in the crucible of cross-examination."). This Court cannot determine that Perryman's methodology or opinions are reliable, when they are reportedly based on tomes of blacked-out sheets that contain content neither the Court nor the defense have seen.

To be clear, on this present record the <u>only</u> bases for Perryman's proffered "expert" opinions are the (sparse) *unredacted* sections of the debriefing reports provided to the defense. Neither this Court, nor an appellate court, can go beyond that record of unredacted material because no judicial officer has seen the unredacted material. On this remarkably lean record, the government has simply failed to make the necessary FRE 702 showing. *See* FRE 702(b) ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: . . . (b) the testimony is based on *sufficient facts or data*.")

    **C.**    **Perryman's methodology is not reliable.**

        **1.**    **Perryman relies on debriefing reports that only include *corroborating* evidence, but that exclude contradictory evidence.**

Mr. Perryman's methodology is fundamentally unreliable because he and his colleagues intentionally exclude contrary information from the debriefing reports. Agent Perryman conceded during cross that he and his colleagues only include "collaborating" information in these reports: information that match the debriefing inmate's and the agents' theories of an event. That methodology cannot help this Court in its ultimate objective "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152 (emphasis added).

For example, Perryman testified that debriefers sometimes deny prior bad acts when confronted. Those denials are not listed in the debriefs, and contradictory information from different debriefs are not noted.

Perryman also testified that if a latter witness contradicts a debriefing inmate's version of events, that contradiction is *not* included in the debriefing report. Only "corroborating" information merits inclusion in these odd investigation documents.

There could not be a more fundamental flaw to the methodology of a reported expert than flatly ignoring contradictory evidence. There is no reported case where a government's law enforcement expert is deliberately blind to evidence that undermines or contradicts an investigation theory. Instead, a reliable law enforcement officer considers all evidence, documents it, evaluates credibility, and pursues leads accordingly.

This flaw in methodology is fatal to Perryman's reliability because the agent relies so heavily – indeed, almost exclusively – on debriefing reports to reach his expert opinions. As a result, when other witnesses contradict the "story" that a debriefing inmate is feeding to the CDCR officials, Perryman is effectively blind to those conflicting (and often true) accounts. The CDCR's bizarre process of "corroboration" may be sufficient for decisions about prison discipline based on these debriefing reports, but falls woefully short of the reliability necessary for an expert witness in federal court. Notably, the CDCR itself expressly disclaims the debriefing materials as information to be used in criminal prosecutions – exactly what Agent Perryman intends to do in the *Yandell* trial.

**2.  Agents edit and change language used by debriefers, to conform the evidence to the agents' theories.**

Remarkably, Perryman conceded that he and other agents deliberately change the language used by debriefing inmates when they write the debriefing reports. This change, Agent Perryman explained, was to make the language "more professional."

The Court witnessed a dramatic example of this "more professional" editing during cross, when it saw the actual statements of Mr. Yandell in the Bulldog Interview, when contrasted to how events and participants where characterized in the summary of the interview prepared by Agent Street. Agent Street took remarkable liberties with his interpretation and description of Yandell's statements, that went far beyond what was actually said in the interview.

The routine practice of agents "editing" the actual statements of debriefers to "make them more professional" contaminates the reliability of the debriefing reports – which are *not* accurate chronicles of what the debriefers actually said. This deep flaw in the reliability of the debriefing reports fatally undermines the methodology, and the opinions, of Agent Perryman.

### D. The government is using Perryman to smuggle in statements otherwise inadmissible under *Crawford.*

It became clear in the *Daubert* evidentiary hearing that if admitted as an "expert" Perryman will serve as a mere vessel to smuggle testimonial hearsay evidence into this trial. The Ninth Circuit has favorably cited the Fourth Circuit's summary of this problem of "conduit" testimony:

> An expert witness's reliance on evidence that *Crawford* would bar if offered directly only becomes a problem where the witness is used as *little more than a conduit or transmitter for testimonial hearsay*, rather than as a true expert whose considered opinion sheds light on some specialized factual situation. Allowing a witness simply to parrot "out-of-court testimonial statements of cooperating witnesses and confidential informants directly to the jury in the guise of expert opinion" would provide an end run around *Crawford*. *United States v. Lombardozzi*, 491 F.3d 61, 72 (2d Cir.2007). For this reason, an expert's use of testimonial hearsay is a matter of degree. The question is whether the expert is, in essence, giving an independent judgment or merely acting as a transmitter for testimonial hearsay. As long as he is applying his training and experience to the sources before him and

7

> reaching an independent judgment, there will typically be no Crawford problem. The expert's opinion will be an original product that can be tested through cross-examination.

*United States v. Gomez*, 725 F.3d 1121, 1129 (9th Cir. 2013), quoting *United States v. Johnson*, 587 F.3d 625, 635 (4th Cir.2009) (emphasis added).

Before this Court is the unprecedented case where the government's proffered agent has candidly admitted that he is in fact no more than a conduit. Perryman testified in response to government questioning that he is *not* an expert: the debriefing inmates upon whom he relies are. Perryman's plan to parrot the out-of-court testimonial statements of "expert" debriefing inmates is precisely the *Crawford* issue that violates Mr. Yandell's and Mr. Sylvester's Confrontation Clause rights. Perryman's cannot testify as an expert.

## III. Conclusion

Because the information upon which Special Agent Perryman bases his opinions is not reliable (and is limited by heavy redaction), because his methodology is fatally flawed, and because his testimony will create unavoidable *Crawford* problems, this Court must deny the government's motion to permit Perryman to testify as an expert under FRE 702.

Dated: February 15, 2024

                Respectfully submitted,

                Rene L. Valladares
                Federal Public Defender

                */s/ Brian Pugh*
                BRIAN PUGH
                Assistant Federal Public Defender

                Kalar Law Office

                */s/ Steven Kalar*
                STEVEN G. KALAR