PHILLIP A. TALBERT
United States Attorney
JASON HITT
ROSS PEARSON
DAVID SPENCER
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>           v.<br><br>RONALD YANDELL, ET AL.,<br><br>                    Defendants. | CASE NO.  2:19-CR-00107-KJM<br><br>UNITED STATES' REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OR ARGUMENT SUGGESTING JUROR NULLIFICATION<br><br>DATE: March 4, 2024<br>TIME: 1:00 p.m.<br>COURT: Hon. Kimberly J. Mueller |

Defendants do not dispute that it would be improper jury nullification for them to argue or suggest—through questioning of witnesses or otherwise—that the jury should acquit them based on perceived corruption or misconduct by CDCR. *See generally* ECF 1950 (Yandell opposition), ECF 1953 (Sylvester opposition). Instead, defendants attempt to justify their irrelevant attacks on CDCR and its employees on other grounds. Defendants argue, in essence, that any and all attempts to smear CDCR or any CDCR employee are relevant to a third-party culpability defense, to alleged "bias" of CDCR witnesses, and to whether the defendants had a gang-related motive for committing the charged crimes. *See generally id.* Each of these arguments is mistaken. Defendants' briefs reveal their express intent is to inflame the jury against CDCR in order to support jury nullification on matters that are not relevant to the criminal charges in this case.

UNITED STATES' REPLY ISO MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OR ARGUMENT SUGGESTING JUROR NULLIFICATION

1

1    First, Yandell argues that any evidence or argument of CDCR misconduct is admissible and
2 relevant to support a "third-party culpability" defense to the Pinell murder. *See* ECF 1950 at 7–11. But
3 that is not a permissible third-party culpability defense because what Yandell seeks to establish—that
4 CDCR contributed to Pinell's murder by placing him on the yard when it knew or should have known he
5 would be murdered—does not in any way exculpate Yandell. Third-party culpability evidence is
6 admissible where it would exculpate the defendant because *only one person could have committed the*
7 *crime*; but, that is not the situation in this case. *See United States v. Crosby*, 75 F.3d 1343, 1349 (9th
8 Cir. 1996) (holding that evidence that third party had motive and opportunity to commit assault
9 defendant was charged with should have been admitted because only one person could have committed
10 assault, and thus inculpating evidence about third-party would have exculpated defendant). In contrast,
11 courts routinely exclude evidence of a third party's alleged misconduct where it would not exculpate the
12 defendant. *See, e.g., United States v. Castro*, 379 F. App'x 549, 551 (9th Cir. 2010) (finding no error in
13 excluding evidence of another individual's prior conviction for possessing a firearm where "evidence
14 inculpating the other passenger would not have tended to exculpate" the defendant); *United States v.*
15 *Stewart,* 770 F.2d 825, 830 (9th Cir. 1985) ("The paraphernalia might have tended to show that [co-
16 defendant] was a drug distributor, but it did not show that [defendant] was *not* a drug distributor.");
17 *United States v. Spencer*, 1 F.3d 742, 744–45 (9th Cir. 1992) (affirming, in felon in possession case,
18 district court's decision to exclude evidence that another individual who was in the car with defendant
19 was arrested with another gun a week after defendant).

20    Here, Yandell is free to present evidence and argument—as he has done vigorously—that Gary
21 Littrell or any other prisoner is responsible for ordering the murder. That is a valid third-party
22 culpability defense because, if true, it would undermine the government's theory that Yandell is
23 responsible for the murder. The same cannot be said, however, of any alleged responsibility CDCR
24 bears for the murder. Regardless of CDCR's desire, intent, or knowledge in allowing Pinell on the yard
25 where he was killed, two AB associates, Jayson Weaver and Waylon Pitchford, committed the homicide.
26 CDCR's actions have no relevance to whether Yandell—or any other AB shot caller—is guilty of this
27 murder. The only reason for Yandell to inject CDCR's alleged responsibility for the murder into this
28 trial—not to mention the even more attenuated allegations of CDCR corruption and misconduct he has

sought to introduce—is to inflame the jury against CDCR in an effort to invite juror nullification. In essence, Yandell seeks to litigate civil-style tort claims against CDCR on behalf of Pinell—something that cannot occur within a federal criminal case under Rules 401 and 403.

