Rene L. Valladares
Federal Public Defender
Brian D. Pugh
Assistant Federal Public Defender
Florida State Bar No. 0907294
Email: brian_pugh@fd.org
Sean A. McClelland
Assistant Federal Public Defender
Nevada State Bar No. 16581
Email: sean_mcclelland@fd.org
411 E. Bonneville Ave., Ste. 250
Las Vegas, NV 89101
(702) 388-6577
(702) 388-6261 (Fax)

Steven G. Kalar
Kalar Law Office
California State Bar No. 189550
Email: Steven@KalarLaw.com
1569 Solano Ave. #312
Berkeley CA 94707
(415) 295-4675
(415) 338-9950 (Fax)

Attorneys for Ronald Yandell

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RONALD YANDELL,<br><br>Defendant. | Case No. 2:19-CR-00107-KJM<br><br>**DEFENSE RESPONSE TO GOVERNMENT MOTION TO EXCLUDE GARY LITTRELL'S CONFESSIONS TO ORDERING THE PINELL MURDER (ECF No. 2093)**<br><br>Chief Judge Kimberly J. Mueller, United States District Court |

## I. INTRODUCTION

Confessing to ordering a murder tends to expose someone to criminal and civil liability. Gary Littrell did just that here: he confessed, repeatedly, to CDCR staff that he ordered Hugo Pinell murdered. And the CDCR specifically found those confessions "reliable" as both "self-incriminating" and "corroborated" by other evidence—a conclusion the government does not dispute. Those confessions are thus (at least) statements against interest; admissible over hearsay objection because Mr. Littrell is now deceased. *United States v. Paguio*, 114 F.3d 928, 932 (9th Cir. 1997).

Other, non-self-incriminatory statements Mr. Littrell made, however, are not admissible on the same grounds. Neither the rule-of-completeness nor Rule 611 allow the government to skirt ordinary hearsay rules. As a result, only those confessions that exposed Mr. Littrell himself to punishment (like his confessions to ordering the Pinell murder) can come in. Statements that "point[ed] the finger" at others cannot. *Paguio*, 114 F.3d at 934.

The government's motion should therefore be denied.

## II. BACKGROUND

Gary Littrell repeatedly confessed to law enforcement officers that he ordered the Pinell homicide. Those confessions appear in at least four documents:

- A report of informal interviews between Mr. Littrell and CDCR staff that happened "[w]ithout request or further prompting" in September 2015, *see* Sealed Ex. 1 at 1–3;[1]

- A report of preliminary request-to-debrief interviews between Mr. Littrell and CDCR staff in April and May 2016, *see* Sealed Ex. 2 at 1–5;

---

[1] Sealed Exhibits 1 through 5 are documents that the defense has received from its independent investigation. Those documents are subject to a protective order, and so are being filed under seal and *ex parte* for the Court's review. There is a pending motion to modify that protective order awaiting the Court's signature that would permit the government to access some of these documents. The defense will similarly meet & confer with relevant stakeholders to ensure that the remaining can be provided to the government.

3

- Mr. Littrell's handwritten autobiography, *see* Sealed Ex. 3 at 73;[2] Sealed Ex. 4 at 21; and
- A debriefing report following formal debrief interviews between Mr. Littrell and CDCR staff in September and October 2016, *see* Gov't's Sealed Ex. B at 77–79; *see also* Sealed Exhibit 5;

In the process, Mr. Littrell provided detailed confessions on how he planned and ordered the Pinell homicide, including:

- how he felt encouraged by CDCR staff to commit the murder;
- how he tried to get the BGF to do it first;
- how, when the BGF declined, he decided to organize the murder himself;
- how he got the knife made;
- how he picked Weaver and Pitchford as the assailants;
- how he observed Pinell's movements prior to the murder;
- how he determined when the murder should happen;
- how he planned to protect Weaver and Pitchford as they committed the murder; and
- how he organized the white inmates to survive the race riot that followed.

