PHILLIP A. TALBERT
United States Attorney
JASON HITT
ROSS PEARSON
DAVID SPENCER
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>RONALD YANDELL,<br><br>  Defendant. | CASE NO. 2:19-CR-00107-KJM<br><br>UNITED STATES' OPPOSITION TO DEFENDANT YANDELL'S MOTION TO COMPEL UNREDACTED "JENCKS" MATERIAL AND "*BRADY*" MATERIALS IN DOCUMENTS POSSESSED BY CDCR<br><br>[ECF 2104]<br><br>DATE: April 3, 2024<br>TIME: 9:00 a.m.<br>COURT: Hon. Kimberly J. Mueller |

### I.  INTRODUCTION

More than a month into trial, and after the government has concluded its case-in-chief, defendant Ronald Yandell moves for an order to compel the government to produce two categories of documents that are not in the government's possession, custody, or control. First, Yandell seeks unredacted copies of documents that CDCR provided to the government in redacted form and that the government promptly produced to the defendants, many months ago, in the same form in which the government received them. Second, Yandell broadly seeks any purportedly "exculpatory" materials in *CDCR's* possession—while failing to identify any specific exculpatory materials he does not already possess.

Yandell's belated discovery motion fails on multiple grounds.  First and foremost, the government cannot be ordered to produce what it does not possess.  Over a year ago, in February 2023, Magistrate Judge Claire flatly rejected the claim that any and all CDCR records are within the government's constructive possession.  No defendant moved for reconsideration of that order.  Consistent with Judge Claire's order, CDCR will not provide the materials Yandell seeks to *either* party—neither the government nor the defense—absent a subpoena.  Yandell therefore has equal ability to seek to compel production of the materials he seeks from CDCR as does the government.  Indeed, Yandell has proven throughout this trial that he can effectively use the compulsory process of this Court to obtain materials he desires from CDCR.  Just last night, Yandell disclosed to the government roughly 1,300 pages of materials that the government has never before seen and that Yandell obtained from CDCR in response to his subpoena.  All of the materials sought by Yandell in his motion are in the exclusive possession of CDCR.  The government does not possess them and therefore has no discovery obligation to produce them.

Second, to the extent Yandell argues that he is entitled under the Jencks Act to unredacted copies of certain documents—which *CDCR* redacted and which the government does not possess in redacted form—he is mistaken because none of these redacted materials are subject to the Jencks Act.  For each witness it has called, the government produced unredacted copies of all Jencks statements in its possession, custody, and control.  The redacted materials that Yandell describes as "Jencks" are reports and statements by non-witnesses.  There are no Jencks disclosure obligations for the statements of non-witnesses.

Third, Yandell seeks "exculpatory" materials in CDCR's possession, but he does not identify any such materials—likely because none exist.  The only specific materials Yandell describes are unredacted materials related to the Littrell debrief.  The government disclosed the only Littrell materials it possessed—specifically, a redacted copy of his debrief report—to Yandell and the other defendants years ago.  The government had not possessed or seen any other Littrell materials until last night—when *Yandell* finally disclosed additional Littrell materials (including the unredacted debrief report and handwritten autobiography) that *Yandell* had obtained from CDCR by subpoena some time earlier.  Earlier today, the Court granted the government's motion *in limine* to exclude all of these hearsay

materials. Regardless, on the whole, the Littrell hearsay statements are not exculpatory. They inculpate Yandell in the Pinell murder and all three defendants in a wide range of criminal activity on behalf of the Aryan Brotherhood.

