PHILLIP A. TALBERT
United States Attorney
JASON HITT
ROSS PEARSON
DAVID SPENCER
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RONALD YANDELL,<br><br>Defendant. | CASE NO. 2:19-CR-00107-KJM<br><br>UNITED STATES' STATEMENT OF NON-OPPOSITION TO MOTION TO COMPEL THE UNITED STATES MARSHAL AND THE CDCR TO COMPLY WITH LAWFUL WRITS AD TESTIFICANDUM<br><br>[ECF 2125] |

The United States does not oppose defendant Yandell's Motion to Compel the United States Marshal and the CDCR to Comply with Lawful Writs Ad Testificandum. *See* ECF 2125.[1] Except for witnesses whom the Court has excused from testifying based on a valid invocation of their Fifth Amendment privilege against self-incrimination, the government agrees with defendant Yandell that the Court should order CDCR and the U.S. Marshal to produce defense witnesses pursuant to lawful writs of habeas corpus ad testificandum, including by ordering cell extractions of the inmate witnesses if necessary.

---

[1] A notice of filing under seal was filed at ECF 2125. Counsel for defendant Yandell served the motion and supporting exhibits on counsel for the United States before filing. The United States does not know the docket number for the motion itself.

As Yandell explains in his motion, criminal defendants have a "fundamental" constitutional right to secure the attendance of witnesses to testify in their defense. *E.g., Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) ("Few rights are more fundamental than that of an accused to present witnesses in his own defense."); *Webb v. Texas*, 409 U.S. 95 (1972); *Washington v. Texas*, 388 U.S. 14, 19 (1967) ("The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is … a fundamental element of due process of law.").

There are exceptions to this right—most notably, the Fifth Amendment privilege against self-incrimination. *See, e.g., Washington*, 388 U.S. at 23 n. 21; *United States v. Roberts*, 503 F.2d 598, 600 (9th Cir. 1974). The Court has quashed one of Yandell's defense subpoenas based on the witness's valid invocation of his Fifth Amendment privilege. *See* ECF 2127 (minute order re potential inmate witness Friedman). To the extent the Court has excused defense witnesses based on their valid invocation of their privilege against self-incrimination, quashing the subpoena and withdrawing any writs is appropriate.

However, for witnesses who have not established a valid invocation of the Fifth Amendment, the Court should order their production forthwith, including by cell extraction if the inmate witness refuses compliance with the Court's writ. "[A] judge cannot … allow a witness to refuse to testify because he would prefer not to answer a question … [T]here is no opt-out box on a subpoena." *Barnett v. Norman*, 782 F.3d 417, 422 (9th Cir. 2015). Out-of-custody witnesses who refuse compliance with a subpoena are subject to arrest on a bench warrant in order to compel their attendance at trial. It follows that in-custody witnesses who refuse compliance are subject to the equivalent—forcible extraction from their cells. Indeed, a cell extraction is a far less severe remedy to ensure compulsory process than arresting a witness who is not already in custody. Regardless, the right to *compulsory* process would be meaningless if recalcitrant witnesses could override a subpoena merely by adamantly refusing to appear.

Importantly, there is no viable alternative to compelling production of these witnesses. One defense witness, represented by attorney Karen McConville, has spoken at length to a defense investigator about a range of topics relevant to Yandell's defense, including the Pinell murder as well as the Maynard murder. This witness's out-of-court statements to the defense investigator are, of course, inadmissible hearsay and can only be introduced, if at all, through his testimony. Absent this witness

making a valid invocation of his Fifth Amendment privilege, both parties have a right to examine him if Yandell desires to call him as a witness.[2]

Similarly, for at least two other inmate witnesses (represented by attorneys Kathryn Ross and Kellan Patterson), Yandell has indicated that, if the witness's attendance is not compelled, he desires to introduce handwritten hearsay statements, purportedly from the witnesses, as past recollections recorded under Fed. R. Evid. 803(5).  But those statements cannot be legally admitted absent testimony from the inmate witnesses themselves, since no other witness can provide the foundation necessary to determine if the statements are admissible under Rule 803(5).[3]  Moreover, if Yandell is able to admit those statements under Rule 803(5), the government has a right to cross-examine the witnesses about the statements, including the circumstances under which they made them (for at least one, after he had been in the "hole" with Bobby Stockton) and their motivation in agreeing to sign the statement (if in fact it is authentic).

It is possible, of course ,that a witness may not have any competent testimony to give, after examination at a hearing outside the presence of the jury under Rule 104.  If that is the case, the witness could be excused—but at that point, compliance with the subpoena would have been achieved and the excusal of the witness would not be based on his refusal to come testify.

---

[2] The government notes that this witness may have a possible Fifth Amendment issue.  Specifically, based on his statement to the defense investigator—in which he admits to running a prison yard on behalf of the Aryan Brotherhood—and other evidence of which the government is aware, he may incriminate himself if called to testify in his defense. *See* Ex. A to Supplemental Motion to Compel the United States Marshal and the CDCR To Comply with Lawful Writs Ad Testificandum, 10/24/23 Interview at 4 (admitting to a defense investigator that witness was the "controlling white inmate" of a prison yard who was "responsible for carrying out AB business"). If this witness is called, the government would therefore ask the Court to inquire into his decision to testify on the record before he does so in front of the jury.

[3] To be admissible under this rule, the witnesses would have to testify that the statements, which are from at least 10 months after the relevant event, were "on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately," were  "made or adopted by the witness when the matter was fresh in the witness's memory," and "accurately reflect[] the witness's knowledge." Fed. R. Evid. 803(5).  Yandell has suggested a defense investigator could lay the foundation to admit these written statements under this rule, but that is an impossibility.  It is impossible for a defense investigator to answer these questions for the witness, since they address facts known exclusively to each witness himself.

For the foregoing reason, the government does not oppose defendant Yandell's motion to compel compliance with lawful writs of habeas corpus *ad testificandum*, except for inmate witnesses for whom the Court has found a valid invocation of their Fifth Amendment privilege against self-incrimination.

Dated:  April 5, 2024

PHILLIP A. TALBERT
United States Attorney

By: /s/ *David Spencer*
JASON HITT
ROSS PEARSON
DAVID SPENCER
Assistant United States Attorney