1  PHILLIP A. TALBERT
   United States Attorney
2  JASON HITT
   ROSS PEARSON
3  DAVID SPENCER
   Assistant United States Attorneys
4  501 I Street, Suite 10-100
   Sacramento, CA 95814
5  Telephone: (916) 554-2700
   Facsimile:  (916) 554-2900
6
   Attorneys for Plaintiff
7  United States of America

8
                    IN THE UNITED STATES DISTRICT COURT
9
                    EASTERN DISTRICT OF CALIFORNIA
10

11  UNITED STATES OF AMERICA,              CASE NO.  2:19-CR-00107-KJM

12                         Plaintiff,      UNITED STATES' OPPOSITION TO
                                           DEFENDANT YANDELL'S MOTION TO ORDER
13              v.                         THE GOVERNMENT TO "CORRECT" THE
                                           RECORD ON SPECIAL AGENT BRIAN
14  RONALD YANDELL,                        NEHRING'S TESTIMONY

15                         Defendant.      [ECF 2139]

16

17

18      Unhappy with the answers they elicited during cross-examination of DEA Special Agent Brian

19  Nehring—regarding matters outside his personal knowledge and beyond the scope of direct that they

20  insisted on questioning him about—counsel for defendant Yandell now asks the Court to order the

21  government to enter into stipulations regarding certain facts in order to "correct" the record.  *See* ECF

22  2139.  But, nothing in the record needs correction.  Yandell's motion is wrong on both the facts and the

23  law, and it should be denied in its entirety.

24      First, Yandell gets the facts wrong.  Contrary to Yandell's unsupported accusations, Agent

25  Nehring did not make any "false statements" during his testimony.  ECF 2139, at 3.  Regarding the

26  absence of a video recording of the Maynard murder, Agent Nehring testified that he did not know

27  whether or not any video exists.  There is nothing false about that statement.  Indeed, Agent Nehring

28  testified that the entire portion of his criminal complaint affidavit about the Maynard murder was outside

UNITED STATES' OPPOSITION TO MOTION TO ORDER         1
THE GOV'T TO "CORRECT" THE RECORD

1    his personal knowledge and merely a summary of the reports of other officers who conducted that

2    investigation.  Nevertheless, and over the government's repeated objections, Yandell's counsel peppered

3    Agent Nehring with numerous questions about this topic—despite his lack of personal knowledge and

4    his repeated testimony that he did not know if there was a video.  It is worth noting that Agent Nehring

5    did not touch upon the Maynard murder in any way during his direct examination.  Instead, it was

6    Yandell who made a choice to dive into assertions that are made in a charging document that the jury

7    had no idea existed before this line of questioning began and that Agent Nehring made clear was the

8    product of a substantial team effort given its breadth and scope.

9         Nor did Agent Nehring make any false statements about Yandell's criminal history.  Again, it

10   was Yandell's counsel who raised this topic on cross-examination, even though it is irrelevant to this

11   trial and to Agent Nehring's direct testimony.  This line of questioning apparently was designed to focus

12   on a wiretap affidavit's description of Yandell's prior federal drug trafficking felony.  Again, Yandell's

13   choice to bring out the existence of a massive wiretap affidavit before the jury was a decision that did

14   not work out well because the point is so remote from anything that matters in this trial and it did

15   nothing to call into question the integrity of the wiretap, the wiretap affidavit, or Agent Nehring's

16   credibility.  In response to these questions, Agent Nehring testified that his understanding of the nature

17   and facts of Yandell's prior drug conviction was based on his review of information in a DEA database.

18   He further testified that his understanding was that Yandell had been convicted of conspiracy to

19   manufacture approximately 600 pounds of methamphetamine.  Yandell has provided no reason to

20   believe that Agent Nehring's testimony about his own understanding was false.[1]

21        Because the record needs no correcting, the cases Yandell cites are wholly inapplicable and

22   Yandell's motion fails.  The cases cited by Yandell all involved instances where the *government*

23   knowingly elicited false testimony from a witness.  *See United States v. LaPage*, 231 F.3d 488 (9th Cir.

24   2000); *Hayes v. Brown*, 399 F.3d 972 (9th Cir. 2005) (en banc); *Napue v. Illinois*, 360 U.S. 264 (1959).

25

26        [1] Nor is Agent Nehring's testimony inconsistent with the record of Yandell's conviction.  A
     conviction for conspiracy to distribute ephedrine (the primary precursor for methamphetamine) is
27   consistent with Agent Nehring's testimony that he understood—based on more detailed information
     about the case in a DEA database, including the amount of drugs involved—that Yandell's case of
28   conviction involved a conspiracy to manufacture at least 600 pounds of methamphetamine.

     UNITED STATES' OPPOSITION TO MOTION TO ORDER          2
     THE GOV'T TO "CORRECT" THE RECORD

1   Here, in stark contrast, Agent Nehring testified truthfully as to his knowledge (that he did not know

2   whether a video existed of the Maynard murder) and his understanding (that he understood Yandell's

3   1991 conviction arose out of a conspiracy to manufacture methamphetamine) in response to defense

4   counsel's questions on cross-examination, regarding topics wholly unrelated to Agent Nehring's direct

5   testimony.  These were questions posed by the defense, not the government, and thus none of Yandell's

6   authorities have any application to Agent Nehring's testimony.  And, as stated, nothing Agent Nehring

7   testified about was false.

8       It is undisputed and uncontroverted in the trial record that there is no video of the Maynard

9   murder.  A witness who *did* have personal knowledge, Alexander Koehler, testified that there were no

10  surveillance cameras on the yard at the time of the Maynard murder.  Thus, there is nothing in the record

11  to correct.  Yandell remains free to argue to point to the jury to the extent it matters to his defense

12  theory.

13      With regard to Yandell's precise offense of conviction in his 1991 federal case, Yandell is free to

14  seek judicial notice of a certified conviction record if he desires.

15      For the foregoing reasons, Yandell's motion should be denied.

17   Dated:  April 5, 2024                                    PHILLIP A. TALBERT
18                                                            United States Attorney

19                                                    By:  /s/ *David Spencer*
20                                                         JASON HITT
                                                           ROSS PEARSON
21                                                         DAVID SPENCER
                                                           Assistant United States Attorney