PHILLIP A. TALBERT
United States Attorney
JASON HITT
ROSS PEARSON
DAVID SPENCER
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RONALD YANDELL,<br>DANNY TROXELL, and<br>WILLIAM SYLVESTER,<br><br>Defendants. | CASE NO. 2:19-CR-00107-KJM<br><br>UNITED STATES' RESPONSE TO DEFENDANTS' MOTION AND PROPOSED JURY INSTRUCTIONS<br><br>[ECF 2177, 2180, 2181]<br><br>DATE: April 8, 2024<br>TIME: 10:00 a.m.<br>COURT: Hon. Kimberly J. Mueller |

## I.  INTRODUCTION

On Friday, the defendants filed objections to the United States' jury instructions, along with their own proposed jury instructions. ECF 2177 (Yandell Motion); ECF 2180 (Troxell Proposed Jury Instructions); ECF 2181 (Sylvester Objection to Government Jury Instructions and Proposed Jury Instructions). The United States submits this response to some[1] of the defendants' objections and to some of the proposed instructions submitted by the defendants.

---

[1] In this filing, the United States does not address every objection made by the defendants to the United States' proposed jury instructions, but rather focuses on only a handful of issues raised by the defendants that, it believes, warrant further briefing. The United States plans to address other instructions at the hearing on Monday.

## II. YANDELL MOTION AND PROPOSED JURY INSTRUCTIONS

### A. Shackling of Bobby Stockton

Yandell asks this Court to instruct the jury that it was error to fully shackle witness Bobby Stockton and that the jury should not consider the shackling of witnesses in evaluating the credibility of a witness. ECF 2177 at 6–7, 2177-1 at 21 (Proposed Instruction 14). The United States does not object to the Court instructing the jury that it should not consider shackling in evaluating the credibility of a witness.

However, it would be inappropriate to instruct the jury that Stockton was erroneously shackled, because he was not. "[A] trial judge has wide discretion to decide whether increased security measures are required when dealing with a defendant who has a propensity for violence." *United States v. Cazares*, 788 F.3d 956, 965 (9th Cir. 2015). Here, Stockton killed two inmates while he was in custody and he is serving a life sentence. He is an associate of the Aryan Brotherhood—a violent gang that, as the Court has seen, is notorious for committing in-custody attacks, including attacks on guards. Given these factors, there would have been little for Stockton to lose if he wanted to attack someone from his location on the witness stand. Full shackling was warranted. *See Cazares*, 788 F.3d 956, 965. Yandell did not object to the shackling during Stockton's testimony and failed to take any steps in advance of the testimony to guarantee courtroom safety for the jury, the Court, its staff, and the public.

Yandell attempts to compare Stockton's shackling status to the United States' witnesses, but this false equivalence falls flat. Unlike Stockton, none of the United States' in-custody witnesses have personally killed anyone,[2] let alone two people like Stockton. Also unlike Stockton, the United States' in-custody witnesses were surrounded by deputy U.S. Marshals during their testimony and security preparations were completed months in advance of them arriving to the courtroom. And they have significant incentive not to commit new crimes, given that they are in protective custody currently and would likely face severe consequences if they were to attack someone. All of these facts are materially different from Stockton and Yandell fails to acknowledge his own role in failing to anticipate the need to address a courtroom security issue for his own witness. Finally, as noted, Yandell did not object when

---

[2] Yandell notes that Jeremy Beasley killed his cellmate, ECF 2177 at 6, but Beasley is not an in-custody witness and is currently on parole.

Stockton was fully shackled, even though they saw him in full shackles before he took the stand.

As such, the United States opposes any instruction that would inform the jury that it was "error" to shackle Stockton, because that instruction misstates the law.

B. **Murder and Conspiracy to Murder Instructions**

The United States opposes the defendants' attempts to instruct the jury on the specific state law requirements for conspiracy and first-degree murder, because those state law instructions do not apply to the federal charges of violent crimes in aid of racketeering.

