PHILLIP A. TALBERT
United States Attorney
JASON HITT
ROSS PEARSON
DAVID SPENCER
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:19-CR-00107-KJM |
|---|---|
| Plaintiff, | UNITED STATES' RESPONSE TO DEFENDANT YANDELL'S MEMORANDUM REGARDING SEALED FILINGS |
| v. | |
| RONALD YANDELL, DANNY TROXELL, and BILLY SYLVESTER, | |
| Defendants. | |

## I.   INTRODUCTION

The government submits this response to the request by defendant Ronald Yandell ("Yandell" or "defendant") to keep extensive pre-trial and trial filings under seal into perpetuity. ECF 2379. This response focuses on Yandell's continued insistence on defense "applications for trial subpoenas and subpoenas duces tecum, and applications for writs ad testificandum" under seal despite the conclusion of the trial. ECF 2379, at 3.

## II.   BACKGROUND

The origin of the government's motion to seek unsealing of defense pre-trial and trial filings arose as a result of a meritless request by Yandell's counsel for a prejudicial instruction aimed at the government. The background is laid out below. The issue remains ripe because Yandell's counsel has

promised future litigation related to various trial issues, including the phone discussed below.

### A. August 19, 2019 – Rules Violation Report filed on the docket

As detailed in ECF 2227, on August 19, 2019, the government filed the CDCR Rules Violation Report arising out of the Yandell phone as an exhibit to its motion to require videoconference appearances. ECF 144, ECF 144-1, at 159–161. In addition to filing the Rules Violation Report itself on the docket, the body of the government's motion also noted that Yandell had been caught with a cell phone in January 2016 and that his disciplinary record from this incident was attached to the government's motion. ECF 144, at 5, and n.3. That pleading has never been sealed, and therefore it has been publicly available since August 19, 2019.

### B. April 1, 2024 – Yandell provides Rules Violation Report as *Jencks*

Despite disclosure of the Rules Violation Report on the docket in August 2019, Yandell recently claimed on the record that he first received this report from a subpoena served on CDCR during trial. This claim is not repeated in the declaration filed at ECF 2223-1. The government remains concerned a about this representation to the Court.

Further clouding the question, Yandell provided the same report to government counsel as a *Jencks* statement for defense witness CDCR ISU Officer Simon Ramirez in an email dated April 1, 2024. This seemed odd given, as described above, that the government obviously possessed it because it filed the document on the docket on August 19, 2019. ECF 144-1, at 159–161.

### C. September 11, 2019 – Toll records for the Yandell phone covering January 2016 disclosed

Additional disclosures related to the Yandell phone were provided to all defense counsel on September 11, 2019. ECF 2227, at 2–3. The September 2019 disclosures included a detailed explanation of the Yandell phone's toll record history for January 2016, as well as its connection to phones used by Quesenberry. ECF 2227, at 2–3; ECF 2227-1. All of the corroborative toll records for the Yandell phone covering January 2016 were also produced in September 2019. AB_00002414 (101 pages of toll record data for the Yandell phone). The declaration is silent about Yandell's possession of these materials.

///

**D.       Yandell's opening statement about the Yandell phone and cross-examination**

During Yandell's opening statement, about the Yandell phone, he said the following:

> Not too long after Pinell's death, prison officials seized a cellphone from Mr. Yandell's cell. Presumably, if there was a call, evidence of that call would be on that phone. So where is that phone? We don't know. The government doesn't seem to have it. Maybe they lost it. Maybe it was destroyed. Maybe some prison guard resold it to another inmate, which you'll hear is pretty common. You can therefore reasonably doubt Burhop's story. He has enormous incentive to bend the truth. Maybe this call didn't happen. The government's inability to give you that phone will be reasonable doubt.

ECF 2223-3, at 5–6.

In support of his motion to correct the record, Yandell provided a detailed declaration that makes defense strategy and its credibility central to his later legally-deficient request for an instruction to the jury. ECF 2223-1. There are important gaps within that declaration that go directly to the credibility of the defense and, thus, the rationale for the requested instruction. Specifically, the declaration does not address the government's August 19, 2019 filing, nor does it address the September 19, 2019 disclosures in discovery. Instead, the declaration cites to a stricken *pro se* pleading from 2021.

The declaration also claims that, "At the time that opening statement was delivered, the only evidence produced by the government to the defense made it clear that the phone (a Motorola Z-222 Flip Phone) seized from Mr. Yandell's cell in January 2016 had been destroyed by the CDCR." ECF 2223-1, at 5. The citation for this support is a boilerplate sentence from the disposition of an administrative hearing on the Rules Violation Report. The declaration reveals that Yandell served "many" subpoenas under Rule 17(c) on CDCR related to the Yandell phone apparently based on the language in the Rules Violation Report that had been disclosed since August 2019. ECF 2223-1, at 12.

In order to assess the credibility of the defense, the government seeks unsealing of those materials to determine whether representations in those applications show awareness of earlier disclosures about the Yandell phone and when that awareness was known. And, if there is no reference to the earlier disclosures, this bears heavily on the credibility of the defense and its actions during this trial. Evaluation of these materials will, in turn, determine whether any post-trial motions filed by Yandell are contradicted by materials or representations made to the Court in connection with Rule 17(c) subpoenas.

