BETTY J. WILLIAMS, SBN 224793
LAW OFFICE OF WILLIAMS & ASSOCIATES, P.C.
3600 American River Drive, Suite 135
Sacramento, CA 95864
Telephone: (916) 488 8501
Facsimile: (916) 488-8196
Email: betty@williamstaxlaw.com

Attorney for Defendant
KEVIN MACNAMARA

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>KEVIN MACNAMARA,<br>Defendant. | Case No.: 2:19-CR-00107-KJM<br>**REPLY TO UNITED STATES' OPPOSITION TO DEFENDANT KEVIN MACNAMARA'S MOTION TO SUPPRESS**<br>Date: September 23, 2024<br>Time: 10:00 AM<br>Judge: Honorable Kimberly J. Mueller |

Defendant Kevin Macnamara respectfully submits his reply to the United States' Opposition to his Motion to Suppress secret video recordings made during an attorney-client privileged meeting in a prison, in violation of the Fourth Amendment of the U.S. Constitution.

**I. The United States has misstated the facts related to the alleged smuggling plot, including what is contained on the video recording of August 11, 2016, and the content of the telephone calls and text messages intercepted by the government.**

The United States has misstated the content of the evidence it relies on in implicating Mr. Macnamara in the crimes alleged. The United States describes the video as showing Mr. Macnamara passing methamphetamine, cell phones, and tobacco to his incarcerated client and co-defendant, Billy Sylvester (Sylvester), on August 11, 2016. ECF 2416, 1:19-21. The video does not depict Mr. Macnamara passing anything, nor does it show Mr. Macnamara at all; the video shows only co-defendant, Kristen Demar (Demar).

Nor has the United States offered any evidence that Mr. Macnamara participated in a criminal conspiracy to smuggle contraband during the attorney visit on August 11, 2016, or any other visit to meet with Sylvester. The United States relies on intercepted calls and testimony alleging Sylvester's reliance on co-defendant, Ronald Dean Yandell (Yandell), to handle the logistics of the alleged conspiracy to smuggle methamphetamine, cell phones, and tobacco to Sylvester through Mr. Macnamara's attorney visit on August 11, 2016, and the United States relies on intercepted calls in which co-defendant, Jeanna Quesenberry (Quesenberry), discussed an alleged plot to have Samuel Keeton (Keeton) transport Mr. Macnamara to Sacramento where he would visit Sylvester in prison. ECF 2416, 2:6-21. None of these allegations involve statements or activity of any kind by Mr. Macnamara nor was he on any of the calls or text messages.

The United States describes intercepted text messages between Demar and Yandell, as well as intercepted phone calls between Quesenberry, Keeton, and Yandell, all on August 11, 2016, however none of this activity included Mr. Macnamara on the phone calls or text messages. ECF 2416, 3:1-13.

The same day, the United States intercepted a call during which Yandell gave Demar's phone number to Keeton and told Keeton to call Kristen [Demar] to let her know the plan for that day. ECF 2416, 3:16-18. No mention was made of Mr. Macnamara.

Mr. Macnamara did not know Demar prior to his appointment as advisory counsel to Sylvester, a pro per defendant, to assist Sylvester with his criminal defense in Sacramento Superior Court, Case 12F06425 by Judge Abbott of the Sacramento County Superior Court, on June 16, 2016.  Demar was appointed by the court as a paralegal on Sylvester's case.

Nowhere in the evidence and testimony cited by the United States is Mr. Macnamara included in the discussions and communications regarding the use of his wheelchair for any purpose. There are no statements by Mr. Macnamara in allowing access to his wheelchair to place items in the seat or side pocket. In fact, Keeton describes his own activities when he picked up Mr. Macnamara to transport him from Southern California to Sacramento, stating, "So Mr. Macnamara is in a wheelchair, so I had to go to his house and pick him up. He had a van that was

designed for [a] quadriplegic. And then I had to help him get dressed, bathe him, that kind of stuff, and then load him up in the van, and then we left." Keeton testimony: R.T., 3/25/2024 at 140:16-20. Clearly, Mr. Macnamara was entirely at the mercy of Keeton to get him physically bathed, dressed, and to Sacramento to then meet with Demar for their scheduled meeting the following morning with Sylvester. Keeton had access to the wheelchair without Mr. Macnamara in the wheelchair. There is no testimony or evidence that Mr. Macnamara was aware of what was in his chair. He has no feeling in his lower extremities to notice whether something was under his seat, nor can he reach into bags on the sides of his wheelchair.

