PHILLIP A. TALBERT
United States Attorney
JASON HITT
ROSS PEARSON
DAVID SPENCER
Assistant United States Attorneys
501 I Street, Suite 10–100
Sacramento, CA 95814
Telephone: (916) 554–2700
Facsimile: (916) 554–2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:19–CR–00107–KJM |
| Plaintiff, | UNITED STATES' OPPOSITION TO DEFENDANT DANIEL'S MOTION PURSUANT TO 28 U.S.C. § 2255 |
| v. | |
| BRANT DANIEL, | |
| Defendant. | |

## I.    INTRODUCTION

The United States, by and through Assistant United States Attorneys Jason Hitt, Ross Pearson, and David Spencer, respectfully submits this opposition to motion to correct, set aside, or vacate sentence filed by defendant Brant Daniel ("defendant" or "Daniel") pursuant to 28 U.S.C. § 2255. ECF 2391.

In short, Daniel's motion should be denied because he waived his right to file a motion challenging his conviction or sentence pursuant to 28 U.S.C. § 2255. ECF 1765, at 7 ("regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence imposed in this case."). Moreover, Daniel's motion fails on the merits because the government has diligently pursued placing Daniel into BOP custody through an internal, confidential

process that he has no standing to examine or challenge. For these reasons, the government respectfully requests that the Court deny Daniel's motion.

## II. BACKGROUND

On December 20, 2023, Daniel entered a guilty plea to Count 17 of the Superseding Indictment pursuant to a written plea agreement. ECF 1766. Count 17 charged Daniel with murder in aid of racketeering. ECF 1765. Consistent with Daniel's request, ECF 1751, after accepting Daniel's guilty plea, the Court held an expedited sentencing. ECF 1765. The Court imposed the only available sentence based upon Daniel's guilty plea: life in prison. ECF 1766.

In his plea agreement, Daniel agreed to give up "any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence imposed in this case." ECF 1765, at 7. During his guilty plea, the Court specifically questioned whether Daniel understood this broad waiver.

> COURT: Also, typically without the kinds of agreement you are presenting to the Court, you would have the right following sentencing to file a motion seeking to vacate your guilty plea, conviction or sentence, or to reduce your sentence based on constitutional grounds bringing what we call a collateral attack. But here you are also giving up that right in full, at least to the full extent that you can; do you understand that?
>
> DEFENDANT: I do.

ECF 2147, at 13–14.

On the issue of whether the BOP would agree to a jurisdictional shift from the custody of the California Department of Corrections and Rehabilitations ("CDCR"), the Court explicitly informed Daniel that there was no guarantee that the Bureau of Prisons ("BOP") would accept a jurisdictional shift with respect to Daniel. ECF 2391, at 24–25.

> COURT: Are there any consequences of a plea here today for that state sentence, Mr. Balazs; Mr. Warriner?
>
> MR. BALAZS: Your Honor, only what Mr. Hitt said is that part of the plea agreement the government has agreed to request from the CDCR to accept the jurisdictional shift so that Mr. Daniel would serve his sentence in federal court before any kind of remainder of the state sentence.
>
> COURT: Understood. We'll get to that and the mechanics of that, but at this point there is no guaranty that that happens.

| | | |
|---|---|---|
| 1 | MR. BALAZS: | There's no guaranty, that is correct. |
| 2 | COURT: | Mr. Daniel, you understand there's no guaranty? |
| 3 | DEFENDANT: | Right. |

ECF 2147, at 9–10.

In addition, the Court advised Daniel that regional counsel for BOP specifically objected to accepting Daniel on a jurisdictional shift from CDCR.

