1 | PHILLIP A. TALBERT
United States Attorney
2 | JASON HITT
ROSS PEARSON
3 | DAVID SPENCER
4 | Assistant United States Attorneys
501 I Street, Suite 10-100
5 | Sacramento, CA 95814
Telephone: (916) 554-2700
6 | Facsimile: (916) 554-2900

7 | Attorneys for Plaintiff
United States of America
8 |

9 | IN THE UNITED STATES DISTRICT COURT

10 | EASTERN DISTRICT OF CALIFORNIA

11 |

12 | UNITED STATES OF AMERICA,           Case No. 2:19-cr-107-KJM

13 |                    Plaintiff,        PLEA AGREEMENT FOR
                                         DEFENDANT KATHLEEN NOLAN
14 |         v.

15 | RONALD YANDELL, et al.,

16 |                    Defendants.

17 |

18 |

19 |                      I.      **INTRODUCTION**

20 |    A.    **Scope of Agreement**

21 |         The defendant Kathleen Nolan ("defendant") will plead guilty to Count Seven of the Indictment.

22 | Count Seven charges the defendant with a violation of 21 U.S.C. §§ 846, 841(a)(1) – Conspiracy to

23 | Distribute and Possess with Intent to Distribute at least 1,000 grams of a mixture and substance

24 | containing a detectable amount of heroin and at least 50 grams of methamphetamine (actual).  This

25 | document contains the complete plea agreement between the United States Attorney's Office for the

26 | Eastern District of California (the "government") and the defendant regarding this case.  This plea

27 | agreement is limited to the United States Attorney's Office for the Eastern District of California and

28 | cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

PLEA AGREEMENT                              1

B.     **Court Not a Party**

The Court is not a party to this plea agreement.  Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of defendant, including activities that may not have been charged in the Indictment.  The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw her guilty plea, and she will remain bound to fulfill all of the obligations under this plea agreement.  The defendant understands that the prosecutor, defense counsel, and the Court cannot make a binding prediction or promise regarding the sentence she will receive.

## II.     **DEFENDANT'S OBLIGATIONS**

A.     **Guilty Pleas**

The defendant will plead guilty to Count Seven of the Indictment.  Count Seven charges the defendant with a violation of 21 U.S.C. §§ 846, 841(a)(1) – Conspiracy to Distribute and Possess with Intent to Distribute at least 1,000 grams of a mixture and substance containing a detectable amount of heroin and at least 50 grams of methamphetamine (actual).

The defendant agrees that she is in fact guilty of this charge and that the facts set forth in the Factual Basis For Plea attached as Exhibit A are true and correct.  Exhibit A is incorporated here by reference.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case.  The defendant understands and agrees that she will not be allowed to withdraw her plea should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by her in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement.  The defendant waives any rights under Rule 11(f) of the Federal

1  Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, to the extent that these

2  rules are inconsistent with this paragraph or with this Agreement generally.

3     **B.      Fine**

4        The parties agree that the defendant does not have the ability to pay a fine and is not likely to

5  become able to pay a fine.  Therefore, imposition of a fine should be waived.  U.S.S.G. § 5E1.2(a).

6     **C.      Special Assessment**

7        The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering

8  a check or money order payable to the United States District Court to the United States Probation Office

9  immediately before the sentencing hearing.  If the defendant is unable to pay the special assessment at

10  the time of sentencing, she agrees to earn the money to pay the assessment, if necessary by participating

11  in the Inmate Financial Responsibility Program.

12     **D.      Defendant's Violation of Plea Agreement or Withdrawal of Plea**

13        If the defendant violates this plea agreement in any way, withdraws her plea, or tries to withdraw

14  her plea, this plea agreement is voidable at the option of the government.  The government will no

15  longer be bound by its representations to the defendant concerning the limits on criminal prosecution

16  and sentencing as set forth herein.  One way a defendant violates the plea agreement is to commit any

17  crime or provide any statement or testimony which proves to be knowingly false, misleading, or

18  materially incomplete.  Any post-plea conduct by a defendant constituting obstruction of justice will

19  also be a violation of the agreement.  The determination whether the defendant has violated the plea

20  agreement shall be decided under a probable cause standard.

