TONI WHITE (SBN 210119)
PO Box 1068
Placerville, CA 95667
Tel:    (530) 885-6244

Attorney for defendant
JEANNA QUESENBERRY

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | NO. 2:19-CR-00081 KJM; 2:19-CR-00107 KJM |
| Plaintiff, ) | |
| v. ) | REPLY TO GOVERNMENT OPPOSITION TO DEFENDANT'S REQUEST FOR EXTENSION OF VOLUNTARY SURRENDER DATE |
| JEANNA QUESENBERRY ) | |
| Defendant. ) | |

I.

THE COURT RETAINS DISCRETION TO DETERMINE SURRENDER DATES[1]

The court has inherent authority to govern voluntary surrender dates. The Government argues, without citing authority, that "[a] request for a self-surrender date, or an extension of that date, is properly viewed as a request for release on bail pending execution of sentence and is governed by 18 U.S.C. § 3143(b)." ECF 474, *Government Opposition,* pg. 3. By its' own language, 18 U.S.C. section 3143(b) applies in situations in which the defendant has filed an appeal or a petition for writ of certiorari. The statute states:

---

[1] "Surrender date" in this context refers to the date upon which the court has ordered an out-of-custody defendant to voluntary surrender to the Bureau of Prisons ("BOP").

-1-

(b) Release or detention pending appeal by the defendant.--(1) Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, **and who has filed an appeal or a petition for a writ of certiorari**, be detained, unless the judicial officer finds--
(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
(B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in--
    **(i)** reversal,
    **(ii)** an order for a new trial,
    **(iii)** a sentence that does not include a term of imprisonment, or
    **(iv)** a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b) (emphasis added). The Government properly cites to *United States v. Fower*, 30 F.4th 823, 827 (9th Cir. 2022) in which the Ninth Circuit recognized that the court has discretion to extend surrender dates. In an unreported case, the District Court for the W.D. Washington at Seattle cited *Fower* for the proposition that "'"a district court is [not] powerless to provide a semblance of compassionate relief in the normal exercise of its broad discretion.' [*United States v. Fowler*, 30 F.4th 823, 827 (9th Cir. 2022)]. If the circumstances warrant, a district court may delay the imposition of sentence or extend the time to surrender to the BOP....' Id. As such, the Court does have discretion to delay imposition of Defendant's sentence."' *United States v. Tillisy,* 2022 WL 1719222, *1, W.D. Wash. The *Tillisy* court was faced with a defendant who argued that his judgment should be suspended so that he could apply for "extraordinary medical placement from the DOC." The court found that the defendant had not made the necessary showing that he could meet the medical guidelines and denied the requested relief. The court was quite clear, however, that it had the authority to delay imposition of sentence and suggested that the standard of review would be abuse of discretion. (Id. at *1-2.)

## II.

## MS. QUESENBERRY HAS MADE A REQUISITE SHOWING OF MEDICAL NEED TO SUPPORT AN EXTENSION OF HER SURRENDER DATE

### A. Ms. Quesenberry has legitimate medical need

Ms. Quesenberry has multiple chronic conditions that are well documented in the filings in this case. These conditions supported her initial and continued release for medical reasons. While not binding on the BOP, the Court recommended that Ms. Quesenberry be housed at FMC Carswell, which is a level 4 medical facility within BOP. Defense counsel followed up with USMS and learned that Ms. Quesenberry is not assigned to FMC Carswell but will be housed at the BOP facility in Victorville. As such, Ms. Quesenberry will not receive the level 4 medical care that is provided at FMC Carswell.

Ms. Quesenberry needs knee surgery and is in pain. Her surgeon stated, in Exhibit A filed under a request to seal, the issue very clearly:

> While Jeanna Quesenberry does qualify for knee surgery on the left knee, we are taking alternative methods due to the fact that she would not be able to participate in physical therapy post-operatively due to her incarceration. She is coming to our Orthopedic office for steroid shots to decrease her knee inflammation and to be able to function on a daily basis.

It will take time for Ms. Quesenberry to get settled at BOP and for the medical staff to get her records, visit with her and establish care for her knee. She will remain in pain, with impaired mobility, until that time if she does not enter BOP with the necessary steroid shots recommended by her surgeon. The delays in medical care at BOP are well-established and likely to worsen given the recent staffing shortages.

