

AO 243 (Rev. 09/17)

## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT MAR 27 2026
### SENTENCE BY A PERSON IN FEDERAL CUSTODY

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
DEPUTY CLERK

| **United States District Court** | District | Docket or Case No.: |
|---|---|---|
| Name *(under which you were convicted):* Brant Daniel | | 2:19-cr-00107-KJM |
| Place of Confinement: CSP— Sacramento State Prison, Represa CA. | | Prisoner No.: J-85967 |
| UNITED STATES OF AMERICA | V. | Movant *(include name under which convicted)* Brant Daniel. |

### MOTION

1.  (a) Name and location of court which entered the judgment of conviction you are challenging:

    EASTERN DISTRICT OF CALIFORNIA, Sacramento, CA 95814

    (b) Criminal docket or case number (if you know): 2:19-CR-00107 KJM

2.  (a) Date of the judgment of conviction (if you know): 12-20-23

    (b) Date of sentencing: 12-20-23

3.  Length of sentence: Life

4.  Nature of crime (all counts):

    RICO Conspiracy (count 1) Murder in aid of racketeering (count 17)

5.  (a) What was your plea? (Check one)

    (1) Not guilty ☐     (2) Guilty ☑     (3) Nolo contendere (no contest) ☐

6.  (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to?

6.  If you went to trial, what kind of trial did you have? (Check one)     Jury ☐     Judge only ☐

7.  Did you testify at a pretrial hearing, trial, or post-trial hearing?     Yes ☐     No ☑

Page 2 of 13

AO 243 (Rev. 09/17)

8.  Did you appeal from the judgment of conviction?    Yes ☐    No ☑

9.  If you did appeal, answer the following:

(a)  Name of court: _____

(b)  Docket or case number (if you know): _____

(c)  Result: _____

(d)  Date of result (if you know): _____

(e)  Citation to the case (if you know): _____

(f)  Grounds raised:

(g)  Did you file a petition for certiorari in the United States Supreme Court?    Yes ☐    No ☐

If "Yes," answer the following:

(1)  Docket or case number (if you know): _____

(2)  Result: _____

(3)  Date of result (if you know): _____

(4)  Citation to the case (if you know): _____

(5)  Grounds raised:

10.  Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?
Yes ☐    No ☑

11.  If your answer to Question 10 was "Yes," give the following information:

(a)  (1)  Name of court: _____

(2)  Docket or case number (if you know): _____

(3)  Date of filing (if you know): _____

AO 243 (Rev. 09/17)

(4)  Nature of the proceeding: _____

(5)  Grounds raised:




_____

(6)  Did you receive a hearing where evidence was given on your motion, petition, or application?

Yes ☐      No ☐

(7)  Result: _____

(8)  Date of result (if you know): _____

(b)  If you filed any second motion, petition, or application, give the same information:

(1)  Name of court: _____

(2)  Docket of case number (if you know): _____

(3)  Date of filing (if you know): _____

(4)  Nature of the proceeding: _____

(5)  Grounds raised:




(6)  Did you receive a hearing where evidence was given on your motion, petition, or application?

Yes ☐      No ☐

(7)  Result: _____

(8)  Date of result (if you know): _____

(c)  Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1)  First petition:      Yes ☐      No ☐

(2)  Second petition:      Yes ☐      No ☐

(d)  If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

AO 243 (Rev. 09/17)

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**GROUND ONE:** Movant pled under severe Duress, Medical Duress & pains and was incompetent due to denial of surgeries and medicated heavily.

   (a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

   **(b) Direct Appeal of Ground One:**

   (1) If you appealed from the judgment of conviction, did you raise this issue?

   Yes ☐    No ☐

   (2) If you did not raise this issue in your direct appeal, explain why:

   **(c) Post-Conviction Proceedings:**

   (1) Did you raise this issue in any post-conviction motion, petition, or application?

   Yes ☐    No ☑

   (2) If you answer to Question (c)(1) is "Yes," state:

   Type of motion or petition:

   Name and location of the court where the motion or petition was filed:

   Docket or case number (if you know):

   Date of the court's decision:

   Result (attach a copy of the court's opinion or order, if available):

   (3) Did you receive a hearing on your motion, petition, or application?

   Yes ☐    No ☐

AO 243 (Rev. 09/17)

(4)   Did you appeal from the denial of your motion, petition, or application?

Yes ☐        No ☐

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐        No ☐

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND TWO:** _____

(a)   Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b)   **Direct Appeal of Ground Two:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐        No ☐

Page 6 of 13

AO 243 (Rev. 09/17)

(2)   If you did not raise this issue in your direct appeal, explain why:

(c)  **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐        No ☐

(2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

(3)   Did you receive a hearing on your motion, petition, or application?

