FILED

JUN 11 2026

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY [signature]
DEPUTY CLERK

BRANT Q. DANIEL
BOP No. 78306-097
Movant, Pro Se

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA,
Respondent,

v.

BRANT Q. DANIEL,
Movant.

No. 2:19-cr-00107-TLN-AC

**MOVANT BRANT Q. DANIEL'S RESPONSE TO ORDER TO SHOW CAUSE WHY HIS 28 U.S.C. § 2255 MOTION SHOULD NOT BE DISMISSED AS UNTIMELY; REQUEST FOR EQUITABLE TOLLING, ALTERNATIVE LIMITATIONS TRIGGER DATE, AND, IF NECESSARY, EVIDENTIARY HEARING AND CONFLICT-FREE COUNSEL**

## RESPONSE TO ORDER TO SHOW CAUSE

Movant Brant Q. Daniel responds to the April 7, 2026 Order to Show Cause, ECF No. 2862. The Court asks why the § 2255 motion filed March 10, 2026 should not be dismissed as untimely. Mr. Daniel submits that the motion should not be dismissed at Rule 4 because the record, the attached declaration, and the exhibits support an alternate limitations trigger under 28 U.S.C. § 2255(f)(2) and/or § 2255(f)(4), and independently support equitable tolling for the period after his timely first § 2255 was withdrawn through counsel.

The issue is not whether the mere pendency of the first § 2255 automatically tolled time. Mr. Daniel understands the Court's concern. The issue is whether the May 21, 2025 withdrawal should be treated as Mr. Daniel's knowing abandonment when the withdrawal was entered through appointed counsel, without Mr. Daniel's informed consent, immediately after he was

transferred from CDCR/USMS custody into federal transit conditions, and before he had meaningful legal access from Victorville.

Mr. Daniel did not sit on his rights. He filed a pro se § 2255 on July 2, 2024. ECF No. 2391. He continued seeking relief from the plea. The limitations problem arose only after the first § 2255 was withdrawn through appointed counsel on May 21, 2025, ECF No. 2768, while Mr. Daniel was relying on counsel's advice that transfer to federal custody would place him in a lower-level medical facility where he could obtain medical care and work on compassionate release. Instead, he was placed in USP Victorville SHU, stripped of medications, mobility aids, legal property, paper, normal mail, and functional law-library access, suffered repeated falls and outside hospitalizations, and remained unable to perform ordinary legal work for months.

Only a limited amount of tolling is needed. The Court calculates that 168 days ran before Mr. Daniel filed his first § 2255 and 293 days ran between the May 21, 2025 withdrawal and the March 10, 2026 refiling. ECF No. 2862 at 3. If 96 days of the post-withdrawal period are tolled, the current filing falls within the one-year limitation period. The record supports tolling for far more than 96 days: at minimum from May 21, 2025 through August 26, 2025, and more realistically through Mr. Daniel's December 2025 removal from Victorville or his February/March 2026 recovery of enough legal access and clarity to file.

For these reasons, the Court should discharge the Order to Show Cause, deem the current § 2255 timely under § 2255(f)(2), § 2255(f)(4), or equitable tolling, and allow the § 2255 to proceed. At minimum, the Court should allow supplementation and hold an evidentiary hearing before dismissing a plea-coercion and incompetency claim on limitations grounds.

## I. PROCEDURAL TIMELINE IDENTIFIED BY THE COURT

On December 20, 2023, Mr. Daniel pled guilty to one count of murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1). The Court sentenced him the same day to life imprisonment. ECF Nos. 1765, 1766. Judgment was entered January 2, 2024. ECF No. 1780.

Because no direct appeal was filed, the Order to Show Cause calculates finality as January 16, 2024. ECF No. 2862 at 2-3. Mr. Daniel does not dispute the Court's calculation for purposes of this response; instead, he shows why alternate triggering dates and equitable tolling apply.

Mr. Daniel filed his first pro se § 2255 motion on July 2, 2024, 168 days after the finality date identified by the Court. ECF Nos. 2391, 2862 at 3. That first filing is the clearest evidence of diligence. He did not wait until after the limitations period expired to begin collateral review; he filed within the year.