Second, Yandell argues that evidence of any CDCR corruption or misconduct—at any time and by any CDCR employee—is relevant to show "bias" of all CDCR witnesses, whether or not the witness was personally involved in any misconduct. *See* ECF 1950, at 11–14. This argument makes no sense and finds no support in the law. To support his sweeping claim, Yandell relies on *United States v. Abel*, 469 U.S. 45 (1984), which stands for the proposition that a witness's membership in the same organization as the defendant is admissible evidence of the witness's bias where the organization's *tenets require its members to commit perjury for each other*. *See id.* at 47, 52. Ironically, the organization at issue in *Abel* was the Aryan Brotherhood. *See id.* But *Abel* also recognized that membership in an organization often will not give rise to bias. *See id.* at 54. That is especially so here, where Yandell's claim appears to be that each and every CDCR witness is biased to cover up alleged misconduct by *other* CDCR employees, whether or not the witness had some close personal relationship to that employee or even knew the employee. Yandell's theory of "bias" makes no sense, and, instead, represents an excuse to smuggle improper suggestions of CDCR misconduct and corruption into the trial in order to try to take the focus off his crimes.[1] Not only is that wholly improper under the rules of impeachment, but it is also a naked appeal to juror nullification that this Court has a duty to stop.

Third, Sylvester argues that he is entitled to introduce any and all evidence of alleged CDCR misconduct in promoting violence in order to support the defense that his motive for committing violent acts was not related to the Aryan Brotherhood. *See* ECF 1953. This argument is a non-sequitur. Of

---

[1] For instance, Yandell's counsel asked a CDCR witness to the Pequeen and Maynard murders whether he was aware of disciplinary actions against any of the many other officers involved in those investigations. The witness was not—but suppose, for the sake of argument, that the witness had known of some other officer who had been disciplined for some kind of job-related misconduct, such as smuggling a cell phone to a prisoner or excessive force against a prisoner. That fact would be wholly irrelevant to any bias on the part of the witness or any other issue in this trial. Nor does it make any difference whether the testifying officer has "personal knowledge" of the disciplinary action—contrary to Yandell's argument. *See* ECF 1950, at 13. Any such questioning of a witness about the alleged misconduct of *other officers* is improper impeachment, irrelevant to any issue in this trial, and an improper attempt to inflame the jury and put CDCR on trial rather than the criminal charges actually before this jury.

course Sylvester may defend against the VICAR charge—Count Fifteen, Murder in aid of Racketeering—by arguing that he committed the murder for a non-gang-related purpose. And evidence of other purposes *Sylvester* might have had for committing the murder is of course relevant to this defense. But it does not follow that Sylvester may inquire into any allegation of violence-promoting misconduct by any CDCR employee at any time and place, regardless of its connection to Sylvester—such as inquiries into alleged "gladiator" fights arranged by CDCR employees decades ago at a prison where none of the defendants were housed in events that have nothing to do with the charged conduct in this case.

For the foregoing reasons, the Court should grant the government's motion *in limine* and issue an order precluding any suggestion by defense counsel, whether through questioning of a witness or argument, that the jury may acquit based on a belief that CDCR or any of its employees engaged in any misconduct or that CDCR or the prison environment contributed in any way to defendants' conduct in this case. The Court should also exclude as irrelevant any evidence of allegations of CDCR misconduct unless they relate directly to a charged crime or are permissible impeachment of the witness under Fed. R. Evid. 608.

Dated: March 4, 2024

PHILLIP A. TALBERT
United States Attorney

By: /s/ DAVID SPENCER
DAVID SPENCER
Assistant United States Attorney