In each of their reports, CDCR officials noted that Mr. Littrell's confessions were "reliable"—including because they were both "self-incriminating" and "corroborated."[3]

---

[2] The Littrell autobiography provided to the defense spans two PDF files. The first PDF is marked as Sealed Exhibit 3 (with white pages); the second as Sealed Exhibit 4 (with blue pages).

[3] Sealed Ex. 1 at 3 ("reliable" because "self-incriminating" and "corroborated through interviews, independent sources and through investigation"); Sealed Ex. 2 at 4 ("reliable" because "self-incriminating" and "corroborated through investigation and confidential and non-confidential sources"); Gov't's Sealed Ex. B at 144 ("reliable" because "self-incriminating" and "other confidential sources have independently provided the same information").

4

The government now moves to exclude evidence of Mr. Littrell's confessions to the most important charge in this case. ECF No. 2093.[4]

Mr. Yandell submits this opposition.

## III. ARGUMENT

### A. Gary Littrell's confessions are admissible.

Mr. Littrell's confessions are admissible under at least two hearsay rules. Most significantly, they satisfy Rule 804: they exposed him to potential criminal or civil liability and are sufficiently corroborated to be trustworthy. But even if that were not so, their undisputed trustworthiness would warrant admission under Rule 807. Either way, the government's motion to exclude the confessions should be denied.

#### 1. The confessions are admissible under Rule 804 as statements against interest by an unavailable declarant.

##### a. Mr. Littrell is unavailable.

First, Mr. Littrell is an unavailable declarant. *See* FED. R. EVID. 804(a)(4); *see* ECF No. 2093 at 6 (agreeing that Mr. Littrell is "undisputedly" "unavailable"). He is deceased. *See* FED. R. EVID. 804(a)(4). So he "cannot be present or testify at the trial." *Id.* His statements are thus subject to Rule 804. *Id.*

##### b. Mr. Littrell's repeated confessions exposed him to criminal and civil liability.

Second, Mr. Littrell's confessions are statements against interest. *See* FED. R. EVID. 804(b)(3). They tended to expose him to criminal or civil liability for the murder he confessed to organizing. *Id.* And the follow-on CDCR investigations sufficiently

---

[4] The government specifically seeks to exclude Mr. Littrell's confessions during his formal debrief interviews. *See* ECF No. 2093 at 4–5. As noted above, Mr. Littrell made other confessions outside the formal debriefing process. But in an abundance of caution, the assumes that the government will contest the admission of any of Mr. Littrell's confessions. Relevant differences in the various confessions—including that some were not made under any purported disclaimer about the "administrative purposes" of parts of the formal debrief process—are further discussed below.

5

corroborate the confessions to guarantee their reliability. *Id.* So the confessions to the Pinell homicide are properly admitted.

Under Rule 804(b)(3), an unavailable declarant's statements are admissible if:

(1) the statement "tend[s] to subject the declarant to criminal liability"; and

(2) "corroborating circumstances clearly indicate the trustworthiness of the statement."

*United States v. Paguio*, 114 F.3d 928, 932 (9th Cir. 1997). Similar standards apply to statements that could expose someone to civil liability. *E.g.*, *PECO Energy Co. v. Boden*, 64 F.3d 852, 858–59 (3d Cir. 1995) (admission to stealing money could subject declarant to civil liability).

Third-party confessions are classic statements against interest under this rule. *Paguio*, 114 F.3d at 933–34 (reversible error to exclude the defendant's father's statements suggesting that he—rather than the defendant—had prepared false tax returns and "engineer[ed] an admittedly fraudulent loan application"); *United States v. Slaughter*, 891 F.2d 691, 697–98 (9th Cir. 1989) (similar; reversible error to exclude third-party's confession to using cocaine).[5] For these purposes, "confessions" are read broadly. *Paguio*, 114 F.3d at 933 ("[T]he statement need not be a plain confession."); *Slaughter*, 891 F.2d