## II. PROCEDURAL BACKGROUND

The first category of documents sought by Yandell's motion—unredacted copies of documents CDCR redacted—were bates stamped with the "Jencks" label solely to bring them under the terms of the parties' stipulated protective order for certain highly sensitive documents. They are not, in fact, Jencks statements of any government witness. These redacted documents were provided by CDCR, in their redacted form, as a result of discovery litigation by co-defendant Jason Corbett, joined in by defendant Yandell, before Magistrate Judge Claire. *See generally* ECF 1300, 1303 (motion filed under seal), 1306 (Yandell joinder), 1368 (government opposition), 1396 (reply), 1434 (order). The discovery demands in those motions focused on items from Corbett's C-file, Donald Pequeen's C-file, and other people related to activities at High Desert State prison.[1] *See id.*

Magistrate Judge Claire granted the motion in part, in an Order dated February 9, 2023. ECF 1434. In her Order, Judge Claire explained that "[t]he fact that CDCR has participated in the investigation of the RICO conspiracy charged in this case does not bring any and all CDCR records of interest to the defense within the government's constructive possession for Rule 16 purposes; discoverability is limited by the scope of CDCR's involvement in the investigation." ECF 1434, at 5–6. The Court found that the government has constructive possession of two categories of CDCR documents: (1) "documents and tangible things generated or gathered by CDCR in relation to the federal investigation of the charged conspiracy," or (2) documents "which CDCR has made or will make available to the United States without a subpoena." ECF 1434, at 14. In finding that the government has constructive possession of only a narrow category of CDCR records, Judge Claire relied on the declaration of Deputy Attorney General Heather Heckler that CDCR typically will not release documents to the government without a subpoena and, even then, it often redacts any documents it provides. *See id.* at 4, 6 (quoting ECF 1368-1 (Heckler Declaration)).

---

[1] A "Central File," or "C-File," is maintained by CDCR for every incarcerated inmate. See Couch v. Wan, 2011 WL 2551546, at *1-2 (E.D. Cal. June 24, 2011).

UNITED STATES' OPPOSITION TO MOTION TO COMPEL            3

1      Following this Order, CDCR provided *redacted* versions of documents from the requested C-
2 files to the government for production to all defense counsel, subject to the protective order, and only
3 after CDCR was provided with Judge Claire's Order and had a chance to request clarification or
4 redactions. The production was handled by lawyers from the California Attorney General's Office
5 representing CDCR throughout this ligation. The government produced the documents to the defense
6 exactly as they were received from CDCR.

7      After receiving this production, Corbett sought an order compelling what Yandell now seeks in
8 his belated, mid-trial discovery motion: unredacted versions of the sensitive documents produced by
9 CDCR as part of the discovery litigation. ECF 1697 (motion to compel unredacted documents). The
10 government opposed. ECF 1723. Magistrate Judge Claire asked Corbett's counsel for authority
11 supporting his request but, ultimately, Corbett withdrew the motion. ECF 1771.

12      No defendant moved for reconsideration of Judge Claire's February 9, 2023 Order. Nor did any
13 defendant renew Corbett's withdrawn motion for unredacted records after he failed to provide any
14 supporting authority in response to Judge Claire's request at the motion hearing.

15      During the pretrial *Daubert* hearing held in this case for Special Agent Perryman, Yandell's
16 counsel invested considerable time on an accusatory line of questioning suggesting that Special Agent
17 Perryman himself had redacted the documents disclosed as Jencks in this case. *See generally* R.T.,
18 2/9/2024, at 41–46. Counsel's questions included: (1) "And as you're scrolling through here, is this the
19 appearance -- these pages are mostly redacted; is that correct? [] Are you the one who did that?; (2)
20 "Were you at all involved in the process of providing these reports to the Government for disclosure to
21 the Defense?"; (3) "Were you at all involved in the process of obtaining the reports for them to be taken
22 to the litigation office to be redacted?"; (4) "And when you -- whoever this -- the person's redacted,
23 correct; so we don't know who it is?"; (5) "The person being debriefed is redacted on page 1 and every
24 page thereafter; correct?"; (6) "So in this form other than -- other than 'terms,' everything has been
25 redacted; correct?"; (7) "Well, I don't have that because it's all redacted." *Id.* at 41, 42, 44, 46, 48. On
26 the second day of the *Daubert* hearing, counsel returned to the topic: (1) "I also asked you if there -- if
27 you were involved in the process of disclosing some of these documents, debrief reports, confidential
28 memoranda, to the Government in this case. Were you in any way involved in that process?"; (2) "So