First, federal conspiracy law—not state law—applies to the charges of conspiracy to commit murder in aid of racketeering, a violation of 18 U.S.C. § 1959(a). Section 1959 provides, in relevant part, that it is a crime for anyone who "murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon . . . any individual in violation of the laws of any state or the United States, or attempts *or conspires* so to do." 18 U.S.C. § 1959(a) (emphasis added). Notably, this provision explicitly requires the list of generic crimes (including murder) to be in violation "of the laws of any state or the United States," but the phrase "or attempts or conspires so to do" comes after, not before, the requirement that the list of generic crimes be "in violation of the laws of any state." *Id.* The plain language of the statute therefore indicates that Congress intended to incorporate state law for the generic crimes, but use federal law for attempt or conspiracy. Otherwise, if Congress intended Section 1959 to incorporate state law of attempts and conspiracies, it would have provided in straightforward language that it was a crime for anyone who "murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon . . . any individual, or attempts or conspires so to do, in violation of the laws of any state or the United States . . . ."

Other courts have reached this conclusion as well and held that Section 1959 only incorporates state law for its list of generic crimes, but not for the state's definitions of conspiracy and attempt. *See United States v. Diaz*, 176 F.3d 52, 96 (2d Cir. 1999) ("[T]he government is not required to prove an 'overt act' under Connecticut law because the reference to violating state law in the VICAR count is only meant to indicate unlawful conduct that constitutes a predicate offense for a VICAR charge under § 1959(a)(6)."); *see also United States v. Osborne*, 739 F. App'x 11, 16 (2d Cir. 2018) (noting that "[s]ubsequent panels of this Court have expressed concern about *Diaz*'s continued viability," but

recognizing that the court had "not expressly disavowed *Diaz*, and *Diaz* remains controlling authority") (citing *United States v. Carrillo*, 229 F.3d 177, 185 (2d Cir. 2000); *United States v. Pimentel*, 346 F.3d 285, 302-05 (2d Cir. 2003)).

In short, the statute and the caselaw foreclose Yandell's attempts to shoehorn all of California conspiracy law into the jury instructions for this federal charge of conspiracy to commit murder in aid of racketeering. The United States has no objection to using a more robust version of the California jury instructions for conspiracy to commit murder, but opposes the defense requests to require the United States to "specify alleged overt acts." ECF 2177 at 8. Federal conspiracy law has no requirement that the United States prove *any* overt act—let alone that it specify its overt acts in the jury instructions. Moreover, California pleading requirements or unanimity requirements have no application to federal criminal determinations under Title 18.

Second, the United States does not need to prove any specific degree of murder under state law, but rather that the conduct simply amounted to *any* type of murder under state law. Section 1959 prohibits "murder[] . . . in violation of the laws of any State." 18 U.S.C. § 1959(a). The statute does not reference any specific degree of murder, and courts that have considered the issue have also found that the United States is not required to prove that the defendant's conduct violated a specific degree of murder under state law. *See, e.g.*, *Owens v. United States*, 236 F. Supp. 2d 122, 138 (D. Mass. 2002), *aff'd in part, rev'd in part and remanded on other grounds,* 483 F.3d 48 (1st Cir. 2007) ("The statute is not restricted to first or second degree murder. Accordingly, inasmuch as the charged offense's elements are concerned, whether the jury found him guilty of second or first degree murder, Owens violated 18 U.S.C. § 1959(a)(1)."); *United States v. Mapp*, 170 F.3d 328, 335 (2d Cir. 1999) ("We do not believe that section 1959 reaches only murders that were committed intentionally. Instead, it is sufficient for the government to prove that the defendant committed murder—however that crime is defined by the underlying state or federal law—and that he engaged in the conduct that resulted in murder, however defined, with the purpose or motivation prescribed in the statute."); *United States v. Concepcion*, 983 F.2d 369, 382 (2d Cir. 1992) ("In light of this traditional principle, together with the Congressional mandate that RICO be interpreted liberally and our inference that Congress did not mean § 1959 to be read in a narrow or grudging fashion, we reject Concepcion's contention that the