UNITED STATES' RESPONSE TO DEFENDANT YANDELL'S
MEMORANDUM REGARDING SEALED FILINGS

3

Moreover, the credibility of the defense includes its tactical decisions during the cross-examination of Agent Nehring. *See United States v. Young*, 470 U.S. 1, 8 (1985) ("Just as the conduct of prosecutors is circumscribed, '[t]he interests of society in the preservation of courtroom control by the judges are no more to be frustrated through unchecked improprieties by defenders.'" (quoting *Sacher v. United States*, 343 U.S. 1, 8 (1952)). In particular, despite possessing toll records for the Yandell phone from January 2016, and a detailed explanation about how Agent Nehring confirmed the number of the Yandell phone during the wiretap investigation,[1] Yandell asked, "At a minimum, you could have looked up the phone -- even if you didn't get the phone, you could have gotten the phone number that Mr. Yandell was using at the time; right?" ECF 2227-8, Govt. Ex. H, R.T., 3/25/24, at 74:12–14. Agent Nehring said he did not know if he got the toll records for the Yandell phone. ECF 2227-8, Govt. Ex. H, R.T., 3/25/24, at 74:20–21. Despite the toll record analysis contained in the RY_63 exhibit that Yandell was using during cross-examination, Yandell continued to ask whether Agent Nehring remembered whether he obtained the toll records for the Yandell phone. Agent Nehring replied that he did not know if investigators obtained the toll records for the Yandell phone but he imagined they did as part of the investigation. ECF 2227-8, Govt. Ex. H, R.T., 3/25/24, at 74–76; Govt. Ex. A, at AB_00027657–AB_00027659; *see* Defense Ex. RY_63, at 61 (containing page AB_00027658). This conduct must be weighed in assessing any post-trial motions filed by Yandell claiming that his defense was prejudiced by any events related to the phone during trial. *Young*, 470 U.S. at 8. For example, one can imagine Yandell filing a motion claiming that a new trial is warranted based upon his subsequent analysis of the Yandell phone. But, to assess such a motion, the government and the Court must be able to assess whether Yandell's counsel lacked a good faith basis to inquire about toll records connected to that phone because he possessed them before asking those questions.

### III.   ANALYSIS

#### A.   Yandell's reliance on *Sleugh* is misplaced

Yandell's decision to place his defense strategy and thought process into the public realm severely undermines his reliance on *Sleugh*. As discussed above, Yandell's counsel publicly filed a

---

[1] *Compare* Def. Ex. RY_63, at 61–62 *with* Govt. Ex. A, at AB_000276569.

detailed declaration that makes defense strategy and its credibility central to his later legally-deficient request for an instruction to the jury and undermines his claimed need for continued confidentiality. ECF 2223-1.  The focus in *United States v. Sleugh*, 896 F.3d 1007, 1012 (9th Cir. 2018), is the pre-trial disclosure of defense strategy if the "grounds articulated in support of the subpoena request were made part of the public record, such a showing could reveal counsel's trial strategies or defense theories to the opposing party, here, the government." *Sleugh*, 896 F.3d at 1012.  The concern about revealing counsel's *trial* strategies or defense theories to the government's witnesses, is moot because the trial is over.  The specific issue in *Sleugh* was concern about "revelations of such confidential theories to co-defendants, who may have adverse interests—the issue implicated in this appeal." *Id.*

The concerns present in *Sleugh* are ameliorated where the trial is over and defense strategy is no longer hidden from public view.  Yandell's counsel conducted its cross-examination, called its witnesses, and made its closing argument.  It is not clear how the fear of "prematurely expos[ing] trial strategy to public scrutiny" discussed in *Sleugh* continues to apply to defense "applications for trial subpoenas and subpoenas duces tecum, and applications for writs ad testificandum" after the trial's conclusion. *Id.* at 1013.  Moreover, Rule 17(c) subpoena applications are "only tangentially related to the underlying cause of action" because they are separate and apart from the "the actual evidence gathered from the issuance of Rule 17(c) subpoenas" which "could go to the merits of a case." *Id.* at 1014 (quotation and citation omitted).  Because the jury has already returned verdicts in this case, it is no longer true that the "materials or witnesses sought could impact the verdict at trial, the ultimate issue in any criminal case." *Id.*  Nor do the "potential defense theories articulated in Rule 17(c) subpoena applications" matter when the case is over. *Id.*  "If there is no longer any need to seal the Rule 17(c) subpoena materials at issue here, then perhaps they should be unsealed." *Id.* at 1017.

In addition, Yandell's counsel's detailed declaration at ECF 2223-1 laying out defense strategy and attorney-client strategy with respect various aspects of the trial operates as a waiver to any attorney-work product protection to his Rule 17(c) materials. *Id.* at 1016 n.5.

**B.    There is a "special need" for access to Yandell's Rule 17(c) subpoena material**

Even if Yandell's counsel has not waived attorney-work product protection, parties can "justify accessing sealed or in camera Rule 17(c) subpoenas, subpoena applications, and supporting documents

by demonstrating a 'special need.'" *Id.* at 1015.  In this case, the special need to access Yandell's counsel's Rule 17(c) applications is to assess the credibility of forthcoming post-trial motions. Yandell's claim that he his team "has carefully preserved objections, pre-trial motions, and challenges that will ultimately be before the Ninth Circuit" does not mean that his subpoena applications remain privileged.  It was Yandell who elected to file a lengthy declaration laying out specific aspects of his strategy and attorney-client communications.  In addition, unlike the defendant in *Sleugh*, there is no continuing need to seal Yandell's Rule 17(c) subpoena applications because Yandell does not have any unresolved pending charges that could prejudice Yandell in the future.  *See id.* at 1017 n.7 ("Boyd's situation is unique because, as long as he lives, he will always face the risk of another state murder charge.").  As the Ninth Circuit surmised in *Sleugh* itself, this is a case where "there is no longer any need to protect a defendant's theories of defense."  *Id.*

## IV.    CONCLUSION

The Court should deny Yandell's request to keep the materials in Category Four sealed for an indeterminate period of time.

Dated:  July 15, 2024

PHILLIP A. TALBERT
United States Attorney

By: /s/ *Jason Hitt*
JASON HITT
Assistant United States Attorney