Keeton explains that he helped, "load up Mr. Macnamara's wheelchair," presumably into the vehicle Demar was driving with Mr. Macnamara to visit Sylvester at the prison. Keeton explains that Quesenberry had vacuum-sealed the contraband in bags and says he, "just placed them under [Macnamara's] seat." Keeton testimony: R.T., 3/25/2024 at 141:7-12. No statement is made as to whether Mr. Macnamara was in the seat at the time or whether he had already been loaded into the van, separate from his wheelchair.

Finally, the United States summarizes that, "After the failed smuggling operation, agents intercepted multiple incriminating calls confirming every detail of the plot and subsequent actions taken to protect against law enforcement detection. *See* ECF 1, at 63-65." ECF 2416, p. 6:3-5. In fact, ECF1 at 63-65 describes communications involving Yandell, Keeton, and Demar only. Mr. Macnamara is never involved in any of these communications.

## II. Mr. Macnamara had a justifiable, reasonable, and legitimate expectation of privacy in meeting in an attorney-client meeting room in a prison with his client

As the parties had done on several prior occasions, they met to conduct the typical business between an attorney and a client defending a criminal case. They worked on briefs, discussed strategy, and drafted motions for filing with the court. Mr. Macnamara also provided confidential advice to Sylvester concerning his case.

The United States misapplies the law in *Hudson v. Palmer,* 468 U.S. 517 regarding when Fourth Amendment rights are severely curtained for prisoners, and the court's statement that

prisons share none of the attributes of privacy of a home, an automobile, an office, or a hotel room. *Hudson v. Palmer* addresses a prisoner's claim for Fourth Amendment privileges in his prison cell, not in a meeting at the prison with his attorney. The court held a prisoner has no reasonable expectation of privacy in his *prison cell* entitling him to the protection of the Fourth Amendment against unreasonable searches. *Id*. (Emphasis added).

In fact, the court is clear in noting this was a case of first impression and repeatedly referencing the limited analysis of the Fourth Amendment to a prisoner's *cell* throughout the case. "We have not before been called upon to decide the specific question whether the Fourth Amendment applies within a prison cell, [Footnote 6] but the nature of our inquiry is well defined." *Id*. at 524. "But it would be literally impossible to accomplish the prison objectives identified above if inmates retained a right of privacy in their cells." *Id* at 527. "Determining whether an expectation of privacy is 'legitimate' or 'reasonable' necessarily entails a balancing of interests. The two interests here are the interest of society in the security of its penal institutions and the interest of the prisoner in privacy within his cell. The latter interest, of course, is already limited by the exigencies of the circumstances: a prison 'shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room.'" *Id*. "A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id*. at 528.

Additional evidence that Mr. Macnamara attending the meeting for a legitimate purpose with his client is the fact that the meeting on August 11, 2016, lasted several hours, however Demars activities described as quickly passing contraband, obscured by holding a notepad on top of the items passed to Sylvester on the side of the partition against the wall furthest from Macnamara, occurred quickly over a 20-minute period of time. ECF 1, p. 53 ¶ 9. It is entirely plausible that Mr. Macnamara was unaware of Demars actions while he was working with Sylvester, reviewing his own materials and documents on which the parties worked that day. When Demar and Mr. Macnamara were detained after the meeting on August 11, 2016, officers escorted Demar outside at which time she threw the completed subpoenas they had been working on with Sylvester toward Mr. Macnamara and they fell all over the ground. The officers seemed

to laugh and refused to assist in collecting the papers representing the work product from the meeting with Sylvester.

**III. Audio recording is not required to determine that a video recording of an attorney-client visit in a prison meeting room requires a warrant under the Fourth Amendment.**

The use of the video camera was a violation of the Fourth Amendment even absent an audio recording to protect non-verbal communications. Just like the temperature readings obtained in *Kyllo v. United States, 553 U.S. 27 (2001),* the video images obtained in the instant matter contained information that could not otherwise have been obtained without physical intrusion into a constitutionally protected area, which constitutes a search where, as in *Kyllo*, the technology in question is not in general public use. *Id*. at 28 citing *Silverman v. United States*, 365 U.S. 505, 512. The use of a hidden pin camera is not in general public use and therefore the use of the camera constituted a search. This result [ensures] preservation of that degree of privacy against government that existed when the fourth Amendment was adopted. *Kyllo v. United States,* 553 U.S. 27 at 34 (2001).