| | | |
|---|---|---|
| | MR. HITT: | Yes, Your Honor. It's sort of a behind-the-scenes process between the two sovereigns, and I have put a lot of work in before we ever got here to try and secure a transfer of what they call a jurisdictional shift, and I'm going to promptly upon sentencing initiate the proceeding to go make sure that we get that accomplished. |
| | COURT: | All right. That's what I understood. I'm just going to read to you the e-mail message sent to our probation office so that you hear it. I think it's consistent with everything Mr. Hitt just said, but I want to make certain everyone knows what I have reviewed. This came in late afternoon yesterday. This is from Dominic Ayott, Deputy Regional Counsel, Federal Bureau of Prisons, Western Regional Office in Stockton: "We absolutely do not accept unilateral jurisdiction shifts between sovereigns and certainly not at the direction of the Court. A shift of primary jurisdiction is between two sovereigns, and the Court lacks authority to order this to be so. I don't know how this has been worked so far, but this is not something the BOP agrees to, and I do not believe the U.S. Attorney's Office or a local prosecutor can do this either. Typically, any such shift is at the request of the California Department of Corrections, and it's ultimately decided by the Deputy Attorney General." So, again, I believe that's consistent with what Mr. Hitt just articulated, but anything to say based on that message? |
| | [. . .] | |
| | COURT: | So with all of this understanding made a matter of record, Mr. Daniel continues to request to proceed to sentencing immediately, correct? |
| | DEFENDANT: | Yes. |

ECF 2147, at 23–24.

Since the time of Daniel's guilty plea and sentencing, the United States has done what it agreed to do: take action to "seek imprisonment for the defendant in the Bureau of Prisons for the rest of his life and request that the BOP to accept a jurisdictional shift from the State of California and the defendant's undischarged California prison sentence." ECF 1765, at 4. As the Court advised Daniel during the plea and sentencing, the ultimate decision on the jurisdictional shift for Daniel will be made by the Deputy Attorney General. *See* ECF 2147, at 23–24. That decision remains pending as part of a confidential,

internal deliberative Department of Justice decision-making process that is not subject to review.

### III. ANALYSIS

**A.  Daniel's Present Motion is Precluded by his Valid Waiver.**

This Court should enforce Daniel's valid and voluntary waiver of the right to collaterally attack his conviction and deny or dismiss his motion on that basis.

"A defendant's waiver of his rights to appeal and to bring a collateral attack is generally enforced if (1) the language of the waiver encompasses his right to appeal on the grounds raised, and (2) the waiver is knowingly and voluntarily made." *Davies v. Benov*, 856 F.3d 1243, 1246 (9th Cir. 2017) (quotation and citation omitted). A waiver of a non-constitutional right, such as a statutory right to collaterally attack a conviction or sentence under § 2255, does not violate due process. *United States v. Navarro-Botello*, 912 F.2d 318, 321 (9th Cir. 1990).

**1.  The waiver encompasses Daniel's claims.**

In assessing the scope and enforceability of the waiver, the Ninth Circuit applies rules of contract interpretation. *Davies*, 856 F.3d at 1246. For example, in *Davies*, the Ninth Circuit interpreted plea agreement language that said the defendant "gives up any right he may have to bring a post-appeal attack on his conviction or sentence" and that he "specifically agrees not to file a motion under 28 U.S.C. § 2255 or § 2241 attacking his conviction or sentence." *Davies*, 856 F.3d at 1247. The Ninth Circuit held that this collateral-attack waiver "broadly waived [the defendant's] right to challenge his sentence in the manner raised, as the waiver encompasses the execution of his sentence, and he specifically waived his right to do so through a § 2241 petition." *Id.* at 1248.

The waiver in Daniel's plea agreement is identical to the waiver examined in *Davies* because it specifically included the right to appeal or collaterally attack his conviction or sentence. ECF 1765, at 7. In particular, Daniel explicitly agreed not to file "a motion under 28 U.S.C. § 2255 or § 2244 attacking his conviction or sentence." ECF 1765, at 7. During his plea colloquy, Daniel acknowledged, under oath, that he was waiving his right to appeal or collaterally attack the conviction or sentence. ECF 2147, at 13–14. In this way, the Court took care to confirm that Daniel understood that if it accepted the plea agreement, Daniel would be precluded from later challenging his conviction or sentence. ECF 2147, at 13–14. After finding that Daniel was competent to enter a plea and that the waiver of his constitutional

and statutory rights was knowing, voluntary, and intelligent, only then did the Court accept the guilty plea.  ECF 2147, at 19.