21        If the defendant violates the plea agreement, withdraws her plea, or tries to withdraw her plea,

22  the government shall have the right: (1) to prosecute the defendant on any of the counts to which she

23  pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3)

24  to file any new charges that would otherwise be barred by this plea agreement.  The defendant shall

25  thereafter be subject to prosecution for any federal criminal violation of which the government has

26  knowledge, including perjury, false statements, and obstruction of justice.  The decision to pursue any or

27  all of these options is solely in the discretion of the United States Attorney's Office.

28        By signing this plea agreement, the defendant agrees to waive any objections, motions, and

PLEA AGREEMENT                                    3

defenses that the defendant might have to the government's decision to exercise the options stated in the previous paragraph. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement.

In addition, the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

### III.     THE GOVERNMENT'S OBLIGATIONS

**A.     Recommendations**

1.     Incarceration Range

The government will recommend that the defendant be sentenced to the low end of the applicable Guidelines range for her offenses, including the application of the mandatory statutory minimum term, as determined by the Court.

2.     Acceptance of Responsibility

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of defendant's offense level if she clearly demonstrates acceptance of responsibility for her conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

**B.**   **Dismiss Remaining Charges**

The United States agrees at the time of sentencing to dismiss the remaining pending charges against this defendant in Case No. 2:19-cr-107 KJM, in exchange for her guilty plea.

**C.**   **Use of Information for Sentencing**

The government is free to provide full and accurate information to the Court and the United States Probation Office ("Probation"), including answering any inquiries made by the Court and/or Probation, and rebutting any inaccurate statements or arguments by the defendant, her attorney, Probation, or the Court.  The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

## IV.   ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense to which the defendant is pleading guilty.

Count Seven -  Conspiracy to Distribute and Possess with Intent to Distribute Heroin and Methamphetamine – 21 U.S.C. §§ 846, 841(a)(1):

(1)     Beginning no later than in or around March 2016, and continuing to at least October 2016, there was an agreement between two or more persons to distribute and possess with intent to distribute at least 50 grams of methamphetamine (actual) or at least 1,000 grams of a mixture and substance containing a detectable amount of heroin; and

(2)     The defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

The defendant fully understands the nature and elements of the crimes charged in Count Seven of the Indictment, to which she is pleading guilty, together with the possible defenses to that charge, and has discussed them with her attorney.

## V.   MAXIMUM SENTENCE

**A.**   **Maximum Penalty on Count Seven**

The maximum sentence that the Court can impose on Count Seven is up to life in prison, a fine of up to $10,000,000, a period of supervised release of at least 5 years, up to life, and a special

PLEA AGREEMENT

5

1   assessment of $100.

2   **Mandatory Minimum Sentence on Count Seven:** The charge in Count Seven carries a

3   10-year mandatory minimum sentence, absent application of either 18 U.S.C. §§ 3553(e), (f). In

4   addition, the defendant may be ineligible for certain federal and/or state assistance and/or benefits,

5   pursuant to 21 U.S.C. § 862.

6   **B.**   **Violations of Supervised Release**

7   The defendant understands that if she violates a condition of supervised release at any time

8   during the term of supervised release, the Court may revoke the term of supervised release and require

9   the defendant to serve up to 5 additional years in prison per revocation.

10   **VI.**   **SENTENCING DETERMINATION**

11   **A.**   **Statutory Authority**

12   The defendant understands that the Court must consult the Federal Sentencing Guidelines and

13   must take them into account when determining a final sentence. The defendant understands that the

14   Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the

15   Sentencing Guidelines and must take them into account when determining a final sentence. The

16   defendant further understands that the Court will consider whether there is a basis for departure from the

17   guideline sentencing range (either above or below the guideline sentencing range) because there exists

18   an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into

19   consideration by the Sentencing Commission in formulating the Guidelines. The defendant further

20   understands that the Court, after consultation and consideration of the Sentencing Guidelines, must

21   impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

22

23

24

25

26

27

28

PLEA AGREEMENT                                               6

B.  **Sentencing Issues**

1. <u>Minor Role Reduction</u>: The parties stipulate and agree that the defendant was a minor participant within the drug trafficking conspiracy chaged in Count Seven because she was substantially less culpable than the average participant in the conspiracy.  U.S.S.G. § 3B1.2(b).  The parties further stipulate and agree that her role in the offense as a minor participant means that a reduction of 2 levels in her offense level pursuant to U.S.S.G. § 3B1.2 is appropriate under these unique facts and the defendant's specific role in each conspiracy.