### B. BOP has a documented history of medical neglect and delay

The existence of BOP medical neglect and delay is on display in the context of compassionate release. A law review article published in the Spring 2024 edition of the Ohio State

Journal of Criminal Law, Vol. 21.1:47, entitled "*Like They're Waiting for you to Die: Development of the Inadequate Medical Care Doctrine from District Court to United States Sentencing Commission*," Rifkin & Blackwood[2], focuses on a multitude of cases in which criminal courts found that inadequate medical care constituted extraordinary and compelling circumstances justifying reduced sentences. *Article*[3] at pp. 45-63. The article examines how federal judges, through these decisions, informed the Sentencing Commission such that it eventually amended U.S.S.G. §§ 1B1.13(b) to address inadequate medical care. *Id*.

      The court in *United States v. Beck*, 425 F.Supp.3d 573, 575 (M.D.N.C. 2019) addressed the situation in which the defendant was released, after having served approximately half of her sentence, because the BOP provided inadequate medical care after defendant discovered a breast lump. *Article* at p. 45-47. The defendant discovered a lump in her breast and reported it promptly because she had a family history of breast cancer. *Id*. at p. 45. It took BOP eight months to biopsy the lump which, at that time, had revealed "extensive breast cancer." *Id*. BOP waited another two months to get the defendant into surgery. *Id*. After she had her entire left breast and part of her chest muscle removed, it was confirmed that she had metastatic breast cancer. *Id*. Because BOP waited too long to get her to a medical oncologist, it was too late to receive chemotherapy or radiation therapy. *Id*. at p. 46. The defendant subsequently discovered new lumps in her right breast. *Id*. BOP again delayed medical care causing defendant to move the court for compassionate release based on the BOP's medical neglect. *Id*. The court granted the motion and noted that the substandard care

---

[2] A link to the article can be found at: https://sentencing.typepad.com/sentencing_law_and_policy/2024/03/lots-of-sentencing-pieces-in-latest-issue-of-the-ohio-state-journal-of-criminal-law.html

[3] This law review article will be cited as "article" for ease.

provided by BOP turned a diagnosis that was not necessarily terminal into a life-threatening condition. *Id.* at p. 47.

The law review article next examined *United States v. Almontes*, No. 3:05-CR-58, 2020 WL 1812713 (D. Conn. Apr. 9, 2022)[4]. *Article* at p. 56. The court granted defendant's request for compassionate release, and reduced the sentence to time served, based on BOP's neglect in failing to provide appropriate and prompt care for a serious spinal condition in spite of medical professionals' identifying an urgent need for treatment. *Article* at p. 56-57. The article subsequently cited to *United States v. Verasawmi*, No. 17-254, 2022 WL 2763518 (D. N.J. July 15, 2022)[5] as an example of another case in which the district court granted compassionate release based on BOP's inadequate medical care. *Article* at p. 57-58. The defendant in *Verasawmi* had a multitude of chronic illnesses and needs including oxygen dependence due to lung and throat issues, heart issues, migraines, incontinence. *Id*. at p. 58. She was also severely mentally ill. *Id*. "The court concluded that 'the compounding effects' of BOP's mismanagement on the defendant's 'serious medical issues….' required compassionate release to ensure her conditions would not prove fatal." *Id*. at 58.

The shocking case of *United States v. Bardell*, 634 F.Supp.3d 1083 (M.D. Fla. 2022) was also discussed in the article. The court began its opinion with an especially thoughtful and poignant sentiment:

> Judges carry the heavy burden of depriving individuals of their liberty. But the Bureau of Prisons shoulders the constitutional burden of protecting the remaining rights of the incarcerated while in custody. The possibility that the Bureau of Prisons would be so indifferent to the human dignity of an inmate in its care as the facts here demonstrate, increases the burden on the sentencing judge exponentially. This, of course, pales in comparison to the suffering of the inmate and his family. Frederick Marvin Bardell was a convicted child pornographer. He was also a human being.

---

[4] *United States v. Almontes*, No. 3:05-CR-58, 2020 WL 1812713 (D. Conn. Apr. 9, 2022) is not reported in F.Supp.