Yes ☐        No ☐

(4)   Did you appeal from the denial of your motion, petition, or application?

Yes ☐        No ☐

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐        No ☐

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

AO 243 (Rev. 09/17)

**GROUND THREE:** _____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(b) **Direct Appeal of Ground Three:**

   (1)  If you appealed from the judgment of conviction, did you raise this issue?

      Yes ☐     No ☐

   (2)  If you did not raise this issue in your direct appeal, explain why:

(c) **Post-Conviction Proceedings:**

   (1)  Did you raise this issue in any post-conviction motion, petition, or application?

      Yes ☐     No ☐

   (2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

   (3)  Did you receive a hearing on your motion, petition, or application?

      Yes ☐     No ☐

   (4)  Did you appeal from the denial of your motion, petition, or application?

      Yes ☐     No ☐

   (5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

      Yes ☐     No ☐

AO 243 (Rev. 09/17)

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND FOUR:** _____

(a)   Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b)   **Direct Appeal of Ground Four:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐      No ☐

(2)   If you did not raise this issue in your direct appeal, explain why:

(c)   **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐      No ☐

(2)   If you answer to Question (c)(1) is "Yes," state:

AO 243 (Rev. 09/17)

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3)  Did you receive a hearing on your motion, petition, or application?
    Yes ☐        No ☐

(4)  Did you appeal from the denial of your motion, petition, or application?
    Yes ☐        No ☐

(5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?
    Yes ☐        No ☐

(6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

13.  Is there any ground in this motion that you have not previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

AO 243 (Rev. 09/17)

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the you are challenging?       Yes ☐       No ☑

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At the preliminary hearing:

(b) At the arraignment and plea:

John Balazs and Tim Wariner, SACRAMENTO CA.

(c) At the trial:

(d) At sentencing:

SAME

(e) On appeal:

(f) In any post-conviction proceeding:

(g) On appeal from any ruling against you in a post-conviction proceeding:

16. Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court and at the same time?       Yes ☐       No ☑

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?       Yes ☐       No ☐

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:
(1) Sac Co. No. 95F04512 ( 12/8/95) life plus enhancements); (2) Sac. Co. No. 03F03574 (5-13-03, 4 yrs ) (3) monetray Co. No. SS1700944A (6-17-17) 30 to life /

(b) Give the date the other sentence was imposed: _____

(c) Give the length of the other sentence: _____

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?       Yes ☐       No ☐

Page 11 of 13

AO 243 (Rev. 09/17)

18.    TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

This motion is timely filed due to the withdraw of # 1 2255 filed July 10, 2024 & withdraw of that 2255 June of 2025.

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –

(1)   the date on which the judgment of conviction became final;

(2)   the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3)   the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)   the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

AO 243 (Rev. 09/17)

Therefore, movant asks that the Court grant the following relief:

Vacate my guilty plea and other appropriate relief.

_____

or any other relief to which movant may be entitled.


_____
Signature of Attorney (if any)


I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on _____ .

(month, date, year)


Executed (signed) on _____ (date)


_____
Signature of Movant


If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

Page 13 of 13

Attachment to motion to VACATE under 28 U.S.C. 2255

Background

1. On December 23, 2023, I pled guilty with a plea agreement to Count 17 of the Superseding Indictment charging me with Murder in aid of racketeering.

2. The government made assurances in court that led me to believe I would be transferred to federal prison expediciously. At this time I was on several medications, and under severe Duress, in bad pains all due to the United States Marshels in the Eastern district DENYING urgent Surgeries to help me be out of Severe pain and stress and duress. (See attach exhibit Summary of Mr. Daniel's physical Condition and Medical issues, that My attorneys provided this court.) I had 3 doctors in Calif. Dept. of Corrections CDCR where I was housed during my pretrial status under a Marshels Contract which had a clause in it that required the Marshels approval for all outside of CDCr medical; wanting to get my urgent needed Surgey done. This Surgey caused me grief, pains, duress and was set up and scheduled 3 times by CDCr's doctors with San Joaquin Neuro Surgeons, and the day of scheduled Surgeries the Eastern district Marshels Denied it, causing me to Suffer gravely. This was no small Surgery and due to my 4 prior back Surgeries pre this Rico Indictment where 2 surgeries FAILED, this S/I joint fusion was vital to help relieve the pain and Suffering I was forced to enduce and it got worser with time.