On May 21, 2025, the first § 2255 was withdrawn through appointed counsel. ECF No. 2768. Mr. Daniel disputes that the withdrawal was his knowing, voluntary, and informed decision. The withdrawal is the event that created the present timeliness dispute.

The current § 2255 was filed on March 10, 2026. ECF No. 2857. The Court calculated that 293 days elapsed after the withdrawal. ECF No. 2862 at 3. Because only 96 days of tolling are needed to bring the current filing within the one-year period, the Court need not decide every factual dispute now. The documented Victorville impairment alone covers the necessary tolling period.

## II. FACTS SHOWING AN ALTERNATE TRIGGER DATE AND EQUITABLE TOLLING

**A. Before the plea, the record showed medical impairment directly affecting Mr. Daniel's ability to litigate.**

This case was not an ordinary post-judgment delay. Before the plea, Mr. Daniel was a federal pretrial detainee held at CSP-Sacramento under a U.S. Marshals Service/CDCR arrangement. He had spinal disability, foot drop, chronic pain, cardiac issues, mobility chronos, and pending surgical requests. His medical condition was litigated in the criminal case before sentencing.

In December 2022, the Court addressed a motion seeking medical care for a lipoma and acknowledged that U.S. Marshals Service approval was required because Mr. Daniel was in Marshals custody. ECF No. 1385 at 2-3. On December 26, 2023, six days after the plea and sentence, the Court issued findings and recommendations on Mr. Daniel's motion for urgent medical care, ECF No. 1649. That motion sought authorization for two procedures: sacroiliac joint fusion surgery and removal of a lipoma. ECF No. 1776 at 1.

The December 26, 2023 findings described Mr. Daniel's argument that without surgery he was required to take narcotic pain medication that impaired his mental acuity and interfered with his ability to consult with counsel and assist with his defense. ECF No. 1776 at 2. The Court further stated that Mr. Daniel had proffered evidence of serious medical conditions warranting some form of intervention, but recommended denial as moot because the guilty plea and life sentence meant he no longer needed to assist counsel for trial. Id. at 2-3.

Those docket facts matter for the present timeliness question. Mr. Daniel's current § 2255 claim is that the plea was entered while he was in extreme pain, heavily medicated, medically

destabilized, and pressured to accept a plea because the medical and trial conditions were unbearable. The Court's own December 2023 medical-care record shows that the medical and medication facts were not invented after the deadline; they were already before the Court when the plea and sentence occurred.

**B. Mr. Daniel filed a timely first § 2255 and did not knowingly choose to abandon it.**

Mr. Daniel filed his first § 2255 on July 2, 2024. ECF No. 2391. That filing was timely under the January 16, 2024 finality date identified by the Court. It also shows that he was pursuing his rights, not sleeping on them.

The first § 2255 was withdrawn on May 21, 2025 through appointed counsel. ECF No. 2768. Mr. Daniel states that he did not direct counsel to permanently abandon his § 2255 rights and did not understand that withdrawal would expose any replacement motion to dismissal as untimely. Daniel Decl. ¶¶ 12-16. The withdrawal must be evaluated against the actual communications surrounding it, not treated as a free and informed abandonment from a silent docket entry.

The contemporaneous text exchange with attorney John Balazs is direct evidence. On May 24, 2025, after the docketed withdrawal, Mr. Daniel's wife sent Mr. Balazs a message stating that Brant wanted an attorney call and did not want the "vacate" closed. On May 26, 2025, Mr. Balazs responded that the § 2255 motion had already been closed and that he would start the process of setting up a legal call, although it might take time because Victorville was "usually slow and difficult to deal with." Ex. A. The legal call was not set before the closure; it was promised after the closure. That sequence supports Mr. Daniel's statement that he did not knowingly authorize the withdrawal.

The withdrawal also involved a conflict problem. Mr. Daniel's § 2255 challenged the plea process, counsel advice, medical duress, and the decision to waive rights while expecting BOP medical placement and later compassionate-release work. If the same counsel whose advice formed part of the plea-validity claim withdrew the § 2255, the Court should not presume a knowing waiver. At minimum, the withdrawal filing, counsel communications, and Mr. Daniel's access to legal calls during the Victorville transfer period require factual development before limitations dismissal.