---

[5] *See also, e.g.*, *United States v. Julison*, No. 3:11–CR–00378–SI, 2013 WL 3929829, at *2–3 (D. Ore. July 29, 2013) (admitting defense-presented statements from an unavailable tax preparer that misrepresented particular tax forms, a possible violation of the tax code); *United States v. Branche-Jones*, No. 2:16-cr-00062, 2019 WL 5557192, at 2–3 (D. Nev. Oct. 28, 2019) (admitting statements, under higher burden for government-presented evidence (discussed below), that an unavailable declarant had "fronted" drugs for the defendant); *United States v. Navarro-Montes*, No. 09-cr-577, 2011 WL 902098, at *1–2 (S.D. Cal. Mar. 16, 2011) (similar; admitting government evidence of statements that co-defendant had been "involved in the events surrounding the death of a federal agent"); *United States v. Bonds*, No. 07-cr-732, 2011 WL 511387, at *4–5 (N.D. Cal. Feb. 15, 2011) (similar; admitting government evidence from a third party discussing techniques for administering performance-enhancing drugs).

6

at 698 ("direct confessions" not required). Even statements that do not directly admit guilt—a declarant merely claiming, for instance, that someone else "had nothing to do with it"—are likewise properly admitted as statements-against-interest. *Paguio*, 114 F.3d at 933.

These rules particularly require admission where, as here, a defendant is seeking to introduce evidence that another person confessed to the charged crime. *Paguio*, 114 F.3d at 934. And reversal is a common remedy where such evidence is excluded: the Ninth Circuit has emphasized that it is "'barbarous'" to exclude anything approaching "an unavailable declarant's confession" "because exclusion increases the risk of convicting the innocent." *Id.* (quoting 5 WIGMORE ON EVIDENCE § 1477 at 360 (Chadbourn rev. 1974)) (reversing because such evidence was excluded); *accord Slaughter*, 891 F.2d at 697–98 (reversing for similar reasons). Rather, in this posture, the credibility of a declarant's confession is properly left "up to the jury." *Paguio*, 114 F.3d at 933.

### i.  The confessions exposed Mr. Littrell to liability.

Against that backdrop, Mr. Littrell's confessions to ordering the Pinell homicide are admissible statements against interest. Ordering Pinell killed was a crime. And Mr. Littrell admitted—to law enforcement officers—both the top-line of that crime (ordering the murder) and the nitty-gritty details (down to how he got the knife made). Sometimes he confessed entirely unprompted. *See* Sealed Ex. 1 at 1. Those confessions then made their way into documents reflecting informal interviews, request-to-debrief interviews, and formal debrief interviews. Each time, CDCR staff deemed Mr. Littrell's confessions "reliable"—both because they were "self-incriminating" and because they were "corroborated" by other evidence. *See* Sealed Ex. 1 at 3; Sealed Ex. 2 at 4; Gov't's Sealed Ex. B at 144.

All told, then, Mr. Littrell "admitted not only participation but leadership." *Paguio*, 114 F.3d at 933. He did not "shift blame or curry favor"—he admitted exactly how he planned and ordered the Pinell homicide, without claiming that anyone else was more culpable than he was. *Id.* (quotation omitted). That makes his confessions statements

7

against interest. *Id.*

The government nonetheless attempts to avoid that result by claiming that Mr. Littrell's confessions were effectively immunized from criminal prosecution. That is so, the government claims, because one form in the formal debriefing process—the autobiography form—says that the "purpose[]" of writing the autobiography is "not" "acquiring incriminating evidence." ECF No. 2093 at 7 (quoting Gov't's Sealed Ex. A at 1). From that form, the government argues, Mr. Littrell "would have" necessarily believed "that he would face no criminal consequences from the information he provided to CDCR officials." ECF No. 2093 at 7.

There are at least four problems with the government's position.

The first is that it does not apply to Mr. Littrell's confessions prior to formal debriefing. As discussed above, Mr. Littrell confessed to ordering the Pinell homicide on at least two occasions before writing his autobiography. *See* Sealed Ex. 1; Sealed Ex. 2. Those confessions—some made "[w]ithout request or further prompting," Sealed Ex. 1 at 1—cannot be excluded via any disclaimer in the autobiography form.