was your role selecting the reports that would be turned over to the people who redacted it?" R.T., 2/13/2024, at 34. There were similar questions about redacted exhibits throughout the remainder of the hearing. *Id.* at 39, 40, 41, 42, 44, 45. Yandell then argued in his closing brief that: "A dramatic revelation of the evidentiary hearing is the extraordinary redaction of the debriefing reports produced by the government in discovery." ECF 1898, at 7–8. It is unclear for whom the redactions from discovery were a surprise, but to make sure Yandell's counsel understood the history of the particular redacted documents, the government's closing brief provided a detailed explanation with citation to relevant procedural and factual history. ECF 1897, at 7 ("On the substance of defendants' questions about redactions in their exhibits, they are mistaken in their reasoning process. In particular, the debriefs authored by Special Agent Perryman and contained in defendants Exhibits E, F, and G, were produced by CDCR as a result of discovery litigation by codefendant Jason Corbett before Magistrate Judge Claire. See generally ECF 1300, 1303, 1434, 1368, 1697, 1723, 1771."). *See* ECF 2104, filed 12:02 p.m. on April 1, 2024.

In deciding the *Daubert* motion, the Court addressed and rejected the redaction argument in its motion denying Yandell's motion to exclude Special Agent Perryman. Order, ECF 1923, at 11–12. Despite Yandell's pretrial knowledge and possession of redacted documents produced in discovery no later than the first day of the *Daubert* hearing (February 9, 2024), he elected to wait 52 days to file the present discovery motion, more than a month into trial, and on the same day that the government completed its case-in-chief. ECF 2104.

### III.  ARGUMENT

#### A.  The materials Yandell seeks are not in the government's possession.

The Court should deny Yandell's motion because the government does not have constructive possession of any of the materials Yandell seeks. As explained above, Magistrate Judge Claire previously ruled that the government has constructive possession of two categories of CDCR documents: (1) "documents and tangible things generated or gathered by CDCR in relation to the federal investigation of the charged conspiracy," and (2) documents "which CDCR has made or will make available to the United States without a subpoena." ECF 1434, at 14; *see also id.* at 4-6 (citing

*United States v. Cano*, 934 F.3d 1002, 1023 (9th Cir. 2019), *United States v. Santiago*, 46 F.3d 885, 893-94 (9th Cir. 1995), and *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991)).[2]

      The unredacted C-file documents do not fall under either category. Therefore, the government does not have constructive possession of them. First, these C-Files were not "generated or gathered by CDCR in relation to the federal investigation of the charged conspiracy." ECF 1434, at 14. By statute, the C-File includes "all information received" by CDCR about each inmate "from the courts, probation officers, sheriffs, police departments, district attorneys, State Department of Justice, Federal Bureau of Investigation, and other interested agencies and persons." Cal. Penal Code § 2081.5. The C-File also includes confidential information, such as statements of confidential informants who provided information against the person who is subject of the C-File. *Couch*, 2011 WL 2551546, at *2. These C-Files were thus generated by CDCR as part of its statutory obligations related to housing inmates. These C-Files were not generated "in relation to the federal investigation of the charged conspiracy." ECF 1434, at 14. Indeed, most of the documents in the C-Files predated the federal investigation of the charged conspiracy by years.