government was required to prove that he set out to kill Gines in particular. It was sufficient for the government to prove that Concepcion, as a member of a RICO enterprise engaged in racketeering activity, set out to commit a proscribed act of violence in order to maintain or increase his position in the enterprise, and that, in the course of so doing, he committed that act against a person who got in his way.").

California law defines murder as "the unlawful killing of a human being, or a fetus, with malice aforethought" and it provides that every murder is second-degree murder unless the prosecution proves one of a handful of aggravating factors, such as lying in wait, torture, or the like. *See* Cal. Penal Code §§ 187(a), 189(a). Yandell's proposed jury instructions seek to require the United States to prove different degrees of murder, ECF 2177 at 10, but that is not the law. Rather, the United States only needs to prove that the defendants' conduct violated a state law for murder—not first-degree murder. *Mapp*, 170 F.3d at 335. As such, the United States needs only prove that the defendants committed or conspired to commit "the unlawful killing of a human being, or a fetus, with malice aforethought," as defined in California Penal Code Sections 187(a) and 188. The United States has accurately set forth these standards in its proposed jury instructions, and it asks the Court to follow those proposed instructions.

C.      **Self-Defense Instructions**

The United States opposes Yandell's request for the Court to instruct the jury regarding self-defense and imperfect self-defense for the conspiracy to murder Doug Maynard. ECF 2177 at 12–13. Self-defense is a defense to a charge of murder. Cal. Penal Code § 197(1). But Yandell is not charged with the murder of Doug Maynard—he is charged with conspiring to have Maynard murdered. ECF 1375 at 14. Whether or not Bobby Stockton killed Maynard in self-defense is irrelevant to this charge. Indeed, Yandell can still be guilty of conspiracy to commit murder *even if* Bobby Stockton killed Maynard in self-defense if the United States proves beyond a reasonable doubt that Yandell agreed with others to have Maynard murdered. For conspiracy charges, the criminal agreement is the crime, even if the crime is not completed or, in this instance, if Stockton acted in self defense. Therefore, if the jury finds that Yandell conspired with Pat Brady and others at High Desert State Prison to have Maynard murdered—a reasonable finding based on the wiretapped calls where Yandell admitted as much—then it

can properly find Yandell guilty of the murder conspiracy even if the jury also believes Stockton's story that he killed Maynard in self-defense.

Instructing the jury on self-defense would therefore be confusing and misleading to the jury, because this instruction would wrongfully suggest to the jury that it must decide whether the actual murder of Maynard was self-defense. Indeed, Yandell's proposed jury instruction itself states that he "is not guilty of the murder of Douglas Maynard if Bobby Stockton was justified in killing Douglas Maynard in self-defense." ECF 2177-1 at 17. This is not the law. Yandell, of course, is free to argue that there was no agreement to murder Maynard because Maynard's killing was not pre-planned, but rather a spur-of-the-moment response by Stockton, but a jury instruction about self-defense would be misleading and confusing.

### D.  Third-Party Culpability Instruction

The United States opposes Yandell's third-party culpability instruction because it is misleading, argumentative, and misstates the law. First, Yandell's jury instruction wrongfully suggests that if the jury finds that CDCR or Gary Littrell "were responsible" for the homicide of Hugo Pinell, that evidence could give them reasonable doubt to find Yandell guilty of the murder of Hugo Pinell. That instruction is misleading and confusing, because it falsely suggests that Pinell's murder could have only been orchestrated by Yandell or Littrell or CDCR.[3] Indeed, the jury could well find that Littrell and CDCR and Yandell all played a role in the murder of Pinell, and therefore find Yandell guilty of the murder.