In further support that there is no evidence Mr. Macnamara was involved in this scheme, the United States points out that Demar "quickly hand[ed] Sylvester several items" and that she "obscured her passing the contraband by holding a notepad on top of the items. ECF 1, p. 59 ¶ 9. Querry, who besides Mr. Macnamara was she shielding her activity from given she was entirely unaware of the hidden pin camera? She could only have been hiding her activity from Mr. Macnamara.

**IV. The United States misunderstands the application of the Fourth Amendment when considering the security sought by a prison to preserve internal order and discipline.**

The United States cites several cases in support of granting leeway in a prison setting when violating the Fourth Amendment. However, in no instance do any of the cases cited address a meeting room between an inmate and his attorney. *Hudson v Palmer,* 468 U.S. 517 (1984) relates to the search of an inmate's prison cell, *supra*. *Casey v. Lewis,* 4 F.3d 1516 (9th Cir. 1993) dealt with a claim by a group of HIV-positive inmates being denied contact visits with their attorneys, and the ability for the prison to find alternate means for access to legal representation.

*Bell v. Wolfish,* 441 U.S. 520 (1979) is cited for the position that there is a substantial interest in prison officials maintaining institutional security and preserving internal order and discipline when inmates complained about conditions of confinement and practices in a short-term custodial facility in New York designed to house pretrial detainees. The inmates complained of having two detainees to a room, not being able to receive hard-cover books that did not come from publishers, book clubs or bookstores; the inability to receive packages of food and personal items from outside the institution; the practice of body cavity searches following contact visits with persons from outside the institution; and having to remain outside of their rooms during routine inspections.

In no case is there any consideration of a security risk when an attorney visits his client in a prison, nor does the case address the violation of a confidential attorney-client meeting without a warrant.

**V.     The United States has offered no evidence that the crime-fraud exception applies to use evidence against the attorney in a legal matter, or that the exception applies to the attorney-client privilege in this case regarding Mr. Macnamara because he did not commit a crime.**

The United States offers no evidence of a text message, phone call, or other communication to affirm Mr. Macnamara's involvement in the alleged conspiracy. From the beginning of his representation as advisory counsel to Sylvester, Mr. Macnamara attempted to conduct their meetings via confidential phone calls, but the prison was unable or unwilling to accommodate the requests. Mr. Macnamara even notified the CDCR of a medical condition that developed making travel very difficult for him, yet he was denied confidential phone calls with Sylvester.

After numerous rejections by the CDCR to Mr. Macnamara's informal requests, on June 10, 2016, Sylvester filed a Motion to Compel the CDCR to provide confidential phone calls with his attorney, Mr. Macnamara, with the Sacramento County Superior Court citing relevant legal authority (see **Exhibit 1**), and on June 16, 2016, Mr. Macnamara made a request for confidential phone calls with Sylvester through the Litigation Coordinator at CSP-Sacramento as required by 15 CCR 3282 (see **Exhibit 2**). Both the motion and the request were denied. Mr. Macnamara was

required to meet with Sylvester in person to have confidential attorney-client communications. Querry possible entrapment to require Mr. Macnamara's wheelchair be in a room with Demar and Sylvester.

At the time of his appointment, Mr. Macnamara believed his work would be conducted almost entirely by phone, which would have been the best security for the prison and for Mr. Macnamara. Certainly, if Mr. Macnamara's intentions were to smuggle contraband to his client, he wouldn't seek to represent Sylvester by phone.

The United States relies entirely on the wire tap phone calls and text messages of other parties who describe using Mr. Macnamara's wheelchair as the means by which to smuggle contraband into the prison, but Mr. Macnamara is not involved in any such communications.