Daniel's waiver unambiguously bars collateral attack on any aspect of his conviction or sentence and precludes any consideration of his present motion.  In particular, in Daniel's plea agreement, he gave up "the right to appeal the conviction and the right to appeal any aspect of the sentence imposed in this case."  ECF 1765, at 7.  Like *Davies*, the plea agreement waived "any right" Daniel "may have to bring a post-appeal attack on his conviction or his sentence" and he "specifically" agreed "not to file a motion under 28 U.S.C. § 2255 or § 2241 attacking his conviction or sentence. . . ."  ECF 1765, at 7.  This means that Daniel's collateral-attack waiver "broadly waived [the defendant's] right to challenge his sentence in the manner raised, as the waiver encompasses the execution of his sentence, and he specifically waived his right to do so through a § [2255] petition."  *Davies*, 856 F.3d at 1248.  Because Daniel's written waiver encompasses his right to file any motion under § 2255 or appeal any aspect of the conviction or sentence, this Court should enforce the waiver and deny or dismiss his motion.

### 2.     Daniel's waiver was knowing and voluntary.

The plea agreement's plain language and the Court's Rule 11 colloquy make clear that Daniel knowingly and voluntarily waived his right to his right to file any motion under § 2255 or appeal any aspect of the conviction or sentence in this case.  "Waivers of appeal must stand or fall with the agreement of which they are a part.  If the agreement is voluntary, and taken in compliance with Rule 11, then the waiver of appeal must be honored."  *United States v. Portillo-Cano*, 192 F.3d 1246, 1250 (9th Cir. 1999) (internal quotation marks and citation omitted).

Here, both the plea agreement and Rule 11 colloquy demonstrate the voluntariness of Daniel's waiver.  First, as discussed, the plea agreement explicitly provides that Daniel's gives up "any right" he "may have to bring a post-appeal attack on his conviction or his sentence" and he "specifically" agreed "not to file a motion under 28 U.S.C. § 2255 or § 2241 attacking his conviction or sentence. . . ."  ECF 1765, at 7.  Second, during his guilty plea, Daniel confirmed under oath that he understood he was giving up his right to file a motion attacking his conviction or sentence.  ECF 2147, at 13–14.  The Court's unambiguous advisement about the scope of Daniel's waiver, coupled with his express acknowledgment of that waiver, support a finding that Daniel's waiver was "a voluntary and intelligent

UNITED STATES' OPPOSITION TO DEF. DANIEL'S
MOTION PURSUANT TO 28 U.S.C. § 2255

5

act" and, therefore, the waiver was knowing and voluntary. *Navarro-Botello*, 912 F.2d at 322. Accordingly, Daniel's waiver should be enforced and his motion denied or dismissed based upon the waiver.

### B. Daniel's Theory of Relief is Grounded in an Unsupported Claim that the Government Breached the Plea Agreement.

Daniel's sole basis for relief is his claim that "the government breached my plea agreement by failing to take steps to have me transferred to federal prison." ECF 2391, at 14. Daniel presents nothing to support this claim.

In reviewing a claim of breach, courts "generally limit [their] review to the terms of the written plea agreement and the statements made under oath during the plea colloquy." *United States v. Jackson*, 21 F.4th 1205, 1213 (9th Cir. 2022) (citing *Brown v. Poole*, 337 F.3d 1155, 1160 (9th Cir. 2003)). Plea agreements are "contract[s] between the government and a criminal defendant," and, as a result, courts "construe [a] plea agreement using the ordinary rules of contract interpretation." *Jackson*, 21 F.4th at 1213 (citations omitted) (alteration in original). In evaluating an alleged breach, the Court may examine sworn statements during the plea colloquy to determine "what the parties in fact agree to," because such sworn statements "carry a strong presumption of truth." *Id.* (quoting *Muth v. Fondren*, 676 F.3d 815, 821 (9th Cir. 2012)).

Here, Daniel focuses his breach theory on the plea agreement's language that the government will "seek imprisonment for the defendant in the Bureau of Prisons for the rest of his life and request that the BOP to accept a jurisdictional shift from the State of California and the defendant's undischarged California prison sentence." ECF 1765, at 4. The government has not breached the plea agreement because it has fulfilled its obligation requesting that the BOP accept a jurisdictional shift from CDCR through an internal, confidential Department of Justice process. That internal process is underway and it will ultimately be decided by the Deputy Attorney General. *See* ECF 2147, at 23–24 (statement from BOP regional counsel explaining the process).