2. <u>Safety-Valve Eligibility</u>: The parties agree that the defendant meets the fifth requirement for safety valve set forth in U.S.S.G. § 5C1.2 and U.S.C. § 3553(f).  The parties will seek application of the safety valve at sentencing if the Probation Officer determines that the other requirements are met.

3. <u>Variance Argument</u>: The defendant may request a variance from the applicable Guidelines range based upon the factors set forth in 18 U.S.C. § 3553(a).  The government may respond and/or oppose such arguments in connection with sentencing in this case.

## VII.   <u>WAIVERS</u>

A.  **Waiver of Constitutional Rights**

The defendant understands that by pleading guilty she is waiving the following constitutional rights:  (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to testify on her behalf; (e) to confront and cross-examine witnesses against her; and (f) not to be compelled to incriminate himself.

B.  **Waiver of Appeal and Collateral Attack**

The defendant understands that the law gives her a right to appeal her guilty plea, conviction, and sentence in this case.  The defendant agrees as part of her pleas, however, to give up the right to appeal any aspect of the guilty plea, conviction, or sentence imposed in either case.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence imposed in this case.

1    If the defendant ever attempts to vacate her plea, dismiss the underlying charges, or modify or set

2    aside her sentence on the count to which she is pleading guilty, the government shall have the rights set

3    forth in paragraph II.D (Defendant's Violation of Plea Agreement) of this Plea Agreement.

4    **C.    Waiver of Attorneys' Fees and Costs**

5    The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-

6    119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the

7    investigation and prosecution of all charges in the above-captioned matter and of any related allegations

8    (including without limitation any charges to be dismissed pursuant to this plea agreement and any

9    charges previously dismissed).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VIII.    ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

IX.     **APPROVALS AND SIGNATURES**

A.     **Defense Counsel**

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: _9/18/2024_          _____

CHRIS COSCA, Esq.
Counsel for Defendant

B.     **Defendant**

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: _9/18/2024_          _____

KATHLEEN NOLAN
Defendant

C.     **Attorney for United States**

I accept and agree to this plea agreement on behalf of the government.

Dated: _September 19, 2024_

PHILLIP A. TALBERT
United States Attorney

_____

JASON HITT
Assistant United States Attorney

PLEA AGREEMENT             10

**EXHIBIT "A"**
**Factual Basis for Plea**

If this matter proceeded to trial, the United States would establish the following facts beyond a reasonable doubt:

**Summary of Count Seven –  Conspiracy to Distribute Methamphetamine and Heroin**

Defendant Kathleen Nolan admits that as part of the criminal agreement charged in Count Seven of the Indictment, between March 2016 and at least October 2016, she agreed with co-conspirators Travis Burhop, Nickolas Perez, and others to distribute at least 50 grams of methamphetamine (actual) and at least 1,000 grams of heroin within the Eastern District of California.

**Summary of Facts Supporting Count Seven**

During the drug trafficking conspiracy in Count Seven, Burhop was incarcerated within the California prison system.  The following overt acts detailed below were committed during and in furtherance of the conspiracy charged in Count Seven:

December 22, 2016 – Quesenberry sells heroin to the UC; Surveillance observes Quesenberry deliver the proceeds to Nolan

On December 22, 2016, agents developed evidence of Kathleen Nolan's direct participation in the drug trafficking conspiracy in Count Seven.  In particular, on December 22, 2016, a DEA undercover agent ("UC") arranged to purchase two types of heroin from Jeanna Quesenberry after a month or so of recorded calls discussing prices and quantities.  During the conversations leading to the December 22 drug deals, Quesenberry told the UC that there was a large amount of tar heroin available and she could arrange for her southern California source to deliver more powder heroin.  The UC ultimately bought five ounces of tar heroin and two and a half ounces of powder heroin from Quesenberry on December 22, 2016.