[5] *United States v. Verasawmi,* No. 17-254, 2022 WL 2763518 (D. N.J. July 15, 2022) is designated "Not for Publication."

*United States v. Bardell*, 634 F.Supp.3d at 1084; *Article* at p. 58. The law review's recitation of the facts of the case explained why the district court began its opinion in this way. In *Bardell*, the defendant moved for compassionate release because he was experiencing "'unspecified bleeding,' metastatic liver lesions (suspected cancer), and malignancy in his colon." *Article* at p. 58. The Government argued that there was insufficient proof that the defendant had a terminal condition and assured the court that defendant would receive adequate care from BOP. *Id*. Based on this information, the court denied the motion for compassionate release. *Id*. After obtaining an affidavit from a "board-certified oncologist who confirmed that [he] needed immediate treatment for his 'likely terminal' cancer," defendant filed another compassionate release motion. *Id*. at p. 59. "The government again opposed release, arguing that 'it was not even definitive that Mr. Bardell had cancer – let alone terminal cancer." *Id*. The court granted the compassionate release motion on February 5, 2021 and defendant died twelve days later. Id. The article noted:

> Mr. Bardell died on February 17, 2021, under horrible conditions, shortly after his release from prison. At the time of his release, Mr. Bardell was 'skin and bones,' had a tumor protruding from his stomach, was wheelchair dependent, and bladder and bowel incontinent. Despite his condition, the BOP left Mr. Bardell on the curb of an airport terminal without his wheelchair after making his parents pay for his plane ticket home (contrary to BOP policy). When his plane landed, his parents found him bleeding, soiled and nearly unrecognizable. They immediately took him to the hospital. He died nine days after his release.

*Id*. The court subsequently "held BOP in contempt and imposed sanctions, accusing it of 'sheer disregard for human dignity,'" ordered the Attorney General to investigate BOP's lack of adequate care and misrepresentations related to defendant's condition. *Id*.

The law review article cited a litany of cases wherein compassionate release was granted for inadequate medical care. *Id*. at p. 57, fn 90. The district court cases from the ninth circuit consisted of *United States v. Ranes*, No. 3:06-cr-00041, slip op at 5 (D. Alaska Nov. 22, 2022) (granting

release because BOP failed to provide necessary surgery and medical care for intestinal issues), *United States v. Robles*, No. 19CR4122, 2022 WL 229362, at *2 (S.D. Cal. Jan. 26, 2022)(granting release based on BOP's failure to provide adequate care and surgery for stroke and heart condition) and *United States v. Oshinski*, No. 2:14-CR-00284, 2021 WL 2518981, at *2 (D.Nev. June 17, 2021)(release based on BOP's inability to treat defendant's current medical condition). *Id*.

Ms. Quesenberry was sentenced to 120 months of imprisonment on March 11, 2025 and is currently ordered to voluntarily surrender to the Bureau of Prisons on June 2, 2025 "with the court retaining jurisdiction to modify the self-surrender date upon showing of good cause by either side." ECF No. 461 (19CR81) and ECF No. 2648 (19CR107).

The BOP system failed to care for inmates with life threatening illnesses. The system is fraught with problems delivering care. It is reasonable to predict that it will not immediately turn its attention onto Ms. Quesenberry's knee pain. Ms. Quesenberry has worked with her orthopedist to craft a medical plan that gives her assurance that she will, at least enter, BOP without being in daily pain and that she can maintain mobility. This will give her the best chance to transition into the BOP medical care without further pain and damage. The steroid shots need to be spaced out at certain intervals for medical reasons and she has requested a surrender date in accordance with her steroid shot schedule as set forth in Exhibit A. This is her first request for an extension of surrender date and, as stated in her original motion, she does not anticipate another request.

CONCLUSION

As such, at this time, Ms. Quesenberry respectfully requests that the Court stay extend her voluntary surrender date until July 7, 2025. Additionally, she requests that the Court stay her surrender date pending the outcome of this request.

Dated: May 22, 2025                                                    /S/ TONI WHITE

                                                                                          Toni White

Attorney for Defendant
Jeanna Quesenberry