(14)

3. I entered my plea with the understanding I'd be sent to Fed BOP a lot faster if I waived the PSR process, so I could get transferred to BOP faster and get the surgeries I needed and get out from the USMS Marshel pretrial contract they had with CDCr to hold me in their custody. I was told by my attorneys that the U.S.A.S. Jason Hitt had recommendd we waive PSR process so the can get the process started expediciously so I can go get said Surgeries. (See my Declaration attached herin.)

4. This did not happen, ergo I filed 2255 and 16 months later transferred to BOP.

5. Prior to my plea, I was on several strong medications that made my mind very foggy; medications such as; opiods Methadone 20 mg daily, several heart medications that would make me very dizzy and frustrated (etc. See attach exhibit) (Several other Denial emails exist)

6. I've had 4 prior spinal surgeries, 2 heart surgeries and 2 of the spinal surgeries, FAILED, ergo I suffered pains beyond all one could imagine and at one time I expressed to my attorneys John Balazs and Tim Warriner, " Please, I plea to death even; I don't care no more let them give me the dooth penalty. I'm in bad pains and want out of this situation " The USMS Contract and their denials of needed care caused me more duress and to Suffer leading up to

(FN: Several pretrial motions, emails etc. of all the Pretrial Pressures exist! ) ⑮  ⟶

my urgent plea out. I was singled out and the only defendant on this Rico to suffer pretrial torture, coercion, medical neglect and deliberate medical indifference by CDCr CSP-SAC and the USMs in the eastern district. (Many emails exist attys have them)

Medical coercion violates voluntariness, Sell V. United States (2003, Supreme Court), United States V. Garrett (4th cir. 2005) Vacated plea due to systemic misconduct. I am permanently disabled (ADA) due to 2 spinal surgeries gone wrong. I suffered deliberate medical neglect by the Marshels and their power to deny medically needed surgeries. I would've pled to a death sentence just to be out of the pain, suffering and duress. I had a right to Not be tortured via medical coercion and denying my surgeries in yr of 2022 — 2023 leading up to the plea deal; in fact in June — July — Aug 2023 the surgeries were again denied, placing me in bad duress — stress, pain and suffering to the Nth. (Judge Mueller was made aware of the pretrial conditions several times through out this Rico case and the harshness of it all on me and my bad horrible physical condition.

7. My attorneys were well aware of my pain and sufferings, medical neglect and duress. They filed motion after motion and emailed the Marshels asking why they kept denying surgeries, etc.

FN: My lawyers have many motions and emails with Marshels in 2022 — 23 denying my surgeries 16 ⟶

This violated Strickland V. Washington, ( 1934, Suprene Court), and Lafler v. Cooper (2012, Suprem court) My attorneys know first handedly that I was suffering and all the pretrial torture I endured prior to entering my plea Dec 2023 just to get out of the situation, USMS contract (pretrial), and be done with it all so I didn't have to be in severe pain no more. I was on so many medications I was foggy of mind, in severe pain, and was willing to plea to death sentence at this time. The Marshels blocked medical care — surgeries multiple times pretrial approx wen 4 - 5 mos up to my plea deal, violated my 6th amend. the right to a _fair trial_. This is medical deprivation to influence a plea out, and violates my 6th Amendment of the U.S. Constitution.

Conclussion

I was under severe Duress, pain and suffering when making this plea, and foggy of mind. This plea was made involutary and in bad faith. For said reasons this court should Vacate my guilty plea and reinstate my not guilty plea, and set the case for trial.

I declare under penalty of perjury that ALL FACTS set forth are true and correct.

Dated: 3-10-26                    (Brant Daniel

Brant Daniel

17

<u>Declaration of Brant Daniel</u>

I Brant Daniel, declare:

1. From July 8 2019, till May 8 2025 I was housed at Calif state prison CSP-SAC during this Rico case, and from 7-8-2019 until 12-23-23 as a pretrial defendant housed at CSP SAC, adseg - SHu housing, under a USMS Marshel Pretrial contract.

2. I've been disabled due to a back surgery gone wrong, and several more proceedures to help fix it.

3. I've had 2 heart surgeries and get several heart medications and pain medications that cause me dizziness and opiod effect minded.

4. In 2020 I was rehoused in a mental health unit for the <u>severely ill prisoners</u>, and told by prison staff "to just plea guilty it'll all stop" and my Rico attorneys filed Motions in this case to get me moved.

5. In 2022, 2023 leading up to the plea deal I experienced severe pains in my back, leg, and buttocks, that 3 surgeons in San Joaquin wanted to do surgry on my S/I joint so it'll help relieve some pains. This surgry was set up and scheduled by CSP SAC medical doctors and day of surgery the Marshels denied it. To prepare for the surgery the CSP medical had to stop meds 7 days prior to the surgry blood thinners etc. chancing a stroke or heart attacks.