**C. Counsel's medical-placement and compassionate-release advice explains why the withdrawal caused the delay.**

Mr. Daniel states that counsel told him he would be going to a lower-level or medical-oriented federal facility where he could receive medical care and work on compassionate release. Daniel Decl. ¶¶ 17-20. That advice mattered because Mr. Daniel was in documented pain, had been litigating urgent medical care, and believed transfer to BOP custody would improve his access to treatment and legal options.

The plea and post-sentencing decisions were tied to medical pressure. Mr. Daniel states that scheduled SI-joint fusion surgery had repeatedly been denied or cancelled while he was in USMS/CDCR custody; that he was told a months-long trial in his condition, with hard seating, restraints, medication problems, and no meaningful medical accommodation, could be physically intolerable; and that he believed waiver of the presentence report would help expedite BOP placement for medical care. Daniel Decl. ¶¶ 6-11.

The later events proved the placement advice false. Rather than a lower-level medical placement, Mr. Daniel was sent to USP Victorville SHU and later to Florence ADMAX. The Victorville records and letters describe loss of medication, loss of cane and braces, no usable

legal property, delayed legal mail, no normal paper or postage access, repeated falls, outside hospitalizations, and delayed or cancelled legal calls. Exs. B-D. The gap between counsel's placement advice and the actual Victorville/ADX conditions is part of the extraordinary circumstance that prevented a timely corrective filing.

**D. From May 2025 through at least November 2025, Victorville conditions blocked ordinary legal work.**

On May 7, 2025, the U.S. Marshals Service took custody of Mr. Daniel from CDCR. On May 9, 2025, he arrived at USP Victorville. Ex. B. The transfer timeline states that he arrived with medications and ADA mobility aids, but BOP staff took his cane, ankle brace, back brace, medication, and property. Id.; Daniel Decl. ¶¶ 21-24. He was placed in an empty SHU cell and had no normal commissary, law library, television, reading materials, pens, blank paper, or mobility aids. Ex. B.

By May 16, 2025, while the § 2255 withdrawal was being processed, Mr. Daniel had fallen, suffered a head injury, gone to the emergency room, and was being told it might be a month before he could go to commissary to buy postage and stationery. Ex. B. This was the exact period when he needed to understand that the first § 2255 had been withdrawn and move quickly to correct it.

On May 24, 2025, Mr. Daniel, through his wife, asked attorney Balazs to set up an attorney call and not close the vacate. Ex. A. On May 26, 2025, Balazs responded that the § 2255 was already closed and that a legal call would have to be set up later through Victorville, which he described as slow and difficult. Id. The communication confirms both diligence and obstruction: Mr. Daniel was trying to reach counsel, but the filing had already been withdrawn and Victorville access was not functioning.

On July 1, 2025, Mr. Daniel suffered a serious A-fib/fainting episode, split his head open, and was taken by ambulance to Desert Valley Hospital. Ex. B. He remained hospitalized until approximately July 4, 2025. Id. A legal call scheduled for July 3, 2025 was cancelled because he was hospitalized. Id. The hospital doctors reportedly re-prescribed his medications and recommended that prison medical not alter them, but Victorville staff allegedly ignored those instructions. Id.; Daniel Decl. ¶¶ 27-29.

By August 2025, the impediments had not ended. Mr. Daniel still lacked reliable mobility aids, had not had meaningful legal access, had no outside air, no law library, no television, no radio, no books, no regular mail, and had suffered repeated falls and head injuries. Exs. B-C. On August 19, 2025, he saw Dr. Sommer by telemedicine; she allegedly expressed concern that he had been in SHU without ADA aids for approximately 98 days and that he remained medically unsafe. Ex. B.

The legal-access obstruction continued into October and November 2025. In an October 19, 2025 letter, Mr. Daniel wrote that he had to threaten to identify a staff member to the judge before a lieutenant forced staff to give him five sheets of paper; the lieutenant then allegedly said the unit did not have a proper law library, librarian, books, or legal forms. Ex. C. In a November 5, 2025 letter to BOP leadership, Liza Daniel reported that Mr. Daniel remained in USP Victorville SHU, had been cleared for transfer since September 18, 2025, was being denied postage, white paper, legal forms, and legal resources, and that the "law library" consisted of one nonfunctional computer. Ex. D.