The second (and bigger) problem is that debriefing does not actually shield inmates from criminal liability. Inmates are often denied parole by the state because of their admissions during debriefs. And federal prosecutors—not bound by CDCR's representations—can (and do) use those interviews to establish guilt. The upshot: debriefing can make you serve longer terms in prison.

The facts of this case demonstrate as much. At least three of the government's cooperators—Jeremy Beasley, Donald Mazza, and Travis Burhop—have debriefed. And all three experienced some criminal sanction for doing so:

- Mr. Beasley, for instance, debriefed twice in October 2012. *See* Sealed Ex. 6, Beasley Debrief. Those debriefs were then specifically

8

- cited by the California Parole Board in denying Mr. Beasley parole in May 2021.[6]
- Mr. Mazza and Mr. Burhop, in turn, had their debriefs used against them in their plea agreements here. Mr. Mazza first debriefed on October 19, 2021,[7] over six months before pleading in this case. *See* ECF No. 1197. Mr. Burhop similarly debriefed twice in August 2022 before entering a plea in September 2022. *See* ECF No. 1321. And for both men, information from their debriefs made its way into the factual bases in their plea agreements. *See* ECF Nos. 1197, 1321.[8]

In brief: the government's own cooperators prove that any disclaimer about the "purposes" of debriefing does not immunize confessions during debriefs.

And indeed, other information provided to CDCR for purportedly "administrative purposes" is also being used in this criminal case. This Court has heard, for example, testimony that CDCR OCS conducted various interviews with defendants here. Like the debriefing process, those interviews were purportedly conducted for administrative-purposes only—not (purportedly) to incriminate anyone. And yet the government (and Mr. Troxell) has elicited evidence about Mr. Yandell's and Mr. Sylvester's alleged comments in their interviews to inculpate them in a wide range of criminal activity. The government's own conduct, in short, proves that the purported "purposes" CDCR has in collecting information does not shield individuals from criminal liability.

All that makes this case different than the government's "immunity" cases. Take the government's lead case: *Gonzalez*, a 1977 Fifth Circuit decision from before the Eleventh Circuit spin-off. There, the declarant had been both convicted and specifically granted

---

[6] *See* Sealed Ex. 7, Beasley May 25, 2021, Parole Hearing Tr. at 112–25 (decision referring to files containing debrief); *see also id.* at 11–13, 16–17, 58–61 (parole members specifically referring to things Mr. Beasley disclosed in his debrief, including about murders and gang activity).

[7] Mr. Mazza also debriefed four additional times prior to pleading: on October 20, 2021, January 27, 2022, and January 28, 2022.

[8] *Compare* Sealed Ex. 8, Mazza Debrief; Sealed Ex. 9, Burhop Debrief.

immunity before making the at-issue statement. 559 F.2d 1271, 1273 (5th Cir. 1977). Likewise in the Eighth Circuit's *Keltner*,[9] the Sixth Circuit's unpublished *Jackson*,[10] and the District of Puerto Rico's *Rodriguez*[11] decisions. In each, the declarant had provided information after receiving formal immunity directly from a federal prosecutor. Mr. Littrell received no such immunity—just a statement that CDCR's "purposes" for the formal debrief were administrative. And as discussed, those "purposes" do not stop criminal sanctions like the federal prosecution in this matter.

The third (and related) problem for the government is that most of its cases on exclusion—including its lone Ninth Circuit authority, *Magana-Olvera*—involve prosecution-offered evidence. *United States v. Magana-Olvera*, 917 F.2d 401, 407–09 (9th Cir. 1990). And the rule is different for defense-offered evidence. Like all hearsay rules, government use of statements against interest is hemmed in by background Confrontation Clause limits. *Paguio*, 114 F.3d at 934.

But there is no such constitutional principle limiting defense use of such evidence. Quite the opposite, the Compulsory Process Clause requires broader admission for defendants. *Id.* ("The accused's right to present witnesses in his own defense may be implicated where an absent declarant's testimony is improperly excluded from evidence."). So, as the Ninth Circuit explained in *Paguio*, the statement-against-interest rule is intentionally "asymmetrical" "between defense and prosecution":

> Prosecution use of an unavailable declarant's accusation of the defendant . . . raises different concerns from a defendant's use of an unavailable declarant's confession which exonerates him.