      Second, CDCR did not make unredacted versions of these C-Files available to the government "without a subpoena." To the contrary, CDCR has only provided redacted versions of the C-Files to the government—the same redacted versions that defendants also have—and only after it was provided with the Court's order. The government does not have access to the C-Files that Yandell seeks. *See* ECF 1368- 1, ¶ 3. It cannot simply email CDCR and request these files. It would need to, at minimum, provide CDCR with a subpoena—and given CDCR's statutory confidentiality obligations, there is no reason to believe CDCR would provide anything beyond the same redacted documents it previously provided if the government were to seek the same records by subpoena. ECF 1368-1, ¶ 3. Therefore, the unredacted C-Files that Yandell requests are not in constructive possession of the government under

---

[2] Judge Claire's ruling—of which no defendant sought reconsideration—is the law of the case. "The law of the case doctrine generally precludes a court from reconsidering an issue that has been previously decided by the same court or a higher court in the same case. *United States v. Yandell*, 2023 WL 3378463, at *4 (E.D. Cal. May 11, 2023), *reconsideration denied*, 2023 WL 5597463 (E.D. Cal. Aug. 29, 2023) (citing *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1977)). "For the doctrine to apply, the issue in question must have been decided either explicitly or by necessary implication in the prior disposition." *Id.* (citing *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir.), *cert. denied* 508 U.S. 951 (1993)).

this Court's prior order, because they are not documents "which CDCR has made or will make available to the United States without a subpoena." ECF 1434, at 14.

The same analysis applies to the purportedly "exculpatory" materials in CDCR's possession that Yandell requests. The government is not aware of any undisclosed exculpatory information in materials "generated or gathered by CDCR in relation to the federal investigation of the charged conspiracy." ECF 1434, at 14. Nor is the government aware of any undisclosed exculpatory information possessed by CDCR—whether contained in materials it could obtain "without a subpoena" or otherwise. *Id.*

Nothing in Yandell's motion identifies any undisclosed exculpatory information. Instead, Yandell cites records that he has been able to obtain from CDCR by subpoena that CDCR has not provided or ever made available to the government. *See* ECF 2104, at 10 (Littrell autobiography). That Yandell was able to obtain this document from CDCR, while the government was not, shows that Yandell is at least equally able to use the subpoena power of this Court to obtain documents he desires from CDCR as is the government.[3]

Because none of the materials Yandell seeks are in the government's actual or constructive possession, as determined by Judge Claire, Yandell's motion should be denied in its entirety.

**B.**    **The Jencks Act does not apply to statements of non-witnesses.**

The Court should also deny Yandell's motion because unredacted versions of the materials from High Desert inmate C-Files—which, again, the government does not possess—are also not subject to disclosure under the Jencks Act since they do not contain statements of government witnesses. The Jencks Act only requires production of "any statement … *of the witness* in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b); *see also* Fed. R. Crim. P. 26.2. The Jencks Act does not apply to the statements of non-testifying witnesses. *See United States v. Stinson*, 647 F.3d 1196, 1208 (9th Cir. 2011).

Yandell's reliance on *United States v. Alvarez*, 86 F.3d 901 (9th Cir. 1996), is misplaced. *See* ECF 2104, at 3, 5-7. In *Alvarez*, the government improperly redacted the statements of its *testifying*

---

[3] As noted above, the government disclosed its redacted version of the Littrell debrief to defendants years ago. CDCR never provided the government with the unredacted version, or any of the other Littrell documents, that it provided to defendant Yandell pursuant to his subpoena.

UNITED STATES' OPPOSITION TO MOTION TO COMPEL      7

*witnesses*. *See* 86 F.3d at 906-07.[4]  The Ninth Circuit held that the government may not unilaterally redact witness statements, and that if it believes a portion of a statement is irrelevant, it must submit the entire statement to the court for *in camera* review to consider any redactions.  *See id.* at 907.  *Alvarez* has no application here, however, because none of the redacted reports of which Yandell complains contain the statements of government witnesses.  And for each of its testifying witnesses, the government produced complete, unredacted reports.

Rather than *Alvarez*, this case is governed by *Stinson*.  In *Stinson*, as in this case, the government produced redacted reports of debriefing interviews of inmates who did not testify at trial.  647 F.3d at 1208.  The Ninth Circuit held that *Alvarez* was inapplicable, and thus the government was free to apply appropriate redactions, because these reports were not witness statements subject to the Jencks Act.  *See id.* ("In this case … the redaction procedure discussed in *Alvarez* does not apply because none of the redactions at issue concerned statements of testifying witnesses.").