Second, the fact that the instruction refers generally to a third-party's responsibility giving the jury "cause[] to reasonably doubt Mr. Yandell's guilt," further shows that this instruction is untethered to the law and the elements of the offense and it conflicts with standard "reasonable doubt" instruction in the Ninth Circuit pattern instructions.

To prove Yandell guilty of Count Sixteen, the United States must prove, in sum, that Yandell ordered or conspired with others to murder Hugo Pinell in order to gain entrance to, maintain, or

---

[3] As the United States argued in its motion to preclude jury nullification, ECF 1954, Yandell's arguments about CDCR have no basis in fact, and they are not a defense to the charges. It is undisputed that two Aryan Brotherhood associates—Jayson Weaver and Waylon Pitchford—are the assailants who killed Pinell, not CDCR employees.

increase his status in the Aryan Brotherhood. Yandell's proposed jury instruction does not engage in the elements of the offense, which is significant because six weeks into this trial, Yandell still has failed to explain *how* the fact that others may have participated in the murder of Pinell is a legal defense to his own role in the murder. By shortcutting the elements of the offense and simply referring generally to "reasonable doubt," Yandell's proposed jury instruction risks confusing the jury on which element, if any, his third-party culpability defense addresses.

Third, the federal cases Yandell cites do not support his third-party culpability instruction, because none of the cases involved a jury instruction regarding third-party culpability. In the federal cases Yandell cites, courts discussed the standard for allowing the defendant to present a third-party culpability defense, which this Court has allowed Yandell to present. *See* ECF 2177-1 at 20 (citing *United States v. Espinoza*, 880 F.3d 506, 517 (9th Cir. 2018); *United States v. Stever*, 603 F.3d 747, 755–57 (9th Cir. 2010); *Gray v. Klauser*, 282 F.3d 633, 649 (9th Cir. 2002); *United States v. Vallejo*, 237 F.3d 1008, 1023 (9th Cir. 2001); *United States v. Crosby*, 75 F.3d 1343, 1347 (9th Cir. 1996)). But in all of these federal cases, that is as far as the court went—there is no indication from any of the federal cases that Yandell cites that the court specifically instructed the jury regarding a third-party culpability defense, especially one that runs the significant risk of countermanding the bedrock "reasonable doubt" instruction that the Court will already be providing the jury. In short, these cases stand for the proposition that Yandell is free to argue that CDCR or Gary Littrell are responsible for Pinell's murder. But no jury instruction is appropriate.

E.  ***Pinkerton* Instruction**

The United States' *Pinkerton* instruction on Count Sixteen is straightforward and consistent with the evidence in this case, and the Court should therefore overrule the defendants' objections to this instruction.

First, as an initial matter, the *Pinkerton* instruction is proper because it is an appropriate statement of the law and supported by the evidence. In fact, the Ninth Circuit approved application of *Pinkerton* liability in an earlier Aryan Brotherhood RICO prosecution. *United States v. Bingham*, 653 F.3d 983, 998 (9th Cir. 2011) ("Kevin Roach stated that the AB placed its enemies on hit lists and that 'any brother that ran across [an enemy] was supposed to take care of him. The AB considered the DC