The United States relies on *In re Grand Jury Proc.,* 87 F.3d at 381-82 for the proposition that even if Mr. Macnamara didn't know what Sylvester and the other conspirators had planned, the crime-fraud exception would still apply to Mr. Macnamara's communications with Sylvester on August 11, 2016, because it is the client's knowledge and intentions that are of paramount concern to the application of the crime-fraud exception and that the attorney need know nothing about the client's ongoing or planned illicit activity for the exception to apply. This is a true statement by the court, but not in its application here. In *In re Grand Jury Proc.,* the court is considering whether the exception applies regarding advice given to the client, against the client. It is not considering communications to be used in a case against the attorney. Specifically, the court says, "To trigger the crime-fraud exception, the government must establish that 'the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme.' *In re Sealed Case*, 754 F.2d at 399 (citations omitted)." *Id.* at 381. There is no evidence that Sylvester ever sought the advice of Mr. Macnamara to further a scheme, but even if he did, the crime-fraud exception would allow the communications to be used against Sylvester, not Mr. Macnamara.

The court stated, "Inasmuch as today's attorney-client privilege exists for the benefit of the client, not the attorney, it is the client's knowledge and intentions that are of paramount concern to the application of the crime-fraud exception…" *Id*. This is to use the communications

against the client, not against the attorney. There is no legal authority cited that says communications by a client may be used against the attorney under the crime-fraud exception when a hidden pin video camera is used to record a meeting without a warrant even when the attorney knew nothing of the intended crime. If the court intended the crime-fraud exception to allow the government to seek charges against the attorney based on what was disclosed during a confidential attorney-client meeting, no attorney would meet with a client, ever.

**VI. The United States has overstated the evidence to eliminate the requirement for a warrant for the video recording and thus has violated Mr. Macnamara's Fourth Amendment rights.**

The United States claims that overwhelming evidence was presented at trial that Mr. MacNamara knew about the criminal plot to smuggle contraband to Sylvester through attorney visits in Mr. McNamara's name. ECF 2416, 12:24-28. In fact, there was *no* evidence presented about Mr. Macnamara's knowledge, only claims by third parties who stood to benefit by making such statements to the court. Keeton even stated Mr. Macnamara was never definitive on how he was involved in this (Keeton testimony: R.T., 3/25/2024, at 139:17-20).

Demar stated she needed to, "think about [her] husband before she [said] anything." ECF 1, pp. 61-62 ¶ 12. Demar even claimed, "she could die if she cooperated or said something that she wasn't supposed to say." ECF 1, p. 62, ¶ 12.b.

Mr. Macnamara most certainly had a reasonable, justifiable and legitimate expectation of privacy under the Fourth Amendment in meeting with his client while they prepared subpoenas and discussed his defense. The meeting on August 11, 2016, was intended as a confidential attorney-client privileged meeting, which was known to the government, and therefore any searches, including observations by video recording, and any seizures are protected by the Fourth Amendment requiring a validly obtained warrant prior to the search and seizure.

The government was aware of the meeting scheduled between Mr. Macnamara and Mr. Sylvester on August 11, 2016, and the fact that California prisons do not typically monitor lawyer visits, "in an effort to avoid infringing on the attorney-client privilege." The government was

further aware that the investigators outfitted the meeting room with a video camera, without a proper warrant. ECF 1, p. 56, ¶ G.1.b., p. 57, ¶ 2. a., and p. 59, ¶ 8.

In his Affidavit in Support of Criminal Complaint, DEA Special Agent, Brian Nerhing, states his theory that Mr. Macnamara would, "secretly pass the inmates various kinds of contraband, including cell phones, controlled substances, and tobacco." ECF, p.56, ¶ G.1.b.

Assuming the government's purpose in the surveillance conducted in the attorney-client meeting was due to the government's belief that illegal activity would occur during the meeting between Mr. Macnamara and Sylvester, based on the government's earlier surveillance obtained lawfully the prior week, the government could have obtained a warrant for the video recording in advance of the scheduled meeting on August 11, 2016. ECF 1, p. 57 ¶ 2, and p. 59 ¶ 8.

The availability to obtain a search warrant in the instant matter is the same as that in *Katz v. United States* where the Supreme Court stated, "…it is clear that this surveillance was so narrowly circumscribed that a duly authorized magistrate, properly notified of the need for such investigation, specifically informed of the basis on which it was to proceed, and clearly apprised of the precise intrusion it would entail, could constitutionally have authorized, with appropriate safeguards, the very limited search and seizure that the Government asserts, in fact, took place. *Katz v. United States*, 389 U.S. 347, 389 (1967).