In evaluating the alleged breach, Daniel's own sworn statements during the plea colloquy demonstrate that he fully understood that he was not entitled to be transferred to the BOP from CDCR because that ultimate decision rests with the Deputy Attorney General. Indeed, the Court explicitly

informed Daniel that there was no guarantee that the BOP would ultimately accept a jurisdictional shift with respect to Daniel, and that the regional counsel for BOP specifically objected to accepting Daniel on a jurisdictional shift from CDCR. ECF 2391, at 24–25. In each instance, Daniel acknowledged his understanding of these terms and agreed to proceed with his guilty plea and sentencing. Daniel's sworn statements from the Rule 11 colloquy "carry a strong presumption of truth" because they help inform "what the parties in fact agree to" and they wholly undermine his current theory of breach because they contradict his theory that he would not have pled guilty if he wasn't accepted in BOP custody. *Jackson*, 21 F.4th at 1213.

In addition, the Court would not have authority to force Daniel's transfer to the BOP from CDCR because the State of California has primary jurisdiction over Daniel.[1] The sovereign with primary jurisdiction may elect under the doctrine of comity to relinquish it to another sovereign, if that sovereign accepts.

In this case, through the efforts of the U.S. Attorney's Office, CDCR exercised its discretion to relinquish jurisdiction over Daniel to federal officials. *See* ECF 1870 (Govt. Ex. 1 – CDCR Letter re: Consent to Jurisdictional Transfer) (under seal). But, the BOP has not exercised its discretion to accept primary jurisdiction over Daniel. Consistent with the plea agreement, the U.S. Attorney's Office is diligently pursuing an internal process that would result in BOP accepting primary jurisdiction over Daniel despite BOP's disinclination to do so. In any event, this discretionary election and internal process of deliberation is exclusively an executive function that is not subject to judicial review. *Poland*

---

[1] The concept of primary jurisdiction was established by the Supreme Court when it acknowledged the need for comity between state and federal authorities with respect to managing defendants who are subject to both state and federal criminal prosecutions and sentences. *See Ponzi v. Fessenden*, 258 U.S. 254, 259 (1922). In *Ponzi*, the Court stated the general rule that the first sovereign to arrest a defendant obtains primary jurisdiction over him as against other sovereigns. *Id.* at 260 ("The chief rule which preserves our two systems of courts from actual conflict of jurisdiction is that the court which first takes the subject-matter of the litigation into its control, whether this be person or property, must be permitted to exhaust its remedy, to attain which it assumed control, before the other court shall attempt to take it for its purpose."). Nevertheless, the sovereign with primary jurisdiction can consent to the defendant's transfer to another sovereign for trial or other proceedings. *Id.* at 261. Such a decision is vested "solely to the discretion of the sovereignty making it," acting through "its representatives with power to grant it." *Id.* at 260. In the federal system, a "transfer of a federal prisoner to a state court for such purposes" may be "exercised with the consent of the Attorney General." *Id.* at 261–62. In Daniel's case, CDCR has primary jurisdiction because the State of California was the first sovereign to arrest Daniel and prosecute him for the his initial commitment offense (a drive-by shooting in Sacramento) and his later murder at Salinas Valley prison.

MOTION PURSUANT TO 28 U.S.C. § 2255

7

*v. Stewart*, 117 F.3d 1094, 1098 (9th Cir. 1997) ("It is the Attorney General's job to exercise the authority of the United States over federal prisoners.  If she chooses to leave Poland in the custody of the State of Arizona, neither Poland nor this court is in a position to say she lacks the authority under the Constitution to do so.").  Where, as here, the defendant is convicted of crimes that violate the laws of separate sovereigns, the defendant has no standing to challenge which jurisdiction has primary jurisdiction.  *Bowman v. Wilson*, 672 F.2d 1145, 1150 (3d Cir. 1982); *Babcock v. Pepe*, 767 F.Supp.2d 234 (D. Mass. 2011).  Accordingly, Daniel's motion for relief fails on the merits because the government has complied with its obligations under the plea agreement and Daniel is entitled to nothing more.

### IV.    CONCLUSION

For the reasons set forth above, the United States respectfully requests that the Court deny Daniel's motion for relief under § 2255.

Dated:  September 9, 2024

PHILLIP A. TALBERT
United States Attorney

By:  /s/ *Jason Hitt*
JASON HITT
Assistant United States Attorney