In the days leading up to these deals, Quesenberry said that her source would make sure to send the driver from "down south" on the evening before our deals so that the drugs would be ready on the morning of December 22.

On the morning of December 22, Quesenberry told the UC that she wanted to meet at the Kohl's store at 4700 Natomas Boulevard in North Sacramento.  She added that this store was around the corner from her new spot, which the UC interpreted to mean stash pad.  At about 11:55 a.m. that morning, surveillance agents located Quesenberry's white Acura at 11 Button Court.

The UC drove to the Kohl's parking lot and then called Quesenberry at about 12:35 p.m.  She said she was down the street, bagging everything up, and would be at the Kohl's in about 15 minutes. At about 1:00 p.m., agents saw Quesenberry drive away from Button Court.  She arrived at the Kohl's store at about 1:04 p.m.

1

**EXHIBIT "A"**
**Factual Basis – Continued**

2

3
    Quesenberry parked her white Acura next to the UC's car and got into the passenger seat. She sold the UC an amount of tar heroin for $4,450 and, in the same deal, about 92 grams of powder heroin for another $2,200.

4

5
    The DEA Western Regional Laboratory later confirmed that Quesenberry sold 121 grams of tar heroin and 50.6 grams of powder heroin.

6

7
    During this drug deal, Quesenberry and the UC realized there was a discrepancy in what the UC had ordered from her. Specifically, Quesenberry forgot an additional half ounce that the UC had ordered during their earlier conversations. She agreed to return to her stash pad and immediately bring back the remaining half ounce.

8

9
    Agents followed Quesenberry directly back to 11 Button Court. Another drug trafficking associate of Quesenberry's, Katherine Fuimaono, came out of the residence, got into Quesenberry's car, and then got out two minutes later. At about 1:20 p.m., Quesenberry drove away again and arrived in the Kohl's parking lot a short time later. She got into my car and sold the additional half ounce of white powder heroin to the UC for $500.

10

11

12
    The DEA Western Regional Laboratory later confirmed that Quesenberry had sold 10.3 grams of a mixture containing powder heroin.

13

14
    Quesenberry told the UC that her sources had told her to apologize to the UC and that they would have more white heroin next time. She also explained that there had been a problem with finding the white heroin this time: The person who maintained the stash house had hidden it shortly before police arrested him for domestic violence. However, no one knew where he put it.

15

16

17
    Quesenberry returned to her white Acura and drove away. Surveillance followed her as she drove directly to a Chevron gas station on Del Paso Boulevard and Sport Parkway. There, surveillance agents watched Quesenberry meet with Kathleen Nolan, who was driving a dark Nissan SUV. Agents positively identified Nolan in the Nissan SUV by comparing the person they spotted meeting with Quesenberry with Nolan's DMV photo. The two women left the station and drove in tandem back to Quesenberry's residence on Las Animas Circle. They arrived at about 2 p.m. and both walked inside Quesenberry's house. Nolan left Quesenberry's house at about 2:42 p.m. and drove away.

18

19

20

21
    As part of this plea agreement, Nolan admits that she met with Quesenberry to collect a portion of the money from the tar and powder heroin that Quesenberry sold to the UC that day. The defendant further admits that she returned to southern California to give the drug money according to instructions from Burhop.

22

23

24

25

26

27

28

PLEA AGREEMENT                               A-2

1

2

**EXHIBIT "A"**
**Factual Basis – Continued**

3

The parties stipulate and agree that Nolan is responsible for up to the following converted drug weight as part of her guilty pleas to Count 7 in this case: 83,483 kilograms of marijuana.  The parties agree that there is no evidence demonstrating that Nolan was aware of the Fontana stash pad or accessed it during the conspiracy before it was searched on October 24, 2016.

4

5

I have reviewed the Factual Basis in Exhibit A and, as far as my own conduct is concerned, I adopt it as a true and correct statement of my crimes.

6

7

Dated:   9/18/2024

8

KATHLEEN NOLAN
Defendant

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLEA AGREEMENT                                    A-3