①    ⟶



Doing this to me 3 times for a scheduled s/I fusion and denying it as the Marshels did put me in duress and in Jeopardy of death. Surgery preperation for heart patients is very serious!

Doing this 2 times for scheduled lipoma removal surgery in 2022 - 2023 again put my life in danger & duress. (There are several emails between my attys & usms on this)

6.  On Dec 23, 2023 I would've pled to a death sentence just to be out of the situation and to get out of duress, stress, pain and sufferings. I had told my lawyers to just let me plea to death because MR. Hitt hadn't decided if he'd press death penalty or NOT per Wash. D.C.

7.  For my entire pretrial of this case I suffered pretrial tortures, coercions, medical neglect and duress especially in the yrs of 2022 - 2023 when my surgeries were denied by usms Marshels.

8.  I was constantly in a mental fog and stress - duress, and would've accepted the firing squad on the spot to be out of that pain!

9.  Since I have had the surgeries and I'm in my right frame of mind. I would've never ever accepted such a plea in my right mind, clear of all the pain, duress and mental fog. I would've gone to trial by this case had it been

②

## Certificate of Service

I hereby certify on March 10, 2026 a true exact copy of the foregoing 2255 is being placed in this U.S.P.S. first class mailing envelope and addressed to:

United States District Court For
The Eastern District of California
501  I st.    4 - 200
Sacto, Calif.   95814


Brant Darrel   78306-097
3-10-26

*United States v. Brant Daniel*
2:19-cr-00107

## Summary of Mr. Daniel's Physical Condition and Medical Issues

Mr. Daniel has the following medical conditions:

1. *SI joint arthritis*: Fusion of the SI joint was recommended by Mr. Daniel's neurosurgeon. The surgery has been scheduled multiple times however the treatment was deferred by the USMS due to his pretrial status in federal case.

2. *Lipoma*: Mr. Daniel has a lipoma on his head that continues to grow. There is adhesion to the periosteum, tenderness and pain, and traction changes on the skin around it extending to the forehead and laterally to the temporal area. The procedure for scalp mass excision has been previously scheduled however treatment was deferred by the USMS due to his pretrial status in federal case.

3. *Radicular pain of right upper extremity*: Mr. Daniel was diagnosed with chronic severe right cervicalgia with right upper extremity right DeCola pain secondary to the cervical degenerative plexus disease and spinal stenosis with radiculitis. He has received epidural steroid injections.

4. *Chronic low back pain with right more than left radicular pain.*

5. *Status post L3-L4 and L4-L5 laminectomy 3/22/2014; L3-L5 fusion on 3/15/2015, hardware removal on 3/2018; L5-S1 anterior fusion in 10/2020.*

6. *Failed back surgery syndrome.*

7. *Right footdrop.*

8. *Cervical spine degenerative disc disease.*

9. *Lumbar stenosis.*

10. *Chronic pain syndrome.*

11. *Hypertension.*

12. *Atrial fibrillation (A-fib). He has had two prior heart ablation surgeries and needs to be monitored.*

13. *GERD.*

14. *Hepatitis C.*

15. *Liver cirrhosis.*

16. *History of left femur facture due to gunshot wound with open reduction and internal fixation in 1997.*

17. *Ambulates with cane.*

18. *Carpal tunnel syndrome on both sides.*

Mr. Daniel takes the following medication:

1. Aspirin 81 mg 1 tab oral daily KOP

2. Clonidine 0.1 mg 1 tab oral BID AM + PM NA

3. Acetaminophen-codeine 300-30 mg tab (0372-01)  (Tylenol with Codeine #3) 2 tab oral daily@ 12 DOT

4. 1-dilTIAZem CD 240 mg Cap-ER 24 HR (Cardizem CD) (diltiazem 240 mg/24 hours, extended release) 240 mg 2 cap oral daily NA

5. Fiber Lax, 2tab (1250 mg), oral, BID

6. hydroCHLOROthiazide 25 mg 1 tab oral daily NA

7. Lactulose, 20gm 30 mL oral BID-KOP

8. Losartan 100 mg 1 tab oral daily NA

9. Methadone 10 mg 1 tab oral daily BID AM + PM DOT

10. Metoclopramide 10 mg tab (Reglan) 10 mg 1 tab oral QID-KOP 15

11. Omeprazole 40 mg 2 cap oral BID-KOP KOP PRN: dyspepsia

12. Robaxin, 500 mg, oral, BID

13. Polycarbophil 1,250 mg 2 tab oral BID AM+ PM NA

14. 1-sucralfate 1 gm tab (Carafate) 1 gm 1 tab oral TID-KOP.