Mr. Daniel was transferred from Victorville to Florence ADMAX in December 2025. Ex. B; Daniel Decl. ¶ 34. He filed the present § 2255 on March 10, 2026. ECF No. 2857. Given the preceding months of blocked legal access, medical instability, lost legal property, and mail

obstruction, the March 2026 filing reflects reasonable diligence once he had enough access and clarity to act.

**E. Mr. Daniel discovered the factual and legal significance of the plea claim only after he regained access and mental clarity.**

Mr. Daniel states that he did not understand the one-year limitations problem, the effect of the § 2255 withdrawal, or the legal significance of the medical-duress and medication evidence when the first motion was withdrawn. Daniel Decl. ¶¶ 35-39. He was in severe pain, on long-term opioid medication, suffering repeated head injuries, and cut off from his legal materials during Victorville transit and SHU placement.

In February and March 2026, after medication changes and after he was finally able to review enough case material and law, Mr. Daniel states that he realized the medical-duress facts, counsel advice, medical-care record, and later-discovered materials supported a challenge to the plea and to the waiver of direct review. Daniel Decl. ¶¶ 40-43. He filed the current § 2255 on March 10, 2026.

Mr. Daniel also identifies new or newly understood evidence: photographs from the Monterey County incident showing hot coffee on him, the reported use of those photographs by another lawyer in a related trial, and approximately 86 pages of CDCR material he says contradicted the theory that the Monterey County homicide was a gang murder rather than a self-defense or manslaughter-type incident. Daniel Decl. ¶¶ 44-47. Mr. Daniel is still trying to obtain and submit those materials despite prison mail and property limitations.

## III. ARGUMENT

**A. The motion is timely under 28 U.S.C. § 2255(f)(2), or at minimum the government-impediment issue requires factual development.**

Section 2255(f)(2) starts the one-year period on "the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed." Mr. Daniel identifies a concrete impediment created by government custody: after counsel withdrew the first § 2255 on May 21, 2025, BOP staff at Victorville blocked ordinary legal work by withholding legal property, delaying and obstructing legal mail, denying paper and postage, providing no working law library, restricting legal calls, and medically destabilizing him through medication interruption and denial of mobility aids.

The impediment was not merely inconvenient confinement. The record identifies dates and acts. In May 2025, Mr. Daniel had just been moved to Victorville SHU, lost legal property and medical aids, and could not promptly communicate with counsel about the withdrawal. Exs. A-B. In July 2025, he was hospitalized during a scheduled legal call. Ex. B. In August 2025, he still lacked meaningful law-library access, legal materials, regular mail, and physical stability. Exs. B-C. In October and November 2025, he was still being denied paper, postage, legal forms, and a working law library. Exs. C-D.

The Court need only find 96 days of tolling or alternate triggering to make the March 10, 2026 filing timely under the Court's own calculation. May 21, 2025 to August 25, 2025 alone is 96 days. During that period, Mr. Daniel was newly in Victorville SHU, medically destabilized, repeatedly injured, deprived of legal property, deprived of normal paper and postage, and unable to obtain a timely legal call about the withdrawn § 2255. The § 2255(f)(2) impediment therefore

lasted at least long enough to make the present motion timely, and likely continued until his December 2025 transfer or beyond.

If the Court concludes the present record does not yet prove the exact date the impediment was removed, the proper remedy is factual development, not dismissal. The relevant records are in government or counsel possession: BOP mail logs, SHU records, legal-call records, property records, medical movement records, outside-hospital records, commissary/postage records, law-library logs, and the communications surrounding ECF No. 2768.

**B. The motion is also timely under 28 U.S.C. § 2255(f)(4), or the § 2255(f)(4) facts require supplementation.**

Section 2255(f)(4) starts the one-year period on "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." Mr. Daniel's plea claim depends on facts he did not know, could not meaningfully review, and could not legally understand while he was in severe pain, heavily medicated, suffering repeated head injuries, and then cut off from his records during Victorville SHU confinement.