114 F.3d at 934 (reversible error to exclude such defense-offered statements). The result:

---

[9] *United States v. Keltner*, 147 F.3d 662, 672 (8th Cir. 1998).

[10] *United States v. Jackson*, 454 F. App'x 435, 447 (6th Cir. 2011).

[11] *United States v. Rodriguez*, 08-cr-242, 2011 WL 2377583, at *2 (D.P.R. May 9, 2011).

unlike the government's prosecution-side cases, statements against interest are particularly admissible in defense cases. *Id.*[12]

And, finally, the fourth problem is that, even if Mr. Littrell's confessions would not have exposed him to possible criminal liability, they undoubtedly exposed him to possible civil liability. He could be sued, for instance, by Mr. Pinell's family members under California wrongful death law. *See* CAL. CIV. PROC. CODE § 377.60. He confessed to the murder within the two-year statute of limitations period for such a lawsuit. *Compare id.* § 336.1(b), *with* Gov't Sealed Ex. B at 1. And there is no other obvious barrier to such a lawsuit; Mr. Littrell confessed, at times unprompted, to organizing the homicide. So he could reasonably expect to face (at least) civil liability for the murder. *E.g., PECO Energy Co.*, 64 F.3d at 858–59.

### ii.   The confessions are trustworthy.

Nor are there any trustworthiness concerns with these statements. *See Paguio*, 114 F.3d at 932. Indeed, the government all but concedes that this information is trustworthy. *See generally* ECF No. 2093 at 6–8. In the government's words, Mr. Littrell's confessions were the product of a "thorough" process that was closely "evaluated" by the government's own agents. *Id.* at 8. No surprise, then, that the CDCR likewise labeled Mr. Littrell's

---

[12] The government's Ninth Circuit case is also distinguishable on various other grounds. For one, that case only involves the statement's trustworthiness—something that, as discussed below, the government here pointedly does not dispute. *See Magana-Olvera*, 917 F.2d at 407 ("Neither party disputes that [the co-conspirator's] remarks tended to subject him to criminal liability. However they hotly dispute the second element—whether a reasonable person in Ricky's shoes would not have made the statements unless true."). And the *Magana-Olvera* declarant's statement was also "shift[ing] blame"—not, as here, full-on confessing to the crime. *Id.* at 408; *see, e.g., United States v. Westmoreland*, 240 F.3d 618, 627 (7th Cir. 2001) (identifying that "an effort . . . to shift blame" is less likely to be a statement against interest).

11

confessions "reliable" and "corroborated" by other evidence.[13] And that reliability is further corroborated by other facts supporting the confessions: Mr. Littrell was housed in the same cell block as Mr. Pinell, was on the same yard as Mr. Pinell the day of the murder, and had specific animus towards him. The statements are thus sufficiently trustworthy.

*    *    *

Mr. Littrell repeatedly confessed to murdering Mr. Pinell. Those confessions tended to expose Mr. Littrell to criminal or civil liability. And CDCR itself believed those confessions were trustworthy—a conclusion the government does not dispute. The confessions are thus admissible under Rule 804(b)(3).

### 2. Even if somehow not admissible under Rule 804, the confessions' undisputed trustworthiness warrants admission under Rule 807.

Moreover, even if these confessions are somehow not admissible under Rule 804 (as discussed, they are admissible under that Rule), they are admissible under Rule 807. Admission under Rule 807 is appropriate when:

(1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and

(2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

FED. R. EVID. 807(a).[14]

---

[13] Sealed Ex. 1 at 3 ("reliable" because "self-incriminating" and "corroborated through interviews, independent sources and through investigation"); Sealed Ex. 2 at 4 ("reliable" because "self-incriminating" and "corroborated through investigation and confidential and non-confidential sources"); Gov't's Sealed Ex. B at 144 ("reliable" because "self-incriminating" and "other confidential sources have independently provided the same information").