Contrary to Yandell's motion, the Jencks Act does not apply to any of the redacted documents of which Yandell seeks unredacted versions.

### C. Yandell has not identified any undisclosed *Brady* information.

*Brady* "requires disclosure only of evidence that is both favorable to the accused and material either to guilt or to punishment."  *United States v. Bagley*, 473 U.S. 667, 674 (1985).  The government is not aware of any such undisclosed evidence in its, or CDCR's, possession, custody, or control. Yandell's motion does not identify any specific allegedly exculpatory information that he is seeking. Accordingly, he has not provided the Court with any basis to grant his motion under *Brady*.

### D. The government does not possess any additional video-recorded Jencks statements.

Finally, there is no merit to Yandell's suggestion that the government possesses additional Jencks statements of a cooperating witness in the form of "hours of recorded video statements."  ECF 2104, at 10-11.  Based on Yandell's disclosures to the government in the last 24 hours—of documents

---

[4] In *Alvarez*, the government admitted that "it redacted portions of surveillance reports" in a manner that made it clear the "deletions were not obvious from reviewing the redacted report" and some paragraphs "had been completely eliminated from the report."  *Alvarez*, 86 F.3d at 906.  Nothing like the facts in *Alvarez* are present in this case.

UNITED STATES' OPPOSITION TO MOTION TO COMPEL     8

Yandell obtained from CDCR that the government had never before seen—it appears that Yandell's contention is based on a description of two items in those reports.

First, according to those materials, a government cooperating witness who has testified in this trial (the "CW") participated in a gang investigators' conference by webcam, where he answered questions regarding the AB from a live audience. The materials do not state that this live webcam appearance was recorded—and, in any event, the government has never possessed a copy.

Second, according to the materials Yandell obtained from CDCR, in April 2015, the CW participated in a video-taped interview to provide his insight into what he believed would happen with the release of validated gang affiliates to the general population as part of the step-down program following the *Ashker* litigation. CDCR used the video for training staff at multiple institutions. The government has never possessed a copy of this video.

Yandell cannot obtain this video from the government, under the Jencks Act or otherwise, because the government does not have it. The Jencks Act only applies to recorded statements "in the possession of the United States." 18 U.S.C. § 3500(b); *accord* Fed. R. Crim. P. 26.2(a). These video recordings, to the extent they exist, are not in the government's actual or constructive possession. They do not fall within either of the narrow conditions Judge Claire recognized for when CDCR materials are constructively possessed by the government. CDCR obtained CW's statements for the purposes of training its staff to promote institutional safety. Thus, they were not "generated or gathered by CDCR in relation to the federal investigation of the charged conspiracy." ECF 1434, at 14. Nor are they statements "which CDCR has made or will make available to the United States without a subpoena." *Id.* To the extent they exist, these recordings capture statements by a highly sensitive gang dropout who provided intelligence to CDCR as a confidential source. CDCR would not provide such materials to the government "without a subpoena." *Id.*

In addition, the only statement that was actually recorded according to the materials Yandell obtained also is not disclosable under the Jencks Act because it did not "relate[] to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b); *accord* Fed. R. Crim. P. 26.2(a). It captured the CW's opinions about what the CW believed would happen with the release of validated gang

affiliates to the general population following *Ashker*. That was not part of the subject matter of the CW's testimony.

In sum, these video recordings, if they even exist and CDCR still possesses them, are not subject to disclosure under the Jencks Act or any other rule of discovery.

### IV.     CONCLUSION

For the foregoing reasons, Yandell's mid-trial motion to compel discovery of materials not possessed by the government should be denied in its entirety.

Dated: April 2, 2024

PHILLIP A. TALBERT
United States Attorney

By: /s/ *David Spencer*
JASON HITT
ROSS PEARSON
DAVID SPENCER
Assistant United States Attorney