1  Blacks to be enemies as early as 1991. Thus, the murders of Joyner and Salaam could be 'reasonably
2  foreseen as a necessary or natural consequence of the unlawful agreement.'") (quoting *Pinkerton*, 328
3  U.S. at 646–48).  Moreover, "[a]n instruction is appropriate if it is 'supported by law and has foundation
4  in the evidence.' As such, 'the district court must view the evidence in the light most favorable to the
5  party requesting it.' If a part requests alternative instructions, the district court considers them separately
6  to 'determine if the evidence could support a verdict on either ground.'" *United States v. Yi*, 704 F.3d
7  800, 805 (9th Cir. 2013). There is no different analysis for a *Pinkerton* instruction.
8        Second, the defendants' complaints about the undue confusion this instruction would cause are
9  misplaced.  Juries are presumed to be able to follow instructions, *Zafiro v. United States*, 506 U.S. 534,
10 540 (1993), *Pinkerton* instructions are so common that the Ninth Circuit has a pattern jury instruction
11 for *Pinkerton* liability, and there is nothing unduly difficult for the jury to consider in the *Pinkerton*
12 instruction for Count Sixteen specifically.  Notably, the Ninth Circuit has approved a *Pinkerton*
13 instruction in other multiple-conspiracy cases, even when the instruction did not specify which
14 conspiracy was the subject of *Pinkerton*.  *See United States v. Moran*, 493 F.3d 1002, 1010 (9th Cir.
15 2007) ("Thus, while the wording of the individual instructions may not have been perfect when
16 examined under a microscope, when read as a whole it would have been clear to a jury that before it
17 could convict a defendant of a substantive count committed by a codefendant, it had to find that the
18 conduct underlying that count fell within the scope of a conspiracy of which both defendants were
19 members and was reasonably foreseeable under the conspiracy. There was no error.").  Here, the United
20 States has taken an even more cautious approach by specifying which specific conspiracy is the subject
21 of the *Pinkerton* instruction.  *See* ECF 2156-1 at 42 (noting that the jury must find that Jayson Weaver
22 and Waylon Pitchford were members of the RICO conspiracy specifically).  This limitation avoids any
23 confusion.
24       Third, giving a *Pinkerton* instruction does not constructively amend the indictment, as Yandell
25 incorrectly argues.  ECF 2177 at 20–24.  Circuit courts are unanimous that "a district court does not
26 constructively amend an indictment by giving a *Pinkerton* instruction when *Pinkerton* liability has not
27 been charged by the grand jury." *United States v. Ashley*, 606 F.3d 135, 143 (4th Cir. 2010) (citing
28 *United States v. Zackery*, 494 F.3d 644, 647–49 (8th Cir. 2007); *United States v. Budd*, 496 F.3d 517,

527–28 (6th Cir. 2007); *United States v. Creech*, 408 F.3d 264, 273 (5th Cir. 2005); *United States v. Lopez*, 271 F.3d 472, 480 (3d Cir. 2001); *United States v. Macey*, 8 F.3d 462, 468 (7th Cir. 1993); *United States v. Sanchez*, 917 F.2d 607, 612 (1st Cir. 1990); *United States v. Jackson*, 627 F.2d 1198, 1216–17 (D.C. Cir. 1980); *United States v. Carroll*, 510 F.2d 507, 509 (2d Cir. 1975); *United States v. Roselli*, 432 F.2d 879, 895 (9th Cir. 1970)). As such, Yandell's complaints that the Superseding Indictment did not specifically allege *Pinkerton* liability are unfounded.

Yandell's other arguments fare no better. Yandell argues that the RICO conspiracy could not have included Jayson Weaver and Waylon Pitchford, because Weaver and Pitchford were not "members" of the Aryan Brotherhood at the time they murdered Pinell. ECF 2177 at 23. But the Superseding Indictment defines the Aryan Brotherhood enterprise broadly as a "criminal organization" whose members "and associates" engaged in a series of crimes. Superseding Indictment at 3, ECF 1375. This definition was re-alleged and incorporated in Count Sixteen. Superseding Indictment at 18, ECF 1375 (re-alleging and incorporating paragraph 36, which, in turn, re-alleges and incorporates paragraphs 1 through 23 of the Superseding Indictment). As such, Count Sixteen includes the broad definition of the Aryan Brotherhood enterprise, which would include two of its associates: Weaver and Pitchford.