The Supreme Court also stated in *Katz v. United States,*

> "Only last term we sustained the validity of such an authorization [in *Osborn v. United States,* 385 U.S. 323], holding that, under sufficiently 'precise and discriminate circumstances,' a federal court may empower government agents to employ a concealed electronic device 'for the narrow and particularized purpose of ascertaining the truth of the . . . allegations' of a 'detailed factual affidavit alleging the commission of a specific criminal offense.' *Osborn v. United States,* 385 U. S. 323, 329-330. Discussing that holding, the Court in *Berger v. New York,* 388 U. S. 41, said that 'the order authorizing the use of the electronic device" in *Osborn* "afforded similar protections to those . . . of conventional warrants authorizing the seizure of tangible evidence.' Through those protections, 'no greater invasion of privacy was permitted than was necessary under the circumstances.' *Id.* at 388 U. S. 57, 389. Here, too, a similar judicial order could have accommodated 'the legitimate needs of law enforcement' by authorizing the carefully limited use of electronic surveillance.

*Id*. at 354-355.

Here, too, a similar judicial order could have accommodated "the legitimate needs of law enforcement" by authorizing the carefully limited use of video surveillance in the meeting between Sylvester and his legal team.

**VII. Conclusion**

Given the universal acceptance of the attorney-client privilege, combined with Sylvester's motion and Mr. Macnamara's request for confidential attorney phone calls, the expectation of privacy between Mr. Macnamara and Mr. Sylvester was reasonable, and is evidence they did not seek to meet in person to smuggle contraband given their requests to meet by phone. Thus, when government agents recorded the privileged attorney-client meeting, they conducted a search within the meaning of the Fourth Amendment.

Although the government could have so narrowly circumscribed the surveillance in this case that it could have constitutionally been authorized in advance with a warrant, it was not in fact conducted pursuant to the warrant procedure which is a constitutional precondition of such electronic surveillance. As in *Katz*, the court cannot retroactively validate the government's conduct. *Id*. at 356.

Mr. Macnamara respectfully requests the suppression of the video tapes of his meeting with Sylvester and the cell phones seized during the search and seizure of his person and wheelchair, and any other evidence against Mr. Macnamara that is the direct result of the conduct sought to be suppressed.

DATED: August 13, 2024

Respectfully submitted,

/s/ Betty J. Williams
BETTY J. WILLIAMS
Attorney for Defendant
KEVIN MACNAMARA

Exhibit 1

RECEIVED
2016 JUN 10 AM 11:29
SACRAMENTO COUNTY
DISTRICT ATTORNEY

FILED/ENDORSED
JUN 10 2016
By A. Ramos, Deputy Clerk

William Lee Sylvester (H71192)
California State Prison-Sacramento
P.O. Box 290066
Represa, CA 95671

Defendant, in Pro Per

SUPERIOR COURT OF CALIFORNIA

FOR THE COUNTY OF SACRAMENTO

| | |
|---|---|
| The People of the State of California,<br>Plaintiff,<br>vs.<br>William Lee Sylvester,<br>Defendant | Case No.: 12F06425<br><br>**NOTICE OF MOTION AND MOTION TO COMPEL CDCR TO PROVIDE CONFIDENTIAL PHONE CALLS; MEMORANDUM OF POINTS AND AUTHORITIES.** |

**TO THE HONORABLE COURT, PARTIES, AND ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on the 24th day of June, 2016, in Department 9 of the above-entitled court, at the hour of 10:00 AM, or as soon thereafter as this matter can be heard, that Defendant, William Lee Sylvester, hereby requests that this court order CDCR to provide confidential phone calls to defendant's advisory counsel, Kevin Macnamara, Esq. and private investigator Terry Butrym to assist in preparation of his case for trial.

As explained in the attached Memorandum of Points and Authorities, this court has the power to compel the CDCR provide confidential phone calls. Confidential phone calls are necessary to the expeditious preparation of this case for trial because a Pro Per defendant does not have the training and resources that advisory counsel and a private investigator does. Moreover, communication with Counsel is necessary to assist Defendant in his defense and protect defendants' right to an intelligent defense, fair trial, and Counsel. See *In re Grimes*, 208 Cal. App. 3d 1175, 1182 (1989) ("Our evaluation must proceed from the premise that telephone communication is essential for inmate contact with attorneys. [Citation]").