*NOTE: Several emails more exist in yr of 2022/2023 and motions too.*

| | |
|---|---|
| **From:** | Tim Warriner |
| **To:** | john Balazs |
| **Subject:** | Fw: Brant Daniel |
| **Date:** | Wednesday, March 4, 2026 11:34:54 AM |
| **Attachments:** | Outlook-hfmgmt1c.png |

Timothy E. Warriner
Attorney at Law
455 Capitol Mall, Suite 802
Sacramento, CA 95814
tew@warrinerlaw.com
916 443 7141
cell: 916 718 9516

View my profile on Linked**in**

*Commitment - Trust - Excellence*

<u>Confidentiality Notice</u>:  The information contained in this e-mail (and any attachments) is covered by the Electronics Privacy Act, 18 U.S.C. §§ 2510-2521. This email constitutes a privileged and confidential communication pursuant to California Evidence Code § 952 and California Code of Civil Procedure § 2018. This email is intended *only* for the identified recipient(s).  If you are not the identified recipient, you are notified that any disclosure, copying, distribution or the taking of any action in reliance on this email is strictly prohibited. If you are not the identified recipient, please *immediately* delete this email, destroy any copies; and, notify Timothy E. Warriner, Attorney at Law, by responsive email or by telephone at 916 443 7141. Thank you.

**From:** john@balazslaw.com <john@balazslaw.com>
**Sent:** Friday, October 16, 2020 12:32 PM
**To:** Beloberk, Kelly (USMS)▮▮▮▮▮▮▮▮▮▮▮▮▮
**Cc:** Hitt, Jason (USACAE)▮▮▮▮▮▮▮▮▮▮▮; Gaskins, Anne (USMS)
▮▮▮▮▮▮▮▮▮▮>; Biernat, Kevin (USMS)▮▮▮▮▮▮▮▮▮▮; Pearson, Ross
(USACAE)▮▮▮▮▮▮▮▮▮▮>; Tim Warriner <tew@warrinerlaw.com>
**Subject:** Re: Brant Daniel

Great, thank you very much for your assistance. —John

On Oct 16, 2020, at 12:30 PM, Beloberk, Kelly (USMS)
<▮▮▮▮▮▮▮▮▮▮> wrote:

Good Afternoon,

I wanted to send everyone an update that Daniels received his surgery this week and

will be returning to Folsom State Prison either today or tomorrow.

Thank you and have a nice weekend,


Kelly Beloberk
Supervisory Deputy U.S. Marshal
Eastern District of California

501 I Street, Suite 5-600
Sacramento, CA 95814

███████████████████

---

**From:** john@balazslaw.com <john@balazslaw.com>
**Sent:** Tuesday, October 6, 2020 5:12 PM
**To:** Beloberk, Kelly (USMS) <K██████████████████; Hitt, Jason (USACAE)
<█████████>
**Cc:** Gaskins, Anne (USMS) █████████████████>; Biernat, Kevin (USMS)
<█████████████████>; Pearson, Ross (USACAE) <█████████████>; Tim
Warriner <tew@warrinerlaw.com>
**Subject:** RE: Brant Daniel

Kelly and Jason, we've learned that after the SMART Committee at CDCR approved our
client Brant Daniel's requested spine surgery about six weeks ago, the surgery has been
scheduled--but then cancelled three times--for unknown reasons. The most recent
time, Mr. Daniel's blood thinning medication was discontinued in anticipation of
10/5/2020 surgery, but he was told Friday that the surgery had been cancelled. We
have not been told why the surgery keeps getting cancelled.

We are really hoping to get Mr. Daniel his needed surgery so we can get past this and
on to more substantive issues in his case, including finding a way to review discovery
with him. Mr. Daniel reports that his back pain and bladder control have worsened
and he can't straighten his right leg. Anything the USM or US Attorney's Office can do
to get this surgery scheduled and completed promptly would be very much
appreciated. If it would speed up his surgery, we are also fine with Mr. Daniel being
moved to another facility, such as the CDC's Vacaville or Stockton medical facility or a
federal detention center—even if it he is further away from us. Our foremost concern
is his health and safety.

Tim (cell: 916-718-9516) and I are available on our cell phones to discuss this further at
any time. Thank you. –John Balazs (cell: 916-505-1687).