The supporting facts include: (1) that the May 21, 2025 withdrawal of the first § 2255 would not preserve or toll the limitations period; (2) that counsel had closed the first § 2255 before arranging a meaningful legal call with Mr. Daniel; (3) that counsel's post-plea medical-placement advice was wrong; (4) that the medical-duress evidence already in the criminal docket supported a competency and plea-validity challenge; (5) that approximately 86 pages of CDCR material existed and would have affected plea leverage; and (6) that photographs from the Monterey County incident existed and were used by another lawyer in a related trial. Daniel Decl. ¶¶ 35-47.

Based on his present knowledge, Mr. Daniel identifies February/March 2026 as the period when he finally had enough mental clarity, case access, and legal understanding to discover the facts supporting the present motion. He filed on March 10, 2026, within one year of that discovery period. If the Court believes these facts go more strongly to equitable tolling than § 2255(f)(4), they still independently show that Mr. Daniel did not delay without diligence.

**C. Equitable tolling applies because Mr. Daniel was reasonably diligent and extraordinary circumstances prevented timely filing.**

The Order to Show Cause correctly states the governing test: equitable tolling applies when a movant shows that he pursued his rights diligently and that extraordinary circumstances stood in his way and prevented timely filing. Holland v. Florida, 560 U.S. 631, 649 (2010); Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); United States v. Battles, 362 F.3d 1195, 1196-97 (9th Cir. 2004). The diligence required is reasonable diligence, not maximum feasible diligence. Holland, 560 U.S. at 653.

Mr. Daniel was diligent. He filed his first § 2255 on July 2, 2024, within the period calculated by the Court. ECF No. 2391. He sought to challenge the plea. He asked for attorney communication when he learned the motion had been closed. Ex. A. He tried to obtain legal paper, stamps, legal mail, legal calls, and access to his records at Victorville. Exs. B-D. He filed the current § 2255 on March 10, 2026 after months of Victorville obstruction and transfer to ADMAX. ECF No. 2857.

The extraordinary circumstances were cumulative and specific: counsel withdrew the timely first § 2255 without Mr. Daniel's informed consent; counsel had a conflict because the claim attacked the plea and counsel advice; Mr. Daniel was transferred into federal custody during the withdrawal period; BOP staff at Victorville took his medication, cane, braces,

property, and legal materials; his legal mail and telephone access were unreliable; he suffered serious falls, head injuries, and outside hospitalizations; and the unit denied or restricted paper, postage, forms, and law-library access during the exact 293-day period the Court now counts.

Ninth Circuit law permits equitable tolling where attorney misconduct, prison interference, lack of legal materials, or severe mental/medical impairment prevents timely filing. See, e.g., Spitsyn v. Moore, 345 F.3d 796, 800-02 (9th Cir. 2003) (egregious attorney misconduct may warrant tolling); Lott v. Mueller, 304 F.3d 918, 924-25 (9th Cir. 2002) (temporary deprivation of legal files may warrant tolling); Espinoza-Matthews v. California, 432 F.3d 1021, 1027-28 (9th Cir. 2005) (complete deprivation of legal materials during administrative segregation supported tolling); Bills v. Clark, 628 F.3d 1092, 1099-1101 (9th Cir. 2010) (mental impairment may toll when it prevents understanding or preparing a petition); Gibbs v. Legrand, 767 F.3d 879, 885-90 (9th Cir. 2014) (attorney misconduct and prisoner diligence supported tolling).

The causation is direct. If counsel had not withdrawn the timely first § 2255 without informed consent, there would be no limitations problem. If Mr. Daniel had received a legal call, his legal property, paper, postage, legal mail, and a working law library in May-July 2025, he could have moved to reinstate the first § 2255 or filed a replacement while fewer days had run. If his medications and mobility aids had not been stripped, causing repeated falls and hospitalizations, he would not have lost the ability to focus, write, and communicate during the same period. The delay was caused by the unauthorized withdrawal and the immediate post-transfer conditions, not by lack of interest in pursuing his claims.

**D. The Court should not treat the May 21, 2025 withdrawal as a voluntary abandonment without an evidentiary hearing.**

The Court's 461-day calculation assumes the May 21, 2025 withdrawal was effective as Mr. Daniel's own choice. Mr. Daniel disputes that premise. The May 24 and May 26 text exchange shows that counsel had already closed the § 2255 before arranging a legal call with Mr. Daniel. Ex. A. Mr. Daniel states that he did not understand the limitations consequence and did not authorize counsel to permanently abandon his collateral attack. Daniel Decl. ¶¶ 12-16.