[14] Like Rule 902(11) and (14), Rule 807 has a "before the trial" notice requirement. FED. R. EVID. 807(b); *see* ECF No. 2043. But unlike the authentication rules, that Rule 807 notice requirement excusable for "good cause." Such good cause exists here: the government's presentation of its case—including via recalling witnesses to play additional

As discussed above, the government does not contest the trustworthiness of Mr. Littrell's confessions. And those confessions are more probative than any other evidence reasonably available to the defense. Nothing else tends to show that Mr. Littrell ordered the murder in the same way. The confessions therefore warrant admission under Rule 807.

### B. The government can introduce other statements from Mr. Littrell's confessions tending to expose Mr. Littrell to criminal or civil liability— but not statements that do not.

As an alternative to exclusion, the government also asks to present "extensive portions of [Mr. Littrell]'s statement" beyond his confessions to the Pinell homicide. ECF No. 2093 at 9–11. The government needs to do so, it says, to provide "context." *Id.* at 9. And that "context," the government says, involves at least seven "[non-]exhaustive" statements from undefined time periods. *Id.* at 9 & n.2.

Where a statement is being admitted as a statement against interest, courts should "exclude[] any non-self-inculpatory assertions." *United States v. Price*, 134 F.3d 340, 347 (6th Cir. 1998); *see Paguio*, 114 F.3d at 934 ("Sometimes that requires exclusion of part of the statement, sometimes not."); *see also United States v. Taylor*, 17 F. Supp. 3d 162, 176 (E.D.N.Y. 2014) (noting a plan to redact portions of a statement that were "irrelevant or not individually self-inculpatory" (quotation omitted)). That is because parties cannot smuggle in unrelated comments from the same document—either for "completeness" or "context"—without independently satisfying the hearsay rules:

> [N]either Rule 106, the rule of completeness, which is limited to writings, nor Rule 611, which allows a district judge to control the presentation of evidence as necessary to the 'ascertainment of the truth,' empowers a court to admit unrelated hearsay in the interest of fairness and completeness when that hearsay does not come within a defined hearsay exception.

*United States v. Woolbright*, 831 F.2d 1390, 1395 (8th Cir. 1987) (statement against

---

wiretap evidence about the Pinell homicide—heightened the importance of Mr. Littrell's confessions.

interest case); *see also United States v. Edwards*, 159 F.3d 1117, 1127 & n.6 (8th Cir. 1998) (same; similar analysis).

Of the government's proffered examples, only (1) (concerning Mr. Littrell's efforts to order violence and collect drugs at CSP-Sacramento) is arguably self-inculpatory as to Mr. Littrell. ECF No. 2093 at 9. And that one is independently inadmissible as an un-noticed prior bad act. The others do not even get that far; the government wants Mr. Littrell's statements solely to incriminate the defendants here—largely on issues unrelated to the Pinell homicide. *See id.* at 10. Unlike directly admitting to the Pinell homicide, those comments are non-self-inculpatory for Mr. Littrell. They instead serve only to "point[] the finger" at others on largely unrelated issues. *Paguio*, 114 F.3d at 934. They are thus properly excluded. *Price*, 134 F.3d at 347; *see Paguio*, 114 F.3d at 934.

## IV.   CONCLUSION

Gary Littrell's confessions to ordering the Pinell homicide are admissible statements against interest under Rule 804(b)(3) or, alternatively, admissible as undisputedly trustworthy under Rule 807. His other statements are largely non-self-inculpatory and thus excludable. The Court should therefore deny the government's motion.

Dated this April 1, 2024.

                            Respectfully submitted,

                            Rene L. Valladares
                            Federal Public Defender

                            */s/ Brian D. Pugh*
                            BRIAN D. PUGH
                            Assistant Federal Public Defender

                            */s/ Sean A. McClelland*
                            SEAN A. McCLELLAND
                            Assistant Federal Public Defender

                            Law Office of Steven G. Kalar

                            */s/ Steven G. Kalar*
                            STEVEN G. KALAR