In addition, Yandell's efforts to avoid the well-settled principle that the government can "charge in the conjunctive and prove in the disjunctive" fall flat. *United States v. Robertson*, 895 F.3d 1206, 1219 (9th Cir. 2018). The government alleged for each VICAR that the defendant committed the crime for the purpose of "gaining entrance to and maintaining and increasing position in the Aryan Brotherhood." Superseding Indictment at 12–14 (murder conspiracies), 17–20 (murders), ECF 1375.

Charging in the conjunctive and proving in the disjunctive is a permissible and well-established practice. "Where a statute specifies two or more ways in which an offense may be committed, all may be alleged in the conjunctive in one count and proof of any one of those acts conjunctively charged may establish guilt." *United States v. Bonanno*, 852 F.2d 434, 441 (9th Cir. 1988). Here, the VICAR statute provides that proof of any motive— "gaining entrance to *or* maintaining *or* increasing position in an enterprise"—is sufficient to establish the defendant's guilt. 18 U.S.C. § 1959(a) (emphasis added). The statute therefore sets forth different ways for the United States to prove the offense, and under *Bonanno* the United States may allege these ways "in the conjunctive" and prove "any one of those acts" to

establish guilt.  852 F.2d at 441.

The First Circuit has rejected the exact argument that Yandell makes.  *See United States v. Candelario-Santana*, 834 F.3d 8, 27 (1st Cir. 2016) ("[W]e find that the district court did not err when it advised the jury that the prosecution could establish the VICAR-related purpose (i.e. carrying out the act 'in receipt of payment' or 'to gain entrance to' the enterprise) in the disjunctive, though the indictment charged Defendants–Appellants in the conjunctive.").  And Yandell fails to cite a single case in which a court held that the purpose element for VICAR must be proven conjunctively.

Finally, the fact that the United States can also pursue an aiding and abetting theory is irrelevant to the Court's decision on whether to instruct the jury on *Pinkerton*.  The defendants do not get to choose which theory of liability the United States pursues.  Nor is the jury required to unanimously agree on a theory of liability.  *United States v. Kim*, 196 F.3d 1079, 1083 (9th Cir. 1999) ("[J]urors are not constitutionally required to unanimously agree on alternative theories of criminal liability.") (citing *Schad v. Arizona*, 501 U.S. 624 (1991)).

### III. SYLVESTER PROPOSED INSTRUCTIONS

#### A. VICAR Purpose Element

Sylvester objects to the United States' proposed instruction regarding the "purpose" element of violent crimes in aid of racketeering.  ECF 2181 at 3–4.  The United States' instruction regarding the "purpose" element is found in its proposed Instruction 30 (murder in aid of racketeering), ECF 2156-1 at 40, and it largely tracks Ninth Circuit Model Jury Instruction 18.11.  To the extent Sylvester's complaint is that the United States' proposed "purpose" instruction does not follow Ninth Circuit Model Jury Instruction 18.11 verbatim, the United States has no objection to using 18.11 word-for-word.

To the extent Sylvester argues that the Court should modify and narrow 18.11, this argument is foreclosed by *United States v. Rodriguez*, 971 F. 3d 1005, 1010–811 (9th Cir. 2020), as he acknowledges.  ECF 2181 at 4.

#### B. Lost or Destroyed Evidence

Sylvester proposes that the Court instruct the jury that three items of evidence were "lost or destroyed": (1) a phone seized from Yandell; (2) "[a]ny items seized by CDCR officials from Mr.

Sylvester that purportedly came from government witness Demar," and (3) "the donuts." ECF 2181 at 13. This instruction is inappropriate.