Dated this 6/10/16

William Lee Sylvester (H71192)
Defendant, in Pro Per

William Lee Sylvester (H71192)
California State Prison-Sacramento
P.O. Box 290066
Represa, CA 95671

Defendant, in Pro Per

SUPERIOR COURT OF CALIFORNIA
FOR THE COUNTY OF SACRAMENTO

| | |
|---|---|
| The People of the State of California,<br>Plaintiff,<br>vs.<br>William Lee Sylvester,<br>Defendant | Case No.: 12F06425<br>**MEMORANDUM OF POINTS AND AUTHORITIES.**<br>Hearing Date: June 24, 2016<br>Time: 10:00 AM<br>Location: Department 9<br>Opposition Due: June 17, 2016<br>Reply Due: June 22, 2016 |

**MEMORANDUM OF POINTS AND AUTHORITIES**

**STATEMENT OF THE CASE AND FACTS**

William Lee Sylvester ("Defendant") and Lance Clemons were charged with murder and possession of inmate manufactured weapon's in 2012, when they were arraigned. Notably, Defendant was charged with two counts of possession of an inmate-manufactured weapon while Mr. Clemons was charged with one count of possession of an inmate-manufactured weapon. The alleged homicide victim was Ronald Richardson and the alleged homicide occurred on October 7, 2011. Defendant was held to answer at the preliminary hearing where Defendant's former counsel, Alan Whisenand, presented no motions and minimal cross-examination in comparison to counsel for Mr. Clemons. Moreover, since defendant began self-representation he has requested confidential phone calls with advisory counsel, Kevin Macnamara, Esq and private investigator Terry Butrym and was denied. Additionally, Former counsel has not provided defendant's entire file to him. Thus, much preparation is needed to prepare defendants' case for trial and effective confidential communication with court-appointed advisory counsel and private investigators would facilitate that process.

**ARGUMENT**

**CONFIDENTIAL PHONE CALLS ARE ESSENTIAL TO PRO PER DEFENDANTS THAT MUST COMMUNICATE WITH COURT APPOINTED INVESTIGATORS AND ADVISORY COUNSEL, WHILE PRESERVING THE ATTORNEY CLIENT AND WORK PRODUCT PRIVILEGES.**

"Our evaluation must proceed from the premise that telephone communication is essential for inmate contact with attorneys. [Citation]" *In re Grimes*, 208 Cal. App. 3d 1175, 1182 (1989).

Several courts have provided a reasonable basis for inmate access to telephones and an example of that reasoning is as follows:

> Ofttimes use of a telephone is essential for a pretrial detainee to contact a lawyer, bail bondsman or other person in order to prepare his case or otherwise exercise his rights. There are instances where the family of a detainee or inmate may live so far away [so] as to make personal visitation impractical. The better view appears to be that there is no legitimate governmental purpose to be attained by not allowing reasonable access to the telephone, and that such use is protected by the First Amendment. *See Brenneman v. Madigan*, 343 F. Supp. 128, 141 (N.D. Cal. 1972); *Moore v. Janing*, 427 F. Supp. 567, 576 (D. Neb. 1976); *Inmates of Allegheny Cnty. Jail v. Wecht*, 565 F. Supp. 1278, 1284 (W.D. Pa. 1983).

*Johnson v. Galli*, 596 F. Supp. 135, 138 (D. Nev. 1984).

The principle that unhindered communications with legal professionals has been aptly held as being part of the effective assistance of counsel for almost a century. "The right to effective assistance of counsel includes the right to confer in absolute privacy. [Citation] California's constitutional protection of the right to counsel has been recognized as the source of a prisoner's right to consult privately with counsel in preparation for trial since at least 1920. (*In re Application of Rider*, 50 Cal. App. 797, 799 (1920).)" *Cnty. of Nev. v. Superior Court*, 236 Cal. App. 4th 1001, 1007 (2015).

Moreover, it has been held that rights such as the meaningful access to courts includes access to counsel and when administrative regulations unjustifiably hamper those rights, the unjustifiable regulations must be discarded as invalid. These basic principles are aptly stated as follows:

> Inmates are guaranteed the right to adequate, effective and meaningful access to the courts under the Fourteenth Amendment. (*Bounds v. Smith*, 430 U.S. 817, 820 (1977); *Morris v. Superior Court*, 145 Cal. App. 3d 561, 566 (1983).) The right of access to counsel is an essential component of the right of access to the courts.