---

**From:** john@balazslaw.com <john@balazslaw.com>
**Sent:** Tuesday, August 25, 2020 4:35 PM



**To:** 'Beloberk, Kelly (USMS)' <​██████████████​>
**Cc:** 'Gaskins, Anne (USMS)' <​██████████████​>; 'Hitt, Jason (USACAE)' ██████████████>; 'Biernat, Kevin (USMS)' <​██████████████​>; 'Pearson, Ross (USACAE)' <​██████████████​>; Tim Warriner <tew@warrinerlaw.com>
**Subject:** RE: Brant Daniel

Kelly, we learned yesterday during our zoom court hearing from our client Brant Daniel that the CDCR's SMART Committee recently approved the requested L5 S1 disk surgery for him.   Thank you for your help on this matter.

We understand that the surgery still needs to be scheduled by the CDCR's RN Molly. We appreciate any assistance you or the Marshals Service can provide in making sure any other needed USM approvals, if any, are given so that Mr. Daniel can have the surgery scheduled promptly.  He has been reporting that his  symptoms continue to worsen as he is experiencing increased bladder loss and additional problems with his right leg.  Thank you.  –John Balazs

**From:** Beloberk, Kelly (USMS) <​██████████████​>
**Sent:** Monday, August 3, 2020 12:54 PM
**To:** John Balazs <john@balazslaw.com>; Tim Warriner <tew@warrinerlaw.com>
**Cc:** Gaskins, Anne (USMS) <​██████████████​>; Hitt, Jason (USACAE) <​██████████████​>; Biernat, Kevin (USMS) ██████████████>; Pearson, Ross (USACAE) <R​██████████████​>
**Subject:** RE: Brant Daniel

Good afternoon John,

I have reached out to CDC and USMS Headquarters Medical regarding your below email.  The following is what I received from CDC regarding your email:

The attachments to your email below you show that Mr. Daniel's attorneys already filed, on 7/27/20, their appeal of the ruling denying his motion for another back surgery.  I believe there has also already been a court order for briefing on that appeal, so that horse is out of barn, so to speak.

Regarding the administrative health care appeals process, which for unknown reasons Mr. Daniel and his attorneys apparently refuse to use, it is set forth in Title 15, California Code of Regulations, section 3999.225 et.seq.  I doubt that is news to them; they just seem to have no  interest in satisfying the requirement for prior exhaustion of such administrative remedies.

For whatever reason or other gain, they appear intent on belaboring this issue in the court, notwithstanding the judge's oral advice to them that it is very difficult to show a constitutional inadequacy in inmate medical care on an issue for which there are different medical opinions.  As you probably know, such differences in medical opinion

are common.  An inmate is not entitled to litigate every such difference in medical opinion, i.e. there is no requirement for a judge to try to figure which medical opinion might have more merit or be more correct.  The courts would be swamped and unable to function.  An inquiry may be warranted IF the inmate can make a prima facie showing that his medical care is so far out of the norm as to be medically unacceptable AND that his doctors are not just making a medical judgment he does not agree with, but rather are choosing to deliberately disregard a serious risk of harm to him.   Mr. Daniel has not made and likely cannot make those showings, because he has access to care and the providers are making medical judgments.

Instead, I cannot even follow that the medical records attached to the appeal show what the attorneys claim they show, such as the surgery being necessary to prevent irrevocable loss of control over legs, bladder, bowels, etc. Actually, on May 14 Mr. Daniel denied bowel or bladder changes, and Dr. Ginwalla's exam on June 5 includes that Mr. Daniel is not in acute distress.  He has a significant regimen of pain relief medications, indicated to include T3, Gabapentin and morphine. He apparently declined epidural injections proposed by the neurosurgeon for pain relief.

I still have not heard directly from those attorneys, although I welcome such interaction.

I am sure Mr. Daniel has on-going access to his providers at CSP.  I will look into whether his request for the subject service is being resubmitted to the SMART committee.  A patient's ostensible desire for a major surgery, and even a surgeon's willingness to do it, is not determinative of whether such major surgery is appropriate and safe, and medically necessary.  The CDCR physicians have the responsibility to make a medical decision about what is in the patient's best interest.

I will also check for more current medical records.  To the best of my knowledge he has access to providers, his pain management regime and accommodations remain in place, and  his cardiac status is being followed.  The SMART denial of surgery at L5-S1 in mid-June is not final for all time, but can be re-evaluated as the clinical evidence may warrant.

Thank you.