Attorney error does not always toll a federal limitation period, but abandonment, conflict, and misleading advice are different from ordinary negligence. Holland, 560 U.S. at 651-52; Maples v. Thomas, 565 U.S. 266, 281-83 (2012); Spitsyn, 345 F.3d at 800-02. Here, the challenged withdrawal was entered by counsel in a proceeding where counsel's own advice and conduct were part of the plea-validity claim. The Court should not resolve that conflict against Mr. Daniel without the ECF No. 2768 filing, the related counsel communications, and testimony or declarations explaining what Mr. Daniel was told before the withdrawal.

A factual hearing is especially appropriate because the disputed facts are narrow and verifiable: who filed ECF No. 2768, what authority counsel claimed, what counsel told Mr. Daniel about limitations, when Mr. Daniel was first able to communicate with counsel from Victorville, and whether Mr. Daniel had access to legal mail, paper, postage, law library, and his legal property between May 21, 2025 and March 10, 2026. See Laws v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003) (remanding where equitable-tolling facts required development); Whalem/Hunt v. Early, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc) (remanding for development where record was insufficient to determine tolling issue).

**E. Actual innocence and new evidence further support allowing the § 2255 to proceed or allowing supplementation.**

The Order to Show Cause explains that actual innocence can allow review of an otherwise time-barred petition if the movant presents new reliable evidence showing that it is more likely than not that no reasonable juror would have convicted him. Lee v. Lampert, 653 F.3d 929, 937 (9th Cir. 2011) (en banc); McQuiggin v. Perkins, 569 U.S. 383, 386 (2013); Schlup v. Delo, 513 U.S. 298, 324 (1995); Bousley v. United States, 523 U.S. 614, 623 (1998).

Mr. Daniel is not asking the Court to finally decide the Schlup gateway without the photographs and CDCR pages attached. He raises this point because the Order to Show Cause directed him to identify new evidence if he relies on actual innocence. Mr. Daniel identifies photographs from the Monterey County incident showing hot coffee on him, the reported use of those photographs by another lawyer in a related trial, and approximately 86 pages of CDCR material he says contradicted the theory that the homicide was a gang murder rather than a self-defense or manslaughter-type incident. Daniel Decl. ¶¶ 44-47.

Even if the Court does not apply the actual-innocence gateway now, the new-evidence facts support equitable tolling and § 2255(f)(4). They explain why Mr. Daniel would not have knowingly accepted the plea, why he filed a § 2255 when he did, and why he pursued the present motion promptly after regaining enough access and clarity to understand the significance of the materials.

## IV. REQUEST FOR RELIEF

For the reasons above, Mr. Daniel respectfully asks the Court to discharge the April 7, 2026 Order to Show Cause and allow the March 10, 2026 § 2255 motion to proceed.

Mr. Daniel asks the Court to find the motion timely under 28 U.S.C. § 2255(f)(2), because government-created impediments at Victorville prevented a timely replacement filing until those impediments were removed or sufficiently reduced. Alternatively, he asks the Court to find the motion timely under § 2255(f)(4), because he filed within one year of discovering, through due diligence and after regaining clarity/access, the facts supporting his claims.

Independently, Mr. Daniel asks the Court to equitably toll the limitations period for at least 96 days after May 21, 2025, and more fully from May 21, 2025 through his December 2025 transfer from Victorville or his February/March 2026 recovery of sufficient access and clarity to file. Tolling that period makes the March 10, 2026 § 2255 timely under the Court's own calculation.

If the Court is not prepared to deem the motion timely on the present record, Mr. Daniel requests an evidentiary hearing, appointment of conflict-free counsel, leave to supplement with ECF No. 2768 and counsel communications, and an order directing production of BOP/counsel records necessary to resolve the disputed tolling facts.

Dated: June 4th, 2026

Respectfully submitted,

Brant Daniel

BRANT Q. DANIEL

Movant, Pro Se

**EXHIBIT INDEX**

Exhibit A - May 24-26, 2025 text-message exchange with attorney John Balazs showing that Mr. Daniel requested an attorney call and asked that the vacate/§ 2255 not be closed, and that counsel responded after the withdrawal that the § 2255 had already been closed.