Notably, before any remedial instruction is given, the defendant must identify the evidence he believes was lost or destroyed, and the Court must determine whether a remedial instruction is appropriate, considering a balance "between the quality of the Government's conduct and the degree of prejudice to the accused" weighs in favor of the defendant. *United States v. Loud Hawk*, 628 F.2d 1139, 1152 (9th Cir. 1979) (en banc) (Kennedy, J., concurring), *overruled on other grounds by United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008). The comment to Ninth Circuit Model Instruction 3.19 sets forth the factors for the Court to consider:

> In evaluating the government's conduct, a court should consider whether the evidence was lost or destroyed while in the government's custody, whether it acted in disregard of the defendant's interests, whether it was negligent, whether the prosecuting attorneys were involved, and, if the acts were deliberate, whether they were taken in good faith or with reasonable justification. *Id.* (citing *Loud Hawk*, 628 F.2d at 1152). Factors relevant to prejudice to the defendant include the centrality and importance of the evidence to the case, the probative value and reliability of secondary or substitute evidence, the nature and probable weight of the factual inferences and kinds of proof lost to the accused, and the probable effect on the jury from the absence of the evidence. *Id.* While a showing of bad faith on the part of the government is required to warrant the dismissal of a case based on lost or destroyed evidence, it is not required for a remedial jury instruction. *Id.* at 1170.

Ninth Circuit Model Jury Instructions § 3.19, Cmt.

Here, there is no evidence that the items that Sylvester identifies were, in fact, lost or destroyed. First, there is no evidence that the phone seized from Yandell was destroyed. Yandell has argued that DEA agents did not seize and analyze the phone, but that is not the same and not the reason to give this instruction. In addition, a witness testified that the phone seized from Yandell would have been retained for at least five years, well after when this case was charged. Second, the "items seized by CDCR officials"—apparently a reference to the methamphetamine that Sylvester smuggled into prison after an attorney visit—was also not destroyed or disposed of. Rather, Sylvester appears to be arguing that the drugs were not sent to the DEA lab for testing but, again, that is not the purpose for this instruction. Third, the donuts were not destroyed. To the contrary, they were introduced in evidence. Sylvester still seems to be confused by Agent Nehring's joke before the grand jury. And, in any event, even if the

donuts were destroyed, Sylvester must identify how these donuts would have benefited his defense because Sylvester is not charged with distributing donuts. Ninth Circuit Model Jury Instructions § 3.19, Cmt.  He has not met that burden to justify this instruction.

### IV. TROXELL PROPOSED INSTRUCTIONS

#### A. Withdrawal from Conspiracy

The United States opposes Troxell's request for the Court to instruct the jury regarding withdrawal from a conspiracy for both the RICO conspiracy and the conspiracy to murder James Mickey.  ECF 2180 at 39–40.  There are two problems with this request.

First, this instruction does not apply to RICO conspiracy, because RICO conspiracy does not contain an overt act requirement.  As the commentary to Ninth Circuit Model Instruction 11.5 notes, this instruction should be given "only when the conspiracy charged in the indictment requires proof of an overt act."  Ninth Circuit Model Jury Instructions § 11.5, Cmt.  But "[t]here is no requirement of some overt act or specific act" in a RICO conspiracy.  *Salinas v. United States*, 522 U.S. 52, 63 (1997).  This instruction is therefore inapplicable to the RICO conspiracy statute.

Second, for the murder conspiracy, there is no evidence that Troxell took any step to withdraw from the conspiracy to murder James Mickey, and therefore this instruction is unsupported by any evidence in the record.  *See United States v. Pedrin*, 623 F. App'x 851, 853 (9th Cir. 2015) (finding no abuse of discretion where court declined to give withdrawal instruction where there was no evidence that would support such an instruction).  In fact, evidence developed during Troxell's case-in-chief makes plain that Troxell was still engaged in the RICO conspiracy as late as 2023 by politicking at CSP-Sacramento.  Thus, this instruction is not warranted.

## V. CONCLUSION

The United States plans to further respond to the defendants' proposed jury instructions at the hearing on Monday, but asks this Court to reject the defendants' instructions as set forth above.

Dated: April 7, 2024

PHILLIP A. TALBERT
United States Attorney

By: /s/ ROSS PEARSON
ROSS PEARSON
Assistant United States Attorney