> (*Bounds*, 430 U.S. at 822-23; Johnson by *Johnson v. Brelje*, 701 F.2d 1201, 1207 (7th Cir. 1983).) In *Procunier v. Martinez*, 416 U.S. 396, 419 (1974), the United States Supreme Court declared that this right of access requires that inmates be given a "reasonable opportunity to seek and receive the assistance of attorneys," and "[regulations] and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid." (*See also Wooden v. Norris*, 637 F. Supp. 543, 553 (M.D. Tenn. 1986); *see also Owens-El v. Robinson*, 442 F. Supp. 1368, 1386 (W.D. Pa. 1978).)

*In re Grimes*, 208 Cal. App. 3d at 1182.

The principles articulated above, the right to access to the courts and counsel, has been codified in the California code of Regulations, which controls inmates. "The California Code of Regulations, in title 15, specifically provides, in sections 1067 and 1060, respectively, that prison administrators 'implement a plan which allows reasonable access to a telephone,' and 'insure the right of inmates to have access to the courts and legal counsel.'" *In re Grimes*, 208 Cal. App. 3d at 1183.

The extension of the right to confidential phone calls has not been limited to only when an individual on the street is arrested, but the California code of Regulations specifies that Cal. Penal Code § 851.5 (Deering) must be extended through written policies and procedures of correctional facilities. Observe the unequivocal statement of this proposition in title 15, California code of Regulations, at 1067. "The facility administrator shall develop written policies and procedures which allow reasonable access to a telephone beyond those telephone calls which are required by Section 851.5 of the Penal Code." **15 CCR 1067**

## CONCLUSION

The denial of any attorney-client phone calls between defendant William Lee Sylvester and advisory counsel, Kevin Macnamara, Esq. and private investigator Terry Butrym is an arbitrary infringement on his right to access to the court and this court should compel the California Department of Corrections of Rehabilitation to provide Defendant with confidential phone calls.

Dated this 6/10/16

William Lee Sylvester (H71192)
Defendant, in Pro Per

Exhibit 2

Kevin Macnamara, Esq. (SBN # 279691)
Law Office of Kevin Macnamara
723 West Chapman Ave.
Orange, CA 92868
Tel: (714) 858-1109
Fax: (866) 506-3448
Email: kevin.macnamara.esq@gmail.com

**Date: 06/16/2016**

**To: Litigation Coordinator, CSP-Sacramento**

**Fax: (916) 294-3072**

**From: Kevin Macnamara, Esq.**

**Tel: (714) 858-1109**

**Fax: (866) 506-3448**

**No. of pages: 4 including cover page**

**Re: Request for Confidential Phone Calls with William Lee Sylvester (H71192).**

**-------------------------------------------------------**

**Comments:**

Please send a return receipt.

Thank you,

Kevin Macnamara

Kevin Macnamara, Esq. (SBN # 279691)
Law Office of Kevin Macnamara
723 West Chapman Ave.
Orange, CA 92868
Tel: (714) 858-1109
Fax: (866) 506-3448
Email: kevin.macnamara.esq@gmail.com

**Re: Request for Confidential Phone Calls with William Lee Sylvester (H71192).**

Date: June 16, 2016

**SENT VIA FACSIMILE**

Litigation Coordinator at CSP-Sacramento,

My name is Kevin Macnamara and I would like to request confidential phone calls with William Lee Sylvester (H71192). I was appointed as Mr. Sylvester's advisory counsel on June 16, 2016 after Mr. Sylvester became a pro per defendant on March 18, 2016, in People v. William Lee Sylvester Sacramento County case # 12F06425. The pertinent information as required by 15 CCR 3282 is as follows:
Kevin Macnamara
723 West Chapman Ave.
Orange, CA 92868
[redacted]
CA ID: B8822825
I am in good standing with the State Bar California and duly licensed to practice law before all courts of the State of California.
I have been duly appointed by Judge Abbott of the Sacramento County Superior Court to act as advisory counsel to William Lee Sylvester.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge, information, and belief.

If you have any questions or concerns please feel free to contact me.

Humbly and Respectfully,

**LAW OFFICE OF KEVIN MACNAMARA**

Kevin Macnamara, Esq.

STATE OF CALIFORNIA
**CONFIDENTIAL PHONE CALL REQUEST**
CDCR 106-A (02/08)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

**READ CAREFULLY**. Please **PRINT** or **TYPE**. The information requested will be used by officials of the California Department of Corrections and Rehabilitation (CDCR) to determine whether your questionnaire will be approved or disapproved. The information provided will be maintained in a file pertaining to the inmate.