Steven J. Bechtold, J.D., R.N.
Staff Counsel IV
California Correctional  Health Care Services (CCHCS)





\<image001.png\>

The contents of this e-mail message, including any attachments, are intended solely for the use of the person or entity to whom the e-mail was addressed. It contains information that may be protected by the attorney-client privilege, work-product doctrine, or other privileges, and may be restricted from disclosure by applicable state and federal law. If you are not the intended recipient of this message, be advised that any dissemination, distribution, or use of the contents of this message is strictly prohibited. If you have received this message in error, or are not the named recipient(s), please notify the sender immediately by reply e-mail or by phone and delete this message.

As far as moving DANIELS to another facility, CDC has onsite medical care and is probably the best facility equipped for this type of medical ailment. In my experience our local jails would not be able to handle this type of medical treatment. As far as a federal detention center, we unfortunately do not have any close to house him.

I will continue to work with CDC and our headquarters.

Thank you,


**Kelly Beloberk**
Supervisory Deputy U.S. Marshal
Eastern District of California


501 I Street, Suite 5-600

**From:** John Balazs <john@balazslaw.com>
**Sent:** Thursday, July 30, 2020 5:26 PM
**To:** Tim Warriner <tew@warrinerlaw.com>; Beloberk, Kelly (USMS) <​>
**Cc:** Gaskins, Anne (USMS) <​>; Hitt, Jason (USACAE) <​>; Biernat, Kevin (USMS) <​>; Pearson, Ross (USACAE) <​>
**Subject:** Re: Brant Daniel

Kelly, following up on my co-counsel Tim Warriner's email re our request to get a L5 S1 fusion surgery for our client Brant Daniel, we filed the attached appeal to Judge Mueller from the magistrate judge's denial of our motion for urgent medical care. Attached to the appeal brief is the contract between USMS and CDCR that Tim

references in his email.  I've also attached the medical records justifying the surgery (Exhibit C), which are filed under seal.  Although I noticed it for hearing on August 19 when we have a status conference with all the *Yandell* defendants, I understand from Judge Mueller's clerk that the hearing is expected to be moved to August 17 or 24.

Any help the USMS can provide in getting Mr. Daniel the surgery recommended by the two San Joaquin General Hospital surgeons would be appreciated.  We believe that without the surgery, Mr. Daniel's pain and medical conditions will worsen and he will likely irrevocably lose control over his bladder and legs.  Given his recurring medical issues, we also strongly believe it would make better sense to move Mr. Daniel to a federal detention center that can handle his medical needs.  Thank you.  –John Balazs

**From:** Tim Warriner <tew@warrinerlaw.com>
**Date:** Tuesday, July 21, 2020 at 2:19 PM
**To:** "'Beloberk, Kelly (USMS)'" <███████████████>
**Cc:** "'Gaskins, Anne (USMS)'" <███████████████████>, <john@balazslaw.com>,
"'Hitt, Jason (USACAE)'" <██████████████v>, "'Biernat, Kevin (USMS)'"
<████████████████>
**Subject:** RE: Brant Daniel

Kelly,

Thanks so much for looking into this. Another issue John Balazs and I are dealing with is how to get Mr. Daniel the spinal surgery that he needs. The surgery recommended by Dr. Thaiyannanthan, a neurosurgeon at San Joaquin General Hospital, is an L5-S1 fusion and is recommended "to avoid further damage such as urinary and bowel incontinence." Although the surgery was scheduled to occur June 9, 2020, the surgery was thereafter cancelled by CDCR. So far, CDCR has refused to re-schedule the surgery as it has not been authorized.

Mr. Daniel is in urgent need of the surgery. His back pain is worsening and his condition has resulted in weakness in his legs and increasing urinary incontinence. The back pain has also stressed his heart, which has worsened his arrhythmia. Recently, Mr. Daniel collapsed in his cell and could not get up without assistance. The chronic back pain has significantly impaired his activities of daily living.

Although John and I have been corresponding with the CDCR doctors about Mr. Daniel's surgical needs, after reviewing the USM contract with the CDCR it appears that the surgery is to be arranged through your office. Part 6 of the contract states that "all **outside** medical care provided to Federal detainees must be pre-approved by the Federal Government except in a medical emergency." See attached page of USMS Special Limited Use Agreement. The contract also states that CDCR "should utilize outside medical care providers that are covered by the USMS's National Managed Care Contract (NMCC) to reduce the costs and administrative workload associated with these medical services." If Dr. Thaiyannathan's services are not covered by the NMCC,

perhaps an appointment with a NMCC neurosurgeon can soon be arranged.

We would like to do everything possible to get Mr. Daniel the surgery he needs, and which has been recommended by a board certified neurosurgeon. I am in the process of getting Mr. Daniel's medical records from San Joaquin General Hospital, as well as an explanation from Dr. Thaiyannanthan as to why he recommends the surgery. I can provide these documents to you as soon as I get them. We also have CDCR's medical records, if you need to see those. Please let me know what you need.