Exhibit B - Liza Daniel timeline/transfer history and/or Brant Daniel handwritten timeline showing May 7-9, 2025 transfer to Victorville, loss of medication and ADA aids, legal-property loss, May/July hospitalizations, lack of law library, mail delay, and December 2025 transfer to Florence ADMAX.

Exhibit C - October 2025 Brant Daniel legal-access letter/history describing lack of paper, postage, law library, forms, and continued Victorville SHU conditions.

Exhibit D - November 5, 2025 letter to BOP Director/Deputy Director describing Victorville SHU confinement, denial of postage, white paper, legal forms, and nonfunctional law library.

Exhibit E - Medical/medication history dated August 30, 2025 describing chronic spinal disability, medications, ADA aids, May 2025 medication cutoff, falls, head injuries, July hospitalization, and lack of mobility accommodations.

Exhibit F - Any available hospital records, legal-call records, property records, mail logs, BP remedy receipts, counsel letters, or ECF No. 2768 withdrawal documents, to be supplemented if not available at filing.

**DECLARATION OF BRANT Q. DANIEL**

I, Brant Q. Daniel, declare as follows:

1. I am the movant in this § 2255 proceeding. I am proceeding pro se. I make this declaration from personal knowledge, except where I identify facts based on records, correspondence, or information provided to me.

2. I am currently in federal custody. My BOP number is 78306-097. I have been housed at Florence ADMAX since approximately December 2025.

3. From approximately July 2019 until May 2025, I was held at CSP-Sacramento while I was a federal pretrial detainee under the U.S. Marshals Service/CDCR arrangement. I was housed in restrictive housing conditions for most or all of that period.

4. I have serious spinal, mobility, chronic pain, and cardiac conditions. Before I entered BOP custody, I had multiple spinal surgeries, a paralyzed right foot/ankle or foot drop, a cane, back brace, AFO ankle brace, wedge pillow, lower-tier/lower-bunk accommodations, and cardiac medications. I had been prescribed methadone for pain for years.

5. When I pled guilty on December 20, 2023, I was in extreme pain and under the effects of pain medication. I did not have a normal, clear, and stable ability to weigh legal decisions the way I would have without the untreated pain, medication effects, and fear of being forced through a months-long trial in that condition.

6. Before the plea, my SI-joint fusion surgery had been delayed, denied, or cancelled while I was in USMS/CDCR custody. I understood that the surgery and other medical care had been repeatedly blocked because I was still in the Marshals/CDCR contract situation.

7. I was told or led to believe that going to federal custody would get me out of that situation and into a lower-level or medical-oriented federal facility where I could receive medical care and work on compassionate release. I was not told that I would be placed in Victorville SHU or

Florence ADMAX conditions without my medical records, medications, mobility aids, and legal materials.

8. I also understood that waiving the presentence report would help move me faster to BOP so I could receive medical care. I would not have agreed to the plea and waiver the same way if I had known I would instead be placed in SHU/ADX-type conditions and cut off from medical and legal access.

9. I filed a pro se § 2255 motion on July 2, 2024 because I wanted to challenge the plea. I did not abandon my rights or stop pursuing relief.

10. In late 2024 and early 2025, I was still trying to undo the plea and/or get relief from the plea. I was relying on my appointed attorneys for advice and filings because I was in pain, medicated, and in custody with limited access.

11. I did not knowingly and voluntarily authorize my attorneys to permanently withdraw and abandon my first § 2255 motion. I did not understand that withdrawing it would create a statute-of-limitations problem for any later § 2255.

12. I did not have a meaningful legal call before the first § 2255 was closed that explained the limitations consequence to me. After the withdrawal, my wife contacted attorney John Balazs on May 24, 2025 and told him that I wanted an attorney call and did not want the vacate closed. On May 26, 2025, he responded that the § 2255 motion had already been closed and that he would start the process of setting up a legal call.

13. By the time I learned that, I had already been transferred into federal custody and was at Victorville. I had no normal ability to immediately correct what had happened.

14. On or about May 7, 2025, the U.S. Marshals took me from CDCR. On or about May 9, 2025, I arrived at USP Victorville. I was placed in SHU. My medication, cane, braces, and other ADA

aids were taken. My property and legal materials were not made available to me. I was placed in a filthy cell with no normal legal supplies.

15. At Victorville, I did not have normal access to legal mail, paper, postage, legal forms, legal property, or a functioning law library. I could not do ordinary legal work. I could not simply prepare and file a replacement § 2255 or a motion to reinstate the first § 2255.

16. After arriving at Victorville, my medications were interrupted. I had dizziness, cardiac symptoms, falls, and head injuries. I was taken to outside hospitals. I was injured and medically unstable during the same period when I needed to respond to the withdrawal of my first § 2255.

17. Around May 13-16, 2025, I had a serious medical episode and head injury from falling. I was taken to the emergency room. I still did not have normal legal access, mail, paper, or my legal property.

18. Around July 1-4, 2025, I had a serious A-fib/fainting episode, split my head open, and was taken by ambulance to Desert Valley Hospital. I had a legal call scheduled around July 3, 2025, but it was cancelled because I was hospitalized.

19. After I returned from the hospital, I still did not receive the medical accommodations and medications that had been recommended. I continued having falls and injuries.

20. By August 2025, I still lacked meaningful legal access. I did not have a working law library, legal materials, consistent mail, paper, postage, or reliable phone/legal-call access. I also still had major mobility problems and continued falling.

21. On or around August 19, 2025, I saw Dr. Sommer by telemedicine. She was concerned that I had been in SHU without proper ADA aids and that my situation was medically unsafe.

22. In October 2025, I still had to fight for basic legal paper. I asked a correctional officer for blank white paper to file a motion. I had to say I would give his name to the judge for violating

my rights to legal material and a law library before a lieutenant made staff give me five sheets of paper. I was told the unit did not have a proper law library, librarian, books, or legal forms.

23. In October and November 2025, I also had problems obtaining postage and stationery. My legal mail and personal mail were delayed or withheld. My family was told things that were not true about whether I was receiving mail or was medically okay.

24. I was transferred from Victorville to Florence ADMAX in December 2025. My medical records were still not properly handled, and I still did not have normal conditions. But by early 2026 I had enough access and mental clarity to begin understanding what had happened legally.

25. In February and March 2026, after medication changes and after I could review more law and case materials, I understood that the pain, medication, medical coercion, lack of competency inquiry, counsel advice, and waiver issues supported a § 2255 challenge. I also understood that the withdrawal of the first § 2255 had created a timeliness issue.

26. I filed the current § 2255 on March 10, 2026 as soon as I could under the circumstances.

27. I also learned or realized in early 2026 that there was evidence I had not understood or had not been able to use before, including photographs from the Monterey County incident showing hot coffee on me and approximately 86 pages of CDCR material that I believe contradicted the theory that the incident was a gang murder rather than self-defense or manslaughter. I am still trying to obtain and submit those materials.

28. I did not intentionally delay my case. I filed a first § 2255 within the year. I asked for help. I asked for legal calls. I tried to get legal paper, stamps, forms, mail, and my records. I was prevented from acting by counsel's withdrawal without my informed consent, by Victorville SHU legal-access barriers, by lost or withheld legal property, and by serious medical impairment and injuries.

29. I ask the Court to find my March 10, 2026 § 2255 timely, to apply equitable tolling, and, if necessary, to hold an evidentiary hearing and appoint conflict-free counsel to develop the facts about the withdrawal of the first § 2255 and my legal access from May 2025 through March 2026.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 4th, 2026, at USP Florence ADMax

Brant Daniel

BRANT Q. DANIEL

## CERTIFICATE OF SERVICE

I certify that on June 4th, 2026, I served a true and correct copy of the foregoing response and supporting declaration by placing it in the United States mail, postage prepaid, addressed to:

Clerk of Court

United States District Court

Eastern District of California

501 I Street, Suite 4-200

Sacramento, CA 95814

and by serving the United States Attorney's Office for the Eastern District of California by mail or through the Court's electronic filing system if applicable.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 4th, 2026

Brant Daniel

BRANT Q. DANIEL