In accordance with the Privacy Act of 1974 (PL93-579), providing your Social Security number is optional. However, any omission or falsification on this questionnaire may be cause for denial of the confidential phone call. Please mail this form directly to the Litigation Coordinator's office of the institution where the inmate is confined.

1. NAME OF INMATE YOU WANT TO CALL (LAST, FIRST, MIDDLE): Sylvester, William, Lee
INMATE'S CDC NUMBER: H71192

2. YOUR NAME (*Print your name exactly as indicated on the photo identification you will be using*): Kevin Gary Norman Macnamara
SUFFIX (Jr., Sr., etc.):
OFFICE TELEPHONE NUMBER: (714) 858-1109

3. MAIDEN NAME (If applicable):
HAVE YOU EVER USED ANOTHER NAME? IF SO, PLEASE LIST: Kevin Gary Macnamara
FAX NUMBER: (866) 506-3448

4. DATE OF BIRTH (Mo/Day/Yr): [redacted]
AGE: 36
GENDER (Check one): MALE ☒ FEMALE ☐
BIRTHPLACE (City County State Country): Fort Leavenworth, Kansas USA

5. ID NUMBER: B8822825
ID TYPE: CA I.D. Card ☐ DRIVER'S LICENSE
BAR / P. I. NUMBER: 279691
BAR STANDING (Check one): ☒ Verified ☐ Unverified

OFFICIAL USE ONLY EXPIRATION DATE:
ISSUED BY: (County State Country): California, USA
6. SOCIAL SECURITY NUMBER (Optional): [redacted]

7. CURRENT MAILING ADDRESS: STREET ADDRESS Apt. # (If Applicable): 723 West Chapman Ave.
CITY: Orange
STATE: CA
ZIP CODE: 92868

8. HAVE YOU EVER BEEN CONVICTED OF A FELONY? ☐ Yes ☒ No
If YES, complete Item 9A. List all detentions, arrest and convictions. Failure to list all requested information may result in denial of your confidential phone call. Attach additional sheet(s) if necessary.

| 9. OFFENSE (Check one) | APPROX. DATE | DISPOSITION: (Dismissed, Probation, Jail, Prison) | COUNTY | STATE |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

****Attorney or Attorney's representative must provide a written request, on official letterhead, indicating the purpose for the confidential phone call.***

[signature]

***Signature of Requestor*** ***Date*** ***Signature of CLETS Operator*** ***Date***

**APPROVED** ☐ **DISAPPROVED** ☐

***Signature of Litigation Coordinator*** ***Date***

**OFFICAL USE ONLY – TO BE COMPLETED BY INSTITUTION STAFF**

**APPROVED** ☐ **DISAPPROVED** ☐ (If DISAPPROVED, the applicant is to be informed in writing of the disapproval.)

**REASON FOR DISAPPROVAL:**

| PRINT NAME | SIGNATURE | TITLE | INSTITUTION | DATE |
|---|---|---|---|---|
| | | | | |

THE STATE BAR OF CALIFORNIA
Protecting the Public and Enhancing the Administration of Justice

# ATTORNEY SEARCH

## Kevin Gary Macnamara - #279691

## Current Status: Active

This member is active and may practice law in California.

See below for more details.

## Profile Information

*The following information is from the official records of The State Bar of California.*

**Bar Number:** 279691

**Address:** **Law Office Of Kevin Macnamara**
**723 W Chapman Ave**
**Orange, CA 92868**
Map it

**Phone Number:** (714) 858-1109

**Fax Number:** (866) 506-3448

**e-mail:** kevin.macnamara.esq@gmail.com

**County:** **Orange**

**Undergraduate School:** Univ of California Riverside; CA

**District:** District 4

**Sections:** None

**Law School:** Trinity Law School; Santa Ana CA

## Status History

| **Effective Date** | **Status Change** |
|---|---|
| Present | Active |
| 12/1/2011 | Admitted to The State Bar of California |

Explanation of member status

## Actions Affecting Eligibility to Practice Law

### Disciplinary and Related Actions

Overview of the attorney discipline system.

This member has no public record of discipline.

### Administrative Actions

This member has no public record of administrative actions.

Start New Search »