Thanks again for your help and your attention to this matter.

Tim Warriner
cell: 916.718.9516

**From:** Beloberk, Kelly (USMS) [                                   ]
**Sent:** Tuesday, July 14, 2020 12:41 PM
**To:** Tim Warriner
**Cc:** Gaskins, Anne (USMS); john@balazslaw.com; Hitt, Jason (USACAE); Biernat, Kevin (USMS)
**Subject:** FW: Brant Daniel

Tim,

In response to your concern we reached out to CDC and inquired as to Brant Daniel's housing placement in their facility. As a reminder we have a contract with CSP Sacramento only and not any of the other CDC Institutions. At this time we are unable to move him to a different CDC state prison. We are working with our contract department to explore other options, however at this time our contract only allows for placement at CSP Sacramento. CDC responded with the following information:

"CSP SAC no longer has a non-mental health designated ASU unit. We have an agreement to send those inmates to FSP ASU, barring any condition that cannot be accommodated by the institutional design. DANIELS medical issues have prevented him from housing there due to FSP having stairs in the path of regular travel. And yes, there are many non-mental health designated inmates in Short Term Restricted Housing (STRH) with DANIEL."

"Hi, Sorry, ASU is Administrative Segregation Unit. They house inmates that would case safety or security issues within the General Population, and are considered Maximum Custody. There are many reasons for placing an inmate in maximum custody. It could be for their own safety, the safety of others, etc. FSP ASU refers to the ASU unit at Folsom State Prison (next to CSP SAC). We have an agreement with FSP to allow for us to send non-MH inmates to their unit, when they have no other specific reason to be at SAC. This allows us to focus our additional MH resources on inmates that require it. DANIEL is currently in the Security Threat Group step down process (ASHKER Lawsuit),

which requires Max custody. He is nearing the end of the process, but will likely continue to require Max Custody due to him having safety issues among his peers. It looks like DANIEL meets the criteria to go to Folsom ASU. However, I believe the Marshalls would need to be on board. Also, he does have medical issues (as he stated). Often times, medical issues prevent FSP ASU transfer, due to FSP having stairs within the unit. In my experience, Folsom Medical would likely return him anyway, due to SAC being better equipped to handle medical needs of inmates with ongoing issues. I hope this long-winded info helps."

I hope this helps in clarifying some of your concerns.  Please let us know if you have any questions.

Thank you,


**Kelly Beloberk**
Supervisory Deputy U.S. Marshal
Eastern District of California

501 I Street, Suite 5-600
Sacramento, CA 95814



**From:** Tim Warriner <tew@warrinerlaw.com>
**Sent:** Saturday, July 4, 2020 11:17 AM
**To:** Biernat, Kevin (USMS) <​█​>
**Cc:** 'John Balazs' <john@balazslaw.com>; Hitt, Jason (USACAE) <​█​>
**Subject:** Brant Daniel

Kevin,

Thanks for talking with me about Brant Daniel being in administrative segregation in the mental health ward at CSP-Sac. I've attached the CDCR regulation/policy I mentioned. In section I it states that "Non [Mental Health Services Delivery System] inmates placed into [Administrative Segregation Unit] will be temporarily housed in [Short Term Restricted Housing] until the Initial Institutional Classification Committee is completed." Given that ICC has been completed, can Mr. Daniel be moved to non-mental health ad seg? Can he be moved to a CDCR medical facility such as CSP Solano?

My concern is that being in the mental health ward is loud, stressful, and seems to be exacerbating his medical problems --i.e., heart stress and degenerative back disease.

Please let me know if you need any more information. I appreciate your time and effort looking into this.

Tim

Tim Warriner
Attorney at Law
Certified Criminal Law Specialist
455 Capitol Mall, Suite 802
Sacramento, CA 95814
(916) 443-7141
www.warrinerlaw.com

<image002.jpg>

**CONFIDENTIALITY NOTICE: This communication and any accompanying document(s) may be confidential and privileged. They are intended for the sole use of the addressee. If you receive this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon the communication is strictly prohibited. Moreover, any such inadvertent disclosure shall not compromise or waive the attorney-client privilege as to this communication or otherwise. If you have received this communication in error, please contact the sender at the internet address indicated or by telephone at (916) 443-7141, delete this e-mail and destroy all copies. Thank you.**

Brant Daniel    78306-097
U.S. Penitentiary Max
P0. Box 8500
